MANATT, PHELPS & PHILLIPS, LLP
STEPHEN M. RYAN (DC Bar No. 359099) (sryan@manatt.com)
700 12th Street, N.W., Suite 1100
Washington, DC  20005-4075
Telephone:  (202) 585-6500
Facsimile:  (202) 585-6600

MANATT, PHELPS & PHILLIPS, LLP
CHAD S. HUMMEL (CA Bar No. 139055) (chummel@manatt.com)
JACK S. YEH (CA Bar No. 174286) (jyeh@manatt.com)
11355 W. Olympic Boulevard
Los Angeles, CA  90064
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER L. WANGER (CA Bar No. 164751) (cwanger@manatt.com)
JOHN P. KERN (CA Bar No. 206001) (jkern@manatt.com)
1001 Page Mill Road, Building 2
Palo Alto, CA  94304-1006
Telephone:  (650) 812-1300
Facsimile:  (650) 213-0260

*Attorneys for Defendant*
AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GARY KREMEN, an individual,<br><br>        Plaintiff,<br><br>  vs.<br><br>AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD., a Virginia corporation,<br><br>       Defendant. | USDC Case No. **C 06-2554 JW**<br>[Related to Case No. C98-20718 JW]<br><br>(Assigned to the Honorable James Ware)<br><br>**NOTICE OF MOTION AND MOTION OF AMERICAN REGISTRY OF INTERNET NUMBERS, LTD. TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(B)(6), OR, ALTERNATIVELY, FOR A STAY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><u>Hearing</u><br><br>Date:  September 11, 2006<br>Time:  9:00 a.m.<br>Courtroom:  8<br><br>Action Filed:  April 12, 2006<br>TRIAL DATE:  NONE SET |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41007967.2

MOTION TO DISMISS
CASE NO. C 06 2554 MMC

Dockets.Justia.com

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on September 11, 2006, at 9:00 am, in Courtroom 8, before

3    the Honorable James Ware, Defendant AMERICAN REGISTRY FOR INTERNET NUMBERS,

4    LTD. ("ARIN") will move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

5    Procedure ("FRCP"), to dismiss with prejudice any and all claims of Plaintiff GARY KREMEN

6    ("Plaintiff" or "Kremen") on the grounds that the Complaint fails to state any claim on which

7    relief can be granted.  This Motion is made on each of the following grounds:

8        1.  each claim asserted in the Complaint is barred by applicable statutes of limitations;

9        2.  the Complaint fails to state facts that can support any federal or state antitrust claims

10   under either Section 1 or 2 of the Sherman or California's Cartwright Act; and

11       3.  the Complaint fails to state any state law claims for conversion, breach of fiduciary

12   duty, or unfair competition under California's UCL (B&P Code Section 17200) upon which relief

13   can be granted.

14   In the alternative to outright dismissal, ARIN respectfully requests that this Court stay the

15   present lawsuit pending disposition of ARIN's motion to modify or clarify this Court's

16   September 17, 2001, Order issued by the Honorable James Ware in the related case of *Kremen v.*

17   *Cohen* USDC N.D. Cal. Case No. C98 20718 JW (which motion is concurrently being filed in

18   that action), an order upon which this lawsuit is fundamentally based.  This Motion is based on

19   this Notice, the attached Memorandum of Points and Authorities, the exhibits thereto, the records

20   on file in this action, ARIN's Motion for Clarification, or in the Alternative, for Modification of

21   Order Dated September 17, 2001 in Case No. C 98-20718 JW, and such further evidence and

22   argument as may be adduced at the hearing on the Motion.

23   Dated:  June 27, 2006              By:   /c/ Christopher L. Wanger
                                             Christopher L. Wanger
24
                                        MANATT, PHELPS & PHILLIPS, LLP
25                                      1001 Page Mill Road, Building 2
                                        Palo Alto, CA  94304-1006
26                                      Telephone:  (650) 812-1300
                                        Facsimile:  (650) 213-0260
27                                      *Counsel for Defendant*
                                        AMERICAN REGISTRY FOR INTERNET
28                                      NUMBERS, LTD.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41007967.2                          2                    MOTION TO DISMISS
                                                         CASE NO. C 06 2554 MMC

1

**TABLE OF CONTENTS**

2

**Page**

3
I.    INTRODUCTION AND SUMMARY OF KEY FACTS ................................................. 1

4
II.   EACH OF KREMEN'S PURPORTED CLAIMS IS LEGALLY INSUFFICIENT ......... 3

5
      A.    The Complaint Should Be Dismissed In Its Entirety Because Each and
            Every Claim is Time-Barred ................................................................... 4

6
            1.    The Claims Asserted in the April 2006 Complaint Are Subject to a
                  Maximum Limitations Period of Four Years ............................................. 4

7
            2.    Plaintiff's Claims Accrued At the Latest in November 2001
                  Resulting in a November 2005 Deadline to File this Lawsuit ................... 5

8
      B.    Plaintiff's Sherman Act and Cartwright Act Claims Fail. ...................................... 6

9
            1.    ARIN's Conduct Is Immune From Antitrust Liability............................... 6

10
            2.    Kremen's First and Second Claims for Relief Fail to State a Claim
                  Under Section 1 of the Sherman Act........................................................ 8

11
                  a.    Kremen fails to allege any contract, combination, or
                        conspiracy ....................................................................... 9

12
                  b.    Kremen fails to allege any unlawful restraint of trade................. 11

13
                        (1)   The Complaint fails to allege any harm to
                              competition........................................................ 11

14
                  c.    Kremen fails to allege causal antitrust injury................................ 15

15
            3.    Kremen Fails to State a Claim Under Section 2 of the Sherman Act ....... 16

16
                  a.    Kremen fails to state a claim for monopolization ......................... 16

17
                        (1)   ARIN's Alleged Monopoly is not "Illegal." .................... 16

18
                        (2)   Kremen has not alleged exclusionary conduct by
                              ARIN, even assuming it has monopoly power.................. 17

19
                        (3)   Kremen fails to allege harm to competition from the
                              alleged wrongful conduct............................................... 18

20
                  b.    Kremen fails to state an attempted monopolization claim............ 18

21
                        (1)   Kremen fails to allege specific intent to control
                              prices or destroy competition in the relevant market........ 18

22
                        (2)   Kremen fails to allege predatory or anticompetitive
                              conduct ................................................................ 19

23
            4.    Kremen Fails to State a Claim Under the Cartwright Act ........................ 19

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41007967.2

MOTION TO DISMISS
CASE NO. C 06 2554 MMC

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3    C.    Plaintiff's Conversion Claim Should Be Dismissed Because The Complaint
      Fails To State Any Claim Upon Which Relief Can Be Granted............................ 20

4    D.    Plaintiff's Breach of Fiduciary Duty Claim Fails To State Any Claim Upon
      Which Relief Can Be Granted.................................................................................. 21

5

6    E.    Plaintiff's Unfair Competition Claim Should Be Dismissed Because The
      Complaint Fails To State Any Claim Upon Which Relief Can Be Granted........ 23

7    F.    This Lawsuit Should Be Stayed Pending Disposition of ARIN's
      Application to Modify or Clarify the September 2001 Order.............................. 24

8    III.    CONCLUSION .......................................................................................................... 25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41007967.2

ii

MOTION TO DISMISS
CASE NO. C 06 2554 MMC

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536 (9th. Cir. 1991) .............................. 18

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051 (9th Cir. 1999) .......................................... 11

*American Bankers Mortgage. Corp. v. Federal Home Loan Mortgage Corp.*,75 F.3d 1401 (9th Cir. 1996).................................................................................................. 20

*American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery*, 185 F.3d 606 (6th Cir. 1999)................................................................. 10

*Anderson v. Allstate Ins. Co.*, 630 F.2d 677 (9th Cir. 1980)......................................................... 6

*Arizona Cartridge Remanufacturers Ass'n v. Lexmark Int'l Inc.*, 421 F.3d 981 (9th Cir. 2005) ...................................................................................................................... 24

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) .................................... 9

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990).............................................. 9

*Baldwin v. Marina City Properties, Inc.*, 79 Cal. App. 3d 393 (1978)................................ 20, 21

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990) ................................................ 3

*Baltimore Scrap Corp. v. David Joseph Co.*, 237 F.3d 394 (4th Cir. 2001)................................... 7

*Bennet v. Hibernia Bank*, 47 Cal. 2d 540 (1956)......................................................................... 5

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) .................................... 17

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096 (9th Cir. 1999) ........................... 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ......................................... 15

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537 (9th Cir. 1993)............................................................................................................... 14

*Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986) ...................................................... 17

*Carter v. Variflex, Inc.*, 101 F. Supp. 2d (C.D. Cal. 2000) .......................................................... 20

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ................................................................................................................................. 24

*City of Atascadero v. Merrill* Lynch, 68 Cal. App. 4th 445 (1998) ............................................ 22

*Columbia Pictures Indus, Inc. v. Professional Real Estate Inv., Inc.*, 944 F.2d 1525 (9th Cir. 1991)............................................................................................................... 7

*Cont'l Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York, Inc.*, 994 F. Supp. 133 (S.D.N.Y. 1998)............................................................................. 9

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).................................. 9, 10

*Cost Mgmt. Serv.*, Inc. *v. Washington Nat. Gas Co.*, 99 F.3d 937 (9th Cir. 1996)............... 16, 19

*County of Tuolumne v. Sonora Community Hosp.*, 236 F.3d 1148 (9th Cir. 2001)............... 12, 20

*ESS Tech., Inc. v. PC-TEL, Inc.*, No. C-99-20292 RMW, 1999 WL 33520483 (N.D. Cal. Nov. 4, 1999) ........................ 12, 16

