1  **KRONENBERGER HANLEY, LLP**
   Karl S. Kronenberger (Bar No. 226112)
2  Terri R. Hanley (Bar No. 199811)
   220 Montgomery Street, Suite 1920
3  San Francisco, CA 94104
   Telephone:  (415) 955-1155
4  Facsimile:   (415) 955-1158

5  Attorneys for Plaintiff GARY KREMEN

6

7

8              **UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**
9

10

11
   **GARY KREMEN,** an individual,              Case No. C 06-2554 JW
12
           Plaintiff,                           **PLAINTIFF'S OPPOSITION TO**
13                                              **MOTION OF AMERICAN REGISTRY**
           vs.                                  **OF INTERNET NUMBERS, LTD. TO**
14                                              **DISMISS PLAINTIFF'S COMPLAINT**
   **AMERICAN REGISTRY FOR INTERNET**          **PURSUANT TO RULE 12(b)(6), OR,**
15 **NUMBERS, LTD.,** a Virginia corporation,  **ALTERNATIVELY, FOR A STAY;**

16         Defendant.                           **MEMORANDUM OF POINTS AND**
                                                **AUTHORITIES IN SUPPORT**
17                                              **THEREOF**

18                                              **Date:  September 11, 2006**
                                                **Time: 9:00 a.m.**
19                                              **Judge:  Hon. James Ware**

20                                              **TRIAL DATE:  NONE SET**

21

22

23         Plaintiff Gary Kremen ("KREMEN"), through his attorneys of record Kronenberger

24 Hanley, LLP, hereby respond to and oppose ("Opposition") Defendant American

25 Registry For Internet Numbers' ("ARIN") MOTION TO DISMISS PURSUANT TO

26 FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), dated June 27, 2006 ("Motion").

27

28

                                                **OPPOSITION TO MOTION TO DISMISS**

1

# TABLE OF CONTENTS

2

**PROCEDURAL BACKGROUND**.........................................................................................1

3

**STANDARD OF REVIEW** ...............................................................................................1

4

**LEGAL ARGUMENT** ......................................................................................................2

5

**I. NONE OF PLAINTIFF'S CLAIMS FOR RELIEF ARE TIME BARRED** .......................2

6

   A.  The Antitrust Claims are not Barred, Due to the Continuing Nature of the

7

      Wrongful Acts of ARIN.......................................................................................2

8

   B.  Conversion is a "Continuing Tort," and Thus Not Barred by the Statute of

9

      Limitation Due to ARIN's Continuous Denial of KREMEN of his Property..............4

10

   C.  ARIN Breached its Fiduciary Duties Multiple Times, To Include at Times Within

11

      the Statute of Limitation.......................................................................................5

12

   D.  ARIN Engaged in Multiple Acts of Unfair Competition that Continued Over the

13

      Course of Years, and Thus the Acts are Within the Statute of Limitation. ..............6

14

**II. PLAINTIFF'S ANTITRUST CLAIMS ARE SUFFICIENTLY PLED** .............................6

15

   A.  Noerr-Pennington Immunity Does Not Apply to ARIN's Conduct Upon Which

16

      Plaintiff's Antitrust Claims Are Based. ...................................................................6

17

      1.  ARIN States No Grounds Upon Which It May Qualify For *Noerr*

18

         Immunity.... ...................................................................................................6

19

         a.  FRE 408 does not qualify ARIN's conduct for Noerr immunity. ...........7

20

         b. The Supreme Court has held that *Noerr* immunity is not available for

21

            activities such as ARIN's. ..........................................................................7

22

      2.  ARIN's immunity argument fails further in that Plaintiff's antitrust claims are

23

         independent from the Sept. 2001 Order.. ....................................................8

24

      3.  Noerr Immunity does not apply to the extent it is based upon any interest of

25

         ARIN in the underlying litigation, which it does not hold. ..............................9

26

   B.  ARIN'S communications with Plaintiff regarding the Sept. 2001 Order do not

27

      qualify for confidential treatment under FRE 408.. ................................................9

28

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

1. The Sept. 2001 Order was not a "claim" against ARIN, nor was ARIN's subsequent conduct a negotiation thereof pursuant to Rule 408. ................ 9

2. Even if the Order was interpreted as a "claim," evidence of ARIN's subsequent related conduct does not qualify for Rule 408 confidentiality.... 10

C. Defendant's repeated mischaracterizations of allegations in the Complaint form a faulty foundation for their antitrust arguments. ..................................... 11

1. Plaintiff has not alleged that ARIN's anticompetitive conduct consists of its application of "standard procedures," but rather consists of ARIN's inconsistent, arbitrary, and biased application or waiver of such policies. ... 11

2. Plaintiff has clearly plead harm to competition generally. ........................... 12

3. In this accurate light, Plaintiff's allegations render Defendant's exemplary case law inapplicable and unconvincing. ..................................... 12

D. Plaintiff has sufficiently plead its claims under Section 1 of the Sherman Act.. ...... 13

1. Plaintiff's Complaint alleges and identifies ARIN's contract, combination, and conspiracy to harm competition. ........................................ 13

a. Plaintiff has alleged that ARIN's membership is in violation by unfairly and unreasonably establishing and arbitrarily enforcing policies. ........................................................ 13

b. Plaintiff has sufficiently identified ARIN's supporting organizations for purpose of establishing antitrust liability...................................... 15

c. Plaintiff has clearly alleged more than "one officer" as indicative of the anticompetitive interests of ARIN and its membership. .............. 15

2. Plaintiff has alleged injury to competition as a whole.................................. 16

3. Defendant's "bootstrapped" argument that Plaintiff has not lawfully sustained antitrust injury is faulty and must fail........................................... 16

E. Plaintiff has sufficiently plead its monopoly claims under Section 2 of the Sherman Act........................................................................ 17

1. Defendant is a monopoly, and has admitted so publicly.. ............................ 17

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

2. Defendant's acknowledged monopoly is unlawful........................................17

3. Plaintiff has most certainly alleged ARIN's exclusionary and therefore anticompetitive conduct. ..................................................................18

4. Plaintiff has alleged injury to competition generally from ARIN's anti-competitive acts. ....................................................................19

F. Plaintiff Has Sufficiently Plead Elements For ARIN's Attempted Monopolization Under Section 2 Of The Sherman Act.. ................................................19

1. Plaintiff sufficiently alleges ARIN'S competitive position in the industry in which Plaintiff seeks to compete..................................................19

a. Plaintiff seeks to enter the market for IP addressing and services, over which Defendant has total and exclusionary control. ................20

b. Plaintiff alleges ARIN'S predatory, anticompetitive conduct.............20

G. Plaintiff's pleading of its Sherman Act claims are sufficient in turn for its claims under California's Cartwright Act.. ..........................................21

III. PLAINTIFF'S CONVERSION CLAIM IS SUFFICIENTLY PLED ...........................21

A. ARIN is Not a "Stakeholder" Requiring Their Opportunity to Be Heard ...............21

B. Defendant ARIN's Underlying Authority to Control the NETBLOCKS is Questionable. ......................................................................22

IV. PLAINTIFF'S CLAIM OF BREACH OF FIDUCIARY DUTY IS SUFFICIENTLY PLED ...............................................................................23

V. PLAINTIFF'S UNFAIR COMPETITION CLAIM IS SUFFICIENTLY PLED ...............25

VI. THIS ACTION SHOULD NOT BE STAYED, AS A SIGNIFICANT PORTION OF THE COMPLAINT IS UNRELATED TO THE SEPTEMBER 2001 ORDER .............25

# TABLE OF AUTHORITIES

**CASES**

Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492 (1988) .............. 7, 8, 13, 14

Athey v. Farmers Ins. Exchange, 234 F.3d 357 (8th Cir. 2000) ........................................ 10

B & B Inv. Club v. Kleinert's, Inc., 472 F. Supp. 787, 791 (Pa., 1979) ................................ 9

Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988) ................................ 1

Bennett v. Hibernia Bank, 47 Cal.2d 540, 561 (1956) ........................................................ 5

Fazio v. Hayhurst, 247 C.A.2d 200, 203 (1966) ...................................................... 5 (fn. 1)

Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637, 641-42 (11th Cir. 1990) .................... 10

Burlesci v. Petersen 68 Cal.App.4th 1062, 1066, 80 Cal.Rptr.2d 704 (1998) ................... 4

Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996) ................................. 1

Chavez v. Carter, 256 C.A.2d 577, 581 (1967) ......................................................... 4 (fn.1)

City of Atascadero v. Merrill Lynch, 68 Cal. App. 4th 445, 483 (1998) ............................ 24

Coakley & Williams v. Structural Concrete Equip., 973 F.2d 349 (4th Cir. 1992) ............. 10

