

www.arin.net

March 27, 2006

The Honorable Peter J. Walsh
United States Bankruptcy Court for the District of Delaware
824 North Market Street
Wilmington, Delaware 19801

VIA: FED EX Overnight

Re: <u>Objection to Claim in Chapter 11 Birch Telecom, Inc., et al., Case No. 05-12237 (PJW)</u>

Dear Judge Walsh:

It is The American Registry of Internet Numbers, Inc. ("ARIN")'s understanding based on the objection documentation dated March 13, 2006, that ARIN's previously submitted claims, in aggregate of $9,200, have been determined to be "no basis claims." ARIN respectfully requests reconsideration of the outstanding balances due for full payment in the bankruptcy plan.

For your reference, ARIN is a <u>non-profit</u> organization responsible for managing the Internet number resources for North America as well as portion of the Caribbean. It is one of five Regional Internet Registries (RIRs) worldwide which collectively provide Internet number resources (IP addresses and ASN number) registration services to all regions around the globe. Internet Protocol (IP) addresses and Autonomous System numbers are unique identifiers that computers use to identify hosts and networks connected to the Internet, and are used to support routing through the Internet. ARIN is distinct from the businesses that register domain names for consumer and commercial use.

ARIN's functions derive from the fact that the Internet is a decentralized, international network "regulated" through a combination of cooperation, coordination, and consensus building. ARIN may be best understood by reference to the State, Federal, and international bodies that regulate the telephone network. The North American Numbering Plan Administration (NANPA) designates area codes for state and provincial jurisdictions. Public Utilities Commissions (PUC) within the states, or provinces, then allocate telephone numbers in blocks to telephone service providers, who in turn assign them to individual users. ARIN functions rather like NANPA and the PUC combined. ARIN allocates number resources to Internet Service Providers (ISPs), who may further allocate number resources; and, end-users who use the number resources directly.

3635 Concorde Parkway
Suite 200
Chantilly, VA 20151
Tel: +1.703.227.9840
Fax: +1.703.227.0671

The Honorable Peter J. Walsh
March 27, 2006
Page Two

These organizations often use number resources to providing network services or build internal networks. When an organization provides Internet services or develops networks, it requests number resources from ARIN, and pays a nominal fee for services provided. The fee is paid upon registration for the forthcoming year, and is paid in advance each year on the anniversary of that date. Because ARIN takes its mission of service very seriously, ARIN recognizes that businesses would experience severe hardship from revocation of Internet number resources and behaves appropriately. The registration of number resources is a service provided by ARIN through a service contract; it is not an *asset* of the debtor. Internet number resources are neither real property or transferable. Accordingly, the contract must be treated as a contract in the bankruptcy process.

ARIN requests the Counsel to the Debtors proceed with one or more of following courses of action:

**1. The ARIN agreement may be a utility contract under 11 USC Section 366.**

"The Bankruptcy Code does not define the term "utility" but the legislative history indicates that this section was intended to cover those utilities that have a special position with respect to the debtor, "such as an electric company, gas supplier, or telephone company that is a monopoly in the area so the debtor cannot easily obtain comparable services from another utility." Such services as water, electricity, gas, and phones are typically regarded as "necessary to meet minimum standards of living" *in re Moorefield*, 218 B.R. 795 (Bankr. M.D.N.C.1997). In an era of competitive local telecommunications services, the "monopoly" factor has been relaxed. *See In re One Stop Realtour Place, Inc*, 268 B.R. 430 (Bankr.E.D.Pa. 2001).

Conduits for utilities, as well as the utility companies themselves, may be considered "utilities" for the purposes of Section 366 because of their indispensable nature. *In re Good Time Charlie's Ltd.*, 25 B.R. 226 (Bankr. Pa,1982) (Shopping mall required to continue to provide electricity to tenant because of expense of hooking up direct service from the utility).

Furthermore, bankruptcy courts are beginning to view even residential Internet service as a basic service. For example, courts allowed hardship discharge of student loans to individual debtors whose basic expenses include Internet service. *See, e.g., n re Ivory*, 269 B.R. 890 (Bankr..N.D.Ala.,2001).

Birch Telecom, Inc., et al. must provide adequate assurance of payment of the amount due under the contract during the bankruptcy. *See* 11 U.S.C. § 366(b).

The Honorable Peter J. Walsh
March 27, 2006
Page Three

**2. Birch Telecom, Inc., et al. may assume or reject the ARIN agreement.**

The Bankruptcy Code requires that a Trustee or Debtor-in-Possession assume or reject executory agreements, such as this one. 11 U.S.C. 365(a). The ARIN agreement with your company is an executory agreement because the client pays for a registration on a going-forward basis.

Under Section 365(b)(1), the Debtor-in-Possession or Trustee may not assume the executory agreement that is in default until all defaults are cured. Therefore, the Debtor-in-Possession must pay all outstanding invoices and assume the contract, if ARIN is expected to continue to perform under that contract.

Since this is a Chapter 11 case, the agreement must be assumed, *and all defaults cured*, before the confirmation. Section 365(a) further provides that if the agreement is in default, Birch Telecom, Inc., et al. must provide ARIN with adequate assurance of payment under the agreement. If such assurance is not provided in the form of full payment, ARIN will move the Court for such adequate assurance.

In any event, ARIN will continue to perform under any existing agreement, not in default, until the end of the agreement term on the anniversary date, but will not consent to renew the agreement unless and until it has been assumed by the Trustee or Debtor-in-Possession and all outstanding balances paid.

Should Birch Telecom, Inc., et al. decide that they longer desire the services of ARIN, you may reject the ARIN agreement and services will be terminated. ARIN will agree to waive its claim for such money upon receipt of written notification that Birch Telecom, Inc., et al. is rejected the ARIN agreement and no longer needs the services of ARIN.

The Honorable Peter J. Walsh
March 27, 2006
Page Four

### 3. Birch Telecom, et al. can pay ARIN in the "Ordinary Course of Business".

In addition, or in the alternative, we urge Birch Telecom, Inc., et al. handle this small contract in the "ordinary course of business" pursuant to Section 363(c)(1) of the Bankruptcy Code. Given the relatively small and routine nature of this service contract, generally invoices may be paid as received.

Sincerely,

Nathan E. Davis
Director of Operations
The American Registry for Internet Numbers

cc:   Raymond A. Plzak, President and CEO, ARIN
      Stephen M. Ryan, General Counsel, Manatt, Phelps, and Phillips

Attachments
      Outstanding Invoices
      Court Filed Form B10