1   MANATT, PHELPS & PHILLIPS, LLP
    STEPHEN M. RYAN (DC Bar No. 359099) (sryan@manatt.com)
2   700 12th Street, N.W., Suite 1100
    Washington, DC  20005-4075
3   Telephone:   (202) 585-6500
    Facsimile:    (202) 585-6600
4
    MANATT, PHELPS & PHILLIPS, LLP
5   CHAD S. HUMMEL (CA Bar No. 139055) (chummel@manatt.com)
    JACK S. YEH (CA Bar No. 174286) (jyeh@manatt.com)
6   11355 W. Olympic Boulevard
    Los Angeles, CA  90064
7   Telephone:   (310) 312-4000
    Facsimile:    (310) 312-4224
8
    MANATT, PHELPS & PHILLIPS, LLP
9   CHRISTOPHER L. WANGER (CA Bar No. 164751) (cwanger@manatt.com)
    JOHN P. KERN (CA Bar No. 206001) (jkern@manatt.com)
10  1001 Page Mill Road, Building 2
    Palo Alto, CA  94304-1006
11  Telephone:   (650) 812-1300
    Facsimile:    (650) 213-0260
12
    Attorneys for *Defendant*
13  AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                        SAN JOSE DIVISION

17  GARY KREMEN, an individual,          | Case No. **C 06-2554 JW**
                                         | [Related to Case No. C 98-20718 JW]
18                  Plaintiff,
                                         | (Assigned to the Honorable James Ware)
19          vs.
                                         | **REPLY MEMORANDUM OF**
20  AMERICAN REGISTRY FOR INTERNET       | **AMERICAN REGISTRY FOR**
    NUMBERS, LTD., a Virginia corporation,| **INTERNET NUMBERS, LTD. IN**
21                                       | **SUPPORT OF MOTION TO DISMISS**
                    Defendant.           | **OR, ALTERNATIVELY, FOR STAY**
22
                                         | Hearing Date:   October 23, 2006
23                                       | Time:            9:00 a.m.
                                         | Courtroom:       8, 4th Floor
24
                                         | Action Filed:    April 12, 2006
25                                       | TRIAL DATE:      NONE SET

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6

REPLY IN SUPPORT OF MTN. TO DISMISS
CASE NO. C 06 2554 JW

# TABLE OF CONTENTS

**Page**

I.  REPLY INTRODUCTION ........................................................................................... 1

II.  LEGAL ANALYSIS ................................................................................................ 1

    A.  Plaintiff's Claims Are Time-Barred ............................................................... 1

        1.  There Is No New and Independent Act Alleged that Would Reset the Statute of Limitations for Kremen's Antitrust Claims Under The Sherman Act and Cartwright Act ............................................................ 2

        2.  The "Continuing" Nature of ARIN's Alleged Torts and Purported "Duties" Do Not Toll, Suspend or Otherwise Postpone the Applicable Statutes of Limitations for Kremen's Conversion, Fiduciary Duty and Unfair Competition Claims Which Accrued in 2001 ............................................................................................................ 4

            a.  Kremen's State Law Claims Accrue Upon the Act That Inflicts the Alleged Harm ............................................................. 4

            b.  A Continuing Act Does Not Extend the Statute of Limitations ...................................................................................... 5

    B.  Each And Every Cause Of Action Fails To State Any Claim Upon Which Relief Can Be Granted ................................................................................ 8

        1.  Plaintiff's Antitrust Claims Must Be Dismissed ...................................... 8

            (1)  Kremen's Antitrust Claims Are Premised Upon ARIN's Denial of His Claim to the IP Resources and the Ensuing Negotiations Between the Parties, and Are Clearly Based on ARIN's Interest in the Underlying Litigation ........................................................... 8

            (2)  Kremen's Antitrust Claims Are Derived From And Are Dependent Upon the Court's September 2001 Court Order ...................................................................... 10

           b.  Kremen Has Not Alleged A Viable Section 1 Claim.................... 11

            (1)  There Is No Cognizable Combination or Conspiracy ....... 11

                (a)  ARIN cannot conspire with its President as a matter of law ...................................................... 11

                (b)  Kremen has failed to plead any concerted conduct by any other individuals or entities, and has certainly failed to plead such allegations with the requisite specificity ............... 12

                (c)  Kremen cannot and does not refute the pro-competitive effects of the allocation policies........ 12

            (2)  Kremen Fails To Allege An Unreasonable Restraint On Trade That Harms Competition ................................... 14

                (a)  Kremen alleges only harm to himself .................. 14

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6

i

REPLY IN SUPPORT OF MTN. TO DISMISS
CASE NO. C 06 2554 JW

**TABLE OF CONTENTS**
(continued)

Page

(b)    Kremen's new argument that ARIN's application of its standard terms and conditions is "inconsistent, arbitrary and biased" is not only flatly contradicted by the allegations in the Complaint, but even if it were implied, no facts to support it are alleged ................................................. 15

(3)    Kremen Has Failed to Plead Cognizable Antitrust Injury ......................................................... 16

c.    Kremen Has Failed To Allege A Viable Section 2 Claim ........... 17

2.    Kremen's State Claims Of Conversion, Breach Of Fiduciary Duty And Unfair Business Must Be Dismissed Because They Fail To State Any Claim Upon Which Relief Can Be Granted ............................ 19

a.    Plaintiff's Conversion Claim Should Be Dismissed Because It Fails To State Any Claim Upon Which Relief Can Be Granted ................................................................................. 19

b.    Plaintiff's Breach Of Fiduciary Duty Claim Should Be Dismissed Because It Fails To State Any Claim Upon Which Relief Can Be Granted ........................................................ 23

c.    Plaintiff's California Unfair Competition Claim Should Be Dismissed Because It Fails To State Any Claim Upon Which Relief Can Be Granted ........................................................ 24

C.    This Lawsuit Should Be Stayed Pending Disposition Of ARIN's Application To Modify Or Clarify The September 2001 Order ......................... 24

III.    CONCLUSION ................................................................................ 25

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
    486 U.S. 492 (1998)...................................................................................... 14

5

*American Adver. Management, Inc. v. General Tel. Co.,*
    190 F.3d 1051 (9th Cir. 1999)...................................................................... 14

6

*American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp.,*
    75 F.3d 1401 (9th Cir. 1996)........................................................................ 19

7

*American Council of Certified Podiatric Physicians & Surgeons v. American Bd.*
    *of Podiatric Surgery,*
    185 F.3d 606  (6th Cir. 1999)....................................................................... 12

8

9

*Armstrong v. Manzo,*
    380 U.S. 545 (1965)...................................................................................... 22

10

*Bennett v. Hibernia Bank,*
    47 Cal. 2d 540 (1956) .................................................................................... 6

11

*Branch v. Tunnell,*
    14 F.3d 449 (9th Cir. 1994).......................................................................... 18

12

*Cahill v. Liberty Mut. Ins. Co.,*
    80 F.3d 336 (9th Cir. 1996).................................................................... 1, 18

13

14

*Chavez v. Carter,*
    256 C.A. 2d 577 (1967) ................................................................................. 7

15

*City of Atascadero v. Merrill Lynch,*
    68 Cal. App. 4th 445 (1998) ........................................................................ 23

16

*Columbia Pictures Indus., Inc. v. Professional Real Estate Inv., Inc.,*
    944 F.2d 1525 (9th Cir. 1991)....................................................................... 8

17

*Copperweld Corp. v. Independence Tube Corp.,*
    467 U.S. 752 (1984)...................................................................................... 12

18

19

*Corwin v. Los Angeles Newspaper Service Bureau, Inc.,*
    4 Cal. 3d 842 (1971) ...................................................................................... 3

20

*Coy v. E.F. Hutton & Co.,*
    44 Cal. App. 2d 386 (1941) ........................................................................... 4

21

*de Vries v. Brumback,*
    53 Cal. 2d 643 (1960) ................................................................................. 5, 6

22

*Fazio v. Hayhurst,*
    247 C.A. 2d 200 (1966) ................................................................................. 7

23

24

*First Nat'l Bank v. Thompson,*
    60 Cal. App. 2d 79 (1943)............................................................................. 4

25

*Fisher v. City of Berkeley,*
    475 U.S. 260 (1986)...................................................................................... 11

26

*Forcier v. Microsoft Corp.,*
    123 F. Supp. 2d 520 (N.D. Cal. 2000) .......................................................... 5

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6                                    iii                    REPLY IN SUPPORT OF MTN. TO DISMISS
                                                                     CASE NO. C 06 2554 JW

**TABLE OF AUTHORITIES**
(continued)

Page

*G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256 (1983) ........................................................... 3

*Galbraith v. County of Santa Clara*,
   307 F.3d 1119 (9th Cir. 2002) .......................................................................................... 18

*Glenn Holly Entertainment, Inc. v. Tektronix, Inc.*,
   343 F.3d 1000 (9th Cir. 2003) .......................................................................................... 16

*Gregory v. Fort Bridger Rendezvous Ass'n*,
   448 F.3d 1195 (10th Cir. 2006) ........................................................................................ 13

*Harshbarger v. Philip Morris, Inc.*,
   2003 WL 23342396, *1, *6 (N.D. Cal. April 1, 2003) ...................................................... 4

*Headwaters Inc. v. U.S. Forest Serv.*,
   399 F.3d 1047 (9th Cir. 2005) .......................................................................................... 22

*Holden v. Hagopian*,
   978 F.2d 1115 (9th Cir. 1992) .......................................................................................... 18

*Imperial Point Colonnades Condominium, Inc. v. Manguarian*,
   (5th Cir. 1977), 549 F.2d 1029, Cert. denied 434 U.S. 859, 98 S.Ct. 185, 54
   L.Ed.2d 132") ..................................................................................................................... 3

*In re Nine West Shoes Antitrust Litig.*,
   80 F. Supp. 181 (S.D.N.Y. 2000) ..................................................................................... 12

*Intermedics, Inc. v. Ventritex, Inc.*,
   822 F. Supp. 634 (1993) ..................................................................................................... 4

