# EXHIBIT F

Dockets.Justia.com

1   MANATT, PHELPS & PHILLIPS, LLP
    STEPHEN M. RYAN (D.C. Bar No. 359099) (sryan@manatt.com)
2   One Metro Center
    700 12th Street, N.W., Suite 1100
3   Washington, D.C. 20005
    Telephone: (202) 585-6500
4   Facsimile: (202) 585-6600

    E-filing

5   MANATT, PHELPS & PHILLIPS, LLP
    CHAD S. HUMMEL (CA Bar No. 139055)
6   (chummel@manatt.com)
    JACK S. YEH (CA Bar No. 174286) (jyeh@manatt.com)
7   11355 West Olympic Boulevard
    Los Angeles, California 90064
8   Telephone: (310) 312-4000
    Facsimile: (310) 312-4224

9

10  MANATT, PHELPS & PHILLIPS, LLP
    CHRISTOPHER L. WANGER (CA Bar No. 164751)
11  (cwanger@manatt.com)
    1001 Page Mill Road, Building 2
12  Palo Alto, CA 94304-1006
    Telephone: (650) 812-1300
    Facsimile: (650) 213-0260
13

14  *Attorneys for*
    AMERICAN REGISTRY FOR
15  INTERNET NUMBERS, LTD.

ARIN adv. Gary Kremn
(22149-060)
C. Wanger        J. Yeh (LA)        ~~LA Cal~~
S. Ryan (DC)     D. Wishon
C. Hummel (LA)   Client (SMR - DC)

16

17              UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19                     SAN JOSE DIVISION

20  GARY KREMEN, an individual,        No. USDC Case No. C 98 20718 JW

21          Plaintiff,                 **DECLARATION OF RAYMOND A.
                                        PLZAK IN SUPPORT OF MOTION TO
22      vs.                            CLARIFY / MODIFY**

23  STEPHEN MICHAEL COHEN, et.         Action Filed: April 12, 2006
    al.,
24                                     Trial Date: NONE SET
            Defendant.
25                                     Hearing Date: September 11, 2006
                                       Time: 9:00 a.m.
26                                     Location: Courtroom 8, 4th Floor
                                       Judge: The Honorable James Ware
27

28

1  MANATT, PHELPS & PHILLIPS, LLP
   STEPHEN M. RYAN (D.C. Bar No. 359099) (sryan@manatt.com)
2  One Metro Center
   700 12th Street, N.W., Suite 1100
3  Washington, D.C. 20005
   Telephone: (202) 585-6500
4  Facsimile: (202) 585-6600

5  MANATT, PHELPS & PHILLIPS, LLP
   CHAD S. HUMMEL (CA Bar No. 139055) (chummel@manatt.com)
6  JACK S. YEH (CA Bar No. 174286) (jyeh@manatt.com)
   11355 West Olympic Boulevard
7  Los Angeles, California 90064
   Telephone: (310) 312-4000
8  Facsimile: (310) 312-4224

9  MANATT, PHELPS & PHILLIPS, LLP
   CHRISTOPHER L. WANGER (CA Bar No. 164751) (cwanger@manatt.com)
10 1001 Page Mill Road, Building 2
   Palo Alto, CA 94304-1006
11 Telephone: (650) 812-1300
   Facsimile: (650) 213-0260

12

13 *Attorneys for*
   AMERICAN REGISTRY FOR
   INTERNET NUMBERS, LTD.

14

15

16                    UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

18                          SAN JOSE DIVISION

19

20 GARY KREMEN, an individual,          No. USDC Case No. C 98 20718 JW

21              Plaintiff,               DECLARATION OF RAYMOND A. PLZAK
                                         IN SUPPORT OF MOTION TO CLARIFY /
22       vs.                             MODIFY

23 STEPHEN MICHAEL COHEN, et. al,,       Action Filed: April 12, 2006

24              Defendant.               Trial Date: NONE SET

25                                       Hearing Date: July 14, 2006
26                                       Time:         9:00 a.m.
                                         Location:     Courtroom 8, 4th Floor
27                                       Judge:        The Honorable James Ware

28

                                    DECLARATION OF RAYMOND A. PLZAK

1        1.    I am the President and Chief Executive Officer of the American

2    Registry for Internet Numbers (ARIN). I am responsible for the operation of

3    ARIN. I have reviewed the 2001 Court's Order provided to Mr. Kremen, and have

4    performed research on the IP resources impacted by the Court's Order. This

5    research is summarized in a chart attached to this Declaration as Exhibit A. At the

6    end of this Declaration, I will use this Exhibit to suggest changes to the Court's

7    Order.

8                   **Kremen Initially Did Not Formally Seek**

9                **Compliance Or Enforcement Of The Order**

10       2.    Throughout the period from 2001, when the Court issues its

11    Order, to the filing of Mr. Kremen's lawsuit, ARIN has negotiated in good faith

12    with Mr. Kremen. ARIN has reviewed documents Mr. Kremen filed in Court

13    where he voluntarily agreed <u>not</u> to require compliance with the Court's Order. For

14    example, Mr. Kremen wrote to this Court on October 29, 2001 in the Stipulation

15    regarding the Standstill Agreement and Submission of Issues for Ancillary

16    Determination, by stating:

17           Kremen represents and warrants that to date, the only

18           enforcement action taken by him is to deliver a copy of
                the Order to ARIN's counsel. Kremen stipulates that

19           pending further discovery in this matter he will not take
                any further action to enforce the September 17, 2001

20           Order and if Kremen intends to take any action on the
                Order, he will give PACNET Companies at least five (5)

21           days written notice to enable PACNET Companies to take
                such action as they deem appropriate.

22

23    A copy of this filing was provided to ARIN's lawyers by Mr. Kremen.

24          **Mr. Kremen Has Refused To Cooperate With ARIN's Offer**
        **To Transfer Those Portions Of The Netblock It Can Effect**

25                 **Pursuant To The Court's Order**

26       3.    In December, 2003, Mr. Kremen restarted communications with

27    ARIN regarding the Netblock and Order. At that point in time, while ARIN had

28    seen a copy of the 2001 Order, it had never been served on ARIN on the subject of

1    enforcement action. It was effectively served in the first week of 2004.

2    4.    ARIN immediately engaged in good faith negotiations with Mr.

3    Kremen regarding the Order.

4    5.    On several occasions ARIN thought it had reached an amicable

5    agreement with Mr. Kremen. On each occasion, it was always ARIN's position

6    that it would obey the Order and transfer to Mr. Kremen the IP resources in the

7    Netblock it could control, recognizing there were some resources we could not

8    control if Mr. Kremen would file an ARIN application for this resource. Mr.

9    Kremen acknowledged this in writing. See Exhibit C, Kremen counsel's email to

10    ARIN dated 1/30/04. ARIN even offered to help Mr. Kremen fill out the ARIN

11    paperwork to facilitate his takeover of the resources and "walk" his application

12    through the process. ARIN also agreed Mr. Kremen would not be responsible for

13    past service charges incurred by the Netblock holders. ARIN agreed to waive any

14    application fee routinely charged to persons seeking resources.

15    6.    However, to date Mr. Kremen has refused to submit an

16    application to ARIN for transfer of the IP resources described in the Order. In fact,

17    ARIN does not believe Mr. Kremen has ever filed an application for IP resources

18    from ARIN.

19    7.    ARIN does not issue IP resources unless the applicant applies

20    for the resources and qualifies to be granted, IP resources. Mr. Kremen has recently

21    indicated to ARIN that due to the Court's Order, unlike everyone else in the ARIN

22    service region, he does not need to apply for resources or have a service agreement

23    with ARIN. ARIN does not agree with Mr. Kremen's position.

24    8.    ARIN has never understood that the Court's Order requires

25    ARIN to provide Mr. Kremen with free services, services without a written

26    agreement governing the services, or without appropriate paperwork. ARIN has

27    never assumed the Court Order was intended to relieve Mr. Kremen from the duty

28    to obtain these resources from ARIN by cooperating with, and following the same

3

procedures that all ISPs, companies and U.S. government agencies are required to follow.

