# EXHIBIT G

Dockets.Justia.com

RICHARD J. IDELL, ESQ., #069033
OWEN SEITEL, ESQ., #137365
IDELL & SEITEL LLP
The Merchants Exchange Building
465 California Street, Suite 300
San Francisco, CA 94104
Telephone: (415) 986-2400
Facsimile: (415) 392-9259

TIMOTHY P. DILLON, ESQ., #190839
DILLON & GERARDI, APC
4660 La Jolla Village Dr., Suite 775
San Diego, CA 92122
Telephone: (858) 587-1800
Facsimile: (858) 587-2587

Attorneys for Plaintiff
GARY KREMEN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GARY KREMEN, an individual,<br><br>        Plaintiff,<br><br>        v.<br><br>STEPHEN MICHAEL COHEN, an individual, OCEAN FUND INTERNATIONAL, LTD., a foreign company, SAND MAN INTERNACIONAL LIMITED, a foreign company, SPORTING HOUSES MANAGEMENT CORPORATION, a Nevada Company, SPORTING HOUSES OF AMERICA, a Nevada company, SPORTING HOUSES GENERAL, INC., a Nevada, company, and DOES 1-20 inclusive,<br><br>        Defendants. | Case No.: C 98 20718 JW PVT<br><br>**PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION, OR, IN THE ALTERNATIVE, FOR MODIFICATION OF ORDER DATED SEPTEMBER 17, 2001, ENTITLED "ORDER RE: REGISTRATION OF IP NUMBERS (NETBLOCKS) IN THE NAME OF JUDGMENT CREDITOR**<br><br>Date:      September 11, 2006<br><br>Time:      9:00 a.m.<br><br>Location:   Courtroom 8<br><br>The Honorable Judge James Ware Presiding |

**TABLE OF CONTENTS**

**Page(s)**

I.  INTRODUCTION ................................................................................................1

II.  FACTUAL HISTORY ........................................................................................3

III.  PROCEDURAL HISTORY ...............................................................................4

IV.  ARGUMENT .....................................................................................................5

    A.  ENFORCEMENT OF THE CONSTRUCTIVE TRUST IMPOSED BY THE JUDGMENT DOES NOT DEPRIVE ARIN OF ITS CONSTITUTIONAL DUE PROCESS RIGHT ............................................................................................9

    B.  THE NETBLOCK ORDER REQUIRES NEITHER CLARIFICATION NOR MODIFICATION; RULE 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE PROVIDES NO BASIS FOR THE RELIEF ARIN SEEKS..................................11

        1.  Rule 60(b)(4) Provides No Basis for the Relief ARIN Seeks.........................12

        2.  Rule 60(b)(5) Provides No Basis for the Relief ARIN Seeks.........................13

            a.  There Has Been No Substantial Change in Circumstances or Law Since the Netblock Order Was Entered................................................................13

            b.  ARIN Will Suffer No Extreme and Unexpected Hardship in Complying with the Netblock Order..............................................................................16

                i.  The passage of time does not constitute an "extreme and unexpected hardship." .................................................................16

                ii.  Plaintiff's failure to advise ARIN in advance of the filing of the Antitrust Complaint does not constitute an "extreme and unexpected hardship." .................................................................17

                iii.  The speculative harm that might be suffered by third parties does not constitute an "extreme and unexpected hardship.".................17

**TABLE OF CONTENTS (continued)**

Page(s)

iv.    ARIN fails to show that certain Netblocks and ASNs are beyond ARIN's control; ARIN's purported lack of control does not constitute an "extreme and unexpected hardship"; any Netblocks and ASNs actually beyond ARIN's should be retrieved by ARIN and registered in Kremen's name or, in the alternative, this Court should issue an Order directed to those entities currently in control of the relevant Netblocks and ASNs requiring those entities to register them in Kremen's name......................................18

v.    Speculative lawsuits to which ARIN might be subject do not constitute an "extreme and unexpected hardship."..................20

c.    There Is No Good Reason Why the Court Should Modify the Netblock Order..................................................................21

3.    Rule 60(b)(6) Provides No Basis for the Relief ARIN seeks..........................21

C.    ARIN'S MOTION IS UNTIMELY....................................................23

D.    IN THE ALTERNATIVE, THIS COURT SHOULD SCHEDULE A FURTHER HEARING ON ARIN'S MOTION PENDING ARIN'S COMPLIANCE WITH DISCOVERY REQUESTS SEEKING CRITICAL DOCUMENTS PERTAINING TO THE ORIGINAL ASSIGNMENT OF THE NETBLOCKS AND ASNS TO COHEN, HIS ALTER EGOS AND/OR AFFILIATES..............................................24

IV. CONCLUSION.....................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashford v. Steuart*, 657 F.2d 1053 (9th Cir. 1981) .................................................23

*Burrell v. Henderson*, 434 F.3d 826 (6th Cir. 2006) ...............................................13

*Gonzales v. Crosby*, 125 S. Ct. 2641 (2005) .........................................................21

*Hansberry v. Lee*, 311 U.S. 32 (1940) ...................................................................9

*Headwaters Inc. v. U.S. Forest Serv.*, 399 F3d 1047 (9th Cir. 2005) .....................9

*Ins. Corp. of Ireland v. Compagnie Des Bauxites De Guinee ("Compagnie des Bauxites")*, 456 U.S. 694 (1982) ..............................................................................................................10

*Jinks v AlliedSignal, Inc.*, 250 F.3d 381 (6th Cir. 2001) ................................11, 16, 21

*Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097 (9th Cir. 2006) ..................11, 12

*Lehman v. United States*, 154 F3d 1010(9th Cir. 1998) ........................................21

*Liljeberg. V. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988) .....................21

*Lyon v. Agusta S.P.A.*, 252 F.3d 1078 (9th Cir. 2001) .........................................21

*Maraziti v Thorpe*, 52 F.3d 252 (9th Cir. 1995) ...................................................13

*Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000) ...................................................9

*Pa. v Wheeling & Belmont Bridge Co.*, 59 U.S. 421 (U.S. 1856) ...........................14

*Richards v. Jefferson County*, 517 U.S. 793 (1996) .............................................10

*SEC v. Worthen*, 98 F.3d 480 (9th Cir. 1996) ................................................13, 16

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 911 F.2d 363 (9th Cir. 1990) ........12

*Twelve John Does v. District of Columbia*, 268 U.S. App. D.C. 308 (D.C. Cir. 1988) ...........14

*United States v. Berke*, 170 F.3d 882 (9th Cir. 1999) ...........................................12

*United States v. Swift & Co.*, 286 U.S. 106 (1932) ..........................................14, 15

*Zenith Radio Corp. v Hazeltine Res Inc ("Zenith")*, 395 U.S. 100 (1969) ...............9

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

**Statutes**

Fed. R. Civ. Proc. 37(b)(2)(a) ................................................................................ 10

Fed. R. Civ. Proc. 60(b) ............................................................................ 12, 13, 21, 22

Fed. R. Civ. Proc. 60(b)(3) ................................................................................. 22

Fed. R. Civ. Proc. 60(b)(4) ........................................................................ 12, 13, 21

Fed. R. Civ. Proc. 60(b)(5) ................................................................... 12, 13, 14, 15, 21

Fed. R. Civ. Proc. 60(b)(6) .............................................................................. 12, 21

Netblocks and ASNs in Kremen's name. The Netblock Order specified precisely how the registration was to be changed.

ARIN, by its own admission, was on actual notice of the Netblock Order within six (6) weeks of its issuance. *See* Plzak Decl., ¶ 2 at 2:14-18. However, even after the passage of nearly five (5) years, ARIN still consistently and repeatedly refuses to abide by the plain terms of the Judgment and the Netblock Order, which would simply require ARIN to register the Netblocks and ASNs in Kremen's name as ordered in furtherance of the constructive trust imposed by the Judgment.

Instead, incorrectly characterizing the court-ordered registration as a "transfer," ARIN has avoided its obligation to comply and insisted[6] that any registration of the Netblocks and ASNs should be subject to numerous – and onerous – policies, terms and conditions that ARIN had put into place in the years intervening between Cohen's acquisition of the Netblocks and ASNs and the date of the Judgment.[7] ARIN's avoidance of its obligations and its insistence on conditions is neither reasonable nor legal, since this Court awarded Kremen "all monies and properties of the Defendants" which were determined to be held in constructive trust. By the very definition of "constructive trust," Kremen should receive these monies and properties on the very same terms and conditions under which they were are held by Cohen, his alter egos and/or affiliates. Any registration in Kremen's name that is not based on this principle is legally impermissible.

Consequently, ARIN's Motion for Clarification is fundamentally misguided. ARIN mistakenly considers the *registration* of the Netblocks and ASNs in Kremen's name to be a "transfer." However, "transfer," by definition, involves a conveyance of the property in question. Here, Kremen is receiving the subject property by an act of substitution – "stepping into the shoes" of the Defendants. Rather than considering the registration as occurring between two separate persons, ARIN should consider it as if Stephen Cohen simply changed his name to Gary Kremen, *i.e.*, there was no substantive change in ownership. This is the nature of a constructive trust, and this is how the subject Netblocks and ASNs

---

[6] ARIN's leverage, which permits it to make unremitting demands on Plaintiff, is the fact that it is the sole and exclusive steward of IP space in North America. *See* Idell Decl., ¶ 15 and Ex "J" at 10:9-22.