*Estate of Blue v. County of Los Angeles*, 120 F.3d 982 (9th Cir. 1997) ....................................... 6

41007967.2

MOTION TO DISMISS
CASE NO. C 06 2554 MMC

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3  *Fisher v. City of Berkeley*, 475 U.S. 260 (1986) .................................................................. 9

4  *Gaines v. Nat'l Collegiate Athletic Ass'n*, 746 F. Supp. 738 (M.D. Tenn. 1990)................. 17, 18

*Glenn Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000 (9th Cir. 2003).......................... 15, 16

5  *Goldwasser v. Ameritech Corp.*, 222 F.3d 390 (7th Cir. 2000) .................................................. 17

6  *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*,
      58 F. Supp. 2d 228 (S.D.N.Y. 1999)................................................................................... 13

7  *Hairston v. Pacific 10 Conference*, 101 F.3d 1315 (9th Cir. 1996)............................................ 15

8  *Hansberry v. Lee*, 311 U.S. 32 (1940) .................................................................................... 21

9  *Harshbarger v. Philip Morris, Inc.*, 2003 WL 23342396 (N.D. Cal. April 1, 2003) ................... 5

*Hartford Fin. Corp. v. Burns*, 96 Cal. App. 3d 591 (1979) .......................................................... 20

10  *Hawaii v. Gannett Pac. Corp.*, 99 F. Supp 2d 1241 (D. Haw. 1999) ......................................... 19

11  *Headwaters Inc. v. U.S. Forest Serv.*,399 F.3d 1047 (9th Cir. 2005).......................................... 21

12  *Holden v. Hagopian*, 978 F.2d 1115 (9th Cir. 1992) ................................................................... 4

*Hunt v. Mobil Oil Corp.*, 465 F. Supp. 195 (S.D.N.Y. 1978), *aff'd*, 610 F.2d 806
13      (2d Cir. 1979) ....................................................................................................................... 9

14  *Illinois Tool Works Inc. v. Independent Ink, Inc.*, __ U.S. __,126 S. Ct. 1281
      (2006) .................................................................................................................................. 16

15  *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997) ........................ 17

16  *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181 (S.D.N.Y. 2000)................................. 9

*Intermedics, Inc. v. Ventritex, Inc.*,822 F. Supp. 634 (1993) ......................................................... 5

17  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (1988) ........................................................................... 5

18  *Kingray, Inc. v. Nat'l Basketball Ass'n*, 188 F. Supp. 2d 1177 (S.D. Cal. 2002)....................... 14

19  *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056 (9th Cir. 1998) ................................................. 7

*Landis v. North Am. Co.*, 299 U.S. 248 (19369} ....................................................................... 24

20  *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir. 1979)............................. 24

21  *Liberty Lake Inv., Inc. v. Magnuson*, 12 F.3d 155 (9th Cir. 1993) ................................................. 7

22  *Llewellyn v. Crothers*, 765 F.2d 769 (9th Cir. 1985) ........................................................ 9, 10, 11

*Ludwig v. Superior Ct.*, 37 Cal. App. 4th 8 (1995) ....................................................................... 7

23  *Masco Contractor Servs. East, Inc. v. Beals*, 279 F. Supp. 2d 699 (E.D. Va. 2003).................. 11

24  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 588 (1986)................... 11, 12, 15

25  *McClinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) ...................................................... 8

*Mir v. Little Co. of Mary Hosp.*, 844 F.2d. 646 (9th Cir. 1988) .................................................... 5

26  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) ................................................... 11

27  *National Coll. Athletic Ass'n v. Board of Regents of the Univ. of Okla.*, 468 U.S.
      85 (1985)............................................................................................................................... 9

28

41007967.2                                        ii                          MOTION TO DISMISS
                                                                              CASE NO. C 06 2554 MMC

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000) .......................................................................... 21

*NL Industries v. Kaplan*, 792 F.2d 896 (9th Cir. 1986) ..................................................... 4

*Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (1999) ...................................................... 5

*Pace Indus. v. Three Phoenix Co.*, 813 F.2d 234 (9th Cir. 1987) .................................................. 5

*Paladin Assocs. v. Montana Power Co.*, 97 F. Supp. 2d 1013 (D. Mont. 2000) ......................... 18

*Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024 (9th Cir. 1990) ........................................................ 8

*Professional Real Estate Inv., Inc. v. Columbia Pictures Indus., Inc.*, 509 U.S. 59 (1993) ........................................................................................................................................ 7

*Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) ................................................ 11

*Richards v. Jefferson County*, 517 U.S. 793 (1996) ...................................................... 21

*Rutherford v. Rideout Bank*, 11 Cal. 2d 479b (1938).................................................... 22

*Sosa v. DIRECT TV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ........................................... 7

*Spectrum Sports, Inc. v McQuillan*, 506 U.S. 447 (1993) .................................................. 19

*Stan Lee Trading, Inc. v. Holtz*, 649 F. Supp. 577 (C.D. Cal. 1986) ....................................... 20

*Stroh v. Grant*, 34 Fed. Appx. 562 (2002) ........................................................................ 4

*Tanaka v. University of So. Cal.*, 252 F.3d 1059 (9th Cir. 2001) ........................................... 8, 12

*Texaco, Inc. v. Dagher*, ___ U.S. ___, 126 S. Ct. 1276 (2006) ............................................... 8, 11

*Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594 (1953) ............................................ 19

*Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90 (2d Cir. 1998).................................... 19

*Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106 (E.D. Cal. 2002).................................... 14, 15

*TV Communications Network*, 964 F.2d at 1025 ......................................................... 16

*TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022 (10th Cir. 1992)................................................................................................. 12

*U.S. v. Rosedin Elec., Inc.*, 122 F.R.D. 230 (N.D. Cal. 1987) ..................................................... 4

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966) ..................................................... 16

*Viazis v. Am. Ass'n of Orthodontists*, 314 F.3d 758 (5th Cir. 2002)................................... 13, 15

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014 (9th Cir. 1982) ..................................................................................................................... 19

*Women's Federal Savings & Loan Assoc. v. Nevada Nat'l Bank*, 811 F.2d 1255 (9th Cir. 1987)................................................................................................................... 22

*Zenith Radio Corp. v. Hazeltine Res., Inc.*, 401 U.S. 321 (1971)........................................... 5, 21

**STATUTES**

15 U.S.C. § 1 ............................................................................................................... 8, 10, 11

15 U.S.C. § 15b............................................................................................................................ 4

15 U.S.C. § 2 ..................................................................................................................... 16, 18, 19

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41007967.2                                             iii

MOTION TO DISMISS
CASE NO. C 06 2554 MMC

1

2

## TABLE OF AUTHORITIES
### (continued)

Page

3

Bus. & Prof. Code §§ 17500 – 17577.5 ...................................................................... 23

4

Bus. and Prof. Code §17200, *et seq.* ..................................................................... 4, 23

Bus.& Prof. Code § 17200 .......................................................................... 3, 23, 24

5

Cal. Bus. & Prof. Code § 17208 .............................................................................. 4

6

Cal. Bus. & Prof. Code §16750.1 ............................................................................ 4

7

Cal. Civ. Code § 3426.6 ........................................................................................... 4

Cal. Civ. Proc. Code § 338(c) .................................................................................. 4

8

Code Civ. Proc. §338 ............................................................................................... 5

9

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 3

10

Fed. Rule of Evid. § 408 ....................................................................................... 2, 7

11

## OTHER AUTHORITIES

2 *Moore's Federal Practice*, § 12.34[1][b] (Matthew Bender 3d ed. 2002) .................................. 4

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41007967.2

iv

MOTION TO DISMISS
CASE NO. C 06 2554 MMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

### I.    INTRODUCTION AND SUMMARY OF KEY FACTS

Defendant ARIN is a non-profit Regional Internet Registry (an "RIR") entrusted originally through the government to allocate Internet Protocol ("IP") resources[1] and thereby ensure the efficient and effective operation of the Internet.  Evidently concerned that he can not meet the standard terms and conditions required of those seeking the assignment by ARIN of IP resources, plaintiff Kremen has manufactured what is styled an "antitrust" lawsuit premised entirely upon ARIN's refusal to give Kremen an exemption from ARIN's standard terms and conditions.  As Kremen himself concedes, ARIN has implemented those standard terms and conditions to control "the allocation, assignment, use and retention of IP addresses."  (Complaint for Violation of Antitrust Laws; Conversion; Unfair Business Competition; Breach of Fiduciary Duty ("Complaint"), ¶104).  That Kremen obtained a Court order in 2001 that provided for the transfer of certain IP Resources to him from a third-party judgment debtor (Cohen) neither excuses him from compliance with ARIN's standard terms and conditions, nor does it transform them into the predicate for an antitrust suit.