Conley v. Gibson, 355 U.S. 41, 45-46, 78 S Ct 99, 2 L.Ed.2d 80 (1957) ........................... 1

de Vries v. Brumback, 53 Cal.2d 643, 767, 349 P.2d 532, 535 (Cal. 1960) ....................... 4

Delaware and Hudson Ry. Co. v. Consolidated Rail Corp., 654 F. Supp. 1195, 1205
    (N.D.N.Y. 1987) ........................................................................................................... 2

ESS Tech, Inc. v. PC-TEL, Inc., No. C-99-20292 RMW, 1999 WL 33520483 (N.D.Cal.
    Nov. 4, 1999) .............................................................................................................. 12

Granite Partners L.P. v. Bear, Stearns & Co., Inc. 58 F.Supp.2d 228, 240-43 (S.D.N.Y.
    1999) ........................................................................................................................... 12

Hansberry v. Lee, 311 U.S. 32, 41 (1940) ........................................................................ 22

In re Cluck, 165 B.R. 1005, 1009 (W.D. Tex. 1993), affirmed 20 F.3d 1170 ....................... 9

Katz v. N.L.R.B., 196 F.2d 411, 415 (9th Cir. 1952) ...................................................... 5 (fn.1)

Kyle v. Morton High School, 144 F.3d 448, 455 (7th Cir. 1998) ........................................ 24

Lewis v. Telephone Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996) ............ 1

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

Napster, Inc. Copyright Litigation, In re UMG Recordings, Inc. v. Hummer Winblad

   Venture Partners, 354 F.Supp.2d 1113 (N.D. Cal 2005) ...............................................1

Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) .......................................................1

Ramada Dev. Co. v. Rauch, 644 F.2d 1097, 1106 (5th Cir.1981).....................................10

Stroh v. Grant, 34 Fed. Appx. 562, 564 (9th Cir 2002).....................................................5

Tanaka v. Univ. of Southern Cal., 252 F.3d 1059 (9th Cir. 2001)....................................12

Telephone Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996) .........................1

Trans Union Credit Info. Co. v. Assoc. Credit Servs., 805 F.2d 188, 192 (6th Cir. 1986)..10

Tri County Paving, Inc. v. Ashe County, 281 F.3d 430, 436 (4th Cir.2002)......................22

TV Communications Network v. Turner Network Television, Inc., 964 F.2d 1022, 1025

   (1992) ...................................................................................................................12, 18

Uforma/Shelby Bus. Forms, Inc. v. NLRB, 111 F.3d 1284 (6th Cir. 1997) ......................10

United States v. Grinnell Corp., 384 U.S. 563, 576 (1966)...............................................18

Women's Federal Sav. and Loan Ass'n v. Nevada Nat. Bank, 811 F.2d 1255, 1258 (9th

   Cir. 1987)....................................................................................................................24

Woodbridge Plastics, Inc. v. Borden, Inc., 473 F. Supp. 218, 221 (S.D.N.Y.1979) ............2

Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1140 (2005)..................................5 (fn. 1)

Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971) .......................2

**STATUTES**

California Cartwright Act..................................................................................................21

Fed. Rule Civ. Proc. 8 ....................................................................................................24

Fed. Rule Civ. Proc. 12(b)(6) ...........................................................................................1

Fed. R. Evid. 408 ............................................................................................7, 9, 10, 11

U.S. Const. amend. V ......................................................................................................22

15 U.S.C. § 1...................................................................................................................13

15 U.S.C. § 2...................................................................................................................19

**OTHER SOURCES**

Blacks Law Dictionary, 264 (8th ed. 2004) ..............................................................................

3 Witkin, Cal. Proc. 4th (1997) Actions § 552 ..................................................................4

.

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

**PROCEDURAL BACKGROUND**

ARIN filed their Motion on June 27, 2006.  Concurrent with its filing of the Motion, ARIN also filed, in the case of *Kremen v. Cohen*, a Motion for Clarification, or in the Alternative, for Modification of Order Dated September 17, 2001, Entitled "Order re: Registration of IP Numbers (NETBLOCKS) in the Name of Judgment Creditor ("Motion to Modify").  In support of its Motion to Modify, ARIN filed a Declaration of Raymond A. Plzak, President of ARIN ("Plzak Decl.").  Concurrent with Plaintiff's Opposition to the Motion, Plaintiff is filing a Motion for Judicial Notice of a) the Motion to Modify, b) the Declaration of Raymond Plzak, c) Defendant ARIN's objection letter to the bankruptcy action filed and entered on March 28, 2006 in the case of *Birch Telecom, Inc. and Rockwall,* 05-12237-PJW District Court for the District of Delaware (entry 683 on the Pacer docket), and d) the Declaration of Karl S. Kronenberger ("Kronenberger Decl.")

**STANDARD OF REVIEW**

The Ninth Circuit states: "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[U]nless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief," a motion to dismiss must be denied. *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996) (*citation omitted*); *see also Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S Ct 99, 2 L.Ed.2d 80 (1957). When assessing the legal sufficiency of a plaintiff's claims, the court must accept as true all material allegations of the complaint, and all reasonable inferences must be drawn in favor of the non-moving party. *See, e.g., Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (*citations omitted*). Dismissal is proper under Rule 12(b)(6) "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d at 732 (*quoting Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988))."  *Napster, Inc. Copyright Litigation, In re UMG Recordings, Inc. v. Hummer Winblad Venture Partners*, 354 F.Supp.2d 1113, 1116 (N.D. Cal 2005).

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

1        **LEGAL ARGUMENT**

2   **I. NONE OF PLAINTIFF'S CLAIMS FOR RELIEF ARE TIME BARRED**

3        **A.  The Antitrust Claims are not Barred, Due to the Continuing Nature of the**

4   **Wrongful Acts of ARIN.**

5        While Defendant is correct in its assertion that there is a four-year statute of

6   limitation associated with both Sherman Act and Cartwright Act claims, Defendant

7   conveniently omits reference to an entire line of case law dealing with "continuous

8   antitrust violations," which clearly place all of Plaintiff's allegations within the applicable

9   statutes of limitation.

10       In antitrust actions, "[e]ach time a plaintiff is injured by an act of the defendants a

11  cause of action accrues to him to recover the damages caused by that act and that, as

12  to those damages, the statute of limitations runs from the commission of the act."

13  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971); *see also*

14  *Woodbridge Plastics, Inc. v. Borden, Inc.*, 473 F. Supp. 218, 221 (S.D.N.Y.1979),

15  *affirmed by,* 614 F.2d 1293 (1979)(an antitrust claim arises at each time plaintiff's

16  interest is invaded to his damage, and the statute of limitations commences to run with

17  respect to each such injury-causing act when it is committed); *see also*, *Delaware and*

18  *Hudson Ry. Co. v. Consolidated Rail Corp.*, 654 F. Supp. 1195, 1205 (N.D.N.Y.

19  1987)(ruling that facts occurring more than four years prior to the complaint could be

20  presented to substantiate determination of a continuing violation of the Sherman Anti-

21  Trust Act; the court rejected the alternative view as "a piecemeal approach").

22       In the case at hand, the Complaint alleges a continuing violation of antitrust laws,

23  resulting in multiple injuries over a period of years since the Order was issued.

24  Additionally, the Defendant has admitted facts underlying the continuing violation and

25  multiple injuries, as further detailed below.

26       The Complaint specifically alleges unlawful misconduct and harm that has

27  occurred continuously since 2001.  (Compl. ¶¶ 14-16.)  The Complaint alleges a series

28  of negotiations between ARIN and KREMEN that occurred over a period of years,

2

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

1    through 2005, which culminated in ARIN's ultimate refusal to comply with the order in

2    2005.  (Compl., ¶ 51.)  Furthermore, in its Motion to Modify, ARIN admits that

3    negotiations were ongoing, starting in December of 2003 and continuing into 2004.

4    (Mot. to Modify, p. 8, 23:25.)  ARIN also admits to nearly four and a half years of

5    discussions between the parties since the Order.  (Mot. to Modify, p. 9, 6:7.)

6        ARIN claims that it was not even effectively served with the order until the first

7    week of 2004, and thereafter engaged in good faith negotiations with KREMEN.  (Plzak

8    Decl. ¶ 3.)  Plaintiff's allegations in the Complaint are consistent with ARIN's admissions

9    that it presented multiple iterations of an agreement to which they wanted KREMEN to

10   enter regarding the NETBLOCK PROPERTY.  (Compl. ¶¶ 54-55; Plzak Decl. ¶¶ 3-7.)