*Jolly v. Eli Lilly & Co.*,
   44 Cal. 3d 1103 (1988) ....................................................................................................... 5

*Kingray, Inc. v. National Basketball Ass'n*,
   188 F. Supp. 2d 1177  (S.D. Cal. 2002) ...................................................................... 15, 16

*Kremen v. Cohen*, U.S.D.C. N.D. Cal. Case No. C98 20718 JW ..................................... passim

*Leyva v. Certified Grocers of California, Ltd.*,
   593 F.2d 857 (9th Cir. 1979) ............................................................................................ 24

*Liberty Lake Inv., Inc. v. Magnuson*,
   12 F.3d 155 (9th Cir. 1993) ................................................................................................ 9

*Llewellyn v. Crothers*,
   765 F.2d 769 (9th Cir. 1985) ............................................................................................ 12

*Martin v. Wilks*,
   490 U.S. 755 (1989) .......................................................................................................... 22

*Matushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .......................................................................................................... 12

*Naftzger v. American Numismatic Soc'y*,
   42 Cal. App. 4th 421 (1996) ........................................................................................... 4, 7

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,
   6 Cal.3d 176 (1971) ............................................................................................................ 7

*Norgart v. Upjohn Co.*,
   21 Cal. 4th 383 (1999) ........................................................................................................ 5

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6

iv

REPLY IN SUPPORT OF MTN. TO DISMISS
CASE NO. C 06 2554 JW

**TABLE OF AUTHORITIES**
(continued)

Page

*Pace Indus., Inc. v. Three Phoenix Co.,*
  813 F.2d 234 (9th Cir. 1987) ................................................................. 2, 3

*Saxer v. Philip Morris, Inc.,*
  54 Cal. App. 3d 7 (1975) ............................................................................. 3

*Snapp & Assocs Ins. Servs, Inc. v. Robertson,*
  96 Cal. App. 4th 884 (2002) ...................................................................... 5

*Sosa v. DIRECT TV, Inc.,*
  437 F.3d 923 (9th Cir. 2006) ...................................................................... 8

*Strasberg v. Odyssey Group, Inc.,*
  51 Cal. App. 4th 906 (1996) .................................................................. 4, 6

*Tanaka v. University of So. Cal.,*
  252 F.3d 1059 (9th Cir. 2001) ........................................................ 15, 18, 19

*TV Communications Network v. Turner Network Television, Inc.,*
  964 F.2d 1022 (1992) .......................................................................... 15, 17

*U.S. v. Rosedin Elec., Inc.,*
  122 F.R.D. 230 (N.D. Cal. 1987) ............................................................... 2

*United States v. Grinnell Corp.,*
  384 U.S. 563 (1966) .................................................................................. 17

*Viazis v. American Ass'n of Orthodontists,*
  314 F.3d 758 (5th Cir. 2002) .................................................................... 17

*Woodbridge Plastics, Inc. v. Borden, Inc.,*
  473 F. Supp. 218 (S.D.N.Y.), *aff'd,* 614 F.2d 1293 (2d Cir. 1979) ........ 3

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
  401 U.S. 321 (1971) .................................................................................... 3

**STATUTES**

15 U.S.C. § 1 ............................................................................................ 3, 11

15 U.S.C. § 15b ............................................................................................... 1

Business & Professions Code § 16750.1 ...................................................... 2

Business & Professions Code § 17200 ...................................................... 2, 5

Business & Professions Code § 17208 ...................................................... 2, 5

Civil Code § 3426 ........................................................................................... 2

Civil Procedure Code § 338(c) ...................................................................... 2

**OTHER AUTHORITIES**

3 Witkin, Cal. Proc. 4th (1997) ..................................................................... 5

*Black's Law Dictionary, Eighth Ed.*
  1114 (Bryan A. Garner, et al., eds., West 2004) ................................. 9, 20

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6

v

REPLY IN SUPPORT OF MTN. TO DISMISS
CASE NO. C 06 2554 JW

**TABLE OF AUTHORITIES**
(continued)

**Page**

**RULES**

Fed R. Evid. 408 ........................................................................................................... 9, 10

Fed R. Civ. P. 12 ................................................................................................................ 1

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41043405.6

vi

REPLY IN SUPPORT OF MTN. TO DISMISS
CASE NO. C 06 2554 JW

1

# I.    REPLY INTRODUCTION

2        Kremen's Opposition does *not* dispute ARIN's statements of law.  Neither does it

3  meaningfully *address* ARIN's arguments demonstrating the legal insufficiency of Kremen's

4  claims.  Instead, Kremen incorrectly accuses ARIN of deliberately misconstruing the Complaint

5  but then liberally seeks to alter his key allegations in material ways in an attempt to avoid

6  dismissal.  Because this Court must consider the claims as pleaded (*Cahill v. Liberty Mut. Ins.*

7  *Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996)), Kremen's efforts to rewrite his claims and change the

8  theories of recovery cannot overcome this Rule 12 Motion.  Moreover, as detailed below, none of

9  Kremen's efforts in this regard change the fundamental problems with his legal theories:  his

10  claims are time barred, ARIN's conduct in seeking to negotiate a settlement concerning the

11  disputed Court Order is immune from antitrust scrutiny, there is no "combination or conspiracy"

12  that unreasonably restrains trade, ARIN has not acquired or maintained an "illegal monopoly"

13  through exclusionary conduct, and there simply is no harm to competition or other tortious

14  conduct.  ARIN's Opposition in fact reveals this case for what it is: an effort to misuse the Court

15  system to extract unjustified exemptions from the rules that universally govern the allocation of

16  IP resources.[1]

17

# II.    LEGAL ANALYSIS

18        ARIN's Motion to Dismiss should be granted in its entirety and the Complaint

19  dismissed with prejudice for the reasons set forth below.

20  **A.    Plaintiff's Claims Are Time-Barred.**

21        Kremen concedes (as he must) that the *maximum limitations period* applicable to

22  the claims asserted in the Complaint is *four years*.[2]  In order to avoid the applicable limitations

23  _____

24  [1] In the alternative to outright dismissal with prejudice, ARIN respectfully requests that this Court
stay the present lawsuit pending disposition of ARIN's motion to modify or clarify this Court's

25  September 17, 2001 Order issued by the Honorable James Ware in the related case of *Kremen v.
Cohen*, U.S. District Court for the Northern District of California, Case No. C98 20718 JW

26  (which motion is concurrently pending in that action), an order upon which this lawsuit is
fundamentally based.

27  [2] Indeed, Plaintiff's federal antitrust causes of action under the Sherman Act (Claims 1-4;
Complaint, ¶¶ 84-114) are subject to a <u>four-year statute of limitations</u>.  *See* 15 U.S.C. § 15b

28  ("Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6                                    1                    REPLY IN SUPPORT OF MTN. TO DISMISS
CASE NO. C 06 2554 JW

1   periods, Kremen contends that all of the limitations periods were extended under a fatally flawed

2   "continuing tort" theory.

3          While a "continuing tort" theory is viable under federal law under certain

4   circumstances with respect to Kremen's antitrust claims, there "*must be a new and independent*

5   *act that is not merely a reaffirmation of a previous act*" to trigger this extension doctrine. *Pace*

6   *Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987). Kremen's argument fails

7   for this reason. There simply is no new or independent act alleged in the Complaint that is

8   applicable in this case. While Kremen maintains that his state law claims should survive under

9   the same "continuous" theory applicable to federal antitrust cases (Opp. at 6:6-6:9), no such

10  theory exists under California law. Contrary to Kremen's contentions, he cannot revive or toll

11  any of his claims, as they are expressly time-barred. The applicable statutes of limitations began

12  to run when the "harm" allegedly caused by ARIN's conduct accrued – when the 2001 Order was

13  entered – nearly *five* years ago. Kremen delayed in filing the present lawsuit until after the

14  maximum limitations period of four years expired in *November 2005*.

15      **1.    *There Is No New and Independent Act Alleged that Would Reset the Statute of***
            ***Limitations for Kremen's Antitrust Claims Under The Sherman Act and***
16          ***Cartwright Act.***

17          Kremen contends that his federal and state antitrust claims are not time-barred

18  purportedly because ARIN engaged in a "continuing" antitrust violation (resetting the statute of

19  limitations) each time Kremen repeated his demand to ARIN to transfer the IP Resources at issue

20  in this litigation.[3]  (Opp. at 2-4, *citing Woodbridge Plastics, Inc. v. Borden, Inc.*, 473 F. Supp.

21  ─────────────────────────────────────────────
    barred unless commenced within four years after the cause of action accrued"). Likewise,
22  Plaintiff's California antitrust causes of action under the Cartwright Act are subject to a <u>four-year</u>
    <u>statute of limitations</u> (Claim 5; Complaint, ¶¶ 115-121), per Cal. Bus. & Prof. Code §16750.1,
23  *U.S. v. Rosedin Elec., Inc.*, 122 F.R.D. 230, 248 (N.D. Cal. 1987), as is Plaintiff's statutory Unfair
    Competition claim under Bus. & Prof. Code § 17200, *et seq.* (Claim 8; Complaint, ¶¶ 141-147.)
24  Cal. Bus. & Prof. Code § 17208 ("any cause of action pursuant to this chapter shall be
    commenced within <u>four years</u> after the cause of action has accrued"). Plaintiff's Conversion
25  claim (Claim 6; Complaint, ¶¶ 122-131) is subject to an even shorter <u>three-year statute of</u>
    <u>limitations,</u> Cal. Civ. Proc. Code § 338(c), as is Plaintiff's Breach of Fiduciary Duty claim (Claim
26  7; Complaint, ¶¶ 132-140). Cal. Civ. Code § 3426.