### ARIN Refused to Cooperate with Mr. Kremen's Opponents

9.      During the time ARIN was negotiating in good faith with Mr. Kremen, ARIN refused to take actions sought by the holders of the Netblock to make changes that would have benefited them. For example, in February and March, 2004, ARIN was importuned and threatened by those who held a portion of net block to transfer control of the assets. This correspondence from Pacnet by a Mr. Jack Brownfield and Mr. Juan Jose (Steve) Martinez sought ARIN's transfers of portions of the Netblock. ARIN refused to cooperate with these individuals and ARIN indicated its intent to take this matter to the Court. See Exhibits D and E, ARIN letters to Pacnet dated March 11, 2004 and March 19, 2004. In the last letter from Pacnet, Mr. Martinez apologized to ARIN and asked to withdraw the attempt to transfer the resources and indicated they would seek to place the issue before the Court. This reversal by Pacnet meant ARIN did not need to go to Court at that time.

10.     The entire correspondence between ARIN and Pacnet demonstrates that these Pacnet individuals associated with the Netblock act similarly to Mr. Kremen -- they demand immediate treatment from ARIN without regard to ARIN's need to carefully perform its duties in accordance with its own procedures. ARIN has not knowingly permitted any changes in the status quo that would violate this Court's Order.

11.     ARIN further provided all of the correspondence between it and Pacnet to Mr. Kremen to assist him in his efforts. To assist the Court, I have created a table which appears as Exhibit B to this Declaration which lists the correspondence between Pacnet and ARIN and provides copies of all of that correspondence in chronological order to the extent it was not separately attached in

1    the paragraphs above.

2    ### ARIN Has Revoked Netblock-Related Resources From
3    ### Those Who Were Adverse To Mr. Kremen

4        12.    During the time ARIN was negotiating in good faith with Mr.

5    Kremen, ARIN has also revoked from Mr. Cohen, or his associates, portions of the

6    IP resources described in the Order. For example, ARIN, knowing of the Court

7    Order, but also consistently following its own internal procedures, revoked the

8    resources when it could do so. See Exhibit F, demonstrating revocation of

9    64.19.192.0, a slash 19, and 64.239.255, a slash 20, both previously issued to

10   Sandman. Thus, ARIN effectuated the Court's Order by denying these resources to

11   Cohen, or persons associated with Cohen, when it could be accomplished consistent

12   with ARIN's policies.

13   ### The Court's Order Includes Within It IP Resources
14   ### Not Issued Or Controlled By ARIN

15       13.    The resources described in the Court's Order contains one set of

16   IP resources not provided by ARIN. Upon information and belief, the Court was

17   not made aware of this by Mr. Kremen, and/or Mr. Kremen was also unaware of

18   this. Before ARIN began operations, the resources 208.214.46.0 and

19   208.214.47.255 were issued to UUNET. See Exhibit A. They were not issued by

20   ARIN. Like other "legacy" address holder's issued resources before ARIN began,

21   ARIN has never had an agreement with UUNET that would give it authority over

22   those specific resources. UUNET appears to have made a subissuance from its

23   legacy resources to Pacnet, Sandman or some entity holding those resources. ARIN

24   has told Mr. Kremen it cannot provide the relief sought for these resources. Had

25   ARIN been a party to this matter when Mr. Kremen brought it before the Court,

26   ARIN could have advised the Court of these facts. I respectfully suggest the Court

27   modify its Order regarding these particular resources as ARIN cannot comply with

28   the Court's Order in this regard.

### Innocent Third Parties Would Likely Be Harmed By
### Mr. Kremen's Proposed Implementation Of The Court's Order

14.    ARIN believes, and has repeatedly told Mr. Kremen, that it is likely that innocent third parties not voluntarily associated with Mr. Cohen have and continue to purchase Internet services that are utilizing the IP resources the 2001 Order would require be transferred to Mr. Kremen. Upon information and belief, if the IP resources covered by the Court were transferred tomorrow to Mr. Kremen, he cannot immediately provide the ISP services to this and customers. Therefore, it is likely service businesses will be cut off from their customers and suppliers to the extent they rely upon the Internet to communicate. Students will not be able to complete their homework on the Internet. In effect, each of these innocent third party customers relying upon the IP resources covered by the Court's Order would be impacted immediately and adversely. They would be forced to spend time trying to find out why their ISP was no longer available, and have to immediately contract with a new ISP to obtain services. They would have an unnecessary service interruption. ARIN has a legitimate concern about the impact on these third parties, both as a stewart of Internet resources, and because these third parties could potentially sue ARIN for damages if ARIN were to comply cravenly with Mr. Kremen's wishes.

15.    Upon information and belief, had Mr. Kremen forthrightly informed the Court of the potential impact of its Order on innocent third parties, the Court would undoubtedly have sought to prevent damage to such persons.

### Mr. Kremen Has Sought To Use The Court's Order
### To Obtain Legacy Address Space

16.    Mr. Kremen also proposed to ARIN he be "compensated" by being given a different set of IP resources than those in the Court's Order. Mr. Kremen in effect wants ARIN to suspend its rules and give him "legacy" rights similar to those who obtained IP resources before ARIN. ARIN has rejected this as

1    a basis of settlement.

2    **ARIN Cooperated With Discovery By Mr. Kremen**

3
4    17.    In 2005 Mr. Kremen filed a subpoena *duces tecum* to obtain
broad documentary discovery. ARIN cooperated with this discovery and provided
5    approximately 6,000 pages of material to Mr. Kremen. Later when Mr. Kremen
6    needed specific documents to help in his Court filings, ARIN searched for
7    additional specific documents.
8
9    18.    Mr. Kremen also sought testimony from ARIN, issuing a
subpoena *ad testificandum*, but lost interest in the matter and never took the
10    deposition.
11
**Mr. Kremen Agreed In Writing To Provide ARIN An**
12    **Opportunity To Oppose Unilateral Enforcement Of This**
**Order And Violated This Agreement**
13
14    19.    ARIN made it clear it would oppose any attempt by Mr. Kremen
15    to seek enforcement of the Order absent an agreement premised on Mr. Kremen
16    completing the necessary paperwork.
17    20.    On numerous occasions, ARIN's counsel and counsel for Mr.
18    Kremen, discussed how to proceed if an amicable agreement could not be made.
19    There are at least 75 communications between ARIN and Mr. Kremen's attorneys
20    on email and another series in writing. Mr. Kremen was copied on a number of
21    them. For example, in February, 2004, during Pacnet's attempt to obtain transfer
22    portions of the IP resources described in the Court's Order, counsel for ARIN
23    suggested a joint approach to the Court with Mr. Kremen to resolve these issues.
24    See Exhibit G, email from ARIN counsel to Kremen counsel dated February 24,
25    2004.
26    21.    In order for both sides to negotiate in good faith, ARIN sought a
27    specific agreement that neither ARIN or Mr. Kremen would seek improper
28    advantage of the protracted negotiations. ARIN and Mr. Kremen agreed that

1    neither party would proceed to Court without providing 30 days prior notice to the

2    other. Mr. Kremen's counsel reflected this agreement in several different writings.

3    See Exhibit H, Kremen attorney email of June 9, 2005. ARIN actually requested a

4    more specific briefing schedule. See Exhibit I, ARIN counsel email to Kremen

5    counsel, June 9, 2005, in response to the offered 30 day agreement email. In

6    rejecting a more structured briefing schedule sought by ARIN, Mr. Kremen's

7    attorney stated on the same day: "We [Kremen] are not applying for injunctive

8    relief. We are trying to settle with you [ARIN]...you have my assurances and my

9    word that if we don't reach a settlement, we will work with you on a reasonable

10   schedule that gives both sides a fair and reasonable opportunity to brief all issues

11   without advantage or surprise." This email was sent with a protected Rule 408

12   legend, but is produced here as Exhibit J.

13           22.    On June 15, 2005, Mr. Kremen again stated: "We look forward

14   to the [ARIN document] production and to trying to resolve this matter with you. It

15   is agreed we will not take any action in court without 30 days notice to you." See

16   Exhibit K, June 15, 2005, from Kremen counsel to ARIN counsel. Again, this

17   email was marked with a Rule 408 legend.

18           23.    When ARIN was preparing to go to Court regarding Pacnet's

19   request, Mr. Kremen's attorney wrote to ARIN to further reiterate the 30 day

20   agreement. That letter is appended as Exhibit L, dated April 5, 2005, and states in

21   pertinent part:

22           "Your letter also references papers that you are preparing
             for the Court [regarding Pacnet]; I do not know what
23           papers you refer to but I would like to adhere to our
             agreement that neither of us will take any litigation action
24           prior to thirty (30) days notice to the other. In the event
             that your client has made the decision to cease all further
25           settlement discussions, please let me know that so that we
             can arrange a mutually convenient day to appear before
26           Judge Ware on whatever motion or other proceeding you
             intend to file and on our further enforcement proceedings.
27           Monday is his usual law and motion day. If we are taking
             the litigation route, we will want to conduct discovery
28           including a subpoena *duces tecum* for various documents

8

and records and a Rule 30(b)(6) deposition on various
issues before any hearing." (Emphasis added.)