[7] As previously noted, *see* n 5 herein, the operative date is that of the Judgment, which imposed a constructive trust on Cohen's assets. The Netblock Order was intended to assist in effectuating the terms of the Judgment as to the Netblocks and ASNs.

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

# I.    **INTRODUCTION.**

This case has achieved a degree of notoriety, as much for the fact that it has created legal precedent[1] as for the epic struggle of plaintiff and judgment creditor Gary Kremen ("Kremen" or "Plaintiff") to retrieve his domain name and collect on his sixty-five million dollar ($65,000,000.00) judgment rendered by this Court on April 3, 2001 (the "Judgment") against Defendant Stephen Michael Cohen ("Cohen" or "Defendant") and his alter egos. *See* Idell Decl., ¶¶ 4, 5 and Exs. "A", "B". Most importantly, for purposes of this motion, the Judgment also imposed a constructive trust[2] "upon all monies and properties of the Defendants." *See* Idell Decl., ¶ 4 and Ex. "A" at 1:19-20.

Subsequent to entry of the Judgment, Kremen discovered that among these "monies and properties" were blocks of Internet Protocol ("IP") addresses (known and referred to herein as the "Netblocks") and Autonomous System Numbers (the "ASNs")[3] held by (1) Cohen; (2) Ocean Fund International, Ltd. and Sandman International, Ltd., two of Cohen's alter ego entities and named defendants herein;[4] and (3) Pacnet S.A. de C.V. ("Pacnet"), a company subsequently recognized and designated by this Court as one of Cohen's many affiliated entities "connected . . . with the domain name 'sex.com'". *See* Idell Decl., ¶¶ 7, 10 and Exs. "D", "F" at 7:25-27. As such, the ownership interests in these Netblocks and ASNs were and are held constructively for Kremen's benefit from the date of the Judgment.[5] On September 17, 2001, on Kremen's application, this Court issued an order (the "Netblock Order") requiring the American Registry of Internet Numbers, Ltd. ("ARIN") to register the

---

[1] For determining that Internet domain names are "property" subject to conversion. *See Kremen v. Cohen*, 337 F.3d 1024, 1029-1030 (9th Cir. 2003).

[2] Sections 2223 and 2224 of the California Civil Code define a constructive trust. *Weststeyn Dairy 2 v. Eades Commodities Co.*, 280 F. Supp. 2d 1044, 1083 (E.D. Cal. 2003) (citing *Communist Party of the United States v. 522 Valencia, Inc.*, 35 Cal.App.4th 980, 990 (1995)). Section 2223 provides: "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." *Id.* Section 2224 states: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." *Id.* at 1083-1084.

[3] A detailed description of Netblocks and ASNs is given in Kremen's Complaint for Violation of Antitrust Laws, Conversion, Unfair Business Competition and Breach of Fiduciary Duty filed by Gary Kremen in the United States Court for the Northern District of California, being Case No. C 06 2554 and styled as *Kremen v. American Registry for Internet Numbers, Ltd* (the "Antitrust Complaint"). *See* Idell Decl., ¶ 15 and Ex. "J" at 6:1-8:6.

[4] This Court concluded as a matter of law that all the named defendants in this action, including Ocean Fund and Sandman, are the alter egos of Cohen. *See* Idell Decl., ¶ 5 and Ex. "B" at 7:25-27.

[5] The operative date is that of the Judgment, at which time "all monies and properties of the Defendants" were held in constructive trust for Kremen's benefit.

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

should be treated. Anything less, including ARIN's insistence on the imposition of various restrictions as a condition of registration, is unjust. ARIN's Motion should be denied.

## II.    FACTUAL HISTORY.

The Court is well acquainted with the facts of this case vis-à-vis the dispute over the sex.com domain name between plaintiff Gary Kremen and defendant Stephen Michael Cohen ("Cohen"), as well as Kremen's Herculean efforts to collect on the Judgment resolving that dispute.

The September 17, 2001 Netblock Order at issue in ARIN's instant Motion for Clarification deals with Kremen's attempt to gain possession, by registration in Kremen's name, of only one group of Cohen's assets, namely the Netblocks and ASNs for which ARIN became the registrar in 1997.[8] *See* Sandel Decl. ¶ 3 and Ex. "A".

Despite actual (though informal) notice within weeks of entry of the Netblock Order, later formal service of the Order, and Plaintiff's many requests over the years, ARIN has continuously refused to register the Netblocks and ASNs in Kremen's name in compliance with the Judgment and Netblock Order, or to comply with its terms in any way. Rather, ARIN has repeatedly stated that it will only register the subject properties in Kremen's name at such time as, and only if, Kremen agrees to various policies, terms and conditions that ARIN has established over time. The Netblocks and ASNs are of significant commercial, and therefore economic, value because they can be used to host literally thousands of websites using various IP addresses.[9] *See* Idell Decl., ¶ 15 and Ex. "J" at 5:6-11. With each passing day, Kremen is further deprived of the benefits of the Judgment and the assets that are rightfully his. *See* Idell Decl., ¶ 15 and Ex. "J" at 5:12-16.

Rather than "clarifying" or "modifying" the Netblock Order, this Court should consider ordering ARIN to show cause why ARIN should not be adjudged in contempt of court for its continued and unremitting refusal to take the steps required by the Court, namely to register the Netblocks and ASNs in

---

[8] It is not clear precisely when Cohen, his companies, alter egos or affiliates, initially registered the Netblocks and ASNs, as ARIN has not produced any contract or other documents that might be used to ascertain that date or the terms and conditions to which Cohen was subject, despite being subpoenaed to do so on two occasions. *See* Idell Decl., ¶¶ 12, 13 and Exs. "G", "H". However, the initial registration undoubtedly predates the Judgment (2001), probably predates the institution of this action (1998), and likely predates the facts from which this action arose (1995). *See* footnote 19 herein.

[9] A consequence of ARIN's refusal to register the Netblocks and ASNs to Kremen has thus been that Cohen has benefited economically from the said refusal. *See* Idell Decl., ¶¶ 15 and Ex. "J" at 5:17-24.

Kremen's name. In particular, ARIN should be deemed a contemnor because in December 2002 – over 14 months <u>after</u> the Court issued, and ARIN was put on actual notice of, the Netblock Order – ARIN intentionally and knowingly transferred a certain Netblock to the Latin American and Caribbean Internet Addresses Registry ("LACNIC"), as further described herein.

Only now, after years of futile negotiations with ARIN over the terms under which they would be willing to comply with a clear and unambiguous court order, and only after the filing of the Antitrust Complaint by Kremen, ARIN finally seeks relief from the one-and-same order, now nearly five years old. This Court should deny ARIN's request.

### III. **PROCEDURAL HISTORY.**

On April 3, 2001, this Court awarded Kremen a $65 Million judgment against Cohen and other Cohen entity defendants, each of which the Court found to be alter egos of Cohen. Idell Decl., ¶¶ 3, 4 and Exs. "A", "B" at 7:25-27. The Judgment imposed a constructive trust "upon all monies and properties of the Defendants." Idell Decl., ¶ 3 and Ex. "A" at 1:19-20. Pursuant to the Judgment, on September 17, 2001, Kremen applied *ex parte*[10] for, and was granted, an order requiring registration in his name of the Netblocks and ASNs, then held by Cohen, his alter egos and/or affiliates. Idell Decl., ¶ 7 and Ex. "D".

ARIN was first put on notice of the Netblock Order no later than October 29, 2001, and was formally served with the Netblock Order in approximately December 2003. Idell Decl., ¶ 8.

On June 8, 2006, ARIN filed a Motion for Clarification, or, in the Alternative, for Modification of Order Dated September 17, 2001, Entitled "Order re: Registration of IP Numbers (Netblocks) in the Name of Judgment Creditor." The June 8, 2006 Motion set a hearing date of July 14, 2006; however, ARIN inappropriately filed the Motion electronically and therefore gave Kremen insufficient statutory notice. Subsequently, the parties agreed upon a hearing date of September 11, 2006. ARIN re-noticed the Motion, in a slightly modified form, on June 27, 2006, with the said September 11, 2006 hearing date.

---

[10] ARIN was not a necessary party to that application since ARIN was not then, and is not now, a stakeholder in the subject property.

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

4

On or about July 25, 2005, Kremen served a subpoena for documents on ARIN in order to better understand the history and current status of Cohen's registration of the Netblocks and ASNs. Idell Decl., ¶ 12 and Ex. "G". ARIN responded by producing several thousand pages of documents. Idell Decl., ¶ 12. However, most of ARIN's document production was useless computer print-outs; notably missing from ARIN's production were any contracts or applications that would have been responsive to Kremen's document requests. Idell Decl., ¶ 12.