The conduct at issue, which is described in detail in the Complaint (and not disputed for purposes of this Motion only), centers entirely upon the failed negotiations between these two parties relating to the Order dated September 17, 2001 issued by this Court (per the Honorable James Ware) in the related case of *Kremen v. Cohen* USDC N.D. Cal. Case No. C98 20718 JW (the "Order," a copy of which is attached hereto as Ex. A) .  That Order required ARIN, which was not a party to the underlying *Kremen v. Cohen* litigation, to "register" certain Internet

---

[1]    Plaintiff's Complaint refers to a market for Internet Protocol Addresses ("IP Addresses"), blocks of IP addresses ("Netblocks"), and Autonomous System Numbers ("ASNs") (Complaint, ¶ 9.)  Plaintiff considers the IP Addresses, Netblocks and ASNs owned by Stephen Cohen to be "NETBLOCK PROPERTY" that was the subject of a September 2001 Order (which he refers to as the "NETBLOCK ORDER").  (Complaint, ¶12.)  For purposes of this Motion, ARIN will collectively refer to the IP Addresses, Netblocks and ASNs that had previously been assigned to Cohen as the "Internet Protocol Resources" or "IP Resources" that are now the subject of this litigation.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

41007967.2

MOTION TO DISMISS
CASE NO. C 06 2554 MMC

1    Protocol Resources in Kremen's name.[2]  (Complaint, ¶¶ 11-13.)  As Kremen impliedly concedes

2    by omission, since the date that ARIN was first made aware of the Order, it has stood fully ready

3    to effectuate the transfers *if Kremen agreed to accept the transfers of the IP Resources subject to*

4    *the same terms and conditions that applied to Cohen and to other assignees of IP address blocks*

5    *by ARIN.*  Kremen has steadfastly refused to play by the rules that apply to those obtaining IP

6    resources and, as a result, ARIN has been unable to effect the transfer of the IP Resources to

7    Kremen.[3]

8         Several incurable defects warrant dismissal of Kremen's Complaint with prejudice.  First

9    and foremost, Kremen simply waited too long to assert his claims, and they are now time-barred.

10   The applicable statutes of limitation began to run when the "harm" allegedly caused by ARIN's

11   conduct accrued -- when the 2001 Order was entered -- nearly *five* years ago.  As a result, each

12   and every claim for relief asserted in the Complaint is barred as a matter of law by the applicable

13   statute of limitations.

14        Second, the allegations appearing on the face of the Complaint establish that each of

15   Kremen's purported antitrust claims is legally untenable.  The *Noerr-Pennington* doctrine

16   precludes lawsuits predicated upon <u>any</u> aspect of litigation, including settlement negotiations.  As

17   Kremen concedes that ARIN's alleged conduct was "Designated as confidential settlement

18   communications 'PURSUANT TO §408,' indicating ARIN's intention to negotiate its own

19   settled terms" (Complaint ¶ 50), ARIN's alleged conduct is immune from antitrust scrutiny.

20        Third, Kremen has not even tried to allege facts establishing that *competition* was harmed

21   in any way as a result of ARIN's conduct or that any illegal combination or conspiracy

22   unreasonably restrained trade.  The antitrust laws simply are not designed to coerce compliance

23   with court orders arising out of private civil litigation or to ensure unfettered access to limited

24   resources to all applicants.  Rather, they are intended to remedy harms to the *competitive process*

25   _____
     [2] By Order dated June 12, 2006, this Court ordered this case and *Kremen v. Cohen* (USDC N.D.
26   Cal. Case No. C98 20718 JW) as "Related Cases."
     [3]  Through ARIN's Motion to Clarify this Court's Order, which is being concurrently filed in the
27   related *Kremen v. Cohen* case (also set for hearing on September 11, 2006), ARIN seeks
     essentially a statement by the Court that Kremen is entitled to the transfer of precisely the rights
28   and obligations that Cohen had.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41007967.2                            2                        MOTION TO DISMISS
                                                              CASE NO. C 06 2554 MMC

1   – not to individual competitors.  Because the only "harm" Kremen has alleged or could allege is

2   to himself, and he has not identified and cannot identify any concerted action by legally separate

3   "conspirators," his Sherman Act Section 1 claims fail as a matter of law.

4          Fourth, ARIN's alleged conduct in no way allowed it to acquire or maintain any

5   "monopoly."  Kremen has alleged the following conduct by ARIN:  (1) refusal to accede to

6   Kremen's interpretation of the Order; and (2) ARIN's insistence that Kremen meet its standard

7   terms and conditions before the transfer will be effected: (a) submission of certain basic

8   information to ARIN (Complaint, ¶¶ 54-61); (b) ARIN's reservation of rights to retrieve or "grab

9   back" IP address blocks for specific misconduct (Complaint, ¶¶ 62-67); and (3) ARIN's alleged

10  "public disclosure" of confidential information (Complaint, ¶¶ 68-71).  However, the antitrust

11  laws do not condemn monopolies -- only the *unlawful acquisition and maintenance* of monopoly

12  power through exclusionary conduct.  ARIN's position as the exclusive entity responsible for

13  allocation of IP resources in the United States (including the technical coordination and

14  management of Internet number resources) resulted from government action, not exclusionary

15  conduct, and therefore cannot serve as the basis for liability under the Sherman Act claim as a

16  matter of law.

17         Finally, each of Kremen's state law claims are legally meritless.  As discussed at length

18  below, there has been no unlawful conversion, ARIN owes no fiduciary duty and, because there

19  are no viable antitrust claims, no violation of California's Unfair Competition Law (Business &

20  Professions Code §17200).

21         Kremen's Complaint should be dismissed in its entirety under Rule 12(b)(6), without

22  leave to amend.

23  **II.     EACH OF KREMEN'S PURPORTED CLAIMS IS LEGALLY INSUFFICIENT**

24          **TO STATE A CLAIM FOR RELIEF.**

25         Dismissal under Rule 12(b)(6) can be based on a lack of a cognizable legal theory or the

26  absence of sufficient facts alleged to support such a theory.  *Balistreri v. Pacifica Police Dept.*,

27  901 F.2d 696, 699 (9th Cir. 1990).  In ruling on a motion to dismiss, a court must accept as true all

28  material allegations in the complaint.  *Id.*  The Court need not, however, accept conclusory

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41007967.2                                   3                          MOTION TO DISMISS
CASE NO. C 06 2554 MMC

1    allegations or allegations unsupported by the facts alleged. *Holden v. Hagopian*, 978 F.2d 1115,

2    1121 (9th Cir. 1992). *See also NL Industries v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); 2

3    *Moore's Federal Practice*, § 12.34[1][b] (Matthew Bender 3d ed. 2002) ("[c]onclusory

4    allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a

5    motion to dismiss").

6    **A.    The Complaint Should Be Dismissed In Its Entirety Because Each and Every Claim**
     **is Time-Barred.**

7

8        1.    ***The Claims Asserted in the April 2006 Complaint Are Subject to a Maximum***
     ***Limitations Period of Four Years.***

9          The maximum limitations period applicable to the claims asserted in the Complaint is <u>four</u>

10   <u>years</u>.

11         Plaintiff's federal antitrust causes of action under the Sherman Act (Claims 1-4;

12   Complaint, ¶¶ 84-114) are subject to a <u>four year statute of limitations</u>. *See* 15 U.S.C. § 15b ("Any

13   action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred

14   unless commenced within four years after the cause of action accrued.").

15         A similar <u>four-year statute of limitations</u> applies to Plaintiff's Cartwright Act claim

16   (Claim 5; Complaint, ¶¶ 115-121). Cal. Bus. & Prof. Code §16750.1; *U.S. v. Rosedin Elec., Inc.*,

17   122 F.R.D. 230, 248 (N.D. Cal. 1987).   Plaintiff's statutory Unfair Competition claim under

18   Business and Professions Code Section 17200, *et seq.* (Claim 8; Complaint, ¶¶ 141-147) is also

19   governed by a <u>four-year statute of limitations</u>. Cal. Bus. & Prof. Code § 17208. ("any cause of

20   action pursuant to this chapter shall be commenced within four years after the cause of action has

21   accrued.")

22         Plaintiff's Conversion claim (Claim 6; Complaint, ¶¶ 122-131) is subject to an even

23   shorter <u>three-year statute of limitations</u>. Cal. Civ. Proc. Code § 338(c); *Stroh v. Grant*, 34 Fed.

24   Appx. 562, 564 (2002).  Similarly, Plaintiff's Breach of Fiduciary Duty claim (Claim 7;

25   Complaint, ¶¶ 132-140) is governed by a <u>three-year statute of limitations</u>. Cal. Civ. Code §

26   3426.6.

27         As set forth below, Plaintiff had until <u>November 2005</u> to file the present lawsuit.

28   Accordingly, the Complaint filed on April 12, 2006, must be dismissed with prejudice.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41007967.2                                          4                          MOTION TO DISMISS
                                                                               CASE NO. C 06 2554 MMC

1    2.    ***Plaintiff's Claims Accrued At the Latest in November 2001 Resulting in a November 2005 Deadline to File this Lawsuit.***

2

3    The April 2006 Complaint should dismissed in its entirety because Plaintiff's federal

4    antitrust and state law claims asserted therein accrued in November 2001.  For a federal or state

5    antitrust suit, "[t]he limitations period begins to run when the defendant commits the acts giving

6    rise to the alleged injury."  *Mir v. Little Co. of Mary Hosp.*, 844 F.2d. 646, 646 (9th Cir. 1988);

7    *Pace Indus. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987); *Zenith Radio Corp. v.*

8    *Hazeltine Res., Inc.*, 401 U.S. 321, 338 (1971) (same).  "Generally, an action accrues either when

9    the wrongful act is done, or when the wrongful result occurs, whichever is later."  *Harshbarger v.*

10    *Philip Morris, Inc.*, 2003 WL 23342396, at *1, *6 (N.D. Cal. April 1, 2003) (citing *Norgart v.*

11    *Upjohn Co*., 21 Cal. 4th 383, 397 (1999); *see also Jolly v. Eli Lilly & Co*., 44 Cal. 3d 1103, 1109

12    (1988).  "Ordinarily[, under California law] the statute of limitations applying in conversion

13    actions (Code Civ. Proc., §338 []) begins to run from the date of the conversion even though the

14    injured person is ignorant of his rights."  *Bennet v. Hibernia Bank*, 47 Cal. 2d 540, 561 (1956)

15    (citation omitted).  "The statute of limitations for [breach of fiduciary duty] claims begins to run

16    when the cause of action accrues."  *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 640

17    (1993).