11   Regarding ARIN's policy requiring applicants to enter this agreement, such policy, as

12   alleged in the Complaint and as admitted by ARIN, is ongoing and currently used and

13   applied to anyone seeking an allocation or transfer of IP addresses.  (Compl. ¶ 60;

14   Plzak Decl. ¶ 7.)

15       Regarding the multiple injuries over the course of years, the Complaint alleges

16   that one class of injuries suffered by Plaintiff involves the profits that COHEN was able

17   to generate by use of the NETBLOCK PROPERTY being invested by COHEN into his

18   litigation against KREMEN and into COHEN's evasion of authorities.  (Compl. ¶¶ 73, 77-

19   79.)  The revenue that COHEN generated due to his control of the NETBLOCK

20   PROPERTY continued well into 2006.  Additionally, KREMEN has alleged that he has

21   been deprived of the opportunity to generate revenue from the NETBLOCK PROPERTY

22   during the entire period of time since the Order was issued.  (Compl. ¶ 76.)

23       The Complaint also alleges that ARIN harmed KREMEN by ARIN's continual

24   actions in depriving KREMEN of the NETBLOCK PROPERTY, thereby depriving

25   KREMEN of access to property in Mexico which KREMEN owned via constructive trust,

26   until the time KREMEN was able to seize such assets using the Mexican legal process.

27   (Compl. ¶¶ 80-82.)  With access to the NETBLOCK PROPERTY, KREMEN could have

28   immediately gained control of the operational heart of the Mexican businesses he

3

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

owned in constructive trust.

Lastly, KREMEN has alleged that ARIN's continual withholding of the NETBLOCK PROPERTY from KREMEN has resulted in a devaluation of the NETBLOCK PROPERTY, occurring over a period of years.  (Compl. ¶ 83.)

The Complaint in this action was filed on April 12, 2006, and the four-year window prior to the filing started on April 12, 2002.  As detailed above, the Plaintiff has alleged multiple types of harm that occurred on a recurring and continual basis well into 2004 and in some cases 2005.  (Compl. ¶¶ 54-55; Plzak Decl. ¶¶ 3-7.) Additionally, the current practices of ARIN, specifically the use of ARIN's registration agreement, which is at the heart of the Plaintiff's antitrust claims, are still in use to the present day and still causing harm to not only the plaintiff but many applicants and transferees of IP addresses in North America.

For the forgoing reasons, the Plaintiff has sufficiently alleged continuing misconduct and harm arising from the antitrust allegations, which fall within the four-year statute of limitation.

**B.    Conversion is a "Continuing Tort," and Thus Not Barred by the Statute of Limitation Due to ARIN's Continual Denial of KREMEN of his Property.**

"Conversion is the wrongful exercise of dominion over the property of another." *Burlesci v. Petersen* 68 Cal.App.4th 1062, 1066, 80 Cal.Rptr.2d 704 (1998).  This view of conversion as a continual act has many years of support in case law. *de Vries v. Brumback*, 53 Cal.2d 643, 767, 349 P.2d 532, 535 (Cal. 1960) (Conversion "is a continuing tort as long as the person entitled to the use and possession of his property is deprived thereof.")  In the case of similar continuing torts, such as nuisance, a plaintiff may file an action at any time in the course of the continuing tort, or within the applicable statute of limitation.  3 Witkin, Cal. Proc. 4th (1997) Actions  § 552.[1]

---

[1] There is a continuing duty theory of postponed accrual, recognized in both medical and legal malpractice cases, where the statute does not run during the relationship of attorney/doctor and client/patient, but instead commences when the patient or client suffers damages from the wrongful act.  ARIN's fiduciary duty is analogous to these other types of duties which give rise to postponed accrual. *See Chavez v. Carter,* 256

4

1    Defendant cites two cases in support of its argument that Plaintiff's conversion

2  claim is time-barred.  The first case cited, *Stroh v. Grant*, 34 Fed. Appx. 562, 564 (9th

3  Cir 2002), an unpublished opinion, merely acknowledges California's statute of limitation

4  for conversion in a string citation and contains no commentary or other guidance on this

5  issue.  The other case, decided in 1956, clearly states that there are multiple exceptions

6  to the statute of limitations for conversion.  *Bennett v. Hibernia Bank*, 47 Cal.2d 540,

7  561 (1956) ("This rule, however, is not absolute").  Neither of these cases discusses

8  how a conversion inflicting continuing harm is addressed for the purpose of the statute

9  of limitation, and as a result, the *Burlesci*, *Vries* and *Witkin* authorities, *supra*, provide

10  solid grounds for allowing Plaintiff to recover damages suffered as detailed in he

11  Complaint.

12    KREMEN made multiple demands to ARIN to give KREMEN control of the

13  NETBLOCK PROPERTY starting in 2001 through 2005.  (Compl. ¶¶ 54-55; Plzak Decl.

14  ¶¶ 3-7.)  ARIN, by their own admission, continually denied KREMEN control of the

15  NETBLOCKS up to the point of the April 2006 filing of the Complaint, choosing instead

16  to engage KREMEN in long "negotiation" process about whether ARIN would abide by

17  the Order.  The allegations in the Complaint of ARIN's repeated denials of KREMEN's

18  requests, and ARIN's own admission of these repeated denials, are a clear showing

19  that the conversion alleged in the Complaint continued to occur well into the statute of

20  limitation window.

21    **C.    ARIN Breached its Fiduciary Duties Multiple Times, To Include at**

22  **Times Within the Statute of Limitation.**

23    Plaintiff has alleged that Defendant breached its fiduciary duty on a continual

24  basis with every denial of Plaintiff's request to transfer control of the NETBLOCK

25  C.A.2d 577, 581 (1967), and *Fazio v. Hayhurst*, 247 C.A.2d 200, 203 (1966); <u>*also Cf.,*</u>

26  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1140 (2005)(explaining California's
   Continuous Violation Doctrine, where "an employer is liable for actions that take place

27  outside the limitations period if these actions are sufficiently linked to unlawful conduct
   that occurred within the limitations period."); *also Cf. Katz v. N.L.R.B.*, 196 F.2d 411,

28  415 (9th Cir. 1952)(where an illegal contract was enforced continually both within and
   outside of the statute of limitation, and the action was not barred).

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

1   PROPERTY to Plaintiff.  (Compl. ¶ 136.)  By Defendant's own admission, Defendant

2   repeatedly refused Defendant's request at least through 2005.  (Plzak Decl. ¶¶ 3-7.)

3   Thus, Plaintiff has alleged breaches of Defendant's fiduciary duty that are well within the

4   three-year statute of limitation.

5        Plaintiff has also alleged that Defendant has breached its duty of loyalty by its

6   continuing act of conversion of the Plaintiff's property.  (Compl. ¶ 136.)  Due to the

7   nature of conversion as a "continuing tort," as detailed *supra*, Plaintiff has alleged a

8   breach of fiduciary duty that is continuing with the conversion well into the window of the

9   statute of limitation.

10       While Plaintiff disputes this assertion, ARIN does assert that it was not served

11  with Order until the first week of 2004.  (Plzak Decl. ¶ 3.)  Thus, ARIN's assertion puts

12  the alleged breach well within the three year statute of limitation.

13       **D.    ARIN Engaged in Multiple Acts of Unfair Competition that Continued**

14  **Over the Course of Years, and Thus the Acts are Within the Statute of Limitation.**

15       As the basis of its unfair competition allegations, Plaintiffs alleged violations of

16  the Sherman and Cartwright Acts, conversion and breach of fiduciary duty.  (Compl., ¶

17  143.)  As stated, *supra*, the acts alleged, and the harm that arose from the acts,

18  occurred over a period of years, and in a continual manner, and thus the allegations are

19  clearly within the four year statute of limitation for California statutory unfair competition.

20  **II.  PLAINTIFF'S ANTITRUST CLAIMS ARE SUFFICIENTLY PLED.**

21       **A.    *Noerr-Pennington* Immunity Does Not Apply to ARIN's Conduct Upon**

22  **Which Plaintiff's Antitrust Claims Are Based.**

23       Defendant's Motion completely mischaracterizes the legal principle of *Noerr*

24  immunity, as well as fails to address U.S. Supreme Court case law directly disqualifying

25  activities such as ARIN's from *Noerr* immunity.

26       **1.  ARIN States No Grounds Which Qualify It For *Noerr* Immunity.**

27       ARIN states no grounds upon which it claims to qualify for *Noerr* immunity – nor

28  can it.  Though it generally cites that the immunity applies to those who petition the

6

**OPPOSITION TO MOTION TO DISMISS OR STAY**

1   government for redress are immune from antitrust liability, it does not state how its

2   actions in any regard can qualify it for the immunity.  (*See* Motion, pp. 6-7.)  There seem

3   to be only two possible grounds that could be wrangled from the Motion on this issue:

4   (a)  To the extent ARIN is attempting to qualify a purported "settlement negotiation"

5   under Fed. R. Evid. 408 as "petitioning the government for redress"  (*see* Motion, p. 7, l.