27  [3] Specifically, Kremen asserts a "continuing" antitrust violation based upon: (1) the parties'
    efforts to negotiate a resolution of this dispute from 2003 to 2004; (2) the continuing withholding
28  of the IP Resources; (3) Kremen's continuing inability to derive revenues from the IP Resources;

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41043405.6                    2                    REPLY IN SUPPORT OF MTN. TO DISMISS
                                                   CASE NO. C 06 2554 JW

1    218, 221 (S.D.N.Y.), *aff'd*, 614 F.2d 1293 (2d Cir. 1979)).

2              Ninth Circuit case law does not support this argument.  The statute of limitations

3    for federal antitrust claims begins to run when the defendant commits the act that inflicts the

4    alleged injury to the plaintiff and is not capable of being reset unless there is "*a new and*

5    *independent act that is not merely a reaffirmation of a previous act*."  *Pace Indus., Inc. v. Three*

6    *Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987).[4]  The same is true with respect to California

7    antitrust law claims under the Cartwright Act.  *See, e.g., G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d

8    256, 265 (1983) ("The Cartwright Act is patterned after the federal Sherman Anti-Trust Act (15

9    U.S.C., § 1 *et seq.*) and decisions under the latter act are applicable to the former" (*citing*

10   *Corwin v. Los Angeles Newspaper Service Bureau, Inc.,* 4 Cal. 3d 842, 852 (1971)); *Saxer v.*

11   *Philip Morris, Inc.*, 54 Cal. App. 3d 7, 19 (1975))).  As such, a California antitrust claim accrues

12   when the defendant first participates in the act that inflicts the alleged injury on the plaintiff.

13   *Pace*, 813 F.2d at 238.

14             Here, Kremen contends that the applicable statutes of limitations were reset each

15   time ARIN refused each of Kremen's demands for transfer of IP Resources that had been

16   allocated to Cohen.  However, ARIN's reiterated refusals to transfer the IP Resources (unless

17   Kremen agreed to the terms and conditions for allocation and use that are applicable to other

18   registrants) are clearly not new *independent* acts.  To the extent that Kremen contends there was a

19   subsequent transfer of a particular block of IP Resources to a third party (LACNIC), Kremen's

20

21   and (4) ARIN's continuing use of its registration agreement.  (Opp. at 2-4.)

     [4] Kremen's federal antitrust claims are time-barred even under the New York District Court case
22   law Kremen cites, *Woodbridge Plastics, Inc. v. Borden, Inc.*, 473 F. Supp. 218 (S.D.N.Y.), *aff'd*,
     614 F.2d 1293 (2d Cir. 1979).  According to *Woodbridge*, a federal antitrust claim under the
23   Sherman Act accrues at the distinct moment when a defendant commits an act that injures a
     plaintiff's business, and, at that moment, the statue of limitations begin to run.  *Woodbridge*
24   *Plastics*, 473 F. Supp. at 221 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S.
     321, 338 (1971) ("Generally, a cause of action accrues and the statue begins to run when a
25   defendant commits an act that injures a plaintiff's business").  All subsequent events causing
     harm to the injured party stemming from the same initial injurious act do not extend the statue of
26   limitations.  *Id.*  ("where all damages complained of necessarily result from a pre-limitations act
     by defendant, no new cause of action accrues for any subsequent acts…because those acts do not
27   injure plaintiff.'  *Imperial Point Colonnades Condominium, Inc. v. Manguarian*, (5th Cir. 1977),
     549 F.2d 1029, 1035, Cert. denied 434 U.S. 859, 98 S.Ct. 185, 54 L.Ed.2d 132").

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6                                3                    REPLY IN SUPPORT OF MTN. TO DISMISS
                                                              CASE NO. C 06 2554 JW

reliance on such a claim is misplaced because it is not pleaded and improperly assumes that Kremen had unfettered "ownership" rights to the IP Resources in the first place.  Accordingly, Kremen's antitrust claims are time-barred as a matter of law.

> **2.      *The "Continuing" Nature of ARIN's Alleged Torts and Purported "Duties" Do Not Toll, Suspend or Otherwise Postpone the Applicable Statutes of Limitations for Kremen's Conversion, Fiduciary Duty and Unfair Competition Claims Which Accrued in 2001.***

> a.      Kremen's State Law Claims Accrue Upon the Act That Inflicts the Alleged Harm.

Kremen's California state law claims are also time-barred because the claims accrued over four years ago.  It is well-settled that the three-year statute of limitations for conversion is triggered by the act of wrongfully taking property.  *Strasberg v. Odyssey Group, Inc.*, 51 Cal. App. 4th 906, 915-16 (1996); *see also Coy v. E.F. Hutton & Co.*, 44 Cal. App. 2d 386, 390 (1941) (the plaintiff's cause of action accrued the day of the alleged conversion of his stock and suit against stockbroker filed more than four years later was barred by statute of limitations); *First Nat'l Bank v. Thompson*, 60 Cal. App. 2d 79, 83 (1943) ((citing *Coy*) suit to recover shovel from person who purchased it from one who had not satisfied the terms of his conditional sales contract barred because filed more than three years after conversion).  "In practical terms, a conversion can only occur after an owner has entrusted his property to another.  Thereafter, if the possessor acts in a manner inconsistent with the owner's interests, the owner's cause of action for conversion accrues at that time."  *Naftzger v. American Numismatic Soc'y*, 42 Cal. App. 4th 421, 428-29 (1996) (theft of antique coins by substituting inferior ones; limitations period did not commence until discovery both of theft and of possessor's identity) (citation omitted).

Likewise, it is also well-settled that "[t]he statute of limitations for [breach of fiduciary duty] claims begins to run when the cause of action accrues[,]" *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 640 (1993), and that "[g]enerally, an action accrues either when the wrongful act is done, or when the wrongful result occurs, whichever is later." *Harshbarger v. Philip Morris, Inc.*, 2003 WL 23342396, *1, *6 (N.D. Cal. April 1, 2003) (citing *Norgart v.*

1  *Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)); see also *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109
2  (1988).

3       Not surprisingly, the four-year statute of limitations for a California Unfair
4  Competition claim under Business and Professions Code Section 17200, *et seq.*, accrues when the
5  defendant's conduct occurs, not when the plaintiff learns about the conduct.  Cal. Bus. & Prof.
6  Code § 17208; *Snapp & Assocs Ins. Servs, Inc. v. Robertson*, 96 Cal. App. 4th 884, 891 (2002)
7  ("'discovery rule,' which delays accrual of certain causes of action until the plaintiff has actual or
8  constructive knowledge of facts giving rise to the claim, does not apply [to causes of action under
9  Bus. & Prof. Code § 17200]").  When allegations regarding the defendant's conduct span a period
10 of time, the California Unfair Competition cause of action accrues at the time of the initial
11 conduct.  *Snapp*, 96 Cal. App. 4th at 892 (Bus. & Prof. Code § 17200 cause of action accrued at
12 the time of defendant's alleged initial wrongdoing); see also *Forcier v. Microsoft Corp.*, 123 F.
13 Supp. 2d 520, 527 (N.D. Cal. 2000) (Bus. & Prof. Code § 17200 cause of action accrued when
14 complaint alleged defendant initially misappropriated trade secrets).

15            b.    A Continuing Act Does Not Extend the Statute of Limitations.

16       Kremen contends that the conversion claim is not time-barred purportedly because
17 the California Supreme Court held in *de Vries v. Brumback*, 53 Cal. 2d 643, 647 (1960), that
18 conversion "is a continuing tort as long as the person entitled to the use and possession of his
19 property is deprived thereof…"  (Opp. at 4:19-23.)  Premised upon this legal platitude, Kremen
20 contends that it "may file an action at any time in the course of the continuing tort, or within the
21 applicable statute of limitation." (Opp. at 4:21-25, citing 3 Witkin, Cal. Proc. 4th (1997), Actions
22 § 552.)   Similarly, with respect to the Breach of Fiduciary Duty claim, Kremen contends that
23 ARIN owed a "continuing duty" to Kremen (similar to that of a doctor or lawyer) and that "the
24 statute does not run during the relationship…but instead commences when the patient or client
25 suffers damages from the wrongful conduct." (Opp. at 4, n.1.)  Additionally, since Kremen's
26 Unfair Competition claim is premised upon its antitrust, conversion and breach of fiduciary duty
27 claims (as predicate acts) under Business and Professions Code Section 17200, et seq., Kremen

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41043405.6                              5                    REPLY IN SUPPORT OF MTN. TO DISMISS
                                                            CASE NO. C 06 2554 JW

1    contends that this claim is timely for the same reasons the underlying claims are not time-barred.

2    Kremen's reliance on the purported "continuing" nature of the alleged tort and/or

3    duty is misplaced.  As a practical matter, Kremen's theory indefinitely tolls any applicable statute

4    of limitations and eviscerates any need to time bar filing an action so long as ARIN continues to

5    refuse to transfer the requested IP Resources.  Kremen's espoused theory would suspend or

6    otherwise postpone the statute of limitations in perpetuity so long as ARIN maintains a fiduciary

7    relationship with Kremen (which in Kremen's view would be forever).  Not only would this

8    theory result in the exception swallowing the rule, it is completely unsupported under California

9    law.

10    Kremen's Opposition fails to identify a single case (as there does not appear to be

11    one) that suspends or otherwise postpones the accrual date of a conversion claim based upon the

12    "continuing" nature of the alleged harm suffered by the plaintiff.[5]  Kremen's reliance on the *de*

13    *Vries* case is also misguided.  *de Vries* is not a statute of limitations case and does not even

14    remotely support Kremen's argument that his state-law claims are timely.  Rather, the *de Vries*

15    Court determined that a defendant could be considered to be a joint tortfeasor when joining a

16    continuing conspiracy to convert when he has full knowledge of the prior acts of his co-

17    conspirators and actively participated in the overall purpose to convert all the stolen property to

18    their use and benefit, as an active participant regardless of whether the defendant personally

19    possessed all or any part of the unrecovered stolen property.  53 Cal. 2d at 650.  There is

20    absolutely no discussion whatsoever in the *de Vries* case concerning the tolling, suspension, or

21    postponement of a statute of limitations.  The case is therefore inapposite and completely

22    irrelevant to the issue presented in Kremen's brief on this point.