24.    Despite Mr. Kremen's agreement to permit ARIN an
opportunity to brief the Court on its disagreement with Mr. Kremen over how to
implement the Court's Order, Mr. Kremen filed this suit without abiding by the
requisite agreement.

### Mr. Kremen Sought A Tolling Agreement
### Which ARIN Refused To Provide

25.    In 2005 and 2006, Mr. Kremen consistently sought a tolling
agreement from ARIN. "We want a tolling agreement making clear that while we
are discussing resolution of this matter no statutes of limitation that may apply are
running." See Exhibit M, an email dated August 17, 2005. ARIN refused in
writing to provide such a tolling agreement, and rejected this request in
conversations with Mr. Kremen.

### ARIN Was Authorized To Provide IP Resources
### To the United States As A Result Of A
### U.S. Government Program And Decision

26.    The Internet is an outgrowth of the United States Government's
financial investment in packet switching technology and communications networks
carried out under agreements with the Defense Advanced Research Projects
Agency ("DARPA") and the National Science Foundation ("NSF").

27.    In 1992, the National Science Foundation determined that it
would take responsibility for certain Internet functions, including the registration of
Internet protocol numbers and domain names, NSF based its authority on the
National Science Foundation Act, 42 U.S.C. section 1861 et seq., specifically,
Sections 1862 (a)(4) and 1862 (g). NSF solicited bids for private companies to
perform various functions for the Internet community, including registration
services. NSF received three proposals for operating the Internet registration

1    services, and awarded the contract to NSI, in the form of a five-year cooperative

2    agreement under the Federal Grants and Cooperative Act, 31 U.S.C. 6301 et seq.

3    The solicitation specifically referenced the delegation of authority for registration

4    services from the Internet Assigned Numbers Authority ("IANA") (Section III.1 of

5    Cooperative Agreement). The solicitation also specifically provided for the

6    possibility that the providers of the various services in the solicitation would charge

7    user fees. NSI proposed that it would charge user fees for domain name registration

8    services. (Article 15 of Cooperative Agreement No. 9218742 between NSF and

9    NSI, January 1, 1993).

10         28.    NSI functioned as the Internet registry for domain names since

11    the Cooperative Agreement became effective on December 31, 1992. Until

12    September 1995, registration service for both names and numbers was free to

13    registrants, with the cost of registration of IP numbers being borne by the NSF.

14    NSF reimbursed NSI for the costs of the Internet Registration services on a cost-

15    plus basis out of NSF operating funds and, therefore, out of federal tax dollars. The

16    explosion in the usage of the Internet, probably not foreseen by NSF or most others,

17    however, caused an unacceptable financial and administrative burden on NSF.

18    Pursuant to its authority under the Article 15 of the Cooperative Agreement, NSI

19    developed a plan for NSF to (1) charge user fees for domain name services that

20    would make the Internet Registry self-supporting, and (2) transfer the IP

21    registration function to a nonprofit organization. NSF agreed and later participated

22    in the creation of ARIN, which was subsequently incorporated in Virginia. The first

23    phase of the plan went into effect, without prior announcement, on September 14,

24    1995. The second phase came to fruition when ARIN was incorporated in August

25    1997 and began operations four months later in December of that year.

26         29.    As part of its InterNIC Registration Services, NSI provided

27    network number assignments and autonomous system number assignments. The

28    domain names registered by NSI are mapped to IP numbers, a numeric-based

1  addressing mechanism, to enable computer users to communicate across networks

2  that comprise the Internet system.

3      30.    Under the Cooperative Agreement, all registration services were

4  bundled together within the "Statement of Work." Article 3, Section (F.) of the

5  Cooperative Agreement provided:

6      "The Non-military Internet registration services provided
   under this Agreement will initially include, but not be

7      limited to, the following:

8      1.    Domain name registration

9      2.    Domain name server registration

10      3.    Network number assignment

11      4.    Autonomous system number assignment."

12      31.    Beginning in 1995, the federal government and Internet

13  Community expressed an interest in unbundling Internet services and keeping

14  Internet Protocol issues separate from domain name service issues and to place the

15  management of the IP space in a separate organizational entity.

16      32.    Consistent with the expressed desires of the Internet community

17  and the federal government's desire to unbundle IP address space allocation from

18  the responsibilities of NSI, the NSF concurred in the NSI proposal to establish a

19  nonprofit corporation. NSF Amendment No. 07 to Cooperative Agreement No.

20  NCR-9218742, effective December 1, 1997, approved the "transfer [of]

21  responsibility for the IP Number assignment, Autonomous System Number

22  assignment, and IN-ADDR.ARPA tasks to ARIN." Thus, the entity approved by

23  the NSF to assume all of the responsibilities formerly performed by NSI under the

24  NSF Cooperative Agreement was ARIN. ARIN, subsequently, was incorporated

25  as a nonprofit organization in the Commonwealth of Virginia on April 23, 1997. In

26  December 1997, ARIN received its tax-exempt status under Internal Revenue Code

27  Section 501(c)(6). ARIN's mission was to be responsible for the management of

28  the IP address space for all the geographic regions Network Solutions administered

1    under its Cooperative Agreement, as amended, with the NSF.

2          33.    It took approximately thirteen months to organize ARIN.

3    During this period NSF directly supervised the formation process, with input from

4    the National Telecommunications and Information Agency ("NTIA"). J. Beckwith

5    Burr, then the Associate Administrator (Acting) exercised direct input into the

6    ARIN incorporation documents and bylaws. Evidence of NTIA's direct

7    involvement with ARIN is found in the email, dated 18 June 1997 from Ms. Burr to

8    G. Strawn at NSF and E. Maxwell at the Federal Communications Agency ("FCA")

9    in which Ms. Burr stated, "NSF should complete its negotiations with NSI, Inc.

10   regarding the ARIN spin-off, providing that ARIN organization documents reflect

11   the following points of agreement." Pursuant to this directive from NTIA, ARIN

12   twice amended its Articles of Incorporation and bylaws to incorporate the points

13   required by NTIA.

14         34.    On June 24, 1998 the NSF issued a press release announcing the

15   formation of ARIN, entitled "Internet Moves toward Privatization, IP Numbers

16   Handled by Non-Profit." The press release stated, in pertinent part:

17            "The NSF has approved a plan from Network Solutions,
              Inc. (NSI) which establishes the American Registry for
18            Internet Numbers ("ARIN"). Under the plan, ARIN
              would assume full responsibility for Internet Protocol (IP)
19            number assignments and related administrative tasks
              previously handled by NSI. The entire process, thus, was
20            initiated and supervised by both the NTIA and NSF
              pursuant to NSF's supervisory responsibility under the
21            Cooperative Agreement."

22         35.    The United States Department of Commerce granted the Internet

23   Corporation for Assigned Names and Numbers (ICANN) responsibility for

24   establishing, in conjunction with Internet users, policies for Internet Protocol

25   Address Space, pursuant to a Memorandum of Understanding between the

26   Department of Commerce and ICANN dated November 28, 1998, as amended May

27   25, 2001. In 1999, ICANN also assumed responsibility for the technical functions

28   previously performed under U.S. government under contract with the Internet

1  Assigned Numbers Authority (IANA). Today there are five regional IP registries

2  worldwide. They include ARIN, RIPE NCC (Europe, the Middle East and Russia),

3  LACNIC (Mexico, the Caribbean, Central and South America), APNIC (the Asia

4  Pacific countries, including Australia, China and Japan), and AfriNIC (the African

5  continent). Each IP registry maintains continuing authority for administering and

6  registering Internet Protocol Numbers in under this arrangement. IANA

7  coordinates the IP address system by allocating blocks of numerical addresses to

8  these regional IP registries. In turn, the five regional registries allocate classes of

9  addresses to the larger Internet service providers apply to the regional IP registries

10  for blocks of IP addresses. The recipients of those address blocks then reassign

11  addresses to smaller providers and to end-users.

12       36.    IP address space is finite. There are four billion IP V[p2] 4

13  addresses, of which only 1.5 billion remain available for future allocation to devices

14  connected to the Internet. An internet numbering system with far more numbers,

15  IPV.6[p3], is now being issued. Early on, the amount of IP address space available

16  was thought to be adequate. But it was difficult to foresee just how fast and large

17  the Internet would grow. It is important that the limited amount of available IP

18  address space is used prudently and efficiently, without unnecessary waste.