When the instant motion was filed and served, in order to ensure that Kremen had all necessary documents concerning the registration of Cohen, his alter egos and/or affiliates, Kremen served additional discovery. *See* Idell Decl., ¶ 13 and Ex. "H". ARIN has failed to produce any further documents whatsoever in response to this second round of subpoenas. In a recent meet-and-confer on the subject, it has complained that the requests are overbroad, harassing and burdensome, but indicated that it might respond to discrete narrowed requests voluntarily and informally. Idell Decl., ¶¶ 13, 14; Sandel Decl., ¶¶ 4, 5. On August 17, 2006, Kremen asked for production of any extant contract documents between Cohen, his alter egos and/or affiliates, on the one hand, and ARIN or ARIN's predecessor-in-interest (believed to be InterNIC), on the other hand. Idell Decl., ¶ 15; Sandel Decl., ¶ 5. ARIN's lawyers will neither confirm nor deny the existence of such contract documents and have thus far refused to produce any further documents even though the request is narrow in scope and the documents material to the instant motion. Idell Decl., ¶ 15; Sandel Decl., ¶ 5.

## IV.    ARGUMENT.

ARIN's representations to the Court as to the procedure under which ARIN is required to register the Netblocks and ASNs to Kremen is misleading at best. *See* Motion at 1:18-23 ("After [Plaintiff] obtained a $65 million judgment … against … Cohen, Kremen filed an *ex parte* application over five (5) months after the Judgment was entered to obtain a Court Order (without notice to non-party ARIN)[11] to compel ARIN to transfer Kremen [the Netblock Numbers].")

The facts here are simple and illuminating: this Court entered the Judgment in favor on Kremen and against Cohen and his alter egos on April 3, 2001. The Judgment imposed a constructive trust "upon all monies and properties of the Defendants." Five months later, after discovering that among the

---

[11] *See* footnote 10 herein.

defendants' "properties" were the subject Netblocks and ASNs, Kremen sought *ex parte* relief in the form of the Netblock Order for registration of the Netblocks and ASNs in Kremen's name pursuant to the Judgment's constructive trust. The Court granted the Netblock Order on September 17, 2001.

Notably, the Netblock Order does not require ARIN to "transfer" the Netblock Numbers and ASNs,[12] but rather to "register" them in Kremen's name. This is because no transfer was or is necessary. Since, pursuant to the constructive trust imposed by the Judgment, Kremen "steps into the shoes" of Cohen and effectively inherits the defendants "monies and properties" as is, those "monies and properties" undergo no substantive change or transformation. For purposes of implementing the remedy of constructive trust, it is as if Stephen Michael Cohen simply changed his name to Gary Kremen, and the title to all his "monies and properties" followed suit. Kremen's insistence that he receive the property in the same condition and according to the same terms as it was held by Cohen is not unreasonable; to the contrary, Kremen is asserting his legitimate rights pursuant to a hard-earned Judgment. That ARIN now characterizes Kremen's assertion of his legal rights as a "total lack of cooperation with ARIN's normal procedures," *see* Motion at 19-21, insults not only Kremen but also the judicial process which led to the award of the Judgment. "ARIN's normal procedures" do not control the terms of the Netblock Order; rather, those terms are controlled by the Judgment creating a constructive trust with Gary Kremen as its beneficiary.

In this regard, ARIN asserts that (1) "IP resources are allocated to registrants subject to contractual terms and ARIN's policies" and (2) IP resources are allocated by ARIN pursuant to the terms of a services agreement, which obligates registrants to comply with ARIN's Internet Protocol address space allocation and assignment guidelines." *See* Motion at 2:15-18. Notably, ARIN neglects to state whether Cohen, his alter egos and/or affiliates were ever subject to these "contractual terms and ARIN's policies" or the "terms of a services agreement." Of course, if Cohen, his alter egos and/or affiliates were not subject to them, neither should Kremen be, as he takes the property of the defendants under the Judgment's constructive trust. ARIN's refusal to confirm or deny the existence of contract

---

[12] Thus, ARIN's assertion that "IP resources may only be transferred from one entity to another pursuant to the terms of ARIN's Guidelines for Transferring Internet Protocol (IP) Space . . . and subject to ARIN's Transfer Policy," *see* Motion at 2:20-26, is irrelevant. It is ARIN's demand that the registration of the Netblocks and ASNs be conditioned on Kremen's agreement to the Guidelines and Policy to which Kremen strenuously objects, since neither Cohen, nor his alter egos or affiliates were subject to the said Guidelines and Policy.

documents with Cohen, his alter egos and/or affiliates is particularly notable since Kremen, an Internet pioneer and expert, has always understood that at the time Cohen *et al.* registered the subject Netblocks and ASNs, there was no such contract nor other terms.[13]

There is nothing novel about a court ordering a third party in actual or constructive possession of the assets of a judgment debtor to turn over the said assets to the judgment creditor. Indeed, this Court has ordered precisely such turnovers pursuant to a constructive trust on multiple occasions: (1) on September 17, 2001, the Court ordered the conveyance to Kremen of certain real property, (2) on October 26, 2004, the Court ordered the transfer to Kremen of a certain trademark application, and (3) on September 28, 2005, the Court ordered the turnover to Kremen of, among other things, certain assets held at a facility in Otay Mesa, California. *See* Idell Decl., ¶¶ 6, 9, 10 and Exs. "C", "E", "F". Neither the San Diego County Recorder, nor the United States Patent and Trademark Office, nor the facility manager of the Otay Mesa facility became, as a result of these Orders, judgment debtors themselves or even parties to the proceedings giving rise to these Orders. Rather, the assets belonging to Cohen, his alter egos and/or affiliates which were in their constructive or actual possession became the property of Kremen as a result of the constructive trust imposed by the Judgment. This change in legal ownership did not "compel," *cf.* Motion at 1:21, the Recorder's Office, the Trademark Office or the Otay Mesa facility manager to do or to refrain from doing anything <u>except</u> to undertake whatever steps were necessary to comply with these Orders, regardless of whether compliance involved a simply name change or the change of a lock and lease agreement. Here, all that is involved is the registration of the Netblocks and ASNs in Kremen's name – a step that ARIN should have voluntarily taken when it received actual notice of the Netblock Order nearly five years ago, in the Fall of 2001.

Consequently, the arguments raised by ARIN – that its due process rights were violated and that Kremen can be registered as the registrant of the Netblocks and ASNs <u>only</u> on ARIN's terms[14] – ring

---

[13] While ARIN refers, as its authority for its existence, to the "Internet Community," *see* Plzak Decl., ¶¶ 31-32, ARIN has not revealed the details of any formal contractual relationship between ARIN and the Internet Corporation for Assigned Names and Numbers ("ICANN") vesting full and absolute authority in ARIN, nor the terms of such authority. ARIN has refused to provide – or even confirm the existence of – any agreement between Cohen, his alter egos and/or affiliates, on the one hand, and ARIN or its predecessor, on the other hand, regarding the Netblocks and ASNs, or identify when such agreement may have been entered. *See* Idell Decl., ¶¶ 12-15 As a result, ARIN's authority to deny Kremen's requests regarding the Netblocks and ASNs, *see* Plzak Decl. ¶ 16, is highly suspect and possibly nonexistent. Because ARIN's management authority of the Netblocks and ASNs is questionable, ARIN had not right whatsoever to be at the hearing regarding the September 17, 2001 Netblock Order.

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

7

hollow. The Netblock Order requires neither "clarification" nor "modification." Since the Judgment imposed a constructive trust, to which the Netblocks and ASNs are subject, what is required of ARIN under the Netblock Order is perfectly clear: ARIN must register the Netblocks and ASNs in Kremen's name and on the same terms as the Netblocks and ASNs were previously held by Cohen, his alter egos and/or affiliates. Kremen cannot, and should not, be required to fill out or sign applications or other ancillary paperwork that will lessen the value of the Netblocks and attach conditions to which Cohen and the other Defendants were not subject, particularly where terms and conditions would be imposed to which Cohen *et al.* were not subject.

ARIN should further be required either (1) to take the steps necessary to gain control of, or return to ARIN's control, any Netblocks it claims are now beyond its control, for subsequent registration in Kremen's name or (2) reimburse Kremen for the value of the Netblocks it claims are now beyond its control. In the alternative, Kremen asks that the Court issue orders similar to the Netblock Order and directed at the entities ARIN now, for the first time,[15] claims currently control the said Netblocks.

The evidence before the Court may be insufficient to allow the Court to determine whether ARIN's procedures, policies terms and/or conditions, which ARIN requires as a condition of its compliance with the Netblock Order, are equivalent to those to which Cohen, his alter egos and/or affiliates were subject. If this is the case, Kremen requests that the Court continue the hearing, require ARIN to comply with the subpoenas issued seeking documents containing this information, and order further briefing and hearing on this matter once ARIN has produced all relevant documents and information.

Finally, Kremen asks that the Court issue an Order to Show Cause as to why ARIN should not be adjudged in contempt for its intentional and knowing transfer of IP resources subject to the Netblock Order to LACNIC long after ARIN was on actual notice of the Netblock Order. A proposed Order to Show Cause is submitted herewith.