18    Here, Plaintiff's entire lawsuit is predicated on the September 17, 2001 Order which he

19    alleges "vest[ed] in KREMEN all ownership and other rights in the NETBLOCK PROPERTY…

20    in constructive trust and as a judgment creditor." (Complaint, ¶ 47.)  The Complaint concedes on

21    its face that ARIN was on notice of the Order as of November 2001:  "***[i]n November 2001***

22    Plaintiff KREMEN presented Defendant ARIN with this Court's September 2001 NETBLOCK

23    ORDER, which expressly directed ARIN to transfer registration of the specifically identified

24    NETBLOCK PROPERTY to KREMEN."  (Complaint, ¶ 49 [emphasis added].)  The Complaint

25    further concedes that ARIN's alleged wrongful acts were committed upon its receipt of the Order:

26    "As no less than a ***full, immediate, and uncompromised compliance*** with the [Order] could have

27

28

1    satisfied Plaintiff's entitlement, ARIN has *at all times been in violation* of it, and of Plaintiff's

2    legal rights. "  (Complaint, ¶ 52 [emphasis added]).

3          Plaintiff's Complaint further concedes that the <u>damages</u> claimed in the Complaint were

4    incurred <u>immediately</u> upon the issuance of the September 2001 Order (and ARIN's alleged

5    refusal to "comply" with the Order):

6         • [Plaintiff's] business and prospective businesses would have
            benefited greatly if KREMEN would have had control of the
7           NETBLOCK PROPERTY *from the time of the [September
            2001] court order*.
8           . . . .

9         • Also *since 2001*, KREMEN has been unable to pursue a variety
            of business strategies that would have been able to exploit the
10          value of the NETBLOCK PROPERTY.
            . . . .
11        • Defendant ARIN's *refusal to comply with the 2001
            NETBLOCK ORDER also harmed KREMEN* because such
12          purposeful action benefited COHEN . . .

13   (Complaint, ¶¶ 14-16 [emphasis added]).

14   It is beyond dispute that Kremen's purported claims accrued no later than November 2001 when

15   ARIN was put on actual notice of the September 2001 Order.  Accordingly, by virtue of facts

16   evident on the face of the Complaint, Plaintiff's claims are clearly time-barred and should be

17   dismissed with prejudice.[4]

18   **B.     Plaintiff's Sherman Act and Cartwright Act Claims Fail.**

19
           1.     *ARIN's Conduct Is Immune From Antitrust Liability.*
20
           Those who petition the government for redress are generally immune from antitrust
21
     liability for their petitioning activity.  *Professional Real Estate Inv., Inc. v. Columbia Pictures*
22
     *Indus., Inc.*, 509 U.S. 59, 56 (1993) (citing Eastern R.R. Presidents Conf. v. Noerr Motor Freight,
23

24   _____

25   [4]   Rule 11 sanctions are appropriate where, as here, a plaintiff files a claim that is clearly barred
     by the applicable statute of limitations.  *Estate of Blue v. County of Los Angeles*, 120 F.3d 982,
26   984 (9th Cir. 1997) (affirming the district court's award of sanctions against the plaintiff on a
     motion to dismiss where the plaintiff's action was clearly time-barred); *Anderson v. Allstate Ins.*
27   *Co.*, 630 F.2d 677, 680 (9th Cir. 1980) (affirming the district court's award of sanctions against
     the plaintiff's attorney on a motion to dismiss where the court determined that the statute of
28   limitations had run).

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41007967.2                          6                          MOTION TO DISMISS
                                                               CASE NO. C 06 2554 MMC

Inc., 365 U.S. 127, 136 (1961)). . This "*Noerr*-Pennington" immunity extends to the petitioning of all branches of government, including the judiciary. *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-512 (1972). *Noerr-Pennington* immunity also applies to activities *related to* litigation. *Columbia Pictures Indus, Inc. v. Professional Real Estate Inv., Inc.*, 944 F.2d 1525, 1529-1530 (9th Cir. 1991). Such immunity prohibits antitrust suits predicated upon *any* aspect of settlement, including settlement offers and rejections thereof. *Id.* ("A decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit and not a separate and distinct activity which might form the basis for antitrust liability.") For instance, the act of sending a demand letter in advance of potential litigation is immunized under *Noerr-Pennington*, and cannot form the basis for an antitrust suit. *See Sosa v. DIRECT TV, Inc.*, 437 F.3d 923, 936-38 (9th Cir. 2006).[5]

The pleading stage is the proper procedural juncture at which a court should recognize and apply *Noerr-Pennington* immunity and dismiss a purported antitrust claim because the alleged conduct is immune from such liability. *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir. 1998).

*Noerr-Pennington* immunizes ARIN from antitrust liability based on Kremen's allegations. As Kremen concedes, ARIN's actions concern compliance with the Order. (*See, e.g.*, Complaint, ¶¶12-13.) Kremen contends the Order required ARIN to transfer to Kremen services related to certain IP Resources. (Complaint, ¶¶12, 13, 16, 49, 51, 52.) ARIN disagreed with Kremen's interpretation of the Order, and entered into settlement negotiations pursuant to Rule 408 of the Federal Rules of Evidence to try to resolve the dispute. (Complaint ¶ 50).

---

[5] *Noerr-Pennington* immunity immunizes litigation-related conduct by those who are not named parties to the underlying dispute, provided that they had an interest in the outcome of the litigation. *See Liberty Lake Inv., Inc. v. Magnuson*, 12 F.3d 155, 157-59 (9th Cir. 1993); *Baltimore Scrap Corp. v. David Joseph Co.*, 237 F.3d 394, 400 (4th Cir. 2001); *see also Sosa v. DIRECT TV, Inc., supra*, 437 F.3d at 937 (recognizing with approval its holding in *Liberty Lake*, 12 F.3d at 157-59, "that *Noerr-Pennington* immunity extended to an individual who funded anticompetitive litigation but was not himself a party to the litigation and was therefore not himself petitioning the courts"); *Ludwig v. Superior Ct.*, 37 Cal. App. 4th 8, 17 (1995). Kremen's own allegations establish that ARIN has an interest in the underlying litigation with respect to the Order, as ARIN has taken the position that compliance with Kremen's interpretation of the Order would violate its standard terms and conditions.

1    Kremen did not accept ARIN's settlement offers and has now sued ARIN for antitrust violations

2    predicated on ARIN's alleged non-compliance.  Thus, as Kremen admits, ARIN's conduct is

3    directly related to the underlying litigation, as that litigation produced the Order that is the sole

4    factual predicate for Kremen's purported claims.

5           2.    ***Kremen's First and Second Claims for Relief Fail to State a Claim Under Section 1 of the Sherman Act.***

6

7         Kremen purports to state two claims against ARIN under Section 1 of the Sherman Act

8    (15 U.S.C. § 1; hereinafter, "Section 1").  Section 1 prohibits "[e]very contract, combination in

9    the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several

10   States, or with foreign nations, is declared to be illegal."  Not every business collaboration

11   encompassed by this broad language is illegal.  Courts have determined that only combinations

12   that *unreasonably* restrain trade and *harm competition* violate Section 1.  *Big Bear Lodging Ass'n*

13   *v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir. 1999).

14        To state a claim for violation of Section 1, a plaintiff must plead facts which, if true,

15   would establish: (1) that the defendants entered into a contract, combination, or conspiracy;

16   (2) that the agreement unreasonably restrained trade, either *per se* or under the "rule of reason";

17   and (3) that the restraint affected interstate commerce.  *Tanaka v. University of So. Cal.*, 252 F.3d

18   1059, 1062 (9th Cir. 2001).  Certain categories of agreements have been recognized as *per se*

19   illegal, plainly and facially anticompetitive, such that courts need not scrutinize the agreements or

20   the relevant business industries looking for harm to competition.  *Texaco, Inc. v. Dagher*, ___

21   U.S. ___, 126 S. Ct. 1276, 1279 (2006).  If a plaintiff alternatively alleges a "rule of reason"

22   violation, the plaintiff must assert facts showing an *actual injury to competition*, beyond the

23   impact on the claimant, within a field of commerce in which the claimant is engaged.  *McClinchy*

24   *v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988).  Harm to competition includes, for

25   example, forcing consumers to pay higher prices or the erosion of the quality of choices available

26   to consumers.  *Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024, 1032 (9th Cir. 1990).  In addition, a

27   private-party plaintiff, whether alleging a *per se* or rule-of-reason violation, must also establish

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41007967.2                                    8                    MOTION TO DISMISS
CASE NO. C 06 2554 MMC

1   that it suffered injury to its business or property as a proximate result of the alleged combination

2   or conspiracy.  *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990).

3        a.    **Kremen fails to allege any contract, combination, or conspiracy**

4        As a matter of law, "a business generally has a right to deal or decline to deal with

5   whomever it likes, as long as it does so independently."  *Aspen Skiing Co. v. Aspen Highlands*

6   *Skiing Corp.*, 472 U.S. 585, 601 n. 27 (1985) (citations omitted).  Such conduct becomes

7   actionable only in the context of a conspiracy -- an actual concert of action between at least two

8   *legally separate* persons or entities.  *Fisher v. City of Berkeley*, 475 U.S. 260, 266 (1986).  Vague

9   allegations of concerted action are subject to dismissal.  *Llewellyn v. Crothers*, 765 F.2d 769, 775

10  (9th Cir. 1985) ("Vague and conclusory conspiracy allegations deserve very little respect from the

11  antitrust court.").  "The complaint 'must identify the co-conspirators, and describe the nature and

12  effects of the alleged conspiracy.'"  *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181,

13  191 (S.D.N.Y. 2000) (quoting *Cont'l Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater*

14  *New York, Inc.*, 994 F. Supp. 133, 138) (S.D.N.Y. 1998).