6   6-12; p. 7, l.21 – p. 8 l.1.), Plaintiff addresses and dispels any such illusion below; and

7   (b) To the extent ARIN may claim its "policy" setting is a governmental function or

8   redress, the U.S. Supreme Court has specifically held that activity such as ARIN's

9   cannot qualify for *Noerr* immunity from antitrust liability.

10                  **a.  FRE 408 does not qualify ARIN's conduct for *Noerr***

11          **immunity.**

12          The *Noerr-Pennington* immunity asserted in the Defendant's Motion is not

13   applicable in the present case.  ARIN claims that its refusal to recognize and obey this

14   Court's order upon presentation, and its response to offer lesser, conditioned, and

15   alternative relief, were "settlement negotiations" pursuant to Rule 408 of the Federal

16   Rules of Evidence.  (Mot., pp. 7-8.)  They then claim that, therefore, such acts were

17   "related to litigation," rendering them completely immune from civil liability for claims

18   flowing therefrom.  (*Id.*)

19          KREMEN's presentation to ARIN of the Sept. 2001 order was not the assertion of

20   a claim against ARIN.  ARIN's refusal to comply, it's offer to compromise or to provide

21   substitute relief was <u>not</u> an offer of settlement of a claim against it pursuant to Section

22   408.  (*Infra,* Sec. I.B.)  None of the case law cited in the Defendant's Motion supports

23   that position.

24                  **b.      The Supreme Court has held that *Noerr* immunity is not**

25          **available for activities such as ARIN's.**

26          In *Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 108 S.Ct.

27   1931 (1988), the U.S. Supreme Court held that an economically interested party that

28   exercises decision-making authority in formulating standards for a private association

7

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

1   that is comprised of market participants enjoys no *Noerr* immunity from any antitrust

2   liability flowing from the effect the standard has of its own force in the marketplace.

3       In finding that efforts to influence the setting of a private association's standards,

4   even where such standards were routinely adopted by state and local governments, did

5   <u>not</u> qualify for *Noerr* immunity, the U.S. Supreme Court noted:

6       "Here petitioner's actions took place within the context of the standard-
        setting process of a private association.   Having concluded that the

7       Association is not a "quasi-legislative" body, we reject petitioner's
        argument that any efforts to influence the Association must be treated as

8       efforts to influence a "quasi-legislature" and given the same wide berth
        accorded legislative lobbying.     That rounding up supporters is an

9       acceptable and constitutionally protected method of influencing elections
        does not mean that rounding up economically interested persons to set

10      private standards must also be protected."

11  *Id.* at 504.  *Noerr* immunity thus does not apply to ARIN's conduct upon which antitrust

12  claims are brought.

13      **2.  ARIN's immunity argument fails further in that Plaintiff's antitrust**

14      **claims are independent from the Sept. 2001 Order.**

15      Defendant's argument further fails on the completely independent grounds that,

16  contrary to Defendant's argument, Plaintiff's claims are <u>not</u> uniquely predicated upon

17  ARIN's alleged non-compliance with the Sept. 2001 Order.  (*See* Motion, p. 8, l. 2-3.)

18  Although Plaintiff has alleged that ARIN's motivations for its refusal to comply with the

19  Sept. 2001 order were partially driven by monopolistic and anti-trust related interests,

20  Plaintiff has alleged that ARIN routinely and regularly conducts its business in such a

21  manner.  (Compl., ¶¶ 62, 66.)  The alleged acts of misconduct include not only ARIN's

22  non-compliance with the Order, but the onerous and anti-competitive terms and

23  conditions that it intended to require of the Plaintiff after ARIN's modified compliance

24  with Order.  This conduct and injury were also extended to others similarly situated, as

25  Plaintiff has alleged in detail.   (*Infra,* Sec. II.C.1.)

26      Any of the above grounds are sufficient to show that ARIN's asserted immunity in

27  no way applies to the present case, and does <u>not</u> render their conduct regarding the

28  Sept. 2001 order immune from civil and antitrust liability.  As such, Defendant's Motion

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

1  should be denied on these grounds.

2       **3.** ***Noerr*** **Immunity does not apply to the extent it is based upon any**

3       **interest of ARIN in the underlying litigation, which it does not hold.**

4  Furthermore, by Defendant's own argument, *Noerr-Pennington* immunity applies

5  to the actions of a non-party only where that non-party had an interest in the outcome of

6  the underlying litigation.  (Mot., p. 7, fn. 5.)   Despite Defendant's unfounded

7  generalization that Plaintiff's "allegations" establish ARIN's interest, Plaintiff makes no

8  such assertion, alleges no facts in support thereof, and argues herein in more detail that

9  ARIN held and holds no interest in the underlying litigation that spawned the Sept. 2001

10  order.  (*See infra,* Sec. III.A, B.)

11     **B.    ARIN'S communications with Plaintiff regarding the Sept. 2001 Order**

12     **do not qualify for confidential treatment under FRE 408.**

13  In addition, as Defendant has called upon Fed. R. Evid. 408, to any extent ARIN

14  may claim its communications concerning the Sept. 2001 Order or documentation of its

15  related conduct are inadmissible pursuant to that Rule, Plaintiff rejects and herein

16  disproves any such claim of right.

17     **1.  The Sept. 2001 Order was not a "claim" against ARIN, nor was**

18     **ARIN's subsequent conduct a negotiation thereof pursuant to Rule 408.**

19  "[T]he rule [408] excludes evidence of a compromise only on the issue of the

20  amount or validity of the claim which is the subject of the compromise. If the

21  compromise negotiations are used for another purpose they are not inadmissible under

22  Rule 408."  *B & B Inv. Club v. Kleinert's, Inc.*, 472 F. Supp. 787, 791 (Pa., 1979).

23  Additionally, Rule 408 does not apply to judgments in prior proceedings.  *In re Cluck,*

24  165 B.R. 1005, 1009 (W.D. Tex. 1993), *affirmed* 20 F.3d 1170.  Furthermore, the actual

25  language of Rule 408 clearly limits the scope of the rule to evidence related to "a claim

26  which was disputed as to either validity or amount… .(emphasis added)"  Fed. Rule

27  Evidence 408.  The term "claim" inherently relates to an assertion of a property or

28  money right giving rise to a right enforceable in a court of law.  *See* Blacks Law

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

1    Dictionary, 264 (8th ed. 2004).

2         However, as detailed *supra*, the Sept. 2001 Order arose out of a prior proceeding

3    and is an order to turn over property already found to be property of KREMEN in

4    constructive trust.  There is no "claim."  There is simply a court order enforcing a prior

5    judgment, and thus Rule 408 is inapplicable.

6         Not only is there no "claim" in this matter, but, as shown above, ARIN's conduct

7    and communications with Plaintiff regarding the Sept. 2001 Order do not constitute

8    settlement negotiations in advance of litigation for the purpose of Rule 408.  *Trans*

9    *Union Credit Info. Co. v. Assoc. Credit Servs.*, 805 F.2d 188, 192 (6th Cir. 1986) (FRE

10   Rule 408 "excludes only evidence of conduct and statements made solely as part of the

11   settlement negotiations, and not statements and conduct … which are unrelated to such

12   compromise negotiations.").   As such, none of the communications or documentation of

13   such conduct qualifies for Rule 408's confidentiality and non-disclosure provisions.

14   ARIN's unilateral attempts to trigger this treatment by labeling documents and

15   correspondence with "RULE 408" is not sufficient to qualify for the confidential treatment

16   they assert.  *Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637, 641-42 (11th Cir. 1990)

17   (The test for whether statements fall under Rule 408 is "whether the statements or

18   conduct were intended to be part of the negotiations toward compromise.); *Ramada*

19   *Dev. Co. v. Rauch*, 644 F.2d 1097, 1106 (5th Cir.1981); *see also Athey v. Farmers Ins.*

20   *Exchange*, 234 F.3d 357 (8th Cir. 2000); *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111

21   F.3d 1284 (6th Cir. 1997) (threats made in settlement negotiations were admissible;

22   Rule 408 is inapplicable when the claim is based upon a wrong that is committed during

23   the course of settlement negotiations); *Coakley & Williams v. Structural Concrete*

24   *Equip.*, 973 F.2d 349 (4th Cir. 1992) (evidence of settlement is not precluded by Rule

25   408 where offered to prove a party's intent with respect to the scope of the settlement).