23    Moreover, while Kremen attempts to analogize his relationship with ARIN to that

24    

25    [5] California courts have carved exceptions to postpone the accrual date of a conversion claim but only where the "fiduciary has concealed the material facts giving rise to the cause of action." *Strasberg*, 51 Cal. App. 4th at 916; *Bennett v. Hibernia Bank*, 47 Cal. 2d 540, 561 (1956).  In this case, concealment is not an issue.  Kremen knew the nature and extent of the IP Resources at issue (the NETBLOCKS), he knew who controlled the alleged IP Resources (ARIN), and he had actual knowledge that the IP Resources were not being transferred or otherwise allocated to him without an express agreement on the terms and conditions relating thereto.

26    

27    

28    

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41043405.6                                6                REPLY IN SUPPORT OF MTN. TO DISMISS
CASE NO. C 06 2554 JW

1  of a patient with doctor or client with lawyer to bootstrap himself into a "continuing duty" and

2  postponed accrual theory (Opp. at 4, n.1), no such similarity exists here.[6]   As a preliminary

3  matter, Kremen has no contractual relationship with ARIN (although he now claims he should be

4  allowed to step into the shoes of Cohen's contractual relationship with ARIN).  More importantly,

5  not every contractual relationship gives rise to a fiduciary duty.  Rather, ARIN acts as a fiduciary

6  *to the public* in its non-governmental organization ("NGO") capacity managing the allocation of

7  IP Resources for the entire Internet community.   Even assuming that Kremen steps into Cohen's

8  contractual shoes, *ARIN is not a fiduciary to the individual registrants with whom it contracts* to

9  allocate resources.

10      Kremen admits that "starting in 2001," ARIN, "deni[ed]…[Kremen's] request to

11  transfer control of the NETBLOCK PROPERTY to Plaintiff."  (Opp. at 5:13; 5:24-6:1.)

12  Accordingly, Kremen's claims accrued in 2001.  ARIN refused to transfer the "NETBLOCKS" to

13  Kremen starting in 2001 and the parties' confrontations at that time put Kremen on notice of the

14  need to protect his alleged IP Resources, thereby triggering the running of the statute of

15  limitations as a matter of law.  *See Nafzger*, 42 Cal. App. 4th at 428-29.

16      Kremen's Supplemental Opposition suggests, without merit, that ARIN's transfer

17  of a particular ASN to LACNIC in 2002 after the September 2001 Order issued somehow renews

18  the statute of limitations.  However, as stated above, the limitations period began to run upon

19  ARIN not providing Kremen with the subject IP resources.

20      For these reasons, Kremen's claims are time-barred as a matter of law and the

21  Complaint should be dismissed with prejudice.

22

23  [6] Plaintiff's theory of "postponed accrual" is not remotely applicable here.  (Opp. at 4, n.1, citing *Chavez v. Carter*, 256 C.A. 2d 577 (1967) and *Fazio v. Hayhurst*, 247 C.A. 2d 200, 203 (1966).)

24  The theory is relevant only "[i]n cases of professional malpractice [where] … postponement of the period of limitations until discovery finds justification in the special nature of the relationship

25  between the professional man and his client."  *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 187-88 (1971) (emphasis added).  No such special relationship between

26  professional and client exists in this case between ARIN and Kremen, and even if it did, the allegations in Kremen's Complaint clearly demonstrate that Kremen did not recently "discover"

27  the harm he complains of, but knew of any such injury since 2001.  (Complaint, ¶¶ 49, 50, 52, 73, 75, 83.)

28

**B.    Each And Every Cause Of Action Fails To State Any Claim Upon Which Relief Can Be Granted.**

    **1.    Plaintiff's Antitrust Claims Must Be Dismissed.**

        a.    <u>ARIN's Conduct Is Immune From Antitrust Scrutiny.</u>

ARIN's negotiations with Kremen in response to his demand to be given particular IP Resources, which demand was based on a disputed interpretation of a September 2001 Court Order in the *Kremen v. Cohen* case, are immune from antitrust liability under the *Noerr-Pennington* doctrine, as settlement negotiations constitute protected "petitioning" activity. (Motion at 6-8.)  Such negotiations are immunized even though ARIN was not a party to that litigation, and despite their out-of-court nature.  (*Id.* at 7-8, *citing Columbia Pictures Indus., Inc. v. Professional Real Estate Inv., Inc.*, 944 F.2d 1525, 1529-30 (9th Cir. 1991) *and Sosa v. DIRECT TV, Inc.*, 437 F.3d 923, 936-38 (9th Cir. 2006), *inter alia*.)

        (1)    <u>Kremen's Antitrust Claims Are Premised Upon ARIN's Denial of His Claim to the IP Resources and the Ensuing Negotiations Between the Parties, and Are Clearly Based on ARIN's Interest in the Underlying Litigation.</u>

Kremen does *not* dispute ARIN's statement of the relevant law holding that *Noerr-Pennington* immunity extends to litigation-related activities, broadly defined, even when conducted by non-parties to litigation.  Kremen's Opposition is, instead, based on: (1) the legally unsupported assertion that "KREMEN's presentation to ARIN of the Sept. 2001 order was not the assertion of a claim against ARIN" (Opp. at 7:19-7:20 (emphasis in original)); (2) "ARIN's refusal to comply, it's [sic] offer to compromise or to provide substitute relief was <u>not</u> an offer of settlement of a claim against it pursuant to [Fed. R. Evid.] 408" (*id.* at 7:20-7:21); and (3) ARIN's position was not based on any "interest in the underlying litigation that spawned the Sept. 2001 order." (*Id.* at 9:9-10.)  These arguments are unavailing for several reasons.

First, Plaintiff's insistence that he was not asserting a "claim" when he demanded that ARIN comply with his interpretation of the September 2001 Court Order or face litigation based on its refusal to do so is absurd and unsupported by any law.  (Opp. at 7:10-23.)  Clearly, Kremen's demand was and remains a legal claim to what he contends erroneously is a property

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6                                    8                    REPLY IN SUPPORT OF MTN. TO DISMISS
                                                                   CASE NO. C 06 2554 JW

1  interest in the subject IP Resources.[7]  Kremen does not cite any authority for his position.

2              Second, Kremen's lexicography – that an "offer to compromise" is not "an offer of

3  settlement" – is nonsensical.  An "offer of compromise" is defined as "[a]n offer by one party to

4  *settle* a dispute amicably (usu. by paying money) to avoid or end a lawsuit or other legal action."

5  *Black's Law Dictionary, Eighth Ed.* 1114 (Bryan A. Garner, et al., eds., West 2004) (emphasis

6  added).  While Kremen argues that he did not have settlement negotiations with ARIN, it is

7  Kremen's Complaint, not his brief, which must be measured.  The Complaint states in pertinent

8  part:

9         Despite Plaintiff's many requests, Defendant ARIN has continuously refused to
10        transfer the NETBLOCK PROPERTY to Kremen in compliance with the Order.

         …Rather than complying with the unequivocal terms of the NETBLOCK ORDER,
11       ARIN's response from the outset was that they "would work something out" with
         KREMEN regarding the NETBLOCK ORDER.  Seemingly unfazed by the
12       Court's directives, **ARIN, by and through its President Mr. Plzak and through
         its counsel, began a negotiation of the terms and conditions of its compliance
13       with the ORDER.  In fact, all correspondence from ARIN regarding the
         NETBLOCK ORDER was designated as confidential settlement
14       communications "PURSUANT TO § 408…"**

15       ARIN's resistance to comply with the NETBLOCK ORDER continued through
         back-and-forth discussions between ARIN, its counsel, and Plaintiff KREMEN
16       into 2005, culminating in ARIN's ultimate refusal to transfer the NETBLOCK
         PROPERTY as ordered.
17

18  (Complaint, ¶¶13, 50, 51 (emphasis supplied)).  Negotiations of precisely this sort receive *Noerr-*

19  *Pennington* immunity under the multiple cases, including *Liberty Lake Inv., Inc. v. Magnuson*, 12

20  F.3d 155, 157-59 (9th Cir. 1993), that ARIN cites in its opening brief.  (*See* Motion at 7, n.5.)

21  Kremen again cites no case law to refute that cited by ARIN establishing the protected nature of

22  these settlement negotiations.

23              Further, Kremen spends several pages discussing whether Fed. R. Evid. 408

24  renders inadmissible at trial (a) Kremen's demand that ARIN turn over the IP Resources or (b)

25  ARIN's subsequent negotiations with Kremen.  (Opp. at 9-11.)  Those issues, however, have no

26  _____

27  [7] A "claim" is "the assertion of an existing right; any right to payment or to an equitable remedy,
    even if contingent or provisional."  *Black's Law Dictionary, Eighth Ed.* 264 (Bryan A. Garner, et
28  al., eds., West 2004).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6                                9                    REPLY IN SUPPORT OF MTN. TO DISMISS
                                                              CASE NO. C 06 2554 JW

1    bearing on whether ARIN can properly invoke *Noerr-Pennington* immunity.  Kremen's

2    discussion of Fed. R. Evid. 408 is entirely inapposite.  The issue is not whether the

3    communications are subject to evidentiary exclusion but whether the parties' conduct *at the time*

4    establishes that they believed their conduct related to the prior litigation and was an effort to

5    resolve their dispute.  Given that the parties characterized their discussions as protected by Fed R.

6    Evid. 408 at the time, there is no real dispute that Kremen acknowledged at the pertinent time that

7    their negotiations related to the underlying litigation.

8          Finally, Plaintiff's assertion that *Noerr-Pennington* immunity cannot apply as

9    ARIN's purported lack of an ownership interest in the IP Resources precluded it from having the

10   requisite "interest in the outcome of the underlying litigation" is insupportable.  (Opp. at 9:5-6.)