19       37.    To achieve the goals of maintaining globally unique IP

20  addresses and conserving the finite amount of them, a system for allocating and

21  managing these addresses was established early on and evolved into the global

22  Internet registry system in place today. ARIN is one of the Internet registries in this

23  system. ARIN is charged with maintaining a public trust that allocates IP resources

24  in an impartial manner.

25       38.    To efficiently manage the allocation of IP addresses in the best

26  interests of the Internet within its geographic area of responsibility, ARIN has

27  adopted specific guidelines and policies ("Guidelines"). A true and accurate copy

28  of the current version of the Guidelines, which are posted at

1   <http://www.arin.net/policy/ipv4.html#requirements>. These Guidelines, *inter*

2   *alia*, reflect the policies of NSF, NTIA, and the Department of Commerce and are

3   based upon the fundamental proposition that issuance of IP resources remains

4   within the sole administrative control of ARIN in the U.S. IP resources are

5   allocated by ARIN pursuant to the terms of a service agreement, which obligates

6   registrants to comply with ARIN's Internet Protocol resource allocation and

7   assignment guidelines. While ARIN is not the owner of the IP resources, ARIN is

8   the sole administrative organization designated by consensus of the Internet

9   community as well as the federal government to conserve, manage and ensure the

10   efficient utilization of a finite resource.

11   **The Transfer Process Mr. Kremen Should Be Required
     To Follow Is Not Burdensome**

12

13   39.   The following steps describe the current ARIN IP Address

14   transfer request process, in accordance with ARIN's current transfer guidelines.

15   We are happy to help Mr. Kremen comply.

16   40.   IP address space may be transferred pursuant to the terms of

17   ARIN's Guidelines for Transferring Internet Protocol (IP) Space, which are set

18   forth at <http://www.arin.net/library/guidelines/transfers.html> and subject to

19   ARIN's Transfer Policy, which is posted at <

20   http://www.arin.net/policy/transfer.html>. As set forth in these Exhibits, the

21   Guidelines, among other things, provide that IP address space is non-transferable,

22   may not be sold or assigned and may only be transferred upon ARIN's approval of

23   a formal transfer request.

24   41.   Mr. Kremen has not been harmed by ARIN as he may have been

25   by Mr. Cohen, or by other parties. ARIN is a bystander to the dispute between Mr.

26   Kremen and Mr. Cohen. Mr. Kremen has never attended an ARIN public policy

27   meeting where the community debates and achieves consensus on policies.

28   Granting Mr. Kremen rights greater than anyone else in the U.S. would not seem

14

1   either fair or equitable.

2   ## The Court's Order Should Be Modified

3   42.   I began this Declaration by providing the Court with Exhibit A,

4   a summary of the five different sets of IP resources contained in the Court's 2001

5   Order. For the Court's convenience, I have labeled each of five sets of IP resources

6   as Blocks 1-5 for the Court's convenience.

7   a.   Block 1, IP addresses, 209.205.192.0 through

8   209.205.239.255 and Block 4 group ASN 20228, are, upon information and belief,

9   in use by Pacnet. ARIN has no objection to Mr. Kremen applying for these

10   resources and once that is completed, ARIN will withdraw them from Pacnet and

11   reissue them to Mr. Kremen. However, the Court may wish to consider the impact

12   on Pacnet's innocent third party customers, as I described in Paragraph 14 of my

13   Declaration.

14   b.   Block 2 are IP addresses 208.214.46.0 and

15   208.214.47.255. ARIN recommends the Court review Paragraph 13 of my

16   Declaration and remove any reference to these numbers from its Order since ARIN

17   has no control over these particular IP addresses.

18   c.   Block 3 are IP addresses 64.19.192.0 through

19   64.19.239.255. ARIN recommends the Court review Paragraph 12 of my

20   Declaration. ARIN is prepared to transfer these resources which it previously

21   revoked as soon as Mr. Kremen completes the necessary application.

22   d.   Block 5 is ASN 11083. ARIN issued this ASN to a

23   company called Ocean Fund. However, ARIN no longer controls this resource. In

24   December, 2002, ARIN gave up issuance and control of all South American,

25   Central American and most importantly, Mexico-based IP resources and services to

26   a new Regional Internet Registry ("RIR") known as the Latin American and

27   Caribbean Internet Addresses Registry ("LACNIC"). Therefore, like Block 2,

28   ARIN cannot effectuate the 2001 Order regarding this ASN. The Court could

1  alternatively Order ARIN to provide a new substitute ASN if Mr. Kremen were to

2  apply for this resource.  Alternatively, if the Court requests it, ARIN can formally

3  request that LACNIC voluntarily take such action as its policies may permit to

4  assist the Court in this matter.  ARIN has no power to direct LACNIC to take any

5  action, or even to respond, and I respectfully request that a second RIR not be

6  drawn into the dispute between Mr. Kremen and Mr. Cohen.  Mr. Kremen's failure

7  to promptly serve or seek to enforce this Order has created any problem related to

8  enforcement with regard to this ASN.

9          I declare under penalty of perjury under the laws of the United States

10  that the foregoing is true and correct.

11          Executed on June ___7, 2006, at Woodland Hills, California.

12

13                                         _____

14                                         RAYMOND A. PLZAK

15

16  41009163.1

17

18

19

20

21

22

23

24

25

26

27

28

16

**Exhibit A**
**to the**
**Declaration of Raymond A. Plzak**
**In Support of Motion to Clarify/Modify**

RAYMOND A. PLZAK DECLARATION
EXHIBIT A

| Resource Described in Court Order | CIDR | Issued to: | Issue Date: | Current Governing Regional Internet Registry | Resource Status | Financial Status | ARIN's Evaluation as to Whether Resource Was In Use as of 5/08/2003 | ARIN's Evaluation Whether it is Still in Use as of 5/08/2006 | Notes |
|---|---|---|---|---|---|---|---|---|---|
| (Block 1)<br><br>209.205.192.0<br>209.205.239.255 | 209.205.192.0/19<br>209.205.224.0/20 | Pacnet | 6/29/2001 | ARIN | Active | Past due; has not been invoiced in 2004, 2005, 2006 | Yes, originating from AS 20228 | Yes, a number of domains are associated with this Netblock. | |
| (Block 2)<br><br>208.214.46.0<br>208.214.47.255 | 208.214.46.0/23 | UUNET | 5/8/1996 | ARIN | Unknown | Legacy space, not invoiced, no account w/ARIN | No | Unknown; while not publicly announced, could be used internally. | Legacy address space, issued by Central Registry prior to ARIN's inception. |
| (Block 3)<br>64.19.192.0<br>64.19.239.255 | 65.19.192.0/19<br>64.19.224.0/20 | Sand-Man | | ARIN | Revoked | Revoked for non-payment. | No | No | Held by ARIN for non-payment. |
| (Block 4) | | | | | | | Yes, it was used as both an origin and transit for several netblocks. | Yes, it is used to announce 209.205.192.0. It is also a transit AS for 148.231.240.0/21 and 158.122.64.0/20 | |
| ASN 20228 | | PacNet | 4/9/2001 | ARIN | By ARIN | Paid | | | |
| (Block 5)<br><br>ASN 11083 | | Ocean-Fund | 7/27/2002 | The Latin American and Caribbean Internet Addresses Registry (LACNIC) | | | No | No | Transferred to LACNIC from ARIN on 12/12/2002. |

# Exhibit B
## to the
## Declaration of Raymond A. Plzak
## In Support of Motion to Clarify/Modify

RAYMOND A. PLZAK DECLARATION
EXHIBIT B

## Kremen v. Cohen:  Pacnet-Related Correspondence to and from ARIN

| TO | FROM | RE | DOC TYPE | DATE |
|---|---|---|---|---|
| ARIN | J. Brownfield | Pacnet seeking changes | Letter | 02/25/04 |
| ARIN | J. Brownfield | ARIN request for information | Letter | 02/25/04 |
| J. Brownfield | ARIN | ARIN letter to Pacnet | E-mail | 02/26/04 |
| J. Martinez | ARIN | Attached material sent to ARIN | Fax | 03/09/04 |
| ARIN | J. Martinez | ARIN follow-up regarding conversation and allegations of fraud. | Letter | 03/10/04 |
| J. Martinez | ARIN | Pacnet response to letter of March 10, 2004 | Letter | 03/11/04 |
| ARIN | J. Martinez | ARIN follow-up regarding communications going forward should be in writing. | Letter | 03/11/04 |
| ARIN | J. Martinez | Memo regarding Stipulation regarding the "Standstill Agreement" | Letter | 03/12/04 |
| S. Ryan | J. Martinez | Pacnet letter to ARIN | Letter | 03/18/04 |
| J. Martinez | ARIN | ARIN response to letter dated March 18, 2004 | Letter | 03/19/04 |
| ARIN | J. Martinez | Pacnet apology letter/hiring counsel, withdrawing request for transfer | Letter | 03/20/04 |

**Exhibit C**
to the
**Declaration of Raymond A. Plzak**
**In Support of Motion to Clarify/Modify**

**Ryan, Stephen**

| | |
|---|---|
| From: | Richard Idell [richard.idell@ibslaw.com] |
| Sent: | Friday, January 30, 2004 9:23 AM |
| To: | Ryan, Stephen |
| Cc: | Gkremen@aol.com; Wagspeak@aol.com; gkremen@sex.com |
| Subject: | Re: Call me re developments please. |

Let me know your schedule today.  I spoke with Gary yesterday and he told me that he had connected with Mr. Jimmerson, had filled out various templates and that today they were discussing the transfers. By developments do you mean some issue that would interfere with our proposal as discussed in Washington or do you mean just to be sure you have what you need from us?