---

[14] ARIN also argues, in passing, that third parties could possibly be harmed should ARIN comply with the terms of the Netblock Order, potentially subjecting ARIN to litigation. *See* Motion at 3:26-4:1; *see also* Motion at 9:14-18, 9:23-25, 10:9-12. At best, the argument is speculative; at worst, the argument is offensive and objectionable, since it presumes that Kremen would intentionally undertake actions to harm innocent third parties.

[15] In the nearly five (5) years since the Netblock Order was issued, and ARIN was on actual notice of the order, ARIN never once advised Kremen that any of the subject Netblocks or ASNs were out of ARIN's control. Idell Decl., ¶ 11.

**A.    ENFORCEMENT OF THE CONSTRUCTIVE TRUST IMPOSED BY THE JUDGMENT DOES NOT DEPRIVE ARIN OF ITS CONSTITUTIONAL DUE PROCESS RIGHT.**

ARIN argues that issuance of the Netblock Order, requiring ARIN to register the Netblocks and ASNs to Kremen, deprives ARIN of its constitutional right of due process. *See* Motion at 5:2-6:5.

However, none of the cases cited by ARIN is on point, nor do any of ARIN's cited cases bear any relevance to the facts of this case. Moreover, none of the cases cited by ARIN allows a third party to avoid compliance with an order enforcing a constructive trust. Rather, in each of the cases cited by ARIN, a third party was held liable for a judgment entered against another because of the particular circumstances. Neither Kremen nor the Court, in issuing the Netblock Order, has ever suggested that ARIN is liable for the $65 Million Judgment. Imposition of third-party liability for such judgments was found to be unenforceable and unconstitutional in two situations described in ARIN's cited cases, but these authorities do not apply here:

(1) Where the parties had stipulated that the defendant's parent company and defendant were one in the same for the purposes of litigation, a judgment could not stand as against the parent company that was not a party to the stipulation and had made no appearance in the case. *Zenith Radio Corp. v. Hazeltine Res. Inc.* ("*Zenith*"), 395 U.S. 100, 110 (1969); *see also Headwaters Inc. v. U.S. Forest Serv.*, 399 F3d 1047, 1050 (9th Cir. 2005) (decided on facts similar to those of *Zenith*) and *Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940) (holding that "those in privity to an agreement, but not made parties to a litigation, and whose substantial interest was in resisting performance of the agreement could not be bound by the decree upon the theory that the suite was a class suit in which they were duly represented"). The Netblock Order does not impose upon ARIN liability for the Judgment as a parent company, and Kremen has never suggested that it should.

(2) Where the non-party president of a defendant company had no opportunity to contest the liability upon which attorneys' fees were imposed on the plaintiff's motion to dismiss, the non-party company president could not be held liable for the said attorneys' fees. *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466-68 (2000). Once again, neither Kremen nor the Court's Netblock Order imply that ARIN should be held liable for the Judgment.

Kremen seeks only to enforce the constructive trust ordered by the Court as to assets addressed by the Netblock Order, and not to hold ARIN liable for the Judgment. This is a critical difference, one which ARIN disingenuously glosses over. ARIN's due process rights are consequently not invoked.[16] ARIN's role is no different than that of a county recorder or other registrar of property, and the Netblock Order merely commands registration of the Netblocks and ASNs in Kremen's name. Had the property in question been a house, it is beyond question that a recorder's office would simply change the name on the public record – without requiring other paperwork associated with a real property transaction.

ARIN further cites to *Ins. Corp. of Ireland v. Compagnie Des Bauxites De Guinee* ("*Compagnie des Bauxites*"), 456 U.S. 694 (1982), for the proposition that, because ARIN did not have its day in court, Plaintiff may not enforce the constructive trust and Netblock Order against ARIN. In *Compagnie des Bauxites*, the United States Supreme Court held that a foreign defendant's due process rights are not violated where the defendant disputes personal jurisdiction but then fails to respond to discovery seeking to establish jurisdictional facts and the court thereafter imposes personal jurisdiction under Rule 37(b)(2)(a) of the Federal Rules of Civil Procedure. This case lends absolutely no support to ARIN's argument that its due process rights, as a third party to this action, have been violated.

Finally, ARIN cites to *Richards v. Jefferson County* ("*Richards*"), 517 U.S. 793, 798 (1996), for the proposition that, without notice and an opportunity to be heard, ARIN is not, as a matter of law, bound by the Netblock Order. *See* Motion at. 5:24-6:2. While the procedural and factual history in *Richards* is lengthy and complex, the case boils down to the proposition that a litigant's federal claims cannot be precluded by state law *res judicata* principles where those federal claims had not been decided in prior litigation. *See Richards*, 517 U.S. at 794-797. *Richards* addressed the issue of litigants challenging an allegedly unconstitutional deprivation of their property. ARIN has no such property at stake here, and therefore ARIN's due process rights have not been violated; ARIN is not a stakeholder in Cohen's property. The *Richards* case is irrelevant and cannot be applied to the facts of the instant case.

There is neither a factual nor a legal basis upon which to grant ARIN's motion. No due process rights have been violated; the Judgment was rendered after a fully-contested trial (and multiple appeals

---

[16] Of course, the situation would be entirely different if ARIN had a "significant property interest" at stake. *See, e g , Wiren v. Eide*, 542 F 2d 757, 763 (9th Cir. 1976). ARIN admits that it has no property interest whatsoever in the subject Netblocks and ASNs, as ARIN merely administers and allocates IP resources. *See* Motion at 2:11-18.

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

10

therefrom); and the Netblock Order was issued pursuant to the Judgment. Kremen does not seek to hold ARIN liable for the Judgment. ARIN is not now, nor has it ever been, a stakeholder in Cohen's property. ARIN's sole responsibility is in abiding by the simple and straightforward terms of the Netblock Order. The Netblock Order, in turn, does not involve ARIN's property, but rather that of Cohen, his alter egos and affiliates, which is indisputably subject to the Judgment.

Requiring a third party to adhere to a court order is hardly a unique or novel proposition. ARIN's argument that its due process rights have been violated is mere histrionics devoid of substance. This Court should deny ARIN's motion.

**B.    THE NETBLOCK ORDER REQUIRES NEITHER CLARIFICATION NOR MODIFICATION; RULE 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE PROVIDES NO BASIS FOR THE RELIEF ARIN SEEKS.**

Kremen does not dispute that Rule 60 of the Federal Rules of Civil Procedure provides the procedural basis for post-judgment amendment of court orders in furtherance of effectuation of a judgment. However, the instant circumstances neither justify nor require amendment or modification of the Netblock Order.

ARIN's arguments to the contrary are flawed in their basic premise: Kremen is <u>not</u> "seeking to obtain or transfer Internet Protocol resources." *See* Motion at 6:13. Instead, Kremen is seeking only to have ARIN register those IP resources, *i.e* , the Netblocks and ASNs, in his name, as he has always owned these resources as the beneficiary of a constructive trust. This goal is (1) legally mandated by the Netblock Order, (2) practicable and (3) just, since the IP resources at issue were held by Cohen, his alter egos and/or affiliates.

As the party seeking relief, ARIN bears the burden of establishing sufficient grounds to justify relief under Rule 60, such that clarification or modification of the Netblock Order is necessary. *Jinks v. AlliedSignal, Inc* , 250 F.3d 381, 384 (6th Cir. 2001). It is in the discretion of the trial court to grant or deny a Rule 60(b) motion, and its ruling will not be disturbed on appeal unless it has abused that discretion. *Id* at 385; *see also Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097 (9th Cir. 2006). Abuse of discretion, in turn, is found only where the district court "does not apply the correct law, rests its decision on a clearly erroneous finding of a material fact, or applies the correct legal standard in a

manner that results in an abuse of discretion." *Latshaw v. Trainer Wortham & Co.*, *supra*, 452 F.3d at

1097 (quoting *Engleson v. Burlington Northern Railroad Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992)).

Modification of a court order is only cautiously to be granted. *Transgo, Inc. v. Ajac*

*Transmission Parts Corp.*, 911 F.2d 363, 365 (9th Cir. 1990) (quoting *Humble Oil & Refining Co. v.*

*American Oil Co.*, 405 F.2d 803, 813 (8th Cir. 1969)). Some change is not enough; the dangers which

the decree was meant to foreclose must almost have disappeared. *Id.* Hardship and oppression, extreme

and unexpected, are significant, and the moving party's task is to provide close to an unanswerable case.