15       Officers or employees of the same firm do *not* provide the plurality of actors required to

16  establish a Section 1 conspiracy.  *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752,

17  769 (1984).  Mere membership in an organization is not sufficient to show that an individual

18  member is a co-conspirator with the organization.  *Hunt v. Mobil Oil Corp.*, 465 F. Supp. 195,

19  231 (S.D.N.Y. 1978), *aff'd*, 610 F.2d 806 (2d Cir. 1979).  Multiple members of the same

20  nonprofit association also do not automatically provide the plurality of actors required to establish

21  a Section 1 conspiracy; the plaintiff must prove the members are independent of each other.  *Nat'l*

22  *Collegiate Athletic Ass'n v. Board of Regents of the Univ. of Okla.*, 468 U.S. 85, 99 & n.18

23  (1985).

24       Kremen asserts two Section 1 claims but fails to describe with any particularity the

25  participants in the alleged "agreement" or "conspiracy."  In fact, Kremen's sole effort to plead the

26  "agreement" or "conspiracy" consists of the following:  "ARIN, its individual officers and

27  directors, and its constituent members have agreed together and with ARIN's supporting

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41007967.2

9

MOTION TO DISMISS
CASE NO. C 06 2554 MMC

1   organizations to restrain trade…" (Complaint, ¶86.)[6]  This statement is simply too vague to

2   satisfy the pleading requirements for Section 1 claims.  *See Llewellyn v. Crothers*, *supra*, 765

3   F.2d at 775 (holding that "allegations regarding conspiracy between the governmental and private

4   defendants d[id] not negate the antitrust exemptions in this case . . . [where [t]he conspiracy

5   allegations in the complaint are couched in the most vague and conclusory terms").  However,

6   giving the statement its broadest possible interpretation, it appears that Kremen may be alleging

7   an "agreement" or "conspiracy" among as many as three separate groups:  (1) ARIN, on the one

8   hand, agreeing/conspiring with its officers and directors, on the other hand; (2) ARIN, on the one

9   hand, agreeing/conspiring with its "constituent members," on the other hand; and (3) ARIN, its

10  officers, directors, and constituent members, on the one hand, agreeing/conspiring with ARIN's

11  "supporting organizations," on the other hand.

12      Kremen's pleading of the members of the alleged agreement or conspiracy is legally

13  insufficient as to each of these three purported groupings:  *First*, a corporation cannot agree or

14  conspire with its own officers or directors, within the meaning of a Section 1 claim.  *Copperweld,*

15  467 U.S. at 769 n.15 ("Nothing in the language of the Sherman Act is inconsistent with the view

16  that corporations cannot conspire with their own officers").  The only <u>officer</u> identified in the

17  Complaint is ARIN's president, Raymond Plzak.  (Complaint, ¶¶13, 16, 48-55, 62-66, 68, 73, 77,

18  78.)  However, ARIN's alleged conspiracy with its own President cannot be a Section 1

19  conspiracy as a matter of law.

20      Second, a membership organization cannot conspire with its members within the meaning

21  of Section 1 by establishing and enforcing reasonable membership policies.  *See American*

22  *Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery*, 185

23  F.3d 606, 620-22 (6th Cir. 1999) (holding that association's efforts to remain sole certifying

24  authority for its member surgeons cannot reflect Section 1 conspiracy, because challenged

25  conduct is equally consistent with association protecting own independent economic interests as

26  with concerted action).  Here, Kremen fails to identify or even define the "constituent members"

27  _____

28  [6]   The corresponding paragraph in the second claim (Compl., ¶95) is identical except for the substitution of the word "conspired" for "agreed."

1  with whom ARIN allegedly conspired, so the pleading of this conspiracy fails for vagueness.

2  Even if Kremen could provide more specificity in this regard, ARIN and its members cannot form

3  a Section 1 conspiracy as a matter of law because ARIN's maintenance of requirements for

4  entities to register IP Resources is just as consistent with the preservation of ARIN's goals for

5  allocating IP address space as with concerted action among conspirators. *See id.*; *see also*

6  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("[C]onduct as

7  consistent with permissible competition as with illegal conspiracy does not, standing alone,

8  support an inference of antitrust conspiracy.") (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*,

9  465 U.S. 752, 764 (1984).)  Thus, this defect also cannot be cured by amendment.

10      Third, Kremen's allegation that ARIN and its supporting organizations participated in a

11  conspiracy is also legally insufficient to sustain a Section 1 claim.  Kremen fails to identify or

12  define these supporting organizations or explain how they differ, if at all, from the also-undefined

13  "constituent members."  Neither ARIN nor the Court can determine these entities' relationships,

14  if any, to each other.  The pleading of this conspiracy also fails for vagueness. *Masco Contractor*

15  *Servs. East, Inc. v. Beals*, 279 F. Supp. 2d 699, 704 (E.D. Va. 2003) (recognizing that some

16  reasonable particularity in pleading is required for a plaintiff to state a cause of action for

17  violation of federal antitrust laws); *Llewelyn v. Crothers*, *supra*, 765 F.2d at 775 (same).

18          b.    **Kremen fails to allege any unlawful restraint of trade.**

19              (1)    The Complaint fails to allege any harm to competition.

20      As Kremen has not alleged any *per se* violation of Section 1, the rule-of-reason analysis

21  applies presumptively to the Section 1 claims, under which plaintiff must demonstrate that some

22  contract, combination, or conspiracy is in fact unreasonable and *anticompetitive* before it will be

23  found unlawful. *Texaco*, 126 S.Ct. at 1279.  It is well established that antitrust laws are intended

24  to protect competition itself, not individual competitors, who may thrive or languish in a free

25  market. *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999).  Generally,

26  the test for harm to competition is whether consumer welfare has been harmed such that there has

27  been a decrease in allocative efficiency and/or an increase in price. *Rebel Oil Co. v. Atl. Richfield*

28  *Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995).  Under the rule of reason, courts analyze the harm to

1    competition along with any justifications or pro-competitive effects to determine whether the

2    practice is reasonable on balance. *County of Tuolumne v. Sonora Community Hosp.*, 236 F.3d

3    1148, 1160 (9th Cir. 2001); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., supra*,

4    475 U.S. at 588..

5         In numerous cases, courts have dismissed antitrust claims for lack of allegations of

6    significant anticompetitive effects from the challenged conduct, or because the procompetitive

7    justifications for the conduct outweighed any anticompetitive effects:

8    •    *Tanaka*, 252 F.3d at 1062-64 (affirming granting of *motion to*

9         *dismiss* Section 1 claim of plaintiff, college soccer player at

10        University of Southern California ("USC"), that defendant

11        USC unfairly invoked rule from Pacific-10 (College Athletic)

12        Conference preventing plaintiff's transfer to rival University of

13        California at Los Angeles; plaintiff had an impertinent claim

14        that she had been singled out and treated unfairly, rather than

         that alleged misconduct caused harm to competition generally);

15

16   •    *TV Communications Network, Inc. v. Turner Network*

17        *Television, Inc.*, 964 F.2d 1022, 1027 (10th Cir. 1992)

18        (affirming granting of *motion to dismiss* plaintiff cable

19        television arbitrator's Section 1 price-fixing claim against cable

20        television operators and programmers, because complaint made

21        only conclusory assertions of illegality, and did not allege

         supporting facts);

22

23   •    *ESS Tech., Inc. v. PC-TEL, Inc.*, No. C-99-20292 RMW, 1999

24        WL 33520483, *1, *4 (N.D. Cal. Nov. 4, 1999) (granting

25        *motion to dismiss* plaintiff modem part manufacturing

26        company's Sherman Act claim that defendant holder of patents

27        necessary for compliance with certain technical standards for

28        modems refused to grant license to plaintiff; plaintiff's

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41007967.2

12

MOTION TO DISMISS
CASE NO. C 06 2554 MMC

allegations that it could not compete in its market without

license did not amount to antitrust claim);

- *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 58 F. Supp.

2d 228, 240-43 (S.D.N.Y. 1999) (*dismissing* plaintiffs

investment funds' antitrust claim that defendants investment

brokers conspired to buy plaintiffs' securities at artificially low

prices; plaintiffs failed to show factors besides ordinary market

forces coupled with defendants' desire to resell securities

quickly caused defendants' profits on resales of securities);

- *Viazis v. Am. Ass'n of Orthodontists*, 314 F.3d 758, 761, 766

(5th Cir. 2002) (upholding judgment as matter of law for

defendant orthodontists' association on Section 1 claim of

unlawfully excluding plaintiff individual orthodontist's

patented product from market by disciplining him after he

advertised product as superior to existing alternatives; plaintiff

did not produce valid evidence that defendant's application of

its ethical and false-advertising rules against member harmed

competition, i.e., product prices or choices, in said market;

appellate court also acknowledged legitimate procompetitive

justifications for restricting orthodontists from making hard-to-

verify advertising claims).