26       **2.  Even if the Order was interpreted as a "claim," evidence of ARIN's**

27   **subsequent related conduct does not qualify for Rule 408 confidentiality.**

28       Secondly, even if it should be determined that Plaintiff's presentation of the Order

10

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

1    to ARIN and ARIN's disputing of such order, was a claim and dispute under Rule 408,

2    Rule 408 would only exclude evidence regarding such acts if being admitted to prove

3    liability for or the amount of such a claim.  Fed. R. Evid. 408.  In the present matter,

4    such documentation is submitted as evidence of conduct subsequent to the

5    presentation of KREMEN's "claim," (*i.e.*: the Sept. 2001 Order), in support of allegations

6    of newly arising claims (*i.e.*: conversion and antitrust claims).  It is not being submitted

7    to prove ARIN's "liability" for any claim, as a claim does not lie in the Sept. 2001 Order.

8    Nor is it admitted to prove the amount of the Order as a "claim" as against ARIN.

9    Therefore, any such evidence is freely admissible in the present case.

10    **C.    Defendant's repeated mischaracterizations of allegations in the**

11    **Complaint form a faulty foundation for their antitrust arguments.**

12    While specific aspects of Defendant's Motion regarding Plaintiff's antitrust claims

13    are addressed below, there are two fundamental mischaracterizations of Plaintiff's

14    allegations common to all of Defendant's arguments, which form a fatally flawed

15    foundation for a bulk of the arguments Defendant puts forth in the area of antitrust.

16    Clarification of these self-serving inaccuracies expose how Defendant's arguments are

17    flawed, demonstrate how their case law comparisons are irrelevant, and requires the

18    denial of their Motion.

19    **1.    Plaintiff has alleged that ARIN's anticompetitive conduct**

20    **consists of its inconsistent, arbitrary, and biased application or waiver of**

21    **standards and policies- not their mere creation.**

22    Defendant's Motion repeatedly relies on a supposed "admission" by Plaintiff that

23    the anticompetitive conduct alleged against it is ARIN's mere establishment and

24    application of "standard" procedures and policies.  (*See e.g.* Motion, p. 14, l. 5-6.)  This

25    is false and a mischaracterization of Plaintiff's Complaint.

26    Plaintiff has clearly asserted that the anticompetitive conduct relates to a lack of

27    consistency in ARIN's application of it so-called "standard" procedures.  (Compl., ¶¶ 36,

28    40, 41, 50-51, 52, 55, 60-66, 70.)  Plaintiff further alleges ARIN's actionable conduct to

11

1    include the abuse of its absolute discretion in its "policy" development and its bias in

2    those regards, pursuant to the shared economic interests of ARIN's directors, officers,

3    members, and the businesses which comprise its membership.  (*Id.*, ¶¶ 37, 41.)

4         Plaintiff has never alleged that ARIN's mere creation of procedures is the basis

5    for its antitrust claims, and as each and every argument Plaintiff makes in that regard is

6    fatally flawed, as addressed below.

7             **2.     Plaintiff has clearly plead harm to competition generally.**

8         Defendant's Motion also repeatedly misrepresents Plaintiff's Complaint as

9    alleging only a competitive injury to Plaintiff himself, and not to competition in the

10   relevant  market generally.  (Mot., p. 11; 14, l. 7, 14; 18; 19.)  This is completely

11   inaccurate.  Contrary to Defendant's incorrect portrayals, Plaintiff has alleged numerous

12   times in detail that ARIN's anticompetitive conduct was directed not solely at himself,

13   but also at others similarly situated – in fact, nearly every new entrant into that market.

14   (Compl., ¶¶ 54-61; 66; 70; 72; 90-91; 96, 98-99; 105-107; 112; 121.)  Plaintiff's facts

15   asserted are sufficient to allege the element of injury to competition as a whole, in

16   support of all of Plaintiff's antitrust claims and in rebuttal to the repeated argument in

17   Defendant's Motion.

18            **3.  In this accurate light, Plaintiff's allegations render Defendant's**

19                 **exemplary case law inapplicable and unconvincing.**

20        Plaintiff's Complaint does not merely allege that Plaintiff alone was rendered

21   unable to compete in the relevant market, distinguishing this case from those of *ESS*

22   *Tech, Inc. v. PC-TEL, Inc.,* No. C-99-20292 RMW, 1999 WL 33520483 (N.D.Cal. Nov.

23   4, 1999), and *Tanaka v. U.S.C.,* 252 F.3d 1059.  (*See* Mot., p. 12.)

24        Likewise, Plaintiff has certainly alleged conduct on the part of ARIN explainable

25   by more nefarious factors than "ordinary market forces."  (*See* Mot., p. 13, *citing Granite*

26   *Partners L.P. v. Bear, Stearns & Co., Inc.* 58 F.Supp.2d 228, 240-43 (S.D.N.Y. 1999).)

27        Lastly, Defendant's citing of *TV Communications Network v. Turner Network*

28   *Television, Inc.,* 964 F.2d 1022, 1025 (1992) is inaccurate and misrepresents the basis

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

of the court's holding in that case.  The Section 1 claims in that case were dismissed <u>not</u> "because [the] complaint made only conclusory assertions of illegality," (Mot., p. 12), but rather they were dismissed because a detailed factual review of complex allegations resulted in a finding that the alleged conspirators were not of the required market level. *Id.* at 1027-1028 – <u>far</u> from Defendant's own incorrect and conclusory representation of that holding.

As such, <u>none</u> of the case law cited in support of Plaintiff's allegations of harm to competition apply or support its Motion.

**D.  Plaintiff has sufficiently plead its claims under Section 1 of the Sherman Act.**

As Defendant's Motion cites, combinations that unreasonably restrain trade and harm competition, or those that conspire to do so, violate Section 1 of the Sherman Act (15 U.S.C. § 1, or "Section 1").  (Mot., p. 8.)  Plaintiff has easily plead this claim.

**1.  Plaintiff's Complaint alleges and identifies ARIN's contract, combination, and conspiracy to harm competition.**

Defendants' Motion makes multiple mischaracterizations about Plaintiff's allegations, then attacks these mischaracterizations about Plaintiff's position.  (*See, for e.g.*, Motion, p. 10.)  Defendant's Motion, however, is incorrect in each of the three primary issues it outlines:

**a.  Plaintiff has alleged that ARIN's membership violates Section 1 by unreasonably establishing and enforcing policies.**

Controlling case law not addressed in Defendant's Motion, and Defendant's Motion itself, acknowledge and hold that a membership organization can agree and conspire with its members within the meaning of Section 1, in establishing and enforcing unreasonable membership policies and standards.  (*Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1998); Mot., p. 10.)  Plaintiff has so alleged.

*Allied Tube* clearly recognizes that standards and policies adopted by a membership organization or association can violate antitrust laws, and that such

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

conduct is circumscribed by Federal antitrust legislation.  "What distinguishes this case from *Noerr* and its progeny is that the context and nature of petitioner's activity make it the type of commercial activity that has traditionally had its validity determined by the antitrust laws themselves."  *Id.* at 505.  The Court went on in detail:

> "Indeed, because private standard-setting by associations comprising firms with horizontal and vertical business relations is permitted at all under the antitrust laws only on the  understanding that it will be conducted in a nonpartisan manner offering procompetitive benefits, *see ibid.*, the standards of conduct in this context are, at least in some respects, more rigorous than the standards of conduct prevailing in the partisan political arena or in the adversarial process of adjudication. The activity at issue here thus cannot, as in *Noerr*, be characterized as an activity that has traditionally been regulated with extreme caution, see *Noerr*, 365 U.S., at 141, 81 S.Ct., at 531, or as an activity that "bear[s] little if any resemblance to the combinations normally held violative of the Sherman Act," *id.*, at 136, 81 S.Ct., at 529.   And petitioner did not confine itself to efforts to persuade an independent decisionmaker, *cf. id.*, at 138, 139, 81 S.Ct., at 530 (describing the immunized conduct as "mere solicitation");  rather, <u>it organized and orchestrated the actual exercise of the Association's decisionmaking authority in setting a standard</u>.   Nor can the setting of the Association's Code be characterized as merely an exercise of the power of persuasion, for it in part involves the exercise of market power.   The Association's members, after all, include consumers, distributors, and manufacturers of electrical conduit, and any agreement to exclude polyvinyl chloride conduit from the Code is in part an implicit agreement not to trade in that type of electrical conduit."

*Id.* at 506-507 (*emphasis added*). It is precisely this type of anticompetitive interest and conduct that is addressed in Plaintiff's Complaint.