11   Plaintiff cites no antitrust case for this naked proposition, nor does he refute any of the cases cited

12   by ARIN in its moving papers, which establish that it did, in fact, have the requisite "interest in

13   the outcome" of the *Kremen v. Cohen* litigation, insofar as that outcome involved the disposition

14   of the IP Resources that were formerly licensed by Cohen.  (*See* Motion at 7, n.5.)  Moreover, the

15   parties' negotiations after the resolution of the underlying litigation confirm their belief at that

16   time that ARIN did, in fact, have an interest in the outcome of that litigation insofar as it

17   pertained to disposition of IP Resources.

18                    (2)    Kremen's Antitrust Claims Are Derived From And Are Dependent
                            Upon the Court's September 2001 Court Order.
19

20         Kremen makes a new, complicated, and contrived secondary argument against

21   application of *Noerr-Pennington* immunity.  ARIN's alleged "misconduct" did not relate to the

22   September 2001 Court Order and therefore cannot constitute protected petitioning of the

23   judiciary.  (Opp. at 8-9.)  In support of this argument, Kremen asserts that ARIN's alleged

24   misconduct consists not only of its purported refusal to comply with the Court Order, but also its

25   imposition upon Kremen of other, "onerous and anti-competitive terms and conditions" as a pre-

26   condition to transfer of the IP Resources.  (*Id.*)

27         Kremen cannot legitimately split the singular Kremen-ARIN negotiations related

28   to the September 2001 Court Order into two distinct parts, nor can he re-write his Complaint in

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6                    10              REPLY IN SUPPORT OF MTN. TO DISMISS
                                             CASE NO. C 06 2554 JW

his Opposition Brief.  By Kremen's own admission, ARIN's insistence that Kremen comply with

the "other" terms and conditions (its *standard* terms and conditions) reflects ARIN's good faith

interpretation of that *same* Court Order and negotiations toward implementation of that Order.

The Complaint charges that:

- "[A]ny such requirement or determination would be contrary to the directive and purpose of the NETBLOCK ORDER as issued."  (Complaint, ¶56 (emphasis in original)).
- "Mr. Plzak further conditioned any transfer of NETBLOCK PROPERTY under the NETBLOCK ORDER upon Plaintiff's agreement to be bound by a contractual provision that would allow ARIN to rescind and cancel KREMEN's ownership or any or all of the NETBLOCK PROPERTY…"  (*Id.*, ¶62 (emphasis in original); *see also* ¶¶64-65, 69 (containing further allegations linking ARIN's insistence that Kremen agree with certain terms and conditions with the court order)).
- "ARIN's resistance to comply with the NETBLOCK ORDER continued…into 2005, culminating in ARIN's ultimate refusal to transfer the NETBLOCK PROPERTY as ordered."  (*Id.*, ¶51 (emphasis in original)).

As the Complaint thus indisputably alleges, *all* of ARIN's alleged conduct relates to the

September 2001 Court Order.  Therefore, all of the "conduct" relating to the implementation of

that Order is immune from antitrust scrutiny under the *Noerr-Pennington* doctrine.

### b.   Kremen Has Not Alleged A Viable Section 1 Claim.

#### (1)   There Is No Cognizable Combination or Conspiracy.

A valid claim under Section 1 of the Sherman Act (15 U.S.C. § 1; "Section 1")

requires an actionable conspiracy between at least two legally separate persons or entities.

(Motion at 9, *citing Fisher v. City of Berkeley*, 475 U.S. 260, 266 (1986).)  Kremen's Complaint

does not plead a combination or conspiracy that may serve as the basis for a Section 1 claim

under even the broadest interpretation of his amorphous allegations.

##### (a)   *ARIN cannot conspire with its President as a matter of law.*

Despite Kremen's efforts to characterize each of the individuals and corporations

listed in the Complaint as "officers and directors" of ARIN who "conspired to restrain trade," the

fact remains that only one person or entity in the Complaint is alleged to have engaged in any

concerted conduct with ARIN:  its President, Raymond Plzak.  (*See* Complaint, ¶¶50-62.)

Because ARIN's President is *not* legally separate from ARIN as a matter of law, Kremen has

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41043405.6                                          11                    REPLY IN SUPPORT OF MTN. TO DISMISS
CASE NO. C 06 2554 JW

1    failed to plead a requisite combination or conspiracy as a matter of law, and his Section 1 claim

2    must be dismissed for this reason alone.  (Motion at 9-10, *citing Copperweld Corp. v.*

3    *Independence Tube Corp.*, 467 U.S. 752, 769 (1984).)

4              (b)    *Kremen has failed to plead **any** concerted conduct by any*
                      *other individuals or entities, and has certainly failed to*
5                     *plead such allegations with the requisite specificity.*

6              Kremen does not dispute that a Section 1 claim requires proof of a conspiracy

7    between at least two legally separate persons or entities.  To avoid this problem, Kremen's

8    Opposition emphatically insists that his Complaint lists "by name" 22 individual officers,

9    directors, and board members of ARIN.  (Opp. at 15.)  This is true but meaningless.  Kremen does

10   not describe what these people *did* that constituted an antitrust violation.  Because a Section 1

11   claim must describe all such facts of conspiracy in detail and a plaintiff cannot maintain such a

12   claim with only bare-bones allegations, the claim must be dismissed.  (Motion at 9-10, c*iting*

13   *Llewellyn v. Crothers*, 765 F.2d 769, 775 (9th Cir. 1985); *In re Nine West Shoes Antitrust Litig.*,

14   80 F. Supp. 181, 191 (S.D.N.Y. 2000), *inter alia*.)

15             (c)    *Kremen cannot and does not refute the pro-competitive*
16                    *effects of the allocation policies.*

17             Even if some ill-defined combination did exist, Section 1 is not violated as a

18   matter of law if the "conspiracy" merely establishes and enforces reasonable membership policies

19   with admitted pro-competitive justifications.  (Motion at 10, *citing American Council of Certified*

20   *Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery*, 185 F.3d 606, 620-22

21   (6th Cir. 1999).)  Because ARIN's maintenance of requirements for entities to register IP

22   addresses is just as consistent with the preservation of ARIN's pro-competitive goals for

23   allocating IP address space efficiently as with concerted action among conspirators, it cannot

24   form the basis for a Section 1 violation.  (Motion at 10-11, *citing Matushita Elec. Indus. Co. v.*

25   *Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).)

26             Kremen does not dispute the holdings or application of either *American Council* or

27   *Matsushita*, which, again, provide that accused conduct that is as consistent with pro-competitive

28   conduct as with anti-competitive conduct cannot form the basis of a Section 1 violation.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41043405.6                              12          REPLY IN SUPPORT OF MTN. TO DISMISS
                                                    CASE NO. C 06 2554 JW

1    Moreover, Kremen cannot legitimately deny that his Complaint expressly acknowledges that

2    ARIN's centralization of the stewardship of IP resources for a broad geographical area ensures

3    the efficient management of those resources.  (Complaint, ¶20, 29, 34.)  For this reason alone, the

4    Complaint fails to state an actionable Section 1 claim.

5          The recent case *Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195 (10th

6    Cir. 2006), is illustrative.  The *Gregory* defendant, known as the FBRA, was a non-profit

7    membership organization that undertook historical re-enactments; the FBRA had exclusive

8    rights from the State of Wyoming to stage an annual re-enactment of a fair (the "Rendezvous") by

9    fur traders in the 19th century.  *Id.* at 1197.  Plaintiffs Sandy and Richard Gregory, a married

10   couple, had sold antique replicas at the fair.  *Id.* at 1198.  Each year, plaintiffs – like everyone else

11   – had to apply to FBRA for one of the limited number of spots on the grounds of the fair.  *Id.*

12   Plaintiffs, who were not members of the FBRA, believed that one year the individual members of

13   the FBRA who also sold antique replicas, etc., conspired to deny plaintiffs access to the fair in

14   order to provide the individual members with better chances of selling their competing goods.  *Id.*

15   Plaintiffs brought multiple Sherman Act claims against FBRA.  *Id.* at 1197.  However, the Tenth

16   Circuit found that the FBRA was within its rights to establish and implement a system for

17   allocating the limited number of spots for vendors at the fair, *and the denial of a spot to plaintiffs*

18   *could not be seen as manifestly anticompetitive because that action left open a spot for somebody*

19   *else.  Id.* at 1204.  The court wrote: "Because more traders apply to sell products at the

20   Rendezvous than space permits, the FBRA must be able to exercise the authority granted to it by

21   the State of Wyoming to determine which applications to accept.  This exercise is rendered

22   impossible, however, when the threat of antitrust liability looms overhead."  *Id.*

23          Just like FBRA in the *Gregory* case, ARIN is well within its legitimate rights to

24   establish and implement a system for allocating finite IP Resources.  Moreover, even a tentative

25   denial of some IP addresses to Kremen (pending his agreement to comply with the established

26   protocols) cannot be anticompetitive.  ARIN's operations would be rendered impossible if the

27   threat of antitrust liability "looms overhead."

28          Furthermore, *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41043405.6                          13                  REPLY IN SUPPORT OF MTN. TO DISMISS
                                                        CASE NO. C 06 2554 JW

(1998), cited by Kremen for the propositions that (1) members of an organization may be deemed conspirators within the meaning of a Section 1 claim, and (2) a membership organization can engage in anticompetitive conduct that is not immune to antitrust scrutiny, is factually distinguishable for at least two reasons. First, *Allied Tube* involved allegations of antitrust violations against a private organization which set industry-wide standards for the products that could be used in electrical wiring systems. *Id.* at 495. None of the parties to that case articulated pro-competitive justifications for the standards-setting system or the actions of the members of the organization. This omission contrasts markedly with *Kremen's* own acknowledgment that ARIN exists to serve the pro-competitive purpose of overseeing the efficient allocation of finite IP Resources. Second, in *Allied Tube*, the members of the private organization allegedly excluded the plaintiff's existing products from being approved under the pertinent standards, economically injuring the plaintiff. *Id.* at 497. In the instant case, in sharp contrast, Kremen does not and cannot allege that ARIN has denied Kremen access to the resources at issue, which he can rent from numerous third parties or obtain from ARIN by simply following the same rules that apply across the board.