As we discussed in Washington, we agreed to resolve the matter of enforcement of the order of 9-17-01 by assgnment of Cohen's netblock numbers (for which you indicated Cohen had not paid giving ARIN the right to shut them down) to Gary but as a preliminary matter ARIN wanted Gary to fill out the usual paperwork (electronic) before the actual assignment. It was understood that Mr. Jimmerson (and you if necessary) would assist in getting Gary through the process. Gary indicated that he thought that we might be able to accompish the assignment today.

I am available most of today to speak if you just let me know where and when to call you.

Hope you are doing well.

Richard Idell


Richard J. Idell
Idell, Berman and Seitel
465 California Street, Suite 300
San Francisco, California 94104
Tel: (415) 986-2400
Fax: (415) 392-9259
Email: Richard.Idell@ibslaw.com

This message is intended only for the addressee(s), and may contain information that is privileged and confidential.  If the recipient of this message is not an addressee, please notify us immediately by telephone.

1

**Exhibit D**
**to the**
**Declaration of Raymond A. Plzak**
**In Support of Motion to Clarify/Modify**

# manatt

manatt | phelps | phillips

**Stephen M. Ryan**
Manatt, Phelps & Phillips, LLP
Direct Dial: (202) 463-4300
E-mail: sryan@manatt.com

March 11, 2004

Client-Matter:  22149-030

**BY FACSIMILE 619-946-2351**

Mr. Steve Martinez
Pacnet, Inc.
511 E. San Ysidro Blvd., Suite 246
San Ysidro, CA  92173-3110

Dear Mr. Martinez:

I have received your letter of March 10, 2004.  I am sorry that our phone call upset you.

One of the reasons I no longer want to engage on the telephone with Pacnet is that characterizations are often made of statements from telephone calls which have to be corrected, where a written record would end the issue.  For example, your letter's first paragraph implies that I accused you of engaging in fraud.  That is not the case, at least based on my memory. What I do recall saying is that I am not in a position to simply trust the representations of you, Mr. Brownfield or your company, based on a series of issues – ranging from the allegations made by the plaintiff in the case that started this problem, the failure to formally respond to my written communications, and the continued wish to have informal telephone conversations as a substitute.  I also find it perplexing that the address on your letterhead is in San Ysidro, California, while you have told me your business is located in Mexico.  I am calling a 619 area code, which is U.S.-based.  For the record, I have also repeatedly emailed or faxed documents to Mr. Brownfield and to you where I have confirmations of their receipt but it is later claimed they have not been received.  Or, conversely, I have sent the communication in the channel requested and have not been able to get it through.  I hope we are now over those communication difficulties.

I am not in a position to agree with your characterizations that Mr. Kremen has engaged in false or misleading conduct.  That is an issue between you and them.  Candidly, I want ARIN to stay out of the fight between you.

In my communication to Mr. Brownfield of February 26, 2004, I posed specific written questions.  Your letter contains information which is not organized to respond to my questions. Please send me any response you wish ARIN to consider.  I look forward to receiving factual information that will permit ARIN to do its job in an efficient and economical way.  As I have

# manatt

manatt | phelps | phillips

Mr. Steve Martinez
Page 2

told you, it is my current intention to lay these issues before the Court, and the sooner your company retains an attorney with whom I can work out a schedule for that purpose, the better off we all may be.

I look forward to a more business-like relationship for us based on written exchanges.

Sincerely,

Stephen M. Ryan

**Exhibit E**
**to the**
**Declaration of Raymond A. Plzak**
**In Support of Motion to Clarify/Modify**

# manatt

manatt | phelps | phillips

**Stephen M. Ryan**
Manatt, Phelps & Phillips, LLP
Direct Dial: (202) 463-4300
E-mail: sryan@manatt.com

March 19, 2004

**BY FACSIMILE 619-946-2351**

Mr. Steve Martinez
Pacnet, Inc.
511 E. San Ysidro Blvd., Suite 246
San Ysidro, CA 92173-3110

Re: Your Letter Dated March 18, 2004

Dear Mr. Martinez:

Your correspondence received this date is, as usual, insulting. As I have indicated to you, it is my intention to put this dispute before the Court. ARIN will not be proceeding with the transfer in this case. Furthermore, I am aware of your activity with LACNIC, seeking to take actions that may or may not be inconsistent with the Court's Order that I have shared with you.

I will notify you when I am proceeding to Court.

Sincerely,

*Stephen M. Ryan (jt )*

Stephen M. Ryan

**Exhibit F
to the
Declaration of Raymond A. Plzak
In Support of Motion to Clarify/Modify**

```
Date: Tue, 25 Oct 2005 14:22:23 -0400 (EDT)
From: hostmaster@arin.net
To: ip@pacnet.com.mx
Subject: Re: [ARIN-20051017.7001] SAND Subscription Fee
```

Hello,

As previously stated, ARIN has removed the registration of 64.19.192.0 -
64.19.239.255 from the WHOIS database and made the IP address available to
be reissued.

Please contact ARIN's helpdesk @ 703-227-0660 if you have any questions
or concerns.

Regards,

Cathy Clements
American Registry for Internet Numbers (ARIN)

```
================================================================
    email                       hostmaster@arin.net
    ftp                         ftp.arin.net
    whois                       whois.arin.net
    website                     http://www.arin.net
================================================================
```

On Mon, 17 Oct 2005 hostmaster@arin.net wrote:

```
>
>
> Hello,
>
> ARIN has made several attempts to contact your organization in
> regards to your delinquent anniversary payment(s). By not paying
> this fee your organization is in violation of your ARIN Registration
> Services Agreement - http://www.arin.net/library/agreements/rsa.pdf.
>
> Since ARIN has not received any correspondence from your organization,
> ARIN will remove the registration of 64.19.192.0 - 64.19.239.255 on
> October 24, 2005 from the WHOIS database and make the IP addresses
> available for reissue.
>
> Please contact ARIN as soon as possible in order for your registration
> to remain active. Contact can be made by replying to this message
> and/or calling ARIN's helpdesk at 703-227-0660.
>
>
> Regards,
>
> Cathy Clements
> American Registry for Internet Numbers (ARIN)
>
> ================================================================
>    email                       hostmaster@arin.net
>    ftp                         ftp.arin.net
>    whois                       whois.arin.net
>    website                     http://www.arin.net
> ================================================================
>
>
```

Web Interface for JPN3 Database

http://tools.arin.net/cgi-bin/webjpn.pl?table=history&sub_table=net&page=detail&net_hand...