*Id.* "Caution, substantial change, unforeseeness, oppressive hardship, and a clear showing" are the

requirements. *Id.*

Neither the Judgment nor the Netblock Order is "void." *See* Fed. R. Civ. Proc. 60(b)(4). Neither

the Judgment nor the Netblock Order has "prospective application" nor is the Netblock Order otherwise

inequitable. *See* Fed. R. Civ. Proc. 60(b)(5). Finally and most importantly, ARIN can show no other

reason that would justify relief from ARIN's compliance with the Netblock Order issued pursuant to the

Judgment. *See* Fed. R. Civ. Proc. 60(b)(6). Therefore, Rule 60 does not provide grounds upon which to

modify, clarify or otherwise amend the Netblock Order. ARIN's arguments misrepresent both law and

fact, as discussed below, and are meritless in any case. ARIN has failed to establish sufficient grounds

to justify relief under Rule 60 such that this Court should clarify or modify the Netblock Order. ARIN's

Motion also fails on procedural grounds as the Motion is untimely. Kremen therefore respectfully

requests that the Court deny ARIN's Motion.

### 1. Rule 60(b)(4) Provides No Basis for the Relief ARIN Seeks.

Rule 60(b)(4) allows the Court, on motion and upon such terms that are just, to relieve a party or

a party's legal representative from an order because the judgment is void. Fed. R. Civ. Proc. 60(b)(4).

A final judgment is "void" for purposes of Rule 60(b)(4) only if the court that considered the case lacked

jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a

manner inconsistent with due process of law. *United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999).

While the trial court's discretion as to the granting of a 60(b) motion will be disturbed on appeal only if

it has abused its discretion, *see Latshaw v. Trainer Wortham & Co.*, *supra*, 452 F.3d at 1097, in the case

of "void" judgments attacked under Rule 60(b)(4), the district court's discretion is almost illusory, if it

1    exists at all: "void" judgments are nullities, and the court's refusal to vacate such judgment is a per se

2    abuse of discretion. *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006).

3         ARIN's sole argument in support of its reliance on this subsection for the relief ARIN seeks[17] is

4    that ARIN's due process rights have been violated. *See* Motion at 6:24-7:1. However, ARIN cites no

5    precedent where Rule 60(b)(4) was applied to void a judgment on the basis of an alleged violation of a

6    third party's due process rights; indeed, the argument is illogical, since ARIN is a third party and not a

7    stakeholder. As set forth in detail above, *see* Section IV.A. herein, even if such argument <u>could</u> be

8    made, ARIN's due process rights have not been violated. ARIN's rights were never invoked by the

9    proceedings in this action since ARIN is not now, nor has it ever been, a stakeholder in the property at

10    issue. ARIN's argument for relief under Rule 60(b)(4) is itself a nullity, and its Motion must be denied.

11        **2.**     <u>**Rule 60(b)(5) Provides No Basis for the Relief ARIN Seeks.**</u>

12         Rule 60(b)(5) allows the Court, on motion and upon such terms that are just, to relieve a party or

13    a party's legal representative from an order if it is no longer equitable that the judgment should have

14    prospective application.[18] In order to be granted this "extraordinary" relief, ARIN must make a "clear

15    showing" of (1) a "substantial" change in circumstances or law since the Judgment and Netblock Order

16    was entered, (2) "extreme and unexpected" hardship in compliance with the Netblock Order, <u>and</u> (3) a

17    good reason why the Court should modify the Netblock Order. *See SEC v. Worthen*, 98 F.3d 480, 482

18    (9th Cir. 1996) (case decided as to relief from a permanent injunction under Rule 60(b)(5)). ARIN has

19    not, and cannot, provide facts to support any of these three factors. As a consequence, ARIN's motion

20    should be denied.

21             **a.**     **There Has Been No Substantial Change in Circumstances or Law**

22                  **Since the Netblock Order Was Entered.**

23         Virtually every order court order causes some future reverberations; thus, the fact that a court's

24    action has "continuing consequences" does not mean that it has "prospective application" for Rule

25    60(b)(5) purposes. *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995) (citing *Twelve John Does v.*

26

27   [17] ARIN goes even further than the relief it requests generally, *i.e.*, clarification or modification of the Netblock Order, suggesting that, pursuant to Rule 60(b)(4), the Court may appropriately vacate the Netblock Order entirely *See* Motion at 7:1.

28   [18] Though Rule 60(b)(5) provides two other grounds for relief – namely (1) satisfaction, release or discharge of the judgment or (2) reversal or vacation of a prior judgment upon which the judgment was based – neither applies to the instant facts. *See* Fed. R. Civ. Proc. 60(b)(5).

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

*District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988)). The standard used in determining whether a judgment has prospective application is whether it is "executory" or "involves the supervision of changing conduct or conditions." *Id.* (internal quotations omitted).

Justice Cardozo shed further light on the subject in *United States v. Swift & Co.*, 286 U.S. 106 (1932):

> The distinction is between [injunctive] restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative. *Id.* at 114.

In another case, the United States Supreme Court case parsed a lower court order into (1) that portion which "stands upon the same principles, and is unaffected by the subsequent law" (the costs adjudged,) and (2) that portion which is "executory, a continuing decree," (requiring the removal of a bridge and enjoining the defendants against any reconstruction or continuance). *Pa. v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421, 431-432 (U.S. 1856); *see also Twelve John Does v. District of Columbia*, 268 U.S. App. D.C. 308 (D.C. Cir. 1988). Thus, an intervening modification by the competent authority of the right of navigation (which led to the injunction) rendered the injunction unenforceable. *Pa. v. Wheeling & Belmont Bridge Co.*, *supra*, 59 U.S. at 432. This is what a "substantial" change in circumstances means.

In the face of these clear authorities, ARIN raises only one issue in support of its contention that there have been changes in circumstance in this case sufficient to warrant a grant of relief under Rule 60(b)(5): the filing by Kremen of the Antitrust Complaint. Their argument of "changed circumstances" is premised on the fact that the Antitrust Complaint alleges in part ARIN's admitted refusal to comply with the terms of the Netblock Order. This is clearly an insufficient showing for Rule 60(b)(5) purposes. Kremen is within his rights to bring a liability action, based in part on ARIN's failure to comply with the Netblock Order. The fact that such complaint has been brought is not evidence of "changed circumstances" concerning the original order. ARIN has it backwards: had ARIN complied with the Netblock Order, the Antitrust Complaint might never have been filed.

As discussed above, Kremen's Antitrust Complaint follows years of negotiations with ARIN in an effort by Kremen to get ARIN to voluntarily comply with the Netblock Order. ARIN's refusal to

1  obey the Netblock Order, issued only to effectuate the constructive trust as to Cohen's IP resource

2  assets, led in part to the filing of the Antitrust Complaint. However, the filing of the Antitrust

3  Complaint is merely a "continuing consequence" of the Judgment and Netblock Order, both of which

4  were granted based on Kremen's rights and which are "fully accrued upon facts so nearly permanent as

5  to be substantially impervious to change." *Cf. United States v. Swift & Co.*, 286 U.S. at 114.

6      Plaintiff's position on the Netblocks and ASNs has remained the same from the time the

7  Netblock Order was issued (September 17, 2001) and through today: Kremen steps into the shoes of

8  Cohen, his alter egos and/or affiliates pursuant to the Judgment of constructive trust, and Kremen is

9  therefore subject only to the terms, conditions and policies to which Cohen *et al.* were subject. Kremen

10  has no intention of foregoing his legal rights, and ARIN has known this for years. There is no need for

11  Kremen to "apply" for IP resources that are legally his by virtue of the Judgment. *See* Motion at 2:18-19

12  ("ARIN is willing, pursuant to the Court's order, to transfer those IP resources it can control, once Mr.

13  Kremen applies for these resources."). These IP resources are property which Kremen succeeds to

14  because of the Judgment imposing a constructive trust. Furthermore, Kremen should not be bound by

15  any policies and terms by which Cohen *et al.* were not bound – particularly those that could result in

16  Kremen losing the Netblocks and ASNs at ARIN's discretion. *See* Motion at 3:1-14 (ARIN's

17  description of Kremen's reading of the Netblock Order and assertion that such reading is "not consistent

18  with ARIN's policies and the terms of its agreements with the U.S. government").[19] The Judgment and

19  Netblock Order have remained the same since the respective dates of issuance and entry. Nothing has

20  occurred since then that would constitute a "substantial" change in circumstances or law justifying relief

21  under Rule 60(b)(5).

22      Since there has been no "substantial" change in circumstances, Rule 60(b)(5) provides no basis

23  for the relief ARIN requests, and ARIN's motion should be denied.

24

25

26

27

28

[19] Even presuming ARIN's characterization of Kremen's "proposed reading" of the Netblock Order is accurate, it is unknown if such reading is consistent with the terms, conditions and policies to which Cohen, his alter egos and affiliates (Kremen's predecessors-in-interest) were subject, since ARIN has provided no documentary evidence in this regard, despite being subpoenaed to do so on July 25, 2005, *see* Idell Decl., ¶ 12 and Ex. "G", and despite ARIN's representation that its procedures "applied to Cohen." *See* Motion at 8:25-9:1 ("The heart of ARIN's position was that it would transfer the [IP] resources to Kremen so long as Kremen agreed to be bound by the procedures that applied to Cohen[.]").