Declining to dismiss a complaint that on its face fails to allege harm to competition merely delays the inevitable, as such lawsuits – after much expense to the parties and waste of judicial resources – invariably meet the same fate at summary judgment. *See, e.g., Christopherson Dairy, Inc. v. MMM Sales, Inc.*, 849 F.2d 1168, 1174 (9th Cir. 1988) (affirming summary judgment of alleged exclusive dealing claim because plaintiff produced no evidence that arrangement harmed competition); *Carpenter v. Dreschler*, Civ. A. No. 89-0066-H, 1991 WL 332766, *11 (W.D. Va.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41007967.2

13

MOTION TO DISMISS
CASE NO. C 06 2554 MMC

1    May 7, 1991) (holding summary judgment of federal antitrust claims appropriate where plaintiff

2    failed to demonstrate that defendant's acts harmed competition).[7]

3        In support of his Section 1 claims, Kremen asserts that ARIN refused to abide by his

4    interpretation of the Order purportedly compelling ARIN to transfer the services related to a

5    certain group of IP Resources in Kremen's name unless Kremen complied with ARIN's standard

6    procedures for effectuating such registrations and transfers.  (Complaint, ¶¶12, 13, 16, 48-52.)

7        Kremen alleges *only* harm to *himself*, not harm to *competition*:

8        KREMEN could have hosted thousands of his websites using various
         IP addresses contained in the NETBLOCK PROPERTY, which would
9        have given KREMEN significant advantages in obtaining higher
         rankings within search engines, such as Google.com.  Such high
10       rankings would  have translated into increased Internet traffic and
         greater revenues."  (Complaint, ¶14.)  "Also since 2001, KREMEN
11       has been unable to pursue a variety of business strategies that would
         have been able to exploit the value of the NETBLOCK PROPERTY.
12

13   (Complaint, ¶15; *see also id.*, ¶¶73-83, for similar complaints.)

14       This is not harm to competition.

15       To the extent Kremen's Complaint can be read as denouncing ARIN's standard

16   application procedures as somehow restraining competition generally, the pleading still fails to

17   state a valid Section 1 claim for two separate reasons.  *First*, Kremen's allegations of harm to

18   competition are "conclusory and unsupported," which are legally insufficient for an antitrust

19   claim.  *Kingray, Inc. v. Nat'l Basketball Ass'n*, 188 F. Supp. 2d 1177, 1186 (S.D. Cal. 2002)

20   ("[T]he essential elements of a private antitrust claim must allege in more than vague and

21   conclusory terms to defeat a motion to dismiss.").  Though he provides some detail about alleged

22   injuries that he claims to have suffered *individually,* Kremen does not plead any facts whatsoever

23   that, if proven, would establish a harm to *competition.*  (*See* Complaint, ¶¶87-91, 96-99

24   (containing only conclusory assertions of harm to competition.))

25   _____

26   [7]  At summary judgment, the plaintiff has the initial burden of establishing that the restraint
     produces significant anticompetitive effects within the relevant product and geographic markets.
27   *Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1121 (E.D. Cal. 2002).  If the plaintiff fails to
     meet this burden, the claim cannot succeed and fails at that point. *Capital Imaging Assocs., P.C.*
     *v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 547 (9th Cir. 1993).
28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41007967.2                                    14                              MOTION TO DISMISS
                                                                             CASE NO. C 06 2554 MMC

1    Second, as Kremen's complaint concedes on its face, ARIN's activities have a significant

2    procompetitive effect:  assuring the orderly and efficient allocation of limited IP Resources for a

3    number of countries, including the United States, and managing related IP address registries.

4    (Complaint, ¶¶ 26, 29, 34).  Even if this Court at this pleading stage accepts Kremen's bald

5    assertion that such conduct is anticompetitive, the Court cannot overlook the plainly

6    procompetitive purposes of that same conduct, as Kremen has also pled.  *See Hairston v. Pacific*

7    *10 Conference*, 101 F.3d 1315, 1319 (9th Cir. 1996).  Because even Kremen admits that the

8    allegedly anticompetitive conditions imposed by ARIN upon *all* those who seek to register IP

9    Resources are required by ARIN in order to effectuate its procompetitive goal of ensuring fair and

10    orderly use of Internet address space, such conduct cannot form the basis of a Section 1 claim as a

11    matter of law.  *See, e.g., Viazis*, 314 F.3d at 766; *Toscano*, 201 F. Supp. 2d at 1122-23;

12    *Matsushita, supra*, 475 U.S. at 588.

13    In sum, Kremen's inability to plead facts that articulate harm to competition establishes that

14    ARIN has not restrained trade under the rule of reason.

15                    c.    **Kremen fails to allege causal antitrust injury.**

16    Antitrust injury consists of four elements:  (1) unlawful conduct; (2) causing an injury to

17    plaintiff; (3) that flows from that aspect of the conduct which makes it unlawful; and (4) that is of

18    the type that antitrust laws were intended to prevent.  *Glenn Holly Entm't, Inc. v. Tektronix, Inc.*,

19    343 F.3d 1000, 1008 (9th Cir. 2003).

20    Kremen cannot meet the first requirement for antitrust injury -- unlawful conduct.  The

21    unlawful conduct must be unlawful in the sense of violating the antitrust laws.  *Glenn Holly*, 343

22    F.3d at 1009.  ARIN's alleged conduct was not only immunized from prosecution under the

23    antitrust laws but also fails to meet the elements of a Sherman Act or Cartwright Act claim.

24    Because Kremen cannot establish that the *conduct* at issue violated antitrust law, he has failed to

25    sustain antitrust injury as a matter of law.

26    Because ARIN's conduct was not unlawful, it follows that Kremen's alleged injury cannot

27    flow from the aspect of the conduct that was unlawful.  *See Brunswick Corp. v. Pueblo Bowl-O-*

28    *Mat, Inc.*, 429 U.S. 477, 488 (1977).  Even assuming *arguendo* that ARIN's conduct was

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41007967.2                                15                    MOTION TO DISMISS
                                                              CASE NO. C 06 2554 MMC

1    somehow unlawful, Kremen still cannot satisfy this element of antitrust injury. If the plaintiff's

2    injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition,

3    there is no antitrust injury, even if the defendant's conduct is illegal *per se*. *Glen Holly*, 343 F.3d

4    at 1008. As demonstrated above, and as Kremen admits, ARIN's conduct has legitimate

5    procompetitive justifications and benefits. (Compl., ¶¶ 26, 29, 34).

6        Even if Kremen could plead the elements of unlawful conduct and injury flowing from the

7    alleged unlawful conduct, Kremen has not and cannot plead the fourth requirement for antitrust

8    injury – harm to competition. As demonstrated above, ARIN's conduct did not inflict harm on

9    competition. Kremen thus cannot establish that he has sustained causal antitrust injury.

10        3.    ***Kremen Fails to State a Claim Under Section 2 of the Sherman Act***

11            a.    **Kremen fails to state a claim for monopolization.**

12        Kremen's third claim against ARIN is for monopolization under Section 2 of the Sherman

13    Act (15 U.S.C. § 2; hereinafter, "Section 2"). To state a claim for monopolization under Section

14    2, a plaintiff must show that: (1) the defendant possesses monopoly power in the relevant market;

15    (2) the defendant has willfully acquired or maintained that power through predatory conduct; and

16    (3) the defendant's conduct has caused antitrust injury. *Cost Mgmt. Serv., Inc. v. Washington*

17    *Nat. Gas Co.*, 99 F.3d 937, 949 (9th Cir. 1996). Additionally, the defendant's conduct must

18    (4) cause injury to competition. *ESS Tech., Inc. v. PC-TEL, Inc.*, No. C-99-20292 RMW, 1999

19    WL 33520483, at *3 (N.D. Cal. 1999).

20            (1)    ARIN's Alleged Monopoly is not "Illegal."

21        Mere possession of monopoly power is not a Section 2 violation; a monopoly that arises

22    from "growth or development as a consequence of a superior product, business acumen, or

23    historic accident" is not illegal. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).

24    For example, a patent is a government-sanctioned monopoly. *Illinois Tool Works Inc. v.*

25    *Independent Ink, Inc.*, __ U.S. __,126 S. Ct. 1281, 1284 (2006). If the plaintiff making a Section

26    2 monopolization claim identifies as the relevant market one over which the defendant has a

27    *natural* monopoly, the plaintiff has *not* met its burden for an essential element of the claim and it

28    should be dismissed. *TV Communications Network*, 964 F.2d at 1025.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41007967.2                16                MOTION TO DISMISS
                                           CASE NO. C 06 2554 MMC

1    Kremen admits that the Internet cannot function unless each computer seeking connection

2    to the Internet has a unique IP address.  (Complaint, ¶20).  Otherwise, Internet messages could

3    not be delivered to their intended recipients.  It is thus obviously necessary that there be only one

4    entity (per geographic region) assigning and keeping track of IP Resources and related Internet

5    access.  (*Cf.* Complaint, ¶¶26-29.)  As Kremen further admits, numerous quasi-government

6    agencies and other organizations, by consensus, established ARIN as a nonprofit membership

7    organization to manage the IP address allocation system for the geographic region encompassing

8    the United States, Canada, Antarctica, and parts of the Caribbean.  (Complaint, ¶¶27-34.)  In

9    other words, to the extent ARIN arguably has a monopoly at all, it obtained it through lawful

10   means.

11                    (2)      Kremen has not alleged exclusionary conduct by ARIN, even
                              assuming it has monopoly power.

12

13   Only if a monopolist engages in exclusionary conduct to maintain the monopoly can

14   antitrust liability attach.  *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 397 (7th Cir. 2000).