Contrary to Defendant's Motion (Mot., p. 9), Plaintiff's Complaint most certainly <u>does</u> identify and define ARIN's "constituent memberships" for the purposes of its Section 1 claims.  (Compl., ¶¶ 37, 42.)  Here, as addressed above, Defendant incorrectly asserts that Plaintiff's Section 1 claims target only the existence of ARIN's policies, and argues that ARIN's development and application of such terms are "conduct consistent with permissible competition."  (Mot., p. 11.)

However, as explained above (*supra,* Sec. II.C.1), Plaintiff has clearly alleged more than just ARIN's establishment of unreasonable membership terms, but also, and primarily, ARIN's anticompetitive, irregular application of its self-endowed absolute discretion in the application of those policies. (Compl., ¶¶ 42, 66, 72; *supra,* Sec. II.C.1.)

14

**OPPOSITION TO MOTION TO DISMISS OR STAY**

1   Plaintiff further alleges that this conduct is motivated by ARIN's economic and anti-

2   competitive interests.  (*Id.*)  In that Defendant's Motion completely ignores these

3   allegations, its positions relying on its reformation of Plaintiff's case are untenable.

4   **b.      Plaintiff has sufficiently identified ARIN's supporting**

5   **organizations for purpose of establishing antitrust liability.**

6   Defendant disingenuously claims that Plaintiff's Complaint is insufficient to

7   enable it to discern those "supporting organizations" from which ARIN believes it derives

8   its authority, and with whom ARIN has conspired.  (Mot., p. 11.)  Moreover, it claims the

9   allegations are so vague that they are insufficient to distinguish these "supporting

10   organizations" from its own membership. (*Id.*)

11   Plaintiff's Complaint clearly identifies and alleges <u>by name</u> these supporting

12   organizations, well beyond the point of "vagueness."   (Compl., 27-32; 45; 103-104.)

13   Plaintiff also clearly alleges ARIN's conspiracy and unlawful agreements with such

14   groups.  (*Id.*, ¶¶ 103-104.)  These allegations are more than sufficient to enable and

15   provide notice to ARIN that its agreements and conduct with these organizations serve

16   as a basis for Plaintiff's antitrust claims.

17   **c.  Plaintiff has alleged more than "one officer" as indicative of**

18   **the anticompetitive interests of ARIN and its membership.**

19   Defendant misrepresents the nature of Plaintiff's Complaint and the theory of its

20   case by incorrectly (i) claiming only <u>one</u> officer of ARIN has been identified; and (ii)

21   concluding that Plaintiff's Section 1 claims are based only on a conspiracy with that

22   solitary officer.  (Mot., p.10)  Both are false.

23   Plaintiff's Complaint identifies no less than twenty-two individual officers,

24   directors and board members of ARIN, not only identifying them by name, but providing

25   detailed allegations as to their industry and governmental affiliations. (Compl., ¶¶ 43-

26   44.)  How Defendant can ethically or rationally assert that "the <u>only</u> officer identified in

27   the Complaint is ARIN's president" is inexplicable. (*See* Motion, p.10, *emphasis added.*)

28   Furthermore, Defendant's attempts to over-simplify Plaintiff's case by

15

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

1    characterizing these identifications as the sole grounds for ARIN's liability under Section

2    1 are inaccurate and deceptive.  Plaintiff's Complaint clearly identifies and characterizes

3    the individuals in charge of ARIN- each of whom were selected by ARIN's own

4    commercially-interested members or administrators.  (Compl., ¶¶ 43-44.)  Plaintiff does

5    so to illustrate the source and nature of the economic basis at work in ARIN, and the

6    inherent nature of the anti-competitive interests in the ARIN administration.  Plaintiff's

7    Complaint clearly paints the picture of ARIN's "fox guarding the hen house" approach to

8    IP number administration, over which such self-interested individuals have absolute and

9    unchecked control.  (*Supra*, Sec. II.C.1; *see, e.g.,* Complaint, ¶ 45.)

10    **2. Plaintiff has alleged injury to competition as a whole.**

11    As explained above, Plaintiff has clearly alleged ARIN's widespread

12    anticompetitive behavior in the development and application of its questionable

13    "policies."  (*Supra*, Sec. II.C.2, 3.)   While Defendant's Motion leaves Plaintiff "to thrive

14    or languish in a free market"  (Mot., p. 11), Plaintiff's Complaint clearly alleges that the

15    market for IP numbers, exclusively controlled by Defendant, is anything but "free."  And,

16    as argued in detail above, none of the case law cited on this element regarding ARIN's

17    Section 1 arguments are applicable or correct.  (*Supra*, Sec. II.C.3.)

18    **3. Defendant's "bootstrapped" argument that Plaintiff has not**

19    **lawfully sustained antitrust injury is faulty and must fail.**

20    Defendant makes the "bootstrapped" argument which asserts: (1) that Defendant

21    is immune from liability under the *Noerr* doctrine; and (2) that as Plaintiff has failed to

22    allege the elements of its antitrust claims, Defendant's conduct is not unlawful, and

23    therefore Plaintiff has suffered no antitrust injury under the law.  (Mot., p. 15.)

24    However, as argued above, Defendant's conduct is not immune from liability

25    under the *Noerr* doctrine by any theory.  (*Supra,* Sec. II.A).  As argued above, Plaintiff

26    has sufficiently plead facts sufficient to support its antitrust claims.  Furthermore, the

27    factual existence of anticompetitive injury stands independently of the other facts

28    alleged, and Defendant cannot negate its existence by disputing any other factors.

16

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

1    Plaintiff has alleged that he, and others similarly situated, have been unfairly and

2    unlawfully excluded from or hindered in the entry and competition in the market for IP

3    numbers.  (Compl., ¶¶ 54-61; 66; 70; 90-91; 96, 98-99; 105-107; 112; 121; *Supra,*

4    Sec.II.C.1.)  This injury has been alleged to be the direct and proximate result of the

5    biased abuse and discretion or the part of ARIN.  (*Id.*)  Plaintiff's allegations are

6    sufficient in this regard.[2]

7    **E.      Plaintiff has sufficiently plead its monopoly claims under Section 2**

8    **of the Sherman Act.**

9    Defendant's Motion regarding Plaintiff's monopoly claims under Section 2 of the

10   Sherman Act (15 U.S.C. §2, or "Section 2") makes the untenable claim that Defendant

11   ARIN is not a monopoly power in the relevant market.  Not only is ARIN the epitome of

12   such a power, it has publicly claimed in writing to be so.

13              **1.      Defendant is a monopoly, and has admitted so publicly.**

14   ARIN does not dispute Plaintiff's allegations that is a monopoly in the relevant

15   market.  (Mot., pp. 16-17.)  In fact, ARIN exclusively controls 100% of that market; this

16   is an irrefutable market role that even ARIN itself has previously argued in Court.

17   Attached as Exhibit C to the Kronenberger Declaration filed in support hereof is a letter

18   from ARIN to the Hon. Peter J. Walsh, dated March 27, 2006, wherein ARIN likens itself

19   to monopolistic utilities, and asserts the lack of alternative sources for IP provisioning.

20   ARIN cannot plausibly deny that it is a monopoly.

21              **2.      Defendant's acknowledged monopoly is unlawful.**

22   Defendant's Motion asserts that its exclusive monopoly over the market for IP

23   numbers is not illegal, as it is a "natural" monopoly.  (Mot., pp. 16-17.)  As Plaintiff has

24   alleged, there is nothing "natural" about ARIN's origins and its rise to total control, and,

25   as Plaintiff alleges, its market position is the result of its anticompetitive maneuvers, not

26   from any "historical accident" or "business acumen."  (*Id.*; Compl., ¶¶ 35-45.)

27   _____

[2] Contrary to Defendant's self-serving (and fallacious) conclusions, Plaintiff alleges that
ARIN's conduct is most certainly neither legitimate nor pro-competitive (*see* Mot., p.16.);
28   to assert that an antitrust complainant would take such a position or admission is
counterintuitive to the nature of that claim and certainly has not occurred.

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

1    The very case law Defendant cites supports the finding of ARIN's unlawful

2    monopoly.  In *United States v. Grinnell Corp.*, 384 U.S. 563, 576 (1966), the U.S.

3    Supreme Court found the defendant to be an unlawful monopoly, citing their

4    exclusionary practices by means of restrictive agreements that preempted competition

5    with their interests in markets they controlled.  *Id.* at 576.  Likewise, the only other case

6    cited in support is easily distinguished, as there, the Court was addressing a business's

7    "natural monopoly" over its own product – <u>not</u> of a market generally, as the Defendant's

8    slanted quotation has been designed to infer.  *See TV Communications Network v.*

9    *Turner Network Television, Inc.,* 964 F.2d 1022, 1025 (1992) ("TVCN's amended

10   complaint specifically names the TNT channel as the relevant product market

11   monopolized by TNT.   However, a company does not violate the Sherman Act by virtue

12   of the natural monopoly it holds over its own product.")  It can in no way be said that IP

13   numbers are ARIN's own product; ARIN itself acknowledges that it is merely a "steward"

14   of the IP number properties. (Compl., p. 10, fn. 6.)