> (2)     <u>Kremen Fails To Allege An Unreasonable Restraint On Trade That Harms Competition.</u>

> *(a)*     <u>*Kremen alleges only harm to himself.*</u>

Kremen cannot point to a single allegation in his Complaint indicating how and where competition in the relevant market has been injured by ARIN's establishment and enforcement of standards under which IP resources are allocated. This failure alone is dispositive. *American Adver. Management, Inc. v. General Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999). Kremen's Complaint is replete with allegations of the ways in which he personally has purportedly been injured by ARIN (specifically, ARIN's insistence that Kremen, like every other applicant for IP Resources, complete a short form essentially outlining his plans for the IP Resources that Kremen wants and acknowledging that he cannot maintain registrations for IP Resources that go unused while other people or entities could use them). (*Id.*, ¶¶73-81.) Yet Kremen does not allege, other than in meaningless boilerplate language, that any other persons or

1    entities have been harmed by ARIN's conduct.  While Kremen suggests that the persons

2    establishing the policies have too much control over them as well as some unspecified "economic

3    interests" in the process (*Id.*, ¶¶60, 66, 70), Kremen utterly fails to explain how this alleged

4    situation results in any harm to competition.

5              In his Opposition Brief, Kremen insists that ARIN has mischaracterized the

6    Complaint's allegations of harm to competition.[8]  Kremen argues that his Complaint "has alleged

7    numerous times in detail that ARIN's anticompetitive conduct was directed not solely at himself,

8    but also at others similarly situated – in fact, nearly every new entity into that market." (Opp. at

9    12.)  However, a review of the Complaint establishes that none of the paragraphs cited by

10   Kremen make even general allegations of harm to competition.  Again, even if allegations of

11   harm to competition may be inferred from the totality of the pleading, such vague, factually

12   unsupported allegations are legally insufficient to sustain the harm to competition element of a

13   Section 1 claim.  *Tanaka v. University of So. Cal.*, 252 F.3d 1059, 1062-64 (9th Cir. 2001);

14   *Kingray, Inc. v. National Basketball Ass'n*, 188 F. Supp. 2d 1177, 1186 (S.D. Cal. 2002).

15              (b)   *Kremen's new argument that ARIN's application of its*

16                    *standard terms and conditions is "inconsistent, arbitrary*
                     *and biased" is not only flatly contradicted by the*

17                    *allegations in the Complaint, but even if it were implied, no*
                     *facts to support it are alleged.*

18              Kremen asserts for the first time in his Opposition that the challenged conduct is

19   not *creating* standard terms and conditions but is a "<u>lack</u> of consistency in ARIN's application of

---

[8] It follows that Kremen asserts that none of ARIN's case precedents (*e.g., Tanaka v. University of So. Cal.*, 252 F.3d 1059 (9th Cir. 2001), *inter alia*, discussed at Motion at 11-15) apply to the present case, and Kremen does not analyze any of the cases.  Kremen does argue that ARIN has supposedly misrepresented the holding of *TV Communications Network v. Turner Network Television, Inc.*, 964 F.2d 1022 (1992).  Kremen is wrong; ARIN has accurately represented one of the holdings of that case.  ARIN characterized *TV Communications* as "affirming grant of motion to dismiss plaintiff cable television arbitrator's Section 1 price-fixing claim against cable television operators and programmers, because Complaint made only conclusory allegations of illegality, and did not allege supporting facts." (Motion at 12.)  The TV Communications court itself stated:  "Although TVCN alleges TNT engaged in price fixing, it alleges no facts to support this conclusory assertion.  TVCN's Complaint does not disclose the existence of a pricing agreement.  Accordingly, we conclude TVCN cannot establish a section one claim against TNT based on price fixing."  964 F.2d at 1027.  As can be seen, ARIN's summary of that holding is precise.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6                                    15                    REPLY IN SUPPORT OF MTN. TO DISMISS
                                                                    CASE NO. C 06 2554 JW

1   it [sic] so-called standard procedures." (Opp. at 11:26-11:27 (emphasis in original)). Kremen

2   cites a number of paragraphs in its Complaint which he asserts directly plead this lack of

3   "consistency" by ARIN (*Id.* at 11:27-11:28); however, not one of those paragraphs contains such

4   an allegation. To the contrary, the Complaint repeatedly states that ARIN's policies (and, by

5   implication, any changes over time to those policies) apply *uniformly* to all applicants for IP

6   Resources:

- Complaint, ¶60 ("[I]t is the general 'policy' of ARIN that *all* applications for registration
    and allocation of IP addresses and ASN numbers similarly submit to and comply with
    ARIN's 'justification' policy" (emphasis added));
- Complaint, ¶ 66 ("[I]t is the general 'policy' of ARIN that *all* applications for registration
    and allocation of IP addresses similarly agree to ARIN's 'grab back' policy" (emphasis
    added)); and
- Complaint, ¶70 ("[I]t is the general 'policy' of ARIN that *all* applications for registration
    and allocation of IP addresses similarly agree to such an information collection and
    publication procedure" (emphasis added)).

13          Moreover, to the extent that the vague allegations cited by Kremen may be

14   construed as creating an implied allegation of a lack of consistency by ARIN in applying its

15   procedures, such allegations fail as a matter of law to state the requisite specificity for the harm-

16   to-competition *element* required of Section 1 claims. *Kingray*, 188 F. Supp. 2d at 1186. For

17   example, the Complaint fails to allege: (i) who, if anyone, received favored or special treatment,

18   or a waiver, exemption or modification of those procedures, (ii) when such events took place, or

19   (iii) the specific policy or procedure that was waived or modified.

20                  (3)     Kremen Has Failed to Plead Cognizable Antitrust Injury.

21          As set forth in its moving papers, a Section 1 claim includes "antitrust injury,"

22   which consists of (1) unlawful conduct; (2) causing injury to plaintiff; (3) that flows from that

23   aspect of the conduct which makes it unlawful; and (4) that is of the type that antitrust laws were

24   intended to prevent. (Motion at 15, *citing Glenn Holly Entertainment, Inc. v. Tektronix, Inc.*, 343

25   F.3d 1000, 1008 (9th Cir. 2003).) As demonstrated above, ARIN's conduct was not unlawful,

26   and Kremen's injury (if any) flowed from ARIN's consistent application of standard policies and

27   procedures with legitimate pro-competitive justifications. (Motion at 16.) Therefore, Kremen

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6                16        REPLY IN SUPPORT OF MTN. TO DISMISS
                                    CASE NO. C 06 2554 JW

1   suffered no antitrust injury.  (*Id.*)

2          Kremen insists that "Plaintiff has alleged that he *and others similarly situated* have

3   been unfairly and unlawfully excluded…," again citing Complaint paragraphs that simply do not

4   state what his Opposition Brief argues.   (Opp. at 17:1-17:4 (emphasis supplied)).  Not only does

5   the Complaint fail to reference any harm suffered by others, but even if it had, such allegations do

6   not confer antitrust injury for the reasons stated above, including that the pro-competitive nature

7   of the standards at issue precludes a finding of illegal conduct.  *Viazis v. American Ass'n of*

8   *Orthodontists*, 314 F.3d 758, 761, 766 (5th Cir. 2002).

9                  c.    Kremen Has Failed To Allege A Viable Section 2 Claim.

10         Kremen nowhere disputes ARIN's legal authority establishing the requisite

11  elements of a Section 2 claim and providing that *mere possession* of monopoly power in the

12  relevant market does not constitute a Section 2 monopolization violation.  (Motion at 16, *citing*

13  *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966), *inter alia.*)[9]  Instead, Kremen's

14  Opposition again asserts brand new arguments not alleged in his Complaint in an effort to

15  overcome this Motion.

16         First, Kremen argues that ARIN is not a "natural" monopoly because it was

17  "spawned by a concerted collusion between the largest industry players in the market for IP

18  numbers."  (Opp. 18:21-22.)  Not only is this novel argument missing from the Complaint, it is

19

20  [9] *Grinnell* concerned a conglomerate of companies that together controlled more than 85 percent of the market for protective services (e.g., fire, burglary) for homes provided from central service stations.  384 U.S. at 566-67.  The evidence established that the companies obtained their monopoly by carving up the sub-markets between them and agreeing not to compete with each other, and by buying out competitors and making them agree to stay out of the industry afterward. *Id.* at 568-69.  Notably, the Supreme Court condemned not the monopoly but the way the monopoly was acquired.  *Id.* at 576.  It is therefore significant that ARIN did not achieve its alleged monopoly through such tactics but rather from the consent of affected entities that recognized the need for an organization like ARIN. A related case is *TV Communications Network, Inc. v. Turner Network Tele., Inc.*, 964 F.2d 1022 (10th Cir. 1992), which adjudicated a would-be "wireless cable" television service's antitrust Complaint against Turner Network Television for refusing to offer its programming to the t.v. service to be forwarded on to consumers.  *Id.* at 1023.  The Court gave short shrift to this Complaint, because "a company does not violate the Sherman Act by virtue of the natural monopoly it holds over its own product."  *Id.* at 1025.  Likewise, ARIN has done nothing wrong by holding an alleged monopoly in IP address allocation and registration services.  Kremen must plead some further, unlawful conduct – which he cannot truthfully do – to sustain a Section 2 claim.