## WEBJPN-HISTORY: NET Detail

Home | Search POC | Add POC | Search ORG | Add ORG | Search NET | Add NET | Search ASN | Add ASN | Search Ticket | History

This registration is current. You can go to WEBJPN NET Detail Page.

| Action | Date | By | Source | Comment | ID | Ticket | Status | Handle | Parent Handle | Name | ORG ID | IP Address | POC | Name Server |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unknown | 2002-08-08 | jjmy | | Last action before conversion. | | | Active | NET-64-19-192-0-1 | NET-64-0-0-0-0 | SAND-MAN-1 | SAND | 064.019.192.000-064.019.239.255(DA) | MM41338-ARIN (T) | NS.OMNITEC.CC NS2.OMNITEC.C |
| Convert | 2002-08-23 | myan | CONVERT | | 2055082 | | Active | NET-64-19-192-0-1 | NET-64-0-0-0-0 | SAND-MAN-1 | SAND | 064.019.192.000-064.019.239.255(DA) | MM41338-ARIN (T) | NS.OMNITEC.CC NS2.OMNITEC.C |
| Unknown | 2005-10-25 | cathyc | STATUPDT | revoked due to non-payment | 3784296 | 2005|017.7001 | RSD Hold | NET-64-19-192-0-1 | NET-64-0-0-0-0 | SAND-MAN-1 | SAND | 064.019.192.000-064.019.239.255(DA) | MM41338-ARIN (T) | NS.OMNITEC.CC NS2.OMNITEC.C |

6/8/2006 10:10 AM

**Exhibit G**
**to the**
**Declaration of Raymond A. Plzak**
**In Support of Motion to Clarify/Modify**

## Ryan, Stephen

**From:** Ryan, Stephen
**Sent:** Tuesday, February 24, 2004 10:11 AM
**To:** Richard J. Idell (E-mail)
**Subject:** ARIN Draft pleadings: provided pursuant to rule 408 agreement

I believe you and I spoke about this draft on Thursday Feb. 12. At that time you told me you intended to send me a revised draft, perhaps on Monday Feb. 16. Can you update me on your schedule?

Factual events continue to unfold, including PACNET tendering payment mid-last week for some numbering resources in response to a 2003 invoice automatically generated to them. They claim some of these number resources are not implicated by the Court's order and call on ARIN urging us to make transfers. We are factually investigating this matter. We have not and will not take any action on their request if the numbers are included in the Court's order, without putting the issue before the Court, but this tendering of payment may make an application to the Court increasingly necessary, and I believe makes the value of a joint application in this regard between our clients even more beneficial to your client. If we cannot agree on a joint filing, I still believe we can agree on a time and manner to approach the Court separately, but in a way which reduces the number or intensity of our differences.

-----Original Message-----
**From:** Ryan, Stephen
**Sent:** Wednesday, February 11, 2004 11:00 AM
**To:** Richard J. Idell (E-mail)
**Subject:** ARIN Draft pleadings: provided pursuant to rule 408 agreement

As we discussed yesterday these documents should be in pretty good shape to permit us to close our deal. The deal is amended in the regard on not transferring all of the numbers as we discussed and as is made clear in the documents. I reserve the right to make changes from ARIN's perspective, but welcome your suggested changes and additions. Once you approve we can begin to execute.


Motion to Modify
Order.DOC


Plzak Declaration.DOC


Proposed Amended
Order.DOC

**Exhibit H**
**to the**
**Declaration of Raymond A. Plzak**
**In Support of Motion to Clarify/Modify**

**From:**     Richard Idell [richard.idell@ibslaw.com]
**Sent:**     Thursday, June 09, 2005 12:22 AM
**To:**       Ryan, Stephen
**Subject:**  Re: received draft subpoena under rule 408

I ran your suggestion by Gary Kremen. He wants to stick with our thirty day agreement; we can always agree on a briefing schedule if that is necessary. Let's focus on the document subpoena if we can. Thanks.
RJI

Richard J. Idell
Idell, Berman, Seitel & Rutchik LLP
465 California Street, Suite 300
San Francisco, California 94104
Tel: (415) 986-2400
Fax: (415) 392-9259
Email: Richard.Idell@ibslaw.com

This message is intended only for the addressee(s), and may contain information that is privileged and confidential.  If the recipient of this message is not an addressee, please notify us immediately by telephone.

>>> "Ryan, Stephen" <sryan@manatt.com> 6/8/2005 12:49:33 PM >>>
I have received your draft. I will be meeting with my client on Monday to discuss this matter and will get back to you after that meeting about the subpoena. Ultimately I will agree to accept service of process of a version of this document. However, I believe I will ask you for a definitive agreement on a draft scheduling order governing our going forward to Court in the (hopefully unlikely) event we do not reach agreement on a joint approach to a modified version of the relief sought. Currently our agreement, already made, is that either of us must give 30 days written notice to the other before proceeding to court.
That restriction would still exist, but the draft scheduling order would give us a standby agreement as to who goes first, how long the other side has to reply, etc. Given that your discovery will be largely complete when we complete subpoena production, such an agreement is a confidence builder to order our discussion and not lead us to try to file first in the absence of such an agreement. Your thoughts?

1

# Exhibit I
## to the
## Declaration of Raymond A. Plzak
## In Support of Motion to Clarify/Modify

**From:** Ryan, Stephen
**Sent:** Thursday, June 09, 2005 10:34 AM
**To:** 'Richard Idell'
**Subject:** RE: received draft subpoena under rule 408

I don't understand the reluctance on this issue. I respectfully request you reconsider such an agreement. Absent it we will be forced to begin prep so we are not in a position where you apply for injunctive relief and not provide a corresponding reasonable briefing schedule for our response by agreement. I will seek further guidance from my client next week.

-----Original Message-----
From: Richard Idell [mailto:richard.idell@ibslaw.com]
Sent: Thursday, June 09, 2005 12:22 AM
To: Ryan, Stephen
Subject: Re: received draft subpoena under rule 408

I ran your suggestion by Gary Kremen. He wants to stick with our thirty day agreement; we can always agree on a briefing schedule if that is necessary. Let's focus on the document subpoena if we can. Thanks.
RJI

Richard J. Idell
Idell, Berman, Seitel & Rutchik LLP
465 California Street, Suite 300
San Francisco, California 94104
Tel: (415) 986-2400
Fax: (415) 392-9259
Email: Richard.Idell@ibslaw.com

This message is intended only for the addressee(s), and may contain information that is privileged and confidential.  If the recipient of this message is not an addressee, please notify us immediately by telephone.

>>> "Ryan, Stephen" <sryan@manatt.com> 6/8/2005 12:49:33 PM >>>
I have received your draft. I will be meeting with my client on Monday to discuss this matter and will get back to you after that meeting about the subpoena. Ultimately I will agree to accept service of process of a version of this document. However, I believe I will ask you for a definitive agreement on a draft scheduling order governing our going forward to Court in the (hopefully unlikely) event we do not reach agreement on a joint approach to a modified version of the relief sought. Currently our agreement, already made, is that either of us must give 30 days written notice to the other before proceeding to court.
That restriction would still exist, but the draft scheduling order would give us a standby agreement as to who goes first, how long the other side has to reply, etc. Given that your discovery will be largely complete when we complete subpoena production, such an agreement is a confidence builder to order our discussion and not lead us to try to file first in the absence of such an agreement. Your thoughts?

1

# Exhibit J
## to the
## Declaration of Raymond A. Plzak
## In Support of Motion to Clarify/Modify

Case 5:06-cv-02554-JW    Document 48-8    Filed 03/19/2007    Page 40 of 52
Case 5:98-cv-20718-JW    Document 1173    Filed 06/27/2006    Page 2 of 3
Page 1 of 2

**From:**    Ryan, Stephen
**Sent:**    Thursday, June 09, 2005 11:00 AM
**To:**    Raymond A. Plzak (plzak@arin.net); Nate Davis (ndavis@arin.net)
**Subject:** FW: received draft subpoena under rule 408

today's exchange.

**From:** Richard Idell [mailto:richard.idell@ibslaw.com]
**Sent:** Thursday, June 09, 2005 10:55 AM
**To:** Ryan, Stephen
**Subject:** RE: received draft subpoena under rule 408

We are not "applying for injunctive relief", we are trying to settle with you. I look forward to hearing from you on the subpoena so that process can be completed and we can get the documents. You have my assurances and my word that if we don't reach a settlement, we will work with you on a reasonable schedule that gives both sides a fair and reasonable opportunity to brief all issues without advantage or surprise.

Richard J. Idell
Idell, Berman, Seitel & Rutchik LLP
465 California Street, Suite 300
San Francisco, California 94104
Tel: (415) 986-2400
Fax: (415) 392-9259
Email: Richard.Idell@ibslaw.com

This message is intended only for the addressee(s), and may contain information that is privileged and confidential. If the recipient of this message is not an addressee, please notify us immediately by telephone.

>>> "Ryan, Stephen" <sryan@manatt.com> 6/9/2005 7:33:50 AM >>>
I don't understand the reluctance on this issue. I respectfully request you reconsider such an agreement. Absent it we will be forced to begin prep so we are not in a position where you apply for injunctive relief and not provide a corresponding reasonable briefing schedule for our response by agreement. I will seek further guidance from my client next week.