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

**b.    ARIN Will Suffer No Extreme and Unexpected Hardship in Complying with the Netblock Order.**

The supposed "hardships" that ARIN sets forth are:

(1)    ARIN's inability to resolve this matter with Kremen through over four years of negotiation and Kremen's subsequent seeking of legal relief (in the form of the filing of the Antitrust Complaint), *see* Motion at 9:5-8;

(2)    ARIN's assertion that compliance with the Netblock Order would "require unilateral transfer of IP resources that would also, upon information and belief, negatively impact unknown and innocent third parties," *see* Motion at 9:9-11;

(3)    the Netblock Order would require transfer of IP resources that ARIN does not control, *see* Motion at 9:12-13; and

(4)    ARIN would be exposed to "probable" litigation if it complies with the Netblock Order, *see* Motion at 9:12-18.

As set forth below, none of these alleged harms constitutes an actual "extreme and unexpected hardship," and ARIN cites no case law supporting its assertions. *Jinks v. AlliedSignal, Inc., supra,* 250 F.3d at 384 (placing burden on moving party to show elements requiring relief); *see also SEC v. Worthen, supra,* 98 F.3d at 482 (describing modification of a court order as "extraordinary relief" requiring a showing of "extraordinary circumstances").

**i.    The passage of time does not constitute an "extreme and unexpected hardship."**

Though ARIN appears to believe that four years of failed negotiations constitutes an "extreme and unexpected" hardship, it has been held that "[t]he mere passage of time . . . does not constitute . . . a reason why prospective application of a judgment is no longer equitable." *SEC v. Worthen, supra,* 98 F.3d at 482 (rejecting argument that district court abused its discretion in denying Rule 60(b)(5) motion for relief because 21 years had passed since the entry of the injunction and 10 years had allegedly passed since last known violation).

Since 2001, Kremen has sought to enforce the Netblock Order by attempting to obtain ARIN's voluntary compliance therewith, without having to resort to further court proceedings. *See* Motion at 8:16-24 (describing receipt by ARIN of written communication from Kremen regarding the Netblock

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

16

1   Order dated October 29, 2001 and "litany of correspondence" since December 2003). Unfortunately,

2   Kremen's attempts have failed due to ARIN's insistence that it will only comply with the Netblock

3   Order conditioned upon Kremen's acquiescence to new terms not legally required or mandated.

4         Kremen had no obligation to negotiate with ARIN in order to obtain ARIN's voluntary

5   compliance with a legally issued court order, but did so to avoid the time, expense and burden of

6   bringing further legal proceedings. That Kremen chose to negotiate rather than fight ARIN in court does

7   not create an "extreme and unexpected hardship" on ARIN.

8              **ii.**    **Plaintiff's failure to advise ARIN in advance of the filing of the**
9                     **Antitrust Complaint does not constitute an "extreme and**
                     **unexpected hardship."**

10

11        Plaintiff is not, and was never, required to provide ARIN with advance notice that Plaintiff

12   would seek to enforce the Netblock Order by resorting to litigation. In the first place, ARIN was neither

13   a party to nor an intended beneficiary of the Stipulation referenced in the Declaration of Raymond

14   Plzak. *Compare* Plzak Decl. ¶ 2 at 2:17-21 ("Kremen stipulates that . . . if Kremen intends to take any

15   action on the [Netblock] Order, he will give <u>PACNET Companies</u> at least five (5) days written

16   notice[.]") *with* Motion at 8:18-21 ("Kremen stipulates that . . . if Kremen intends to take any action on

17   the [Netblock] Order, he will give [ARIN] at least five (5) days written notice[.]") (emphases added).

18   ARIN's argument is wholly disingenuous, as ARIN was not a party to the Stipulation. Furthermore, it is

19   clear from the exhibits attached to Mr. Plzak's declaration that ARIN's counsel is well aware that

20   Kremen did, in fact, abide by this representation and that the five (5) day notice was given to PACNET

21   Companies on November 6, 2003. *See* Plzak Decl. Ex. "L".

22         ARIN is essentially complaining that they did not receive a purportedly-promised five (5) days

23   written notice of the filing of the Antitrust Complaint. *See* Motion at 8:16-22. However, there is

24   nothing in the Stipulation that requires such notice to ARIN, and even if there were, it is difficult to see

25   how a mere five days might constitute an "extreme and unexpected" hardship.

26              **iii.**    **The speculative harm that might be suffered by third parties**
                     **does not constitute an "extreme and unexpected hardship."**

27

28         ARIN contends that compliance with the Netblock Order would "require unilateral transfer of IP

resources that would also, upon information and belief, negatively impact unknown and innocent third

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

17

parties." *See* Motion at 9:9-11. ARIN's belief – without the benefit of any evidence, better characterized as a guess – is that registering the Netblocks and ASNs in Kremen's name would lead to the interruption of service to customers of Internet Service Providers ("ISPs"). *See* Plzak Decl., ¶ 14. Generously stated, this contention is wholly speculative and hardly constitutes an "extreme and unexpected hardship" to ARIN.

ARIN's primary objection is in fact to the "unilateral transfer" of the Netblocks and ASNs – namely, without Kremen agreeing to receive the Netblocks and ASNs on ARIN's terms. Again, the Netblock Order orders ARIN to "register" the Netblocks and ASNs in Kremen's name; as described above, no "transfer" is involved. Since the Judgment imposed a constructive trust upon all of Cohen's assets, Kremen simply steps into Cohen's shoes and receives those assets – in whatever form they might take – as if Kremen and Cohen were one in the same person. Regardless of what ARIN's standard procedures and terms and conditions are for new accounts or transfer of old accounts, neither apply here. Kremen is legally entitled to receive the Netblocks and ASNs with the same rights and restrictions (no more and no less) as did Cohen, his alter egos and affiliates.

iv.    **ARIN fails to show that certain Netblocks and ASNs are beyond ARIN's control; ARIN's purported lack of control does not constitute an "extreme and unexpected hardship"; any Netblocks and ASNs actually beyond ARIN's should be retrieved by ARIN and registered in Kremen's name or, in the alternative, this Court should issue an Order directed to those entities currently in control of the relevant Netblocks and ASNs requiring those entities to register them in Kremen's name.**

That the Netblock Order "would require transfer of resources to Kremen that ARIN does not control" also does not constitute an "extreme and unexpected hardship," *see* Motion at 9:12-13 (citing Declaration of Raymond Plzak, ¶¶ 5, 42(b) & (d)), particularly where ARIN itself created the supposed hardship, *i.e.*, where the IP resources were transferred by ARIN <u>after</u> the Netblock Order was issued.

First, paragraph five of the Declaration of Raymond Plzak states only that "there were some resources [ARIN] could not control if Mr. Kremen would file an ARIN application for this [IP] resource." Plzak Decl., ¶ 5 at 3:7-8. As noted above, there is no legal requirement that Kremen fill out an ARIN application (subject to ARIN's approval) in order to receive the Netblocks and ASNs. The

Judgment imposed a constructive trust over these assets; thus, all that is required is <u>registration</u> of the assets in Kremen's name.

Second, paragraph 42(b) of the Declaration of Raymond Plzak merely states that "ARIN recommends the Court review Paragraph 13 of [the Plzak] Declaration and remove any reference to [Block 2 of the Netblocks, constituting IP addresses 208.214.46.0 through 208.214.47.255] from its Order since ARIN has no control over these particular IP addresses." Paragraph 13 of the Declaration of Raymond Plzak, in turn, states that Block 2 was issued to UUNET before ARIN began operations.[20] However, ARIN fails to show that it is unable either to (1) work with UUNET to retrieve Block 2 and register it in Kremen's name or (2) reach an agreement with UUNET that would give ARIN authority over Block 2. *Cf.* Plzak Decl., ¶ 13 at 5:20-22. The evidentiary burden is ARIN's, and it fails to meet it. However, even if Block 2 is in fact beyond ARIN's control, Kremen has been, and continues to be, willing to work with ARIN in order to effectuate the registration in Kremen's name of the remaining Netblocks and ASNs. Kremen, now armed with this information, hereby applies to the Court for an Order similar to the Netblock Order but directed to UUNET and limited to Block 2. A form of Order is filed herewith.

Third, paragraph 42(d) of the Declaration of Raymond Plzak merely states that "ARIN no longer controls [Block 5 of the Netblocks, constituting ASN 11083]." The reason ARIN no longer controls Block 5, however, is that "[i]n December, 2002, ARIN gave up issuance and control of all South American, Central American and . . . Mexico-based IP resources and services to . . . the Latin American and Caribbean Internet Addresses Registry ("LACNIC")." Plzak Decl., ¶ 42.d. Thus, ARIN admits that, after receiving actual notice of the Netblock Order, ARIN intentionally transferred IP resources subject to the Netblock Order beyond the reach of this Court, with full knowledge that they were required to register the subject IP resources in Kremen's name. *See* Plzak Decl., ¶¶ 2, 42.d. at 2:14-18, 15:23-27. ARIN has the gall to now claim that this direct violation of the Netblock Order should absolve ARIN of compliance with same. If anything, ARIN should be subject to contempt sanctions for

---

[20] This statement by ARIN indicates that Cohen, his alter egos and/or affiliates did, in fact, acquire the Netblocks and ASNs prior to ARIN's creation in 1997. *See* Sandel Decl., ¶ 3 and Ex. "A"; *see* footnote 8 herein.