15   Under the antitrust laws, a defendant with monopoly power may *not*, for example, propagate

16   deliberately false advertising, unlawfully disparage the products of competitors, or price products

17   below cost for the predatory purpose of driving competitors out of business.  *Berkey Photo, Inc. v.*

18   *Eastman Kodak Co.*, 603 F.2d 263, 287-88 (2d Cir. 1979); *see also Cargill, Inc. v. Monfort of*

19   *Colo., Inc.*, 479 U.S. 104, 117-18 (1986) ("Predatory pricing is thus practice 'inimical to purposes

20   of [the antitrust] laws,' *Brunswick*, 429 U.S., at 488, 97 S. Ct., at 697, and one capable of

21   inflicting antitrust injury.")  A defendant with monopoly power *may*, however, refuse to deal with

22   a third party with legitimate business justifications.  *Image Tech. Servs., Inc. v. Eastman Kodak*

23   *Co.*, 125 F.3d 1195, 1209 (9th Cir. 1997).  Specifically, ***an association's establishment and***

24   ***enforcement of rational rules of access or conduct for members does not commit an antitrust***

25   ***violation***.  *Gaines v. Nat'l Collegiate Athletic Ass'n*, 746 F. Supp. 738, 745-47 (M.D. Tenn.

26   1990).

27   Kremen does not allege that ARIN engaged in exclusionary conduct to maintain the

28   monopoly.  All Kremen has alleged is that ARIN insisted on employing its standard procedures to

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41007967.2

17

MOTION TO DISMISS
CASE NO. C 06 2554 MMC

fulfill Kremen's request to obtain IP Resources.  As Kremen concedes, ARIN has legitimate justifications for having such procedures:  as the "steward" of a finite number of IP Resources, ARIN must ensure that the finite supply of addresses is put to use efficiently and equitably, fostering robust, diverse Internet content and functionality, and is not mismanaged leading to the inability of the Internet to function.  (See, e.g., Complaint, ¶¶26, 34.)  ARIN's requirements that registrants of IP Resources have the capacity to use them efficiently, actually use them, and do so lawfully, or else surrender them so that others can use them, are perfectly reasonable and rational. This is not unlawful exclusionary conduct as a matter of law.  *See Gaines v. Nat'l Collegiate Athletic Ass'n, supra*, 746 F. Supp. at 745-47.  Thus, Kremen fails to allege the second element of a monopolization claim.

> (3)    Kremen fails to allege harm to competition from the alleged wrongful conduct.

As discussed in subsection B, *supra*, Kremen does not and cannot allege an actual injury to competition, beyond the impact on him personally (notwithstanding the conclusory averments in paragraph 107 of the Complaint).  ARIN incorporates that discussion herein by reference. Furthermore, specifically in the Section 2 context, Kremen does not and cannot allege that ARIN has declined to deal with him *in order to create or sustain a monopoly*.  Whether ARIN agreed to Kremen's demands and assigned the IP Resources to him unconditionally, as demanded, or rebuffed Kremen's demands and insisted he comply with its standard requirements, ARIN would maintain the same position with respect to allegedly monopolizing the market for IP Resources and services.

### b.    **Kremen fails to state an attempted monopolization claim.**

Kremen's fourth claim against ARIN is for *attempted* monopolization under Section 2. "A claim of 'attempted monopolization' arises when the danger of monopolization is clear and present, but before a full blown monopoly has been accomplished."  *Paladin Assocs. v. Montana Power Co.*, 97 F. Supp. 2d 1013, 1038 (D. Mont. 2000) (citing *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 544 (9th Cir. 1991)).  To state a claim for attempted monopolization under Section 2, a plaintiff must show:  (1) specific intent to control prices or destroy competition

1  in the relevant market; (2) predatory or anticompetitive conduct to accomplish the

2  monopolization; (3) dangerous probability of success; and (4) causal antitrust injury.  *Spectrum*

3  *Sports, Inc. v McQuillan*, 506 U.S. 447, 456 (1993); *Cost Mgmt. Serv.*, 99 F.3d at 950.

4  (1)  <u>Kremen fails to allege specific intent to control prices or destroy competition in the relevant market.</u>

5

6  Kremen accuses ARIN of intending to destroy him and his business (or at least prevent its

7  expansion).  But such intent is not the intent required in an attempted monopolization claim.

8  *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1028 (9th Cir. 1982)

9  ("[I]ntent to vanquish a rival in an honest competitive struggle cannot help to establish an

10  antitrust violation").  Kremen must allege that ARIN had a specific intent to build a monopoly in

11  the industry in which Kremen competes.  *Times-Picayune Publ'g Co. v. United States*, 345 U.S.

12  594, 614, 626 (1953).  Kremen is in the Internet advertising business.  (Complaint, ¶14.)  Kremen

13  does not compete with ARIN in what Kremen identifies as the relevant market, for IP Resources

14  and services.  (Complaint, ¶9.)  Therefore, ARIN cannot have the requisite intent to destroy

15  competition in the relevant market pursuant to Section 2 of the Sherman Act.

16  (2)  <u>Kremen fails to allege predatory or anticompetitive conduct.</u>

17  Even if ARIN and Kremen were competitors in the same relevant market, and Kremen

18  pled that ARIN intended to destroy competition in that market, Kremen's claim would still fail

19  because he has not pled and cannot plead predatory or anticompetitive conduct by ARIN.

20  "The law directs itself not against conduct which is competitive, even severely so, but

21  against conduct which unfairly tends to destroy competition *itself*."  *Spectrum*, 506 U.S. at 459

22  (emphasis added).  Bringing "sham" litigation, tortiously interfering with contracts and thus

23  creating a dangerous probability of monopolization, or buying out the only other company in a

24  two-company market represent examples of predatory or anticompetitive conduct.  *Tops Markets,*

25  *Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 100 (2d Cir. 1998); *Hawaii v. Gannett Pac. Corp.*, 99

26  F. Supp 2d 1241, 1250-51 (D. Haw. 1999).

27  ARIN's alleged conduct is not anticompetitive, nor could it possibly accomplish

28  monopolization.  At worst, ARIN is accused of refusing to register certain IP Resources in

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41007967.2                                    19                          MOTION TO DISMISS
                                                                          CASE NO. C 06 2554 MMC

Kremen's name because he refused to follow standard procedure for such registrations.  This conduct does not remotely resemble bringing sham litigation or merging companies to create a monopoly in an industry; rather, it promotes competition as it reflects reasonable stewardship of the finite IP Resources.  (*Complaint* ¶¶ 26, 29, 34).  Kremen thus fails to establish the predatory conduct element of an attempted monopolization claim.

### 4.    *Kremen Fails to State a Claim Under the Cartwright Act*

Kremen's Fifth Claim for Relief alleges the same underlying facts for the Cartwright Act claim as for the Sherman Act claims.  (*Cf. Complaint*, ¶¶85-114 and, ¶¶115-21.)  Because analysis under the Cartwright Act mirrors the analysis under the Sherman Act (*Tuolumne*, 236 F.3d at 1160), if a plaintiff pleads both a Sherman Act claim and a Cartwright claim over the same facts, and the court finds the Sherman Act claim defective, it is appropriate for the trial court to dismiss the Cartwright Act claim, as well.  *Carter v. Variflex, Inc.*, 101 F. Supp. 2d 1261, 1270 (C.D. Cal. 2000).  Accordingly, the Court should dismiss the Cartwright Act claim along with the Sherman Act claims.

### C.    **Plaintiff's Conversion Claim Should Be Dismissed Because The Complaint Fails To State Any Claim Upon Which Relief Can Be Granted**

Plaintiff contends that ARIN's alleged failure to follow the Order renders ARIN liable for the conversion of the IP Resources and Netblocks at issue herein.   However, Plaintiff's reliance on this theory is misplaced.  "Under California law, 'Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'"  *Stan Lee Trading, Inc. v. Holtz*, 649 F. Supp. 577, 580 (C.D. Cal. 1986) (quoting *Hartford Fin. Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (1979).  "'The elements of a conversion cause of action [in California] are (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages.'"  *American Bankers Mortgage. Corp. v. Federal Home Loan Mortgage Corp.*, 75 F.3d 1401, 1411 (9th Cir. 1996) (quoting *Baldwin v. Marina City Properties, Inc.*, 79 Cal. App. 3d 393, 398 (1978).  "To maintain a conversion action 'it is not essential that plaintiff shall be the absolute owner of the property converted but she must

1    show that she was *entitled to immediate possession at the time of conversion*.'" *Id.* (citation

2    omitted) (italics original).

3        Here, assuming *arguendo* that the IP Resources at issue in this lawsuit could be

4    considered "property" (which ARIN disputes), Plaintiff's contention as to his "ownership" over

5    the purported property derives solely and exclusively from the September 2001 Order he obtained

6    *ex parte* from Judge Ware in the related *Kremen v. Cohen* case. According to Plaintiff's

7    Complaint, ARIN failed to immediately transfer the IP Resources at issue pursuant to the Order,

8    and as such, Plaintiff was "deprived or denied . . his right to possession and use" of the IP

9    Resources. (Complaint, ¶¶ 125, 126).

10       However, Plaintiff's reliance on the Order as the predicate for his conversion claim is

11   fatally flawed. ARIN was not a party to the *Kremen v. Cohen* case nor was it made a party to

12   Kremen's application for the Order.[8] It is well-established Ninth Circuit precedent that where an

13   individual or entity is not a party to a particular action, that individual or entity is not bound by

14   any judgment or decree resulting from that action as a matter of law nor is any such order

15   enforceable against the non-party. *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 110;

16   *Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940) (same); *Headwaters Inc. v. U.S. Forest Serv.*, 399

17   F.3d 1047, 1050 (9th Cir. 2005) (same); *see also Ins. Corp. of Ireland v. Campagnie des Bauxites*

18   *de Guinee*, 456 U.S. 694, 702 (1982); *Hansberry*, 311 U.S. at 41.