15    ARIN's monopoly is not at all "necessary" as ARIN claims.  (*See* Motion, p. 17.)

16   Just as Verisign's former monopoly over domain name registration has been allocated

17   out to allow for competition in the North American market, ARIN is perfectly able to

18   divest itself of its exclusive access to its registries and allow competition in the IP

19   addresses market.  There is no reason for ARIN's monopoly other than ARIN's

20   determination to retain its market control.

21    Plaintiff has alleged that ARIN was spawned by a concerted collusion between

22   the largest industry players in the market for IP numbers and ancillary markets, and that

23   those same shared economic interests drive ARIN's anticompetitive conduct alleged.

24   (Compl., ¶¶ 37-42; 103-104.)  Simply because other purportedly "quasi-governmental"

25   agencies colluded with ARIN to establish its monopoly does not render ARIN's

26   monopoly legitimate nor natural.  Plaintiff's allegations of ARIN's conspiratorial origins

27   and continued operation are sufficient to support its claims for monopoly violations.

28        **3.    Plaintiff has most certainly alleged ARIN's exclusionary and**

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

1  **therefore anticompetitive conduct.**

2     Yet again, and as addressed above, Defendant's Motion applies its persistent

3  mischaracterization of Plaintiff's allegations, reaching flawed results.  Again, Defendant

4  inaccurately states that Plaintiff alleges that it is ARIN's creation and consistent

5  application of "standard procedures" which serves as the basis for Plaintiffs monopoly

6  claims. (Mot., p. 17-18.)

7     It need not be reached whether ARIN's purported "standards" are accurately

8  described in its Motion, nor whether such "standards" in and of themselves are

9  reasonable and lawful in terms of antitrust law.  These matters need not be reached at

10  this stage as, stated above, Plaintiff's antitrust claims are primarily based upon Plaintiff's

11  clear allegations that it is ARIN's irregular, discretionary, and biased application-or

12  waiver- of its procedures that constitute its anti-competitive acts. (*Supra*, Sec.II.C.1.)

13     **4.     Plaintiff has alleged injury to competition generally from**

14  **ARIN's anti-competitive acts.**

15     Lastly, as addressed above, the third element of Plaintiff's monopoly claims has

16  been sufficiently alleged, as Plaintiff clearly alleges that it is not only he, but others

17  similarly situated, who have been harmed by ARIN's abuse of its absolute discretion in

18  controlling all entry into the market for IP numbers. (*Supra*, Sec.II.C.2, 3.)

19     **F.     Plaintiff has sufficiently plead elements for ARIN's attempted**

20  **monopolization under Section 2 of the Sherman Act.**

21     In conjunction with and in the alternative to its claims of actual monopolization,

22  Plaintiff has alleged an attempted unlawful monopoly or the part of Defendant ARIN

23  under Section 2 of the Sherman Act.  (Compl., ¶¶ 110-114.)  Defendant's Motion

24  ignores facts alleged that more than sufficiently support such a claim against it.

25     **1.     Plaintiff sufficiently alleges ARIN's competitive position in the**

26  **industry in which Plaintiff seeks to compete.**

27     Defendant incorrectly asserts that ARIN, as characterized by its officers,

28  directors, and membership, does not compete in the industry in which Plaintiff seeks to

19

1    compete. (Mot., p. 19.) This position fundamentally misrepresents both ARIN's and

2    Plaintiff's market participation as alleged in Plaintiff's Complaint.

3              **a. Plaintiff seeks to enter the market for IP addressing and**

4              **services, over which Defendant has total and exclusionary control.**

5        Plaintiff has alleged that the NETBLOCK PROPERTY that is the subject of the

6    Sept. 2001 Order had and currently is associated with active ISP services, from the time

7    the NETBLOCK ORDER was presented to ARIN for transfer of the NETBLOCKS to the

8    present time. (Compl., ¶ 75.) The value of that "downstream" business is intrinsic to the

9    NETBLOCK PROPERTY, and why this court awarded the NETBLOCK PROPERTY to

10    Plaintiff is satisfaction of a judgment.

11        Even Defendant's limited and inaccurate characterization of ARIN's "market" as

12    being limited to IP numbers admits a direct competitive interest to that which Plaintiff

13    seeks to attain (*see* Motion, p. 19, admitting that ARIN competes in the market for IP

14    members and services.)  That Plaintiff has yet to enter this specific market is solely the

15    result of ARIN's anticompetitive acts and monopolistic control of that market.

16        Though this point sufficiently rebuts ARIN's argument in this regard, further

17    grounds exist.  While ARIN operates on its "back-end" in the market for IP numbers  and

18    services, the anti-competitive interests in control of ARIN, its policies, and membership

19    directly compete in Plaintiff's present industry of Internet advertising and Web traffic.

20    Plaintiff has alleged in detail the industry affiliations of numerous ARIN directors,

21    officers, board members and members that have large and active economic interest in

22    Plaintiffs present field such that motivation to exclude and limit Plaintiff's further

23    expansion has been sufficiently alleged.  (Compl., ¶¶ 43-44.)

24              **b.        Plaintiff alleges ARIN's predatory, anticompetitive conduct.**

25        Again Defendant applies its repeated mischaracterization of Plaintiff's allegations

26    regarding ARIN's anticompetitive conduct.  Plaintiff has alleged general injury to

27    competition in general, not only to himself.  (*Supra,* Sec. II.C.2, 3.)

28        However, even by examples cited in ARIN'S own Motion, ARIN has committed

                                              20                    **OPPOSITION TO MOTION TO**
                                                                    **DISMISS OR STAY**

1   predatory acts.  As noted *supra,* ARIN is an established monopoly with total

2   exclusionary control over the relevant market.  It hasn't bought out the only other

3   companies competing in the market because there aren't any – a direct result of ARIN's

4   collusion with its source providers.  (*See* Motion, p. 19, *citing non-controlling case law*

5   *standards for predatory behaviors.*)  ARIN has tortiously interfered with Plaintiff's legal

6   rights and contracts pursuant to ARIN's anti-competitive interests (*Id.*), and while ARIN

7   states that it "[could not]" possibly accomplish monopolization "(Mot., p. 19), it has and

8   has asserted so publicly.  (*Supra,* Sec. II.E.1.)

9       **G.    Plaintiff's pleading of its Sherman Act claims are sufficient in turn for**

10  **its claims under California's Cartwright Act.**

11      As Plaintiff's claims under California's Cartwright Act (Compl., ¶¶ 115-121) mirror

12  those of its Sherman act claims, the arguments above establish the propriety of

13  Plaintiff's claims in those regards, and they are incorporated herein.  As such,

14  Defendant's Motion as to these claims should likewise be denied.

15  **III.  PLAINTIFF'S CONVERSION CLAIM IS SUFFICIENTLY PLED.**

16      Defendant's sole argument why Plaintiff's conversion claims should be dismissed

17  is that ARIN did not have the opportunity to appear and be heard at the hearing on the

18  NETBLOCK ORDER, and as a result ARIN cannot be bound by this federal court order.

19  (Mot., p. 21, 12:15.)  Defendants further clarify their position by stating that if ARIN were

20  a party to the action, then they would be bound by the NETBLOCK ORDER; however,

21  as they were not a party to the action, and are free to ignore the Order.  (*Id.*, 11:12.)

22      **A.  ARIN is Not a "Stakeholder" Requiring Their Opportunity to Be Heard.**

23      To support their argument, Defendant relies on case law that recites the basic

24  principle that a person or entity is not bound to a judgment if such person or entity was

25  not a party to the action that led to the judgment. (*Id.*, 15:18.)  However, the key

26  distinction between the facts underlying the case law cited by the Defendant and the

27  facts at hand is that the Defendant, ARIN, has never been ordered to forfeit or turn over

28  any of its own property.  As plead by the Plaintiff, it is KREMEN's property that is the

21

**OPPOSITION TO MOTION TO
DISMISS OR STAY**

1   subject of the Court's Order, not ARIN's property.  (Compl. ¶ 11.)  In fact, ARIN has

2   <u>never</u> argued that it has any property right whatsoever in the NETBLOCK PROPERTY.

3        Despite this absence of any assertion of ARIN's property rights in the

4   NETBLOCK PROPERTY, Defendant cites a litany of federal cases relating to non-

5   parties to lawsuits being deprived of property as a result of judgments in such lawsuits.