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41043405.6                                  17                    REPLY IN SUPPORT OF MTN. TO DISMISS
                                                                  CASE NO. C 06 2554 JW

1   flatly contradicted by it. For example, in his Complaint Kremen expressly pleads that ARIN

2   acceded to its position overseeing IP Resources in North America and other geographical areas by

3   **the consensus of numerous quasi-government agencies and other organizations.** (Complaint,

4   ¶¶27-34.) Kremen cannot change his pleading by way of opposition to a motion to dismiss, as the

5   Court must accept the allegations of the Complaint alone in ruling on ARIN's motion. *Cahill*, 80

6   F.3d at 337-38. Moreover, the Court need not accept as true flatly illogical, inconsistent and

7   objectively untrue allegations. *Cf. Holden v. Hagopian,* 978 F.2d 1115, 1121 (9th Cir. 1992).[10]

8           Second, Kremen insists that he has pled exclusionary conduct because his antitrust

9   claims "are primarily based upon Plaintiff's clear allegations that it is ARIN's irregular,

10  discretionary, biased application or waiver of its procedures that constitute its anti-competitive

11  acts." (Opp. at 19:10-12.) As stated above, this allegation appears for the first time in Kremen's

12  Opposition Brief. Indeed, despite this novel assertion, Kremen's Complaint actually pleads the

13  precise opposite: ARIN's standards are required of all applicants of IP Resources. (*See*

14  Subsection C(2)(b), *supra*.) Kremen simply fails to plead the alleged predatory conduct with

15  requisite specificity. *Tanaka*, 252 F.3d at 1062-64. Moreover, there is no allegation that this

16  conduct, even if alleged in the Complaint, in any way allowed ARIN to obtain or maintain a

17  monopoly.

18          Finally, in support of his assertion that he has alleged antitrust injury, Kremen

19

20  [10] Kremen further attempts to change his pleading by submitting to the Court a piece of
    extraneous correspondence allegedly written by ARIN, for consideration with the instant motion.
21  *See* Aug. 21, 2006 Decl. of Karl S. Kronenberger, Exh. C. This submission is *entirely* improper.
    A document not physically attached to a Complaint may not be considered on a motion to dismiss
22  unless each of the following three requirements is met: (1) the Complaint refers to the document;
    (2) the document is central to the party's claim; and (3) no party questions the authenticity of the
23  copy attached to the motion. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on
    other grounds in Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002). In the
24  present case, the Complaint makes no reference to the submitted letter. In any event, the cited
    portion of the letter, supposedly ARIN's admission that it is a monopoly, is irrelevant because the
25  antitrust laws do *not* condemn the mere existence of a monopoly, but only obtaining or
    maintaining monopoly power through exclusionary conduct. Moreover, the letter is consistent
26  with ARIN's position that it is *not* a monopoly as it indicates that there are other viable channels
    (including, but not limited to, Internet Service Providers) where one can obtain IP address space.
27  Furthermore, the mere fact that ARIN makes reference to public utility does not, in any way,
    suggest that ARIN is a monopoly.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6                                    18                    REPLY IN SUPPORT OF MTN. TO DISMISS
                                                                   CASE NO. C 06 2554 JW

1   again insists that the Complaint charges injury not only to himself but to unidentified others

2   "similarly situated." (Opp. at 19:17.) As stated above, however, Kremen's position is flawed for

3   two reasons: (1) the Complaint simply does not make any reference to the others "similarly

4   situated," and (2) even if it did by implication or in a general sense, such vague allegations cannot

5   sustain a Section 2 claim as a matter of law. *Tanaka*, 252 F.3d at 1062-64; *Cf. Holden*, 978 F.2d

6   at 1121; *see also* Subsection C(2)(b), *supra*.[11]  Accordingly, Kremen's Section 2 claim fails to set

7   forth the requisite elements of the claim and should be dismissed.[12]

8       **2.    *Kremen's State Claims Of Conversion, Breach Of Fiduciary Duty And Unfair***
9            ***Business Practices Must Be Dismissed Because They Fail To State Any Claim***
             ***Upon Which Relief Can Be Granted.***

10          a.    Plaintiff's Conversion Claim Should Be Dismissed Because It Fails To
11                State Any Claim Upon Which Relief Can Be Granted.

12          Not only is Plaintiff's Conversion claim barred by the applicable three-year statue

13   of limitations, but it also cannot state a claim for relief because: (1) the IP Resources and

14   Netblocks are not Kremen's property;[13] (2) Kremen fails to show that he was "*entitled to*

15   *immediate possession at the time of conversion*" of the NETBLOCKS, *American Bankers*

16   *Mortgage Corp. v. Federal Home Loan Mortgage Corp.*, 75 F.3d 1401, 1411 (9th Cir. 1996)

17   (citation omitted) (italics in original); and (3) without notice and an opportunity to be heard,

18   ARIN cannot reasonably be bound by the September 17, 2001 Order subjecting ARIN to the

19   Judgment by way of a constructive trust.

20   _____

     [11] For these same reasons, Kremen's attempted monopolization claim fails.

21   [12] ARIN and Kremen agree that the state law antitrust claims fail if the federal claims fail.
     (Motion at 20; Opp. at 21.)

22   [13] Kremen states in its Supplemental Opposition that ARIN "has oddly and contradictorily
     claimed that it has no property interest in the NETBLOCK PROPERTY (Motion for
23   Clarification, p.2; Motion to Dismiss, p. 21 line 4)" (Supp. Opp. at 21-25).  However, nowhere in
     ARIN's Motion for Clarification on page 2 does ARIN state that it has no property interest in the
24   NETBLOCK PROPERTY.  As for ARIN's Motion to Dismiss, ARIN respectfully submits that
     the sentence should have read "Here, assuming *arguendo* that the IP Resources at issue in this
25   lawsuit could be considered *Kremen's* "property" (which ARIN disputes), Plaintiff's contention
     as to his "ownership" over the purported property derives solely and exclusively from the
26   September 2001 Order he obtained *ex parte* from Judge Ware in the related *Kremen v. Cohen*
     case." (Motion at 21:4 (reference to Kremen added in italics)).  Such a reading is logical and
27   entirely consistent with the arguments ARIN presents in its moving papers in both of ARIN's
     pending motions before the Court.
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6                                    19            REPLY IN SUPPORT OF MTN. TO DISMISS
                                                            CASE NO. C 06 2554 JW

1    In response, Kremen overlooks the first two issues raised in the moving papers,

2    and merely states that ARIN must be bound by the September 17, 2001 Order based on the

3    following unsupported assertions: (1) ARIN must be a "stakeholder" to receive due process; (2)

4    ARIN is not a stakeholder because it is alleged to have no property interest in the NETBLOCKS;

5    and (3) procedural due process attaches only to final judgments.  Kremen's contentions are

6    wholly without merit.

7    First, Kremen misunderstands the legal definition of stakeholder as well as the

8    case law cited by ARIN with respect to due process rights.[14]  Even assuming *arguendo* Kremen's

9    contention that ARIN does not own the NETBLOCKS, such an assumption is irrelevant in light

10   of the definition of "stakeholder."  According to *Black's Law Dictionary* (8th ed. 2004), a

11   "stakeholder" is:  "1. A disinterested third party who holds money or property, the right to which

12   is disputed between two or more other parties.  *See* INTERPLEADER.  2. A person who has an

13   interest or concern in a business or enterprise, though not necessarily as an owner.  3. One who

14   holds the money or valuables bet by others in a wager."

15   Plaintiff contends that "ARIN is Not a 'Stakeholder' Requiring Their [sic]

16   Opportunity to Be Heard."  (Opp. at 21:22.)  A stakeholder is not required to be the sole and

17   exclusive owner of alleged property.  Rather; there need be only "an interest or concern in a

18   business or enterprise."  *Black's Law Dictionary* (8th ed. 2004).  Here, ARIN administers the

19   finite IP Resources entrusted to it by the government as a public trust.  Because ARIN has an

20   interest in the proper management, administration, and conservation of IP resources such as the

21   NETBLOCK PROPERTY for the entire Internet community (indeed, that is its mission), ARIN is

22   unquestionably a stakeholder with respect to the IP Resources at issue in this litigation.

23   Second, Kremen's contention that ARIN has no protectable interest in the

24   NETBLOCKS is incorrect.  Each and every Registration Service Agreement ("RSA") that

25   Kremen places at issue expressly states in the initial paragraph that ARIN "is responsible for the

26   _____

27   [14] The case law cited by ARIN requires the party affected by the Court's Order to have an
appreciable interest in the litigation, and does not, contrary to Plaintiff's suggestion, require that
interest be connected to forfeiting or turning over one's own property.

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41043405.6                        20                REPLY IN SUPPORT OF MTN. TO DISMISS
CASE NO. C 06 2554 JW

1    registration, administration and *conservation* of Internet Protocol ("IP") address space…"  ARIN

2    is charged with responsibility of carefully distributing, regulating, conserving, and patrolling the

3    finite IP resources it registers — encompassing the NETBLOCK PROPERTY — and, as such,

4    ARIN's interests in the proper registration and transfer of the NETBLOCK PROPERTY is

5    evident and unmistakable.[15]

6         Indeed, ARIN's Registration Service Agreements ("RSAs") provide for the terms

7    and conditions for the allocation of IP address space and/or the assignment of ASNs and are

8    effective for *only* a one-year term.  On the one-year anniversary, the RSA may be renewed only

9    upon the fulfillment of certain conditions as outlined in the RSA and may be terminated at any

10   time if the applicant fails to abide and satisfy the terms of the RSA.  Where a registrant has not

11   satisfied its obligations under the RSA or ends its agreement to abide by such terms and

12   conditions, ARIN has an undeniable interest and express right to reclaim the IP Resources back

13   into the public trust and manage such resources for redistribution to a later applicant.

14        Accordingly, ARIN has a significant interest in the NETBLOCK PROPERTY,

15   whether that interest is categorized as one of life, liberty, or property, and ARIN cannot be

16   estopped from maintaining that such interests clearly exist.  Kremen's attempt to characterize

17   ARIN as "simply a 'registry' [that]…provides 'registration' services[,]" is therefore

18   disingenuous.  By the terms of ARIN's RSAs, policies, and procedures (indeed, its very creation

19   and existence), ARIN plays a vital role in administering and conserving public IP resources.