-----Original Message-----
From: Richard Idell [mailto:richard.idell@ibslaw.com]
Sent: Thursday, June 09, 2005 12:22 AM
To: Ryan, Stephen
Subject: Re: received draft subpoena under rule 408

I ran your suggestion by Gary Kremen. He wants to stick with our thirty day agreement; we can always agree on a briefing schedule if that is necessary. Let's focus on the document subpoena if we can. Thanks.
RJI

Richard J. Idell
Idell, Berman, Seitel & Rutchik LLP
465 California Street, Suite 300
San Francisco, California 94104

6/9/2005

Tel: (415) 986-2400
Fax: (415) 392-9259
Email: Richard.Idell@ibslaw.com

This message is intended only for the addressee(s), and may contain
information that is privileged and confidential. If the recipient of
this message is not an addressee, please notify us immediately by
telephone.

>>> "Ryan, Stephen" < sryan@manatt.com > 6/8/2005 12:49:33 PM >>>
I have received your draft. I will be meeting with my client on Monday
to discuss this matter and will get back to you after that meeting about
the subpoena. Ultimately I will agree to accept service of process of a
version of this document. However, I believe I will ask you for a
definitive agreement on a draft scheduling order governing our going
forward to Court in the (hopefully unlikely) event we do not reach
agreement on a joint approach to a modified version of the relief
sought. Currently our agreement, already made, is that either of us must
give 30 days written notice to the other before proceeding to court.
That restriction would still exist, but the draft scheduling order would
give us a standby agreement as to who goes first, how long the other
side has to reply, etc. Given that your discovery will be largely
complete when we complete subpoena production, such an agreement is a
confidence builder to order our discussion and not lead us to try to
file first in the absence of such an agreement. Your thoughts?

**Exhibit K**
**to the**
**Declaration of Raymond A. Plzak**
**In Support of Motion to Clarify/Modify**

**Ryan, Stephen**

| | |
|---|---|
| From: | Richard Idell [richard.idell@ibslaw.com] |
| Sent: | Wednesday, June 15, 2005 10:16 AM |
| To: | Ryan, Stephen |
| Cc: | Gkremen@aol.com |
| Subject: | RE: received draft subpoena under rule 408 |

Thanks. We look forward to the production and to trying to resolve this matter with you. It is agreed that we will not take any action in court without 30 days notice to you. Thanks for you courtesy and cooperation.

Richard J. Idell
Idell, Berman, Seitel & Rutchik LLP
465 California Street, Suite 300
San Francisco, California 94104
Tel: (415) 986-2400
Fax: (415) 392-9259
Email: Richard.Idell@ibslaw.com

This message is intended only for the addressee(s), and may contain information that is privileged and confidential. If the recipient of this message is not an addressee, please notify us immediately by telephone.

>>> "Ryan, Stephen" <sryan@manatt.com> 6/14/2005 12:59:22 PM >>>
I am going to hold you to your good faith rep here.
I will agree to accept service of your subpoena. We will produce 30 days from tomorrow or July 15, 2005. We reserve the right to object to any particular paragraph or definition, but in general terms will be producing responsive docs not just objections. Agreed?


From: Richard Idell [mailto:richard.idell@ibslaw.com]
Sent: Thursday, June 09, 2005 10:55 AM
To: Ryan, Stephen
Subject: RE: received draft subpoena under rule 408


We are not "applying for injunctive relief", we are trying to settle with you. I look forward to hearing from you on the subpoena so that process can be completed and we can get the documents. You have my assurances and my word that if we don't reach a settlement, we will work
with you on a reasonable schedule that gives both sides a fair and reasonable opportunity to brief all issues without advantage or surprise.

Richard J. Idell
Idell, Berman, Seitel & Rutchik LLP
465 California Street, Suite 300
San Francisco, California 94104
Tel: (415) 986-2400
Fax: (415) 392-9259
Email: Richard.Idell@ibslaw.com

This message is intended only for the addressee(s), and may contain information that is privileged and confidential. If the recipient of this message is not an addressee, please notify us immediately by telephone.

>>> "Ryan, Stephen" <sryan@manatt.com> 6/9/2005 7:33:50 AM >>>
I don't understand the reluctance on this issue. I respectfully request

1

you reconsider such an agreement. Absent it we will be forced to begin
prep so we are not in a position where you apply for injunctive relief
and not provide a corresponding reasonable briefing schedule for our
response by agreement. I will seek further guidance from my client
next
week.

-----Original Message-----
From: Richard Idell [mailto:richard.idell@ibslaw.com]
Sent: Thursday, June 09, 2005 12:22 AM
To: Ryan, Stephen
Subject: Re: received draft subpoena under rule 408

I ran your suggestion by Gary Kremen. He wants to stick with our
thirty
day agreement; we can always agree on a briefing schedule if that is
necessary. Let's focus on the document subpoena if we can. Thanks.
RJI

Richard J. Idell
Idell, Berman, Seitel & Rutchik LLP
465 California Street, Suite 300
San Francisco, California 94104
Tel: (415) 986-2400
Fax: (415) 392-9259
Email: Richard.Idell@ibslaw.com

This message is intended only for the addressee(s), and may contain
information that is privileged and confidential. If the recipient of
this message is not an addressee, please notify us immediately by
telephone.

>>> "Ryan, Stephen" < sryan@manatt.com > 6/8/2005 12:49:33 PM >>>
I have received your draft. I will be meeting with my client on Monday
to discuss this matter and will get back to you after that meeting
about
the subpoena. Ultimately I will agree to accept service of process of
a
version of this document. However, I believe I will ask you for a
definitive agreement on a draft scheduling order governing our going
forward to Court in the (hopefully unlikely) event we do not reach
agreement on a joint approach to a modified version of the relief
sought. Currently our agreement, already made, is that either of us
must
give 30 days written notice to the other before proceeding to court.
That restriction would still exist, but the draft scheduling order
would
give us a standby agreement as to who goes first, how long the other
side has to reply, etc. Given that your discovery will be largely
complete when we complete subpoena production, such an agreement is a
confidence builder to order our discussion and not lead us to try to
file first in the absence of such an agreement. Your thoughts?

**Exhibit L**
**to the**
**Declaration of Raymond A. Plzak**
**In Support of Motion to Clarify/Modify**

Case 5:06-cv-02554-JW   Document 48-8   Filed 03/19/2007   Page 46 of 52
04/05/2005 13:48 4153920 Case 5:98-cv-20...8-JW   Document 1173   Filed 06/2...2006   Page 2 of 4
IDELL BERMAN SF   TEL   PAGE  02/05

## IDELL, BERMAN, SEITEL & RUTCHIK LLP

465 California Street, Suite 300
San Francisco, California 94104
TEL. (415) 986-2400
FAX: (415) 392-9259
www.ibsrlaw.com

Richard J. Idell
richard.idell@ibsrlaw.com

April 5, 2005

### CONFIDENTIAL SETTLEMENT DISCUSSIONS, NEGOTIATIONS AND OFFERS PURSUANT TO EVIDENCE CODE SECTIONS 1152 AND 1154 AND THE FEDERAL RULES OF EVIDENCE, RULE 408

<u>VIA FACSIMILE (202) 436-4394 AND E-MAIL SRyan@Manatt.com</u>

Stephen M. Ryan
MANATT, PHELPS & PHILLIPS, LLP
1501 M Street, N.W., Suite 700
Washington, DC 20005-1702

Re:   <u>Kremen v. Cohen</u>

Dear Steve:

Thank you for sending out the correspondence; we understand that it is provided under Rule 408. What is missing from the correspondence is Mr. Cohen's original application to ARIN and any subsequent modifications or related papers. Can you provide us with that; it would be helpful to know what it says in our continuing discussions with you.

First, you should know that the people you are dealing with are all well known Cohen cohorts, agents or affiliates. Jack Brownfield was found to be the person paying for Cohen's legal bills after Judge Ware ordered that Cohen could not transfer money to his lawyers or other property. That order ran to persons acting in concert with Cohen. Quite apart from the execution order that we have there was an injunction that was issued which prevented Cohen from transferring property. As you know the Judgment in favor of Gary Kremen included the imposition of a constructive trust on Cohen property and property of Cohen entities. The IP net block numbers in question are clearly the subject of the prior orders as well as the constructive trust set forth in the Judgment. Mr. Kremen's position is that he steps into Mr. Cohen shoes on execution of the Judgment.

I noticed in the paperwork that you sent a reference to the stipulation filed in the District Court and the statement that we had never given notice that we were proceeding with enforcement. This is a false statement. Enclosed is my letter of November 6, 2003 directed to their counsel, Mr. Usoz, which is that notice.