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

19

1    such flagrant and intentional violation of this Court's orders. *See* [Proposed] Order to Show Cause filed

2    herewith.

3          Again, ARIN fails to show that it is unable either to (1) work with LACNIC to retrieve Block 5

4    and register it in Kremen's name or (2) reach an agreement with LACNIC that would give ARIN

5    authority over Block 5. The evidentiary burden is ARIN's, and it fails to meet it. However, even if

6    Block 5 is in fact beyond ARIN's control, Kremen has been, and continues to be, willing to work with

7    ARIN in order to effectuate the registration in Kremen's name of the remaining Netblocks and ASNs.

8    As to Block 5, Kremen hereby applies to the Court for an Order similar to the Netblock Order but

9    directed to LACNIC and limited to Block 5.

10               v.     **Speculative lawsuits to which ARIN might be subject do not**
                        **constitute an "extreme and unexpected hardship."**

11

12         Finally, ARIN baldly asserts that "transferring such IP resources [*i.e.*, the Netblocks and ASNs]

13   to Kremen without following ARIN's procedures would open ARIN to suit by those like Kremen who

14   would also want IP resources without having to act pursuant to ARIN's evenly-applied and well-

15   established procedures." Motion at 9:14-16 (citing Declaration of Raymond Plzak, ¶ 14). This

16   assertion is entirely bereft of fact. Indeed, ARIN's assertion is bereft even of speculation, as paragraph

17   14 of the Declaration of Raymond Plzak addresses only speculative lawsuits by customers of ISPs and

18   not "those like Kremen who would also want IP resources without having to act pursuant to ARIN's

19   evenly-applied and well-established procedures." *Cf.* Motion at 9:14-16. Even so, ARIN could simply

20   respond to such persons with the facts of this unique case, *i.e.*, that Kremen holds a Judgment that

21   imposed a constructive trust upon these IP resources, and that ARIN was required to register them in

22   Kremen's name pursuant to that Judgment and a court order (*i.e.*, the Netblock Order) issued to aid

23   effectuation thereof. ARIN's further speculation in this regard is unfounded, and fails to constitute an

24   "extreme and unexpected hardship." Kremen's situation is unusual and unique. ARIN has no facts to

25   the contrary. The "world will come to an end" argument[21] is unsupportable and unsupported.

26

27   _____

28   [21] A similar (and failed) argument was made by Network Solutions, Inc. in the face of the Ninth Circuit appeal on the issue of
     whether domain names are "property" subject to conversion. *See Kremen v. Cohen*, 337 F.3d 1024, 1029-1030 (9th Cir.
     2003). Kremen's situation there was also unique. ARIN's argument has no factual support here as to the Netblock and
     ASNs.

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

1    For all of these reasons, ARIN cannot show that it merits relief pursuant to Rule 60(b)(5).

2    Consequently, ARIN's motion should be denied.

3                c.    **There Is No Good Reason Why the Court Should Modify the Netblock**
                        **Order.**
4

5    The Netblock Order requires no modification, and no good reason exists for such modification.

6    The Judgment, which made Kremen a beneficiary of the constructive trust imposed "upon all monies

7    and properties of the Defendants," provides a legal basis for requiring ARIN to register the Netblocks

8    and ASNs in Kremen's name. The Netblock Order simply states this requirement explicitly. As

9    extensively described above, "standard procedures" do not apply, and ARIN's speculation that it could

10   be subject to litigation is not grounded in fact and entirely unsupported by evidence. *Cf* Motion at 9:22-

11   25; *see* Section IV.B.2.b.v., *supra*. Kremen demands no "special treatment," *cf.* Motion at 9:25, but

12   seeks only ARIN's compliance with the express terms of the Netblock Order issued pursuant to the

13   Judgment. This is his legal right. Thus, no good cause exists for modification of the Netblock Order,

14   and therefore ARIN fails to make the required showing for relief under Rule 60(b)(5). ARIN's motion

15   should therefore be denied.

16           3.    **Rule 60(b)(6) Provides No Basis for the Relief ARIN Seeks.**

17   Rule 60(b)(6) allows the Court, on a motion and on terms that are just, to relieve a party or

18   party's legal representative from a final judgment, order or proceeding for any other reason justifying

19   relief from the operation of the judgment. Rule 60(b)(6), however, applies only in exceptional and

20   extraordinary circumstances which are not addressed by the first five subsections of Rule 60(b). *Jinks v.*

21   *Alliedsignal, Inc.*, *supra*, 250 F.3d at 387. Thus, if the reason for which relief is sought fits into one of

22   Rule 60's five specific categories but fails to meet the prerequisites of relief thereunder, subsection 6

23   will not permit relief. *See Liljeberg. V Health Servs. Acquisition Corp.*, 486 U.S. 847, 864, n. 11

24   (1988); *see also Lyon v. Agusta S P A*, 252 F.3d 1078, 1088-1089 (9th Cir. 2001).

25   The 60(b)(6) "catch-all" category is reserved for extraordinary circumstances. *See Gonzales v*

26   *Crosby*, 125 S. Ct. 2641, 2649 (2005). To qualify for Rule 60(b)(6) relief, a moving party must "show

27   both injury and that circumstances beyond its control prevented timely action to protect its interests."

28   *Lehman v United States*, 154 F3d 1010, 1017 (9th Cir. 1998). ARIN's assertion that the test under Rule

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

1    60(b)(6) is one of a "balancing of the hardships," *see* Motion at 10:4-7, is thus not a correct statement of

2    the law.

3          ARIN's claim for relief under this subsection is based wholly on a rehash of the arguments set

4    forth in its arguments in support for relief under sub-sections (b)(4) and (b)(5). *Compare* Motion at

5    10:4-25 *with* Motion 6:22-9:26 (ARIN's claims of deprivation of constitution right to due process in

6    support of relief pursuant to Rule 60(b)(4), and speculative risk of lawsuit by third parties in support of

7    relief under Rule 60(b)(5), repeated in support of relief pursuant to Rule 60(b)(6)).

8          ARIN again makes offensive and objectionable statements regarding Plaintiff, see footnote 13

9    herein, here accusing Kremen of engaging in "questionable" conduct in securing the Netblock Order and

10   of employing "dilatory" negotiation tactics before filing the Antitrust Complaint. *See* Motion at 10:19-

11   24. These unwarranted *ad hominem* accusations have no basis in fact, and are particularly inappropriate

12   given that Kremen has expended millions of dollars and innumerable hours in his efforts to (a) retrieve

13   the sex.com domain name, which was legally his property in the first place, (b) secure a legal and

14   binding judgment in his favor, and (c) assert his legal rights pursuant to the Judgment by undertaking

15   extensive post-judgment discovery to find and take possession of assets belonging to and hidden by the

16   judgment debtors, and, secondly, since Kremen has for years engaged in good-faith negotiations with

17   ARIN to secure ARIN's voluntary compliance with the Netblock Order that was issued pursuant to the

18   Judgment – an extraordinary display of patience and a step which Kremen was not obligated to

19   undertake.

20         If ARIN seeks relief due to Kremen's alleged misconduct, and has evidence to prove it, ARIN

21   must move pursuant to Rule 60(b)(3). However, as noted in ARIN's Motion, ARIN cannot move under

22   that subsection, as more than one year has passed since the Netblock Order was issued. *See* Motion at

23   6:26-28, fn. 6; Fed. R. Civ. Proc. 60(b)(3).

24         As thoroughly set forth above, ARIN has failed to show any basis for relief under any of the

25   relevant sections of Rule 60. ARIN's motion must therefore be denied as having no footing in the only

26   statutory basis for such relief.

27

28

## C.    ARIN'S MOTION IS UNTIMELY.

A motion brought under Rule 60(b), subsections 4 through 6, must be brought within a "reasonable" time. Fed. R. Civ. Proc. 60(b). What constitutes "reasonable time" depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties. *Ashford v. Steuart*, 657 F.2d 1053 (9th Cir. 1981).

As set forth above, from ARIN's own evidence ARIN has been on notice for at least two years that Plaintiff would not fill out an application for transfer of the Netblocks and ASNs, for the reason that such procedures imposed policies, terms and conditions to which Cohen, his alter egos and/or affiliates were never subject. ARIN admits to having been on actual notice of the Netblock Order within six weeks of its issuance and nothing impeded ARIN's awareness of the Court's Netblock Order. ARIN has long been apprised of all the relevant facts and law, and indeed had until recently been in extensive and detailed negotiations with Kremen to resolve this dispute without resort to litigation. The only delay here has been caused by ARIN as a result of its consistent refusal, over years of negotiations, to register the Netblocks and ASNs to Kremen pursuant to the constructive trust imposed by the Judgment and as further required by the Netblock Order. Kremen, as a judgment creditor under a Judgment imposing a constructive trust, is well within his rights in insisting that the Netblock Order be adhered to in accordance with the Judgment's letter and intent.