19       Without notice and an opportunity to be heard, ARIN is not bound as a matter of law to

20   the Order and the Order is unenforceable as to ARIN. *Nelson v. Adams USA, Inc.*, 529 U.S. 460,

21   466-68 (2000) (finding that absent notice and proper opportunity to be heard, an amendment to a

22   judgment imposing liability on a third party violates that party's due process rights); *Richards v.*

23   *Jefferson County*, 517 U.S. 793, 798 (1996); *see also Headwaters*, 399 F.3d at 1054.

24   Accordingly, since the Complaint is predicated entirely upon ARIN's alleged obligations that

25   arise exclusively from an Order that is void and unenforceable against ARIN, Plaintiff cannot

26   demonstrate the requisite ownership rights to the IP Resources and Netblocks that are the subject

27

28   _____

[8] As noted above, ARIN is concurrently herewith seeking modification of the Order in the related *Kremen v. Cohen* action.

1  of the September 2001 Order nor can Plaintiff demonstrate that ARIN wrongfully exercised

2  dominion or control over "property" Plaintiff contends he owns.  Dismissal with prejudice of

3  Plaintiff's conversion claim is therefore appropriate.

4  **D.    Plaintiff's Breach of Fiduciary Duty Claim Fails To State Any Claim Upon Which Relief Can Be Granted**

5        ARIN owes no duty to Plaintiff as a matter of law.  It is well-settled that "[t]he elements

6  of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its

7  breach, and damage proximately caused by that breach."  *City of Atascadero v. Merrill* Lynch, 68

8  Cal. App. 4th 445, 483 (1998).  "In order to plead a cause of action for breach of fiduciary duty,

9  there must be an adequate showing of each of these elements."  *Id*.

10       California courts have found a fiduciary relationship to exist only in limited

11  circumstances.  *Id*. ("A fiduciary or confidential relationship may arise whenever confidence is

12  reposed by persons in the integrity and good faith of another."); s*ee, e.g., Women's Federal*

13  *Savings & Loan Assoc. v. Nevada Nat'l Bank*, 811 F.2d 1255, 1258 (9th Cir. 1987) (holding that a

14  fiduciary duty was established only because the agreement at issue contained explicit language

15  providing that one institution was to act "as a trustee with fiduciary duties" toward the other); s*ee*

16  *Rutherford v. Rideout Bank*, 11 Cal. 2d 479, 481-86 (1938) (recognizing the fiduciary relationship

17  between a lending institution and a borrower because such roles often create a relationship of trust

18  and confidence).

19       The Complaint alleges that ARIN breached a purported fiduciary duty to Kremen in three

20  ways.  First, "by way of ARIN's contract with ICANN which charged Defendant ARIN with the

21  obligation of the rightful and fair allocation of resources entrusted to it pursuant to that contract,

22  for the benefit of Plaintiff and others."  (Complaint, ¶134).  Second, by ARIN's refusal to comply

23  with the September 17, 2001 Order.  (Complaint, ¶ 135) ("when [ARIN] refused to transfer the

24  NETBLOCK PROPERTY to Plaintiff, as required by a federal court order").  Third, Kremen

25  alleges that ARIN breach its fiduciary duty through "conversion of Kremen's property entrusted

26  to it . . . [including the] misappropriation of property that belongs to Plaintiff") (Complaint,

27  ¶¶ 136-140).

No contract-based fiduciary relationship is alleged in the Complaint.[9]  In addition, the Complaint is devoid of any allegations that ARIN had a trusted role as a close advisor, guide or counselor to Plaintiff, nor does it allege that ARIN assumed any confidence with Plaintiff.  ARIN enforced its procedures evenhandedly, and did not allow Plaintiff or his opponents in *Kremen v. Cohen* to circumvent such procedures to the detriment of other registrants.  Plaintiff's claim for breach of fiduciary duty is unfounded because ARIN's duty is to provide IP address space and not to protect Plaintiff's financial interests.

Furthermore, as discussed above, Plaintiff's reliance on the September 2001 to create a fiduciary responsibility in ARIN is legally unsupported.  Assuming arguendo that the September 2001 Order applies to a non-party like ARIN (which ARIN disputes), Plaintiff's Complaint is devoid of any allegation whatsoever that the Order itself created a close or special fiduciary relationship between ARIN and Plaintiff.  Indeed, even if it were to make such a nonsensical assertion, ARIN is aware of no case law that would permit the creation of a fiduciary duty based upon such facts.

Finally, as discussed above, Plaintiff fails to state a claim for conversion.  Accordingly, any fiduciary duty claim premised on the conversion claim must equally fail.

**E.    Plaintiff's Unfair Competition Claim Should Be Dismissed Because The Complaint Fails To State Any Claim Upon Which Relief Can Be Granted**

"Business and Professions Code section 17200 *et seq.* (known in California as the "Unfair Competition Law" or "UCL") prohibits the following five different types of wrongful conduct (1) an "unlawful . . . business act or practice[;]" (2) an "unfair . . . business act or practice;" (3) a "fraudulent business act or practice;" (4) "unfair, deceptive, or untrue or misleading advertising;" and (5) "any act prohibited by [Bus. & Prof. Code §§ 17500 – 17577.5]."  Cal. Bus. & Prof. Code § 17200.  "Unfair competition" under § 17200 "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or

---

[9] The Complaint is devoid of any allegations that the contract between ARIN and ICANN includes any explicit language providing that ARIN was to act as a trustee with fiduciary duties to the Plaintiff for good reason -- as no such language exists.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41007967.2                                        23

MOTION TO DISMISS
CASE NO. C 06 2554 MMC

1     harms competition." *Arizona Cartridge Remanufacturers Ass'n v. Lexmark Int'l Inc.*, 421 F.3d

2     981, 986 (9th Cir. 2005) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel.*

3     *Co.*, 20 Cal. 4th 163, 187 (1999). "Section 17200 is not limited to anticompetitive business

4     practices targeted at rivals, 'but is equally directed toward the right of the public to protection

5     from fraud and deceit,' (citations omitted), and permits "courts to enjoin ongoing wrongful

6     business conduct in whatever context such activity might occur." *Id.*

7        Here, Plaintiff's unfair competition claim relies entirely upon the conduct that also

8     allegedly forms the basis for the antitrust, conversion and breach of fiduciary duty claims.

9     (Complaint, ¶¶ 142-143). However, for reasons already discussed above, Plaintiff has failed to

10    state a claim upon which relief may be granted as to each of those claims. Accordingly,

11    Plaintiff's claim for violations of the UCL also fails, and dismissal is warranted.

12    **F.**      **This Lawsuit Should Be Stayed Pending Disposition of ARIN's Application to**
13           **Modify or Clarify the September 2001 Order**

14        It is well-settled in this Circuit that a trial court is vested with broad discretion to stay an

15    action pending resolution of another proceeding:

16        A trial court may, with propriety, find it is efficient for its own docket and the
          fairest course for the parties to enter a stay of an action before it, pending
17        resolution of independent proceedings which bear upon the case. This rule applies
          whether the separate proceedings are judicial, administrative, or arbitral in
18        character, and does not require that the issues in such proceedings are necessarily
          controlling on the action before the Court.
19
    *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979); *see also*
20
    *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268
21
    (9th Cir. 1962).
22
       Plaintiff's lawsuit is premised entirely upon ARIN's purported obligations that arise out of
23
    the Order that was issued *ex parte* in Plaintiff's *Kremen v. Cohen* lawsuit. While the Order was
24
    issued *ex parte* without notice and an opportunity to be heard by ARIN (rendering it
25
    unenforceable against ARIN), ARIN is nevertheless willing to submit to the jurisdiction of the
26
    Court and the Order if various provisions are modified or clarified. Accordingly, ARIN has filed
27
    contemporaneously in *Kremen v. Cohen* a Motion to Modify or Clarify the Order with Judge
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41007967.2          24          MOTION TO DISMISS
CASE NO. C 06 2554 MMC

1   Ware.  ARIN therefore requests, in the alternative to dismissal, that this Court stay the present

2   action pending the disposition of ARIN's application to modify the September 17, 2001, Order.

3       Here, staying the instant matter is fully warranted until the Court has had an opportunity

4   to consider whether the Order should be clarified.  To permit this action to go forward would

5   result in an injustice to ARIN in that it would create duplicative litigation on the same issues and

6   risk inconsistent judgments.  The Court that issued the Order may, *inter alia*, vacate its Order,

7   substantially alter the Order, or mandate compliance with the Order.  Any one of these outcomes

8   may moot many, if not all, of the claims asserted in the present litigation.

9   Moreover, a stay will not harm Plaintiff.  Plaintiff waited nearly five years to file this lawsuit after

10  it first allegedly incurred the damages that are asserted in this action.  Plaintiff therefore cannot

11  make any showing that staying this action will prejudice or inconvenience him.

12  **III.    CONCLUSION**

13      For the reasons set forth above, Defendant American Registry of Internet Numbers, Ltd.

14  respectfully requests that the Court dismiss Plaintiff Gary Kremen's Complaint in its entirety with

15  prejudice.

16  Dated:  June 27, 2006              By:   /s/ Christopher L. Wanger
                                             Christopher L. Wanger
17

18                                     MANATT, PHELPS & PHILLIPS, LLP
                                       1001 Page Mill Road, Building 2
                                       Palo Alto, CA  94304-1006
19                                     Telephone:  (650) 812-1300
                                       Facsimile:  (650) 213-0260
20                                           *Counsel for Defendant*
                                       AMERICAN REGISTRY FOR INTERNET
21                                     NUMBERS, LTD.

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41007967.2                              25                      MOTION TO DISMISS
                                                                CASE NO. C 06 2554 MMC