6   (Mot., p. 21, 15:18.)  Defendants later cite due process case law as a reason why they

7   ignored the Court's Order.  (*Id.*, 20:23.)  Thus, the foundation of Defendant's arguments

8   regarding their "right to be heard" is a constitutional procedural due process argument.

9        However, the *sine qua non* of procedural due process arguments is the

10  deprivation of either life, liberty or property, in contravention of the Fifth Amendment to

11  the U.S. Constitution.  *See* U.S. Const. amend. V; *see also*, *Tri County Paving, Inc. v.*

12  *Ashe County,* 281 F.3d 430, 436 (4th Cir.2002).  In fact, the cases Defendant cites in

13  support of its argument all contain decisions grounded in constitutional due process.

14  *See, for e.g.*, *Hansberry v. Lee*, 311 U.S. 32, 41 (1940) ("enforcing …[a judgment]

15  against the person or property of the absent party is not that due process which the Fifth

16  and Fourteenth Amendments requires.")

17       Importantly, Defendant has claimed that it has no property interest in the

18  NETBLOCK PROPERTY (Mot., p. 21, line 4), and Defendant has made no arguments

19  about deprivation of life or liberty.  Defendant is simply not a stakeholder in the *Kremen*

20  *v. Cohen* action, and Defendant has never even alleged that it is a stakeholder.  As a

21  result, Defendant had no right to be present at any hearing on the September 2001

22  Order, and the procedural due process arguments Defendants submit are completely

23  without merit.

24       **B. Defendant ARIN's Underlying Authority to Control the NETBLOCKS is**

25  **Questionable.**

26       Defendant admits that it only recently came into existence as an entity, viewed

27  against the history of the Internet.  (Plzak Decl. ¶¶ 26-32.)  Defendant admits that other

28  individuals and organizations own IP address space that was obtained before

                                        22

1    Defendant ARIN came into existence. (Plzak Decl. ¶ 13, 15:20.)  Defendant refers to

2    this non-ARIN address space as "legacy" space.  (Plzak Decl. ¶ 13, 19:20.)  Defendant

3    admits that it does not have any contractual or other right to control the "legacy space"

4    that various third parties own (Plzak Decl. ¶ 13, 20:22), and Defendant admits that the

5    rights of such "legacy" IP address holders are different from the rights of IP address

6    holders who were allocated address space from ARIN. (Plzak Decl. ¶ 16, 27:28.)

7         Defendant admits that shortly after ARIN was founded, the US government

8    vested full authority for the registration and registry functions for both domain names

9    and IP addresses to the Internet Corporation for Assigned Names and Numbers

10   (ICANN). (Plzak Decl. ¶ 35.)  While Defendant does frequently state, as its authority for

11   its existence, the "Internet Community" (Plzak Decl. ¶ 31-32), Defendant has not

12   revealed the details of any formal contractual relationship between ARIN and ICANN

13   vesting full and absolute authority in ARIN to be the custodian or steward of IP address

14   space and the terms of such authority.

15        Regarding the facts of the present case, Defendant has refused to provide – or

16   even confirm the existence of – any agreement between COHEN and ARIN regarding

17   the NETBLOCKS, and when such agreement may have been entered.  (Kronenberger

18   Decl. ¶¶ 2,3.)  As a result, the authority for ARIN to deny KREMEN's requests regarding

19   the NETBLOCKS is highly suspect and possibly nonexistent; more importantly, though,

20   ARIN's lack of management authority regarding the NETBLOCKS completely

21   undermines any argument that they make about ARIN having a "stake" in this matter for

22   the purpose of a due process analysis.  Because ARIN is not a stakeholder in this

23   matter, and because their management authority over the NETBLOCKS is

24   questionable, ARIN had not right whatsoever to be at the hearing regarding the

25   September 2001 Order.

26   **IV.  PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM IS SUFFICIENTLY PLED.**

27        Defendant's <u>sole</u> argument why Plaintiff's breach of fiduciary duty claim should

28   be dismissed is that Plaintiff has not sufficiently alleged a duty under this cause of

                                         23

1    action.  Under the standard of notice pleading, Plaintiff need not plead facts, but can

2    plead conclusions, so long as they provide Defendant with minimal notice of its claims.

3    Fed. R. Civ. P. 8; *see Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir. 1998).

4        Plaintiff has alleged that a duty exists for Defendant due to Defendant's contract

5    with the Internet Corporation for Assigned Names and Numbers (ICANN), "which

6    charged Defendant ARIN with the obligation of the rightful and fair allocation of

7    resources entrusted to it pursuant to that contract, for the benefit of Plaintiff and others."

8    (Compl. ¶ 134.)  ARIN obviously has knowledge of the organization through which ARIN

9    supposedly has obtained its authority to exist and perform its duties.  (Plzak Decl ¶ 34.)

10       Within this same paragraph of the Complaint, Plaintiff alleges that ARIN has a

11   duty to all individuals or entities that own IP addresses that are within the ARIN registry

12   of IP addresses, including COHEN.  (*Id.*)  Due to the fact that KREMEN owns COHEN's

13   property in constructive trust (Compl. ¶ 11), ARIN owes a duty to KREMEN, as

14   KREMEN is the *de facto* owner of COHEN's NETBLOCK PROPERTY.  Unfortunately,

15   ARIN has refused to release, or confirm the nonexistence of, any contract between

16   COHEN and ARIN.  Specifically, in the case of *Kremen v. Cohen*, KREMEN has made

17   multiple document requests to ARIN, and ARIN has refused to comply with such

18   requests, arguing that ARIN need not comply because ARIN did not have the

19   opportunity to attend the hearing on the Order.  (Kronenberger Decl. ¶¶ 2,3.)

20       The case law that ARIN cites in support of a supposed strict requirement for

21   detailed language imposing fiduciaries, does not in fact support their argument.  In

22   *Women's Federal Sav. and Loan Ass'n v. Nevada Nat. Bank*, the court rejected an

23   argument that no fiduciary duty existed, despite clear language.  811 F.2d 1255, 1258

24   (9th Cir. 1987) ("a trustee with fiduciary duties").  In *City of Atascadero*, the primary case

25   the Defendant cites in support of a supposed strict requirement for detailed language

26   imposing duties, actually details a very low standard.  (Mot., p. 22, 7:9); *City of

27   Atascadero v. Merrill Lynch*, 68 Cal. App. 4th 445, 483 (1998)("A fiduciary or confidential

28   relationship may arise whenever confidence is reposed by persons in the integrity and

24

**OPPOSITION TO MOTION TO DISMISS OR STAY**

1    good faith of another. If the latter voluntarily accepts or assumes that confidence, he or

2    she may not act so as to take advantage of the others' interest without their …consent.")

3        In light of the minimal language needed to establish a fiduciary duty under

4    California law, in light of Plaintiff's specific allegation that the contract between ARIN

5    and ICANN gives rise to a duty, and in light of the fact that Plaintiff has alleged a duty

6    owed by ARIN to all IP address owners, including COHEN, Plaintiff has sufficiently

7    alleged the existence of a fiduciary duty.

8    **V.  PLAINTIFF'S UNFAIR COMPETITION CLAIM IS SUFFICIENTLY PLED**

9        Defendant is correct in stating that Plaintiff's unfair competition claim is based

10    entirely on Plaintiff's allegations of antitrust, conversion and breach of fiduciary duty.

11    (Mot., p. 24, 7:9.)  Plaintiff has sufficiently plead all of its antitrust, conversion and

12    breach of fiduciary duty claims, and thus its unfair competition claim is sufficiently pled.

13    **VI.  THIS ACTION SHOULD NOT BE STAYED, AS A SIGNIFICANT PORTION OF**

14    **THE COMPLAINT IS UNRELATED TO THE SEPTEMBER 2001 ORDER**

15        Defendant states that "Plaintiff's lawsuit is premised entirely upon ARIN's

16    purported obligations that arise out of the Order that was issued *ex parte* in Plaintiff's

17    *Kremen v. Cohen* lawsuit."  (Mot., p. 24, 22:23.)  However, this statement is simply

18    incorrect.  Of the eight Claims for Relief in the Complaint, five of the claims do not

19    reference the September 2001 Order in any way, and these five claims for relief are

20    factually and legally independent of the specific factual allegations in the Complaint

21    relating to the September 2001 Order.  (Compl., ¶¶ 84-121.)

22        For the forgoing reasons, Plaintiff requests that the Court deny the Defendant's

23    motion to dismiss or to stay.

24

25    DATED: August 21, 2006.                **KRONENBERGER HANLEY, LLP**

26                                By:    s/ Terri R. Hanley
                                    _____
27                                    Terri R. Hanley
                                    Karl S. Kronenberger
28                                    Attorneys for Plaintiff Gary Kremen

25