20        In addition, Kremen further argues in his Supplemental Opposition Brief that

21   ARIN has no interest in the NETBLOCKS or ASNs at issue because (a) ARIN did not produce

22   documents to Kremen indicating that Kremen is bound by ARIN's procedures and policies, and

23   as such, Kremen owns the NETBLOCKS outright and ARIN has no authority to control the

24   NETBLOCKS; and (b) at least some of the NETBLOCK PROPERTY was allocated to Cohen

25

26   [15] Without explanation, Kremen inappropriately refers to ARIN as "simply a third party
     garnishee."  Supp. Opp. at 4:26-4:27.  However, as the role of ARIN in registering, administering,
27   and conserving IP resources is clear, Kremen's attempt to designate ARIN as one who simply
     holds a protected interest for the benefit of another is wholly misguided.  The same is true
28   regarding Kremen's reference to ARIN as a "only a service provider."  *Id.* at 4:9-4:11.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41043405.6                              21                    REPLY IN SUPPORT OF MTN. TO DISMISS
                                                              CASE NO. C 06 2554 JW

1    before ARIN existed as an entity, and, as to those NETBLOCKS, ARIN's terms and conditions

2    are inapplicable.  (Supp. Opp. at 4:9-7:5.)  However, Kremen is incorrect.  The documents

3    provided to Kremen demonstrate just the opposite.  As discussed above, the RSAs show that

4    ARIN has a discernibly strong interest in the IP resources it allocates, administers, and protects,

5    inclusive of the NETBLOCKS and ASNs at issue,[16] and, contrary to Kremen's suggestion,

6    whether or not the RSAs at issue expressly specified the NETBLOCKS and ASNs is immaterial.

7            It is ARIN's business practice and custom that no IP resource is distributed unless

8    an RSA is in place governing that resource.  Declaration of Plzak, ¶ 3.  As a safeguard procedure,

9    upon the applicant's failure to pay the annual fee, the IP resource formally applied for and

10   received by the applicant reverts back to ARIN to be recycled and redistributed pursuant to

11   ARIN's established policies and procedures.  Declaration of Plzak, ¶ 3.  As such, all IP resouces

12   subject to the September 2001 Order must only be associated with an RSA.  Declaration of Plzak,

13   ¶ 3.  ARIN's policies and procedures control, and under such guidelines, the NETBLOCKS and

14   ASNs Kremen places at issue properly reverted back to ARIN.  Kremen has no rights to the

15   NETBLOCK PROPERTY.

16           Finally, Kremen is incorrect that procedural due process attaches only to

17   enforcement of final judgments; due process is also necessary to enforce judicial "*decrees*" and

18   "*in any proceeding which is to be* accorded *finality*."  *See Headwaters Inc. v. U.S. Forest Serv.*,

19   399 F.3d 1047, 1050 (9th Cir. 2005) ("We have in this nation a 'deep-rooted historic tradition that

20   everyone should have his own day in court, and the court presumes, consequently, that a

21   **judgment or decree** among parties to a lawsuit resolves issues as among them, but it does not

22   conclude the rights of strangers to those proceedings") (emphasis added); *Martin v. Wilks*, 490

23

24   _____

     [16] Kremen makes the passing argument that "ARIN is no different from those in care, custody or
25   control of other Cohen property, regarding which this Court issued dozens of turnover orders."
     (Supp. Opp. at 5 n.3.)  Kremen's attempt to minimize ARIN's importance and to suggest that
26   ARIN has no other duty but to hold onto the NETBLOCKS for the benefit of Kremen is
     misguided and mischaracterizes the facts.  Moreover, Kremen fails to identify to the Court that
27   turnover orders issued by this Court provided the party subject to the order with an opportunity to
     oppose the granting of the order, which that party failed to do.  It is undisputed that ARIN
28   received no notice or opportunity to be heard.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6                          22                          REPLY IN SUPPORT OF MTN. TO DISMISS
                                                                CASE NO. C 06 2554 JW

1    U.S. 755, 761-62 (1989) (same); *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965) ("An elementary

2    and fundamental requirement of due process in any proceeding which is to be accorded finality is

3    notice reasonably calculated, under all the circumstances, to apprise interested parties of the

4    pendency of the action and afford them an opportunity to present their objections. [(citations

5    omitted)]") (emphasis added).

6         Moreover, contrary to Kremen's contention, Kremen does in fact seek to bind

7    ARIN to the Judgment entered in the related *Kremen v. Cohen* Action. Although ARIN was not a

8    party to the *Kremen v. Cohen* Action, made no appearances, filed no papers before the Court, was

9    not otherwise notified in advance that it would be bound by any decree or order in the case, had

10   no notice or opportunity to participate in any of the hearings, or to object to the Court's final

11   Order, Kremen sought to force ARIN to transfer the NETBLOCK PROPERTY to Kremen by

12   way of the constructive trust created as part of the Judgment. As such, Kremen's attempt to bind

13   ARIN to the Judgment by way of the September 2001 Order clearly violates ARIN's due process

14   rights. Therefore, Kremen's Conversion claim must be dismissed with prejudice for the reasons

15   stated above as he fails to state a claim for which relief may be granted.

16        b.    Plaintiff's Breach Of Fiduciary Duty Claim Should Be Dismissed Because
              It Fails To State Any Claim Upon Which Relief Can Be Granted.
17

18        Plaintiff contends that his breach of fiduciary duty claim must survive because he

19   may "plead conclusions . . . which provide Defendant with minimal notice of [Plaintiff's]

20   claims." Opposition, 24:1-2. This is simply untrue. "In order to plead a cause of action for

21   breach of fiduciary duty, there must be an adequate showing of each of these elements[:]" (1)

22   "existence of a fiduciary duty"; (2) "breach"; and (3) "damage proximately caused by that

23   breach." *City of Atascadero v. Merrill Lynch*, 68 Cal. App. 4th 445 (1998). Courts have found a

24   fiduciary duty to exist in only in limited circumstances, which are not present here. *See Id.*

25        Contrary to Plaintiff's contentions, there is no such duty through (1) "ARIN's

26   contract with ICANN"; (2) ARIN's refusal to comply with the September 17, 2001 Order; or (3)

27   any alleged "conversion of Kremen's property." First, Plaintiff fails to allege how "ARIN's

28   contract with ICANN" triggers a fiduciary duty to Plaintiff. Second, ARIN was not bound by the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41043405.6                              23                REPLY IN SUPPORT OF MTN. TO DISMISS
                                                          CASE NO. C 06 2554 JW

1    September 17, 2001 Order as discussed above.  Third, Plaintiff's conversion claim is barred by

2    the statute of limitations and/or fails to state a claim, and thus, Plaintiff's fiduciary cause of action

3    relying on the claim also fails.

4         Contrary to Kremen's contention, "Minimal language" is not the touchstone for

5    creating a fiduciary duty.  Opposition, 25.  To hold otherwise runs afoul with the binding

6    California fiduciary duty law stated above.  There is no legitimate duty pled, and therefore,

7    Plaintiff's breach of fiduciary duty claim must be dismissed with prejudice.

8         c.    Plaintiff's California Unfair Competition Claim Should Be Dismissed
              Because It Fails To State Any Claim Upon Which Relief Can Be Granted.

9

10        Here, Plaintiff's unfair competition claim relies entirely upon the conduct that also

11   allegedly forms the basis for the antitrust, conversion and breach of fiduciary duty claims.

12   (Complaint, ¶¶ 142-143).  However, for reasons already discussed above, Plaintiff has failed to

13   state a claim upon which relief may be granted as to each of those claims.  Accordingly,

14   Plaintiff's claim for violations of the UCL also fails, and dismissal is warranted.

15   **C.    This Lawsuit Should Be Stayed Pending Disposition Of ARIN's Application To**

16   **      Modify Or Clarify The September 2001 Order.**

17        Plaintiff effectively contends that this Court should waste judicial resources by

18   continuing two overlapping actions, when resolution of one would certainly reduce (if not

19   eliminate) the amount of effort required in resolving the other.  Plaintiff admits that nearly half of

20   his causes of action reference the September 2001 Order.  Opposition, 25 ("Of the eight Claims

21   for Relief in the Complaint, five of the claims do not reference the September 2001 Order . . . .").

22   As such, Plaintiff admits that to permit this action to go forward would create duplicative

23   litigation on the same issues and risk inconsistent judgments, whereby this Court may, *inter alia*,

24   vacate its September 2001 Order, substantially alter the September 2001 Order, or mandate

25   compliance with the September 2001 Order.  Any one of these outcomes may moot many, if not

26   all, of the claims asserted in the present litigation.

27        It is well-settled in this Circuit that a trial court is vested with broad discretion to

28   stay an action pending resolution of another proceeding before it.  *Leyva v. Certified Grocers of*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043405.6                              24                    REPLY IN SUPPORT OF MTN. TO DISMISS
                                                              CASE NO. C 06 2554 JW

1  *California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).  Plaintiff does not complain of prejudice if

2  a stay is granted, nor could he; Plaintiff waited nearly five years to file this lawsuit after it first

3  allegedly incurred the damages that are asserted in this action.  Based on the likely injustice to

4  ARIN if a stay is not granted, and the absence of prejudice to Plaintiff, staying the instant matter

5  is warranted until the Court has had an opportunity to consider whether the September 17, 2001

6  Order should be clarified.

7  <center>**III.**    **CONCLUSION**</center>

8  For the reasons set forth above, Defendant American Registry of Internet

9  Numbers, Ltd. respectfully requests that the Court dismiss Plaintiff Gary Kremen's Complaint in

10  its entirety with prejudice.

11  Dated:  October 2, 2006              By:  _/s/ Christopher L. Wanger_
                                              Christopher L. Wanger
12
13                                        MANATT, PHELPS & PHILLIPS, LLP
                                          1001 Page Mill Road, Building 2
14                                        Palo Alto, CA  94304-1006
                                          Telephone:  (650) 812-1300
15                                        Facsimile:  (650) 213-0260
                                          *Counsel for Defendant*
16                                        AMERICAN REGISTRY FOR INTERNET
                                          NUMBERS, LTD.
17
18
19
20
21
22
23
24
25
26
27
28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

41043405.6                        25        REPLY IN SUPPORT OF MTN. TO DISMISS
                                             CASE NO. C 06 2554 JW