Stephen M. Ryan
April 5, 2005
Page 2 of 2

The correspondence dated March 19, 2004 to Martinez from you refers to LACNIC. No correspondence with respect to the "Latin America ARIN" was enclosed. Could you tell us more about this matter?

Your letter also references papers that you are preparing for the court; I do not know what papers you refer to but I would like to adhere to our agreement that neither of us will take any litigation action prior to thirty (30) days notice to the other. In the event that your client has made the decision to cease all further settlement discussions, please let me know that so that we can arrange a mutually convenient day to appear before Judge Ware on whatever motion or other proceeding you intend to file and on our further enforcement proceedings. Monday is his usual law and motion day. If we are taking the litigation route, we will want to conduct discovery including a subpoena duces tecum for various documents and records and a Rule 30(b)(6) deposition on various issues before any hearing. If we have to go to Court, of course, all of Mr. Kremen's rights and claims are fully reserved and, as we have discussed, Mr. Kremen will want to focus on the property nature of these net block numbers. Our position is and has been that since the net block numbers were assigned to Cohen and/or one of his entities, Mr. Kremen is fully entitled to possession of them just as he would as to any other property under the constructive trust Judgment.

Gary and I will be in touch this week with a further proposal.

Very truly yours,

IDELL, BERMAN, SEITEL & RUTCHIK

Richard J. Idell

RJI:js
Enclosure
cc:    Gary Kremen

**IDELL, BERMAN & SEITEL**
MERCHANTS EXCHANGE BUILDING
465 CALIFORNIA STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94104
TEL: (415) 986-2400

RICHARD J. IDELL *
ANTHONY R. BERMAN
OWEN SEITEL
JENNIFER A. MARONE
PATRICIA DE FONTE
*A LAW CORPORATION

FAX: (415) 392-9259
EMAIL: RICHARD.IDELL@IBSLAW.COM
WWW.IBSLAW.COM

November 6, 2003

<u>VIA U.S. MAIL AND FAX (408) 279-1998</u>

Stephen Usoz
333 West Santa Clara Street, Suite 260
San Jose, CA 95113

　　　Re:　　<u>Kremen v. Cohen; PACNET</u>

Dear Mr. Usoz:

　　　This letter shall constitute notice to PACNET MX, PACNET S.A. de CV and PACNET Incorporated, a Nevada Corporation, that Mr. Kremen will be proceeding with execution and enforcement of the September 17, 2001 order re: netblock numbers.

　　　　　　　　　Very truly yours,

　　　　　　　　　IDELL, BERMAN & SEITEL

　　　　　　　　　Richard J. Idell

RJI:yc

cc:　　Gary Kremen
　　　Richard Yankwich

**Exhibit M**
to the
**Declaration of Raymond A. Plzak**
**In Support of Motion to Clarify/Modify**

| From: | Richard Idell [richard.idell@ibslaw.com] |
| Sent: | Wednesday, August 17, 2005 2:20 AM |
| To: | Ryan, Stephen |
| Cc: | Gkremen@aol.com; Roth, Holly |
| Subject: | RE: Status of protective order: Rule 408 communication. |

Steve: I received your faxed letter of August 16. My client has not seen it since it was
faxed and he is traveling.

You did not address the issue of the tolling agreement. We want a tolling agreement making
clear that while we are discussing resolution of this matter no statutes of limitations
that may apply are running. I am not aware of any such statute but Mr. Kremen has asked
for this for the sake of good order.

On the protective order, there seem to be two issues. The issue of filing under seal is
governed by local rule and we have no discretion in the matter so I don't really
understand your persistance in that. You should have the laboring oar in making sure that
documents that you want filed under seal are filed under seal.

On the issue of experts or consultants hired by Mr. Kremen, your demand is impractical
since Mr. Kremen has such persons on retainer and they are not hired by this law firm.
These consultants and investigators will sign an acknowledgement that they will abide by
the protective order as to the few documents that there are.

I am encouraging Mr. Kremen to resolve this matter but he is at the end of his patience
over this document production. Your objections were wholly untimely and not well taken. I
trust that we can work this out and would encourage you to call me as soon as you can to
work out the final terms of the protective order, the terms of a tolling agreement and
production of the remaining documents.

Richard Idell

Richard J. Idell
Idell, Berman, Seitel & Rutchik LLP
465 California Street, Suite 300
San Francisco, California 94104
Tel: (415) 986-2400
Fax: (415) 392-9259
Email: Richard.Idell@ibslaw.com

This message is intended only for the addressee(s), and may contain information that is
privileged and confidential.  If the recipient of this message is not an addressee, please
notify us immediately by telephone.

>>> "Ryan, Stephen" <sryan@manatt.com> 8/10/2005 9:13:32 AM >>>
Richard, it was signed and sent back to you the day we got it. Please check around your
firm. I got your sternly worded note this morning.
My
client is away on vacation till Monday. Expect ARIN response then or
Tuesday at latest.

-----Original Message-----
From: Richard Idell [mailto:richard.idell@ibslaw.com]
Sent: Wednesday, August 10, 2005 11:58 AM
To: Ryan, Stephen
Subject: RE: Status of protective order: Rule 408 communication.

Steve:

Please return the acknowledgement of service that you agreed to accept on the subpoena.
If there is some issue please call me right away.

1

Richard Idell

Richard J. Idell
Idell, Berman, Seitel & Rutchik LLP
465 California Street, Suite 300
San Francisco, California 94104
Tel: (415) 986-2400
Fax: (415) 392-9259
Email: Richard.Idell@ibslaw.com

This message is intended only for the addressee(s), and may contain information that is privileged and confidential.  If the recipient of this message is not an addressee, please notify us immediately by telephone.

>>> "Ryan, Stephen" <sryan@manatt.com> 8/5/2005 9:19:30 AM >>>
I am sending you a writing for clarity.

-----Original Message-----
From: Richard Idell [mailto:richard.idell@ibslaw.com]
Sent: Thursday, August 04, 2005 6:01 PM
To: Ryan, Stephen
Cc: Gkremen@aol.com
Subject: Re: Status of protective order: Rule 408 communication.

Steve: Please include the reasons why the language is not satisfactory.

It probably would be easier if you just called me.

Richard J. Idell
Idell, Berman, Seitel & Rutchik LLP
465 California Street, Suite 300
San Francisco, California 94104
Tel: (415) 986-2400
Fax: (415) 392-9259
Email: Richard.Idell@ibslaw.com

This message is intended only for the addressee(s), and may contain information that is privileged and confidential.  If the recipient of this message is not an addressee, please notify us immediately by telephone.

>>> "Ryan, Stephen" <sryan@manatt.com> 8/4/2005 2:50:26 PM >>>
Not satisfactory. We will send a response tomorrow. Steve.

-----Original Message-----
From:       Richard Idell [mailto:richard.idell@ibslaw.com]
Sent: Thu Aug 04 14:47:08 2005
To:    Ryan, Stephen
Subject:    Re: Status of protective order: Rule 408 communication.


Is the re-draft satisfactory? We would like to get the rest of the documents. Please advise.

Richard Idell

Richard J. Idell
Idell, Berman, Seitel & Rutchik LLP
465 California Street, Suite 300
San Francisco, California 94104
Tel: (415) 986-2400
Fax: (415) 392-9259
Email: Richard.Idell@ibslaw.com

This message is intended only for the addressee(s), and may contain information that is privileged and confidential.  If the recipient of this message is not an addressee, please notify us immediately by telephone.

>>> "Ryan, Stephen" <sryan@manatt.com> 7/29/2005 7:16:14 AM >>>
Please let me know if my draft is satisfactory. If we are going to have a problem on this
please return the documents without making copies as an alternative. Steve.


Stephen M. Ryan
manatt | phelps | phillips
One Metro Center
700 12th Street, N.W., Suite 1100
Washington, D.C.  20005
tel.: 202.585.6550
fax:  202.585.6600

sryan@manatt.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-
mail messages attached to it, may contain confidential information that is legally
privileged. If you are not the intended recipient, or a person responsible for delivering
it to the intended recipient, you are hereby notified that any disclosure, copying,
distribution or use of any of the information contained in or attached to this message is
STRICTLY PROHIBITED. If you have received this transmission in error, please immediately
notify us by reply e-mail at sryan@manatt.com or by telephone at (202) 585-6550, and
destroy the original transmission and its attachments without reading them or saving them
to disk. Thank you.