ARIN's failure to act sooner is inexcusable. Indeed, one must assume that, had Plaintiff not filed the Antitrust Complaint against ARIN stemming from ARIN's failure to register the Netblocks and ASNs in Kremen's name, ARIN would not have filed the instant Motion.[22] Now, nearly five years after having received actual notice of the Netblock Order, ARIN has the gall to represent itself as wishing to comply with the Netblock Order, *see* Motion at 2:18-19, 6:2-5, 7:1-4, while concurrently refusing to register the Netblocks and ASNs in Plaintiff's name unless Plaintiff agrees to forego his legal rights.[23]

---

[22] This assumption is strengthened by the fact that ARIN filed a Rule 12(b)(6) Motion, seeking to dismiss the Antitrust Complaint, concurrently with the filing of the instant Motion. *See* Motion at 4:18-20.

[23] ARIN characterizes "the heart" of its position as being that "it would transfer the [IP] resources to Kremen so long as Kremen agreed to be bound by the procedure that applied to Cohen and which apply equally to all entities seeking issuance or transfer of Internet Protocol resources." Motion at 8:25-9:2. Notably, the evidence cited for this characterization, namely the Declaration of Raymond A. Plzak at paragraphs 5 through 8, makes no mention whatsoever of Cohen. Moreover, the

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

ARIN's motion is untimely and should be denied on this basis alone.

**D.    IN THE ALTERNATIVE, THIS COURT SHOULD SCHEDULE FURTHER BRIEFING AND A FURTHER HEARING ON ARIN'S MOTION PENDING ARIN'S COMPLIANCE WITH DISCOVERY REQUESTS SEEKING MATERIAL DOCUMENTS PERTAINING TO THE ORIGINAL ASSIGNMENT OF THE NETBLOCKS AND ASNS TO COHEN, HIS ALTER EGOS AND/OR AFFILIATES.**

Remarkably, ARIN's moving papers omit any explanation or discussion as to the original assignment of the Netblocks and ASNs to Cohen, his alter egos and/or affiliates. Since, as discussed more thoroughly above, Kremen is entitled to "step into the shoes" of Cohen, it is essential to understand how Cohen came to obtain registration of the Netblocks and ASNs to begin with.

As part of Kremen's efforts to resolve this matter with ARIN and understand ARIN's insistence on having Kremen "apply" for property he has already been awarded, Kremen sent a subpoena on July 25, 2005, a copy of which is attached as Exhibit "G" to the Declaration of Richard J. Idell filed herewith. That subpoena requested, among other things, documents that presumably would shed light on this issue. A response was made, and ARIN produced thousands of pages worth of documents. However, most of the documents were useless "fill," and entirely lacking from those documents was any contract or other writing which reflects the information sought.

When ARIN filed the instant Motion for Clarification, it was clear that these documents, if they exist, would be critical to an understanding of the underlying facts. Idell Decl., ¶¶ 12, 13. Accordingly, in order to have these documents prior to the hearing on this motion, further subpoenas were served on ARIN.[24] Idell Decl., ¶ 13. ARIN has not produced a single additional piece of paper in response to the further subpoenas. Idell Decl., ¶ 13. Indeed, in a meet and confer conference call held on Tuesday,

---

Netblock Order requires neither "issuance" nor "transfer" of the Netblocks and ASNs; rather, it demands only that ARIN register these properties in the name of Gary Kremen by virtue of the constructive trust imposed by the Judgment. ARIN provides no evidence whatsoever that the procedures, policies, terms and/or conditions it insists Kremen must agree to are those to which Cohen, his alter egos and/or affiliates were subject to. The evidentiary burden is ARIN's, and unless ARIN can make such showing, there is no reason that Kremen should have to abide by any terms beyond those to which Cohen was subject.

[24] The July 25, 2005 subpoena was served on the Custodian of Records for ARIN. See Idell Decl. ¶ 12 and Ex. "G". The subsequent subpoenas, issued on July 28, 2006, were served on ARIN board members, ARIN's General Counsel, and the Custodian of Records of the law firm of Manatt, Phelps & Phillips, LLP, the firm where ARIN's General Counsel is a partner. See Idell Decl ¶ 13 and Ex. "H". Also, the subsequent subpoenas sought an additional ten (10) categories worth of documents. See Idell Decl. ¶¶ 12, 13 and Exs "G", "H". Thus, the subsequent subpoenas were not redundant with the July 25, 2005 subpoena.

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

August 15, 2006, ARIN steadfastly refused to produce any more documents, and served numerous objections to the further subpoenas on Wednesday, August 16, 2006. Idell Decl., ¶ 14. ARIN, in a meet and confer letter, has indicated that it might respond to discrete narrowed requests voluntarily and informally (without the threat of legal process). *See* Idell Decl., ¶ 14 and Ex. "I"; Sandel Decl., ¶ 4 and Ex. "B".

Accordingly, on August 17, 2006, Ory Sandel of the law offices of Idell & Seitel LLP spoke with Jack Yeh of Manatt, Phelps & Phillips, LLP and requested the following in light of the impending due date of the instant Opposition to ARIN's Motion for Clarification:

1.  Would Mr. Yeh confirm by noon on Friday, August 18, 2006, whether or not there is a contract that was entered into with Cohen, any of his alter egos and/or affiliates with regard to assignment of the Netblock numbers and ASN numbers.
2.  If there is a contract, would Mr. Yeh produce it by noon on Friday, August 18, 2006.[25]
3.  If Mr. Yeh would not produce the contract, would he agree to continue the hearing on the instant Motion for Clarification until after he has produced it.

*See* Idell Decl., ¶ 15; Sandel Decl., ¶ 5.

Notwithstanding this very narrow request for information crucial to this motion, Mr. Yeh refused to timely produce any further documents. Sandel Decl., ¶ 5. ARIN has also failed to include any such evidence in support of its Motion. Indeed, ARIN has not even provided information as to when Cohen obtained the Netblocks and ASNs, or whether ARIN was in fact the entity in charge at that time.

Accordingly, this Court does not have any information as to the original relationship between Cohen, his alter egos and/or affiliates, on the one hand, and ARIN or its predecessor(s), on the other hand, relating to the Netblocks and ASNs. Such information is critical to confirming the status of Cohen's registrations since Kremen receives the assets of Cohen, his alter egos and/or affiliates in the same status. As ARIN claims that Kremen should only receive the registrations based on new rules, ARIN must show that such new rules apply to the subject property. Kremen believes that Cohen's registrations predate, and are thus not subject to, these new rules. It may not be possible for this Court to rule on this Motion without the information necessary to understand the entire factual sequence leading to it. Therefore, on the current record, unless the Court denies ARIN's motion, Plaintiff asks

---

[25] There was no need for Mr. Sandel to make this "narrowed" request, as the July 25, 2005 subpoena to ARIN called for the production of "any and/or all documents that relate to the initial application for the Netblock Numbers whether with ARIN and/or with an ARIN predecessor." *See* Idell Decl., ¶ 12 and Ex. "G".

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION

1   that the Court set a date for further hearing on this matter pending ARIN's turnover of documents

2   requested in both the July 2005 subpoena and the recently-issued further subpoenas.

3   **IV.    CONCLUSION.**

4          For the foregoing reasons, this Court should deny ARIN's Motion for Clarification. If the Court

5   denies the motion, the Court should issue a revised Order requiring ARIN to (a) register in Kremen's

6   name those Blocks and ASNs that ARIN admits are in its control and (b) return to ARIN's control

7   Blocks 2 and 5, and subsequently register said Blocks 2 and 5 in Kremen's name.

8          Should the Court determine that ARIN cannot be required to return to ARIN's control Blocks 2

9   and 5, Plaintiff requests that the Court (1) issue an order requiring UUNET to either (a) register Block 2

10  in Kremen's name or (b) return Block 2 to ARIN for subsequent registration of said Block 2 in

11  Kremen's name, and (2) issue an order requiring LACNIC to either (a) register Block 5 in Kremen's

12  name or (b) return Block 5 to ARIN for subsequent registration of said Block 5 in Kremen's name.

13         The Court also should issue an Order to Show Cause why ARIN should not be held in contempt

14  of court for failing to turn over the Netblocks and ASNs in its control and for intentionally transferring

15  IP resources subject to the Netblock Order, namely Block 5, beyond the reach of this Court, with full

16  knowledge that ARIN was required to register the subject IP resources in Kremen's name.

17         Unless the Court denies ARIN's motion and issues Kremen's requested Order to Show Cause,

18  the Court should order ARIN to turn over documents requested in the July 2005 subpoena and the recent

19  subpoenas issued by Kremen, and set a date for further hearing on this matter.

20                                          Respectfully submitted,

21                                          IDELL & SEITEL LLP

22

23  Dated: August 21, 2006              By: _____

24                                          Richard J. Idell
                                            Owen Seitel
25                                          Attorneys for Plaintiff GARY KREMEN

26

27

28

PLAINTIFF GARY KREMEN'S OPPOSITION TO ARIN'S MOTION FOR CLARIFICATION