1    least in part, in this District.  The interstate trade and commerce involved in and affected

2    by the alleged violations of the antitrust laws was and is carried on in part within this

3    District. The acts complained of have had, and will have, substantial anticompetitive

4    effects in this District.

5                                **INTRADISTRICT ASSIGNMENT**

6          6.      For the purposes of Local Rule 3-2(c), this action arises in San Francisco,

7    where a substantial part of the events or omissions which give rise to the claims alleged

8    herein occurred and in which a substantial part of the property that is the subject of this

9    action is located.

10                                      **THE PARTIES**

11         7.      Plaintiff KREMEN is an individual, residing in the State of California.

12         8.      Defendant ARIN is corporation organized and existing under the laws of

13   the State of Virginia and having its principal place of business in the State of Virginia.

14                                  **RELEVANT MARKET**

15         9.      For the purpose of KREMEN's antitrust causes of action, the relevant

16   market is the market for Internet Protocol addresses ("IP Addresses"), blocks of IP

17   addresses ("Netblocks") and Autonomous System Numbers ("ASNs"). The relevant

18   geographic scope of the relevant market is United States, Canada, Anguilla, Antarctica,

19   Antigua and Barbuda, Bahamas, Barbados, Bermuda, Bouvet Island, Cayman Islands,

20   Dominica, Grenada, Guadeloupe, Heard and McDonald Islands, Jamaica, Martinique,

21   Puerto Rico, Saint Kitts and Nevis, Saint Lucia, Saint Vincent and The Grenadines, St.

22   Helena, St. Pierre and Miquelon, Turks and Caicos Islands, United States Minor Outlying

23   Islands, Virgin Islands (British), and Virgin Islands (U.S.).

24                                **INTERSTATE COMMERCE**

25         10.     The policies and actions of Defendant ARIN take place in and affect

26   interstate trade and commerce in the United States because Internet Service Providers

27   ("ISPs") and end users of IP addresses must obtain IP addresses and ASNs from ARIN,

28   and pay mandatory registration fees on such property to ARIN.  ARIN has a monopoly

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

3

COMPLAINT

Dockets.Justia.com

1  on such services in the relevant market.  These transactions occur across state lines.

2  Additionally, Defendant ARIN's policies and actions directly and substantially affect

3  interstate commerce in that ARIN's policies interfere with and obstruct the purchase and

4  sale of valuable property of IP Addresses and AS Numbers.  Such interference can and

5  does directly affect the operations of Internet-related businesses.

6  ## I. INTRODUCTION

7      11.    Plaintiff Gary Kremen ("KREMEN") obtained a $65 million judgment,

8  entered in the U.S. District Court for the Northern District of California, against Stephen

9  Michael Cohen ("COHEN"), and against a variety of companies and alter egos of

10  COHEN (see *Kremen v. Cohen*, No. 98-20718 (JW)).   This judgment, entered on April

11  3, 2001, also imposed a constructive trust on all of assets of COHEN, his companies

12  and alter egos.

13      12.    Among the property owned and held by COHEN, or his companies and

14  alter egos, at the time of the judgment were blocks of IP Addresses and ASNs

15  ("NETBLOCK PROPERTY", which will be fully defined, *infra*) that were, and currently

16  are, in commercial use and of substantial economic value.  Pursuant to the April 2001

17  judgment, on September 17, 2001, the Northern District issued an order specifically

18  directing the custodian of the NETBLOCK PROPERTY, Defendant ARIN, to transfer the

19  NETBLOCK PROPERTY to KREMEN (the "NETBLOCK ORDER").  A true and correct

20  copy of this order is attached hereto as "Exhibit A."

21      13.    Despite Plaintiff's many requests, Defendant ARIN has continuously

22  refused to transfer the NETBLOCK PROPERTY to KREMEN in compliance with the

23  Order, or to in any way substantially comply with its terms.  ARIN has stated that its

24  refusal to transfer the subject properties to KREMEN is pursuant to, at least in part,

25  ARIN's internal "policies," developed by the ARIN membership pursuant to their

26  economic self-interest, with the aim and intent to restrain trade and favor the ARIN

27  Members.

28

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

14.    Since 2001, KREMEN has been in the Internet advertising business. KREMEN owns a pay-per-click ("PPC") search engine and over 5000 domain names. KREMEN'S businesses generate revenues from attracting large amounts of Internet traffic to websites where KREMEN'S domain names reside.  KREMEN'S business and prospective businesses would have benefited greatly if KREMEN would have had control of the NETBLOCK PROPERTY from the time of the court order.  Specifically, KREMEN could have hosted thousands of his websites using various IP addresses contained in the NETBLOCK PROPERTY, which would have given KREMEN significant advantages in obtaining higher ranking within search engines, such as Google.com. Such high ranking would have translated into increased Internet traffic and greater revenues.

15.    Also since 2001, KREMEN has been unable to pursue a variety of business strategies that would have been able to exploit the value of the NETBLOCK PROPERTY.  These potential business strategies include various affiliate marketing techniques, email marketing, and hosting various types of web services hosted for customers.

16.    Defendant ARIN's refusal to comply with the 2001 NETBLOCK ORDER also harmed KREMEN because such purposeful action benefited COHEN.  This refusal by ARIN has enabled COHEN to retain ownership and possession of the NETBLOCK PROPERTY, to continue to derive economic benefit from the NETBLOCK PROPERTY, and to use the income to fund COHEN's flight, living as a fugitive, retention of domestic and foreign counsel and investigators to avoid service of process and warrants, and as leverage against in other ways.  The damages that have resulted from ARIN's wrongful actions have far surpassed what KREMEN could obtain through a contempt proceeding.

17.    KREMEN brings this action to obtain his NETBLOCK PROPERTY, to enjoin ARIN's anticompetitive policies and unfair business practices, and for related compensatory and punitive damages.

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

## II. BACKGROUND

### A.   The Internet, IP Addresses and Domain Names

18.    The Internet is a network of interconnected computers and computer networks. Every computer that is directly connected to the Internet has a unique address. These addresses, which are known as Internet Protocol ("IP") numbers, are necessary for computers to communicate with each other over the Internet. An example of an IP number might be:  170.110.225.163.

19.    Because IP numbers can be cumbersome and difficult for Internet users to remember or to use, the IP number system has been overlaid with a more "user-friendly" system of domain names – the Internet domain name system, or "DNS."  The DNS associates a unique alphanumeric character string—or domain name—with a specific IP number.  As an example, the IP address 170.110.225.163 resolves to the U.S. Department of Commerce website, under the domain name "www.Commerce.gov."

20.    IP addresses, by their nature and by necessity, are precisely defined, in that a unique IP address must be assigned to every access point on the Internet in order to enable the correct routing of Internet traffic between points on the network.  It is therefore necessary that IP Addresses be exclusively allocated to and controlled by their owners; addresses not so allocated are held in reserve by a regional registry –such as Defendant ARIN.

21.    IP addresses are comprised of four quadrants, each containing 8 bits of information; for ease of reference, the binary values are translated at the user level into decimal values, which range from 0 to 255. [1]



---

[1] A "bit" is a single binary value and is the smallest amount of computer storage. It can have a value of 0 (false) or 1 (true).  An 8-digit (8 bit) binary number is called a byte. Translated from binary into decimal notation, a byte has a minimum value of 0 ("00000000"), and a maximum value of 255 ("11111111").

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

1

2    As each quadrant can have 255 unique values, this creates a total of pool of

3    4,294,967,296 unique IP addresses.

4        22.    IP addresses are managed in blocks ("NETBLOCKS"), which are defined

5    in several ways.  Traditionally, NETBLOCKS have been defined in a class system by

6    quadrant values and levels.  These NETBLOCKS can be any size; a block defined by a

7    first quadrant value (an "A Level" domain) consists over 16 million addresses; a block

8    defined down to a third quadrant value (a "C Level" domain) contains only 256 unique

9    addresses.

10       23.    Generally speaking about Internet addressing by class (Class A, B or C),

11   the first quadrant or quadrants in an IP address represent a network, and the latter

12   quadrants represent potential specific hosts, which could be, among other things,

13   specific websites or Internet users.

14       24.    Recently a new form of Internet addressing has emerged, called Classless

15   Inter-Domain Routing (CIDR).  In this new addressing protocol, a CIDR network address

16   could look like this:  190.30.250.00/21.  The prefix is the address of the network, or

17   gateway, and the number after the slash indicates the size of the network.  The higher

18   the number, the more host space that is in the network.[2]

19       25.    For both class addressing and CIDR addressing, the value of blocks of IP

20   addresses increases as the number of potential specific hosts increases.  In businesses

21   where IP addresses are a resource, the ability to expand and expand rapidly is related to

22   the size of the NETBLOCKS that business holds.

23       26.    Additionally, bigger NETBLOCKS are inherently more efficient from a

24   routing standpoint and thus more valuable.  Due to these efficiencies, Internet Service

25   Providers holding large NETBLOCKS are often granted preferential, if not exclusive,

26   standing to communicate with larger ("backbone") providers, giving them a substantial

27   _____

28   [2] For example, network 10.1.0.0/16 has twice as much space as 10.1.0.0/17, and four
     times as much as 10.1.0.0/18.

COMPLAINT

1  advantage in their competitive markets. The enhanced value of large NETBLOCKS is

2  reflected in the marketplace, in that NETBLOCKS are bought, sold, and licensed like

3  other valuable property or resources; NETBLOCK holdings are factored into the

4  valuations of both public and private companies worldwide.  Furthermore, the

5  Autonomous System Numbers (ASNs) that identify each unique network on the Internet

6  also have value for similar reasons.

7  **B.  History of the Allocation and Management of IP Addresses**

8      27.    In the 1980s, the U.S. National Science Foundation ("NSF") connected its

9  high speed network to the high speed network of what is now known as the U.S.

10  Defense Advanced Research Projects Agency ("DARPA"), forming the foundation of the

11  Internet as we know it today.  As the Internet grew, the increasingly more complex task

12  of assigning and keeping track of IP addresses was passed to the Defense Data

13  Network (DDN) Network Information Center (NIC), under a contract from NSF.

14      28.    In 1993, NSF signed an agreement with Network Solutions, Inc. ("NSI"),

15  under which NSI became the exclusive registrar and registry[3] of Internet domain names.

16  At the same time, NSF and NSI formed an organization named InterNIC to assume

17  control of the registration and registry of IP addresses.  InterNIC shared management of

18  these responsibilities with the Internet Assigned Numbers Authority ("IANA").

19      29.    Throughout the 1990s, driven by the need to manage better the growing

20  volume of address allocations internationally and other logistical problems, the Internet

21  community began to support the proposition that IP addresses should be under the

22  management of, and administered by, those that use Internet IP addresses in respective

23  geographic locations, including ISPs, end-user organizations, corporate entities,

24  universities, and individuals.  As a result,  IANA began to work with Regional Intenet

25  Registries ("RIRs"), which represented various Internet communities internationally.

26  IANA's role started to transition to the role of allocating IP addresses from the pools of

27  ---
[3] A registry is database mapping domain names to IP addresses; a registrar is an entity
28  that trades in the registration of domains in the registries to which it has been a granted
access

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

1    unallocated addresses to the RIRs according to their established needs. When an RIR

2    required more IP addresses for allocation or assignment within its region, the IANA

3    made an additional allocation to the RIR.

4         30.    In April of 1997, Defendant ARIN was established as an independent,

5    nonprofit corporation, pursuant to the consensus of IANA and other organizations,

6    thereby becoming a RIR.  Thereafter, ARIN assumed from InterNIC and IANA the

7    exclusive responsibilities of IP address allocation for over 26 countries, including the

8    U.S. and its territories, Canada, and parts of the Caribbean [4] ARIN now exists as the

9    largest and most active one of five regional Internet registries ("RIRs") that are

10   responsible for allocating IP address space and managing the IP address registries

11   worldwide.

12        31.    On July 1, 1997, the Clinton administration issued a report on electronic

13   commerce, "*A Framework for Global Electronic Commerce.*" The report supported

14   private efforts to address Internet governance and made the Department of Commerce

15   ("DOC") the lead agency on this initiative.  Accompanying the report was a presidential

16   directive that called on the DOC to "support efforts to make the governance of the

17   domain name system private and competitive and to create a contractually based self-

18   regulatory regime that deals with potential conflicts between domain name usage and

19   trademark laws on a global basis."[5]  To this end, the DOC published the "Proposal to

20   Improve Technical Management of Internet Names and Addresses" (commonly referred

21   to as the "Green Paper").

22        32.    The Internet Corporation for Assigned Names and Numbers (ICANN) is a

23   private corporation, formed in 1998, which derived from the U.S. Department of

---

[4] As of the date of filing, ARIN's territory includes Anguilla, Antarctica, Antigua and
Barbuda, Bahamas, Barbados, Bermuda, Bouvet Island (Norway), Canada, Cayman
Islands (U.K.), Dominica, Grenada, Guadeloupe (France), Heard and McDonald Islands
(Australia), Jamaica, Martinique (France), Puerto Rico (U.S.), Saint Kitts and Nevis,
Saint Lucia, Saint Vincent and the Grenadines, St. Helena (U.K.), St. Pierre and
Miquelon (France), United States, United States Minor Outlying Islands, British Virgin
Islands (U.K.), and the U.S. Virgin Islands (U.S.)

[5] "*Presidential Directive on Electronic Commerce,*" July 1, 1997.

COMPLAINT

1    Commerce the responsibility for Internet Protocol (IP) address space allocation, protocol

2    identifier assignment, generic (gTLD) and country code (ccTLD) Top-Level Domain

3    name system management, and root server system management functions. These

4    services were originally performed under U.S. Government contract by IANA and other

5    entities, which in turn would work with RIRs on IP address allocation matters. IANA has

6    been subsumed into ICANN, and ICANN is now responsible for the IANA function, to

7    include interfacing with RIRs.

8    **C. Defendant ARIN**

9       33.      ARIN, first and foremost, is the only registrar and registry of the property

10    commonly referred to as IP addresses and blocks of IP addresses, aka "NETBLOCKS,"

11    in the relevant market as defined in paragraph 9. ARIN's articles of incorporation further

12    reinforce ARIN's role as a custodian that manages Internet protocol resources and

13    manages the allocation and registration of such Internet protocol resources. ARIN's

14    articles of incorporation state that ARIN exists "to represent the internet community

15    nationally and internationally...", further emphasizing how ARIN derives its authority from

16    the owners of IP addresses or those applying for such ownership.

17       34.      ARIN exists as the steward[6] of at least two primary types of property:

18    unallocated IP address space, and IP addresses that have been allocated to owners.

19    Regarding both types of IP addresses, ARIN performs a variety of services pursuant to

20    its role as a register and registry:  allocation and assignment of IP address space;

21    assignment of autonomous system numbers ("ASNs"); inverse addressing on network

22    blocks; and maintenance of network records and administration of IP address space.

23

24

---

25    [6] ARIN actually uses the word "stewardship" to describe its role on the home pages of its
      website:  "Applying the principles of stewardship, ARIN, a nonprofit corporation,
26    allocates Internet Protocol resources; develops consensus-based policies; and facilitates
      the advancement of the Internet through information and educational outreach."  The
27    American Heritage Dictionary defines "steward" as "one who manages another's
      property."  *The American Heritage Dictionary of the English Language, Fourth Edition*,
28    2000.

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

### III. ARIN's ANTICOMPETITIVE INTERESTS

35.    ARIN is the <u>only</u> registrar and registry for IP addresses and ASNs for any and all ISP's in ARIN's geographical region seeking to do business in the IP numbers market.  There is no other registrar or registry for IP addresses and ASNs for businesses in ARIN's geographic region.

36.    The organizational operations of Defendant ARIN described above are rendered anticompetitive in purpose and effect in light of the intentional unification of economic interests shared by a controlling interest of its decision making bodies, and by its constituent members.  Pursuant to these controlling anticompetitive interests, ARIN policy, which ARIN describes as vaguely as possible, is applied to exclude and control entry and presence in the market of competitors to those interests, including Plaintiff KREMEN.

### A. Large ISP Industry Participants Serve as ARIN Management

37.    In that the entire membership of Defendant ARIN is comprised of members of the Internet Service Provider industry who have already been directly allocated IP address space by ARIN,  ARIN is an inherently biased gatekeeper for the allocation of the primary resource required to compete in that industry.  It is this membership that elects the ARIN Board of Trustees, who, along with the President, absolutely control and govern the entirety of ARIN's operations "in their sole discretion."

38.    Six members of the Board of Trustees are elected to three-year terms by ARIN's membership, comprised of ISP industry participants who have already been allocated IP address space.[7]  The Board, in turn, has exclusive power to select the ARIN officers (Chairman, Treasurer, and Secretary) by majority vote, except for the President.

39.    The ARIN President and CEO are not elected but "hired" by the Board of Trustees, and serve under the entire term of an employment contract, the terms of which are created and authorized by the Board.  The President sits as the seventh voting member of the ARIN Board for the entire term of their employment contract.

---

[7] ARIN Bylaws, VI.4.

11

COMPLAINT

1   40.    The President/CEO is the primary authoritarian of ARIN, and manages

2   ARIN's day-to-day operations, executes all contracts and agreements on behalf of ARIN,

3   and advises all other officers and committees, and has "full authority over the

4   administration and management of ARIN, and further shall exercise such other powers

5   as usually pertain to the chief operating official of an organization."[8]

6   **B.  ARIN Management Gave Itself Absolute Discretion Over Policy Development**

7   **and Administration**

8   41.    The ARIN Board operates with complete autonomy, in "its sole and

9   absolute discretion."  It governs in accordance with ARIN's "policies" – which the ARIN

10  Board has exclusive authority to adopt, alter, amend, or repeal – specific notice of which

11  it is not required to provide to its applicants.[9]  The absolute and unquestioned authority

12  of the ARIN Board and President is reiterated throughout the bylaws:  ARIN acts "in its

13  sole and exclusive discretion applying its published policies."  Furthermore, "ARIN may,

14  in its sole and absolute discretion, change, modify, suspend, or make improvements to

15  any aspect of [its services], temporarily or permanently, at any time without specific

16  notice to [the a]pplicant, and ARIN will not be liable for doing so." *Id.*  "ARIN may, at any

17  time in its sole and absolute discretion, amend the Policies or create new Policies and

18  such amendments or new policies shall be binding upon Applicant thirty days after they

19  are posted on ARIN's web site."

20  **C.  Actual Control of ARIN Board is Held By Prominent ISP Industry Leaders In**

21  **Competition With Applicants Seeking Allocation**

22  42.    Absolute control of the ARIN board is held by some of the most powerful

23  and influential figures in the Internet service industry.  With an industry participant base

24  electing key industry figures who possess absolute discretion and control over entry,

25  expansion, and allocation of resources in their own market place, ARIN's anticompetitive

26  nature is apparent.  Even ARIN's own bylaws acknowledge this inherent conflict:

27  _____

[8] ARIN Bylaws, Sec. VII.5.

28  [9] ARIN Bylaws, Sec. VI.8.

**COMPLAINT**

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

1 "policies under consideration by ARIN are likely to have an impact on the business of

2 every Trustee."[10]

3      43.   At present, the ARIN Board consists of the following individuals, each of

4 them with significant commercial interests and affiliations in direct competition with ISP

5 newcomers to the IP Address market:

6      a.     President Raymond Plzak, Advisory Committee of the Internet

7 Society and Root Server System Advisory (RSSAC) and Security and Stability Advisory

8 (SSAC) Committees of the Internet Corporation for Assigned Names and Numbers

9 (ICANN);

10      b.     Chairman John Curran, Vice President and Chief Technical Officer

11 of ServerVault, a Dulles, Virginia full-service hosting provider; former Chief Technical

12 Officer of XO Communications, nationwide "backbone" internet and telecommunications

13 services provider; Chief Technical Officer of BBN Technologies, former division of GTE,

14 Verizon;

15      c.     Secretary Scott Bradner, University Technology Security Officer at

16 Harvard University; Secretary to the Board of Trustees of the Internet Society (ISOC);

17      d.     Treasurer Lee Howard, currently the director of network engineering

18 for Stanley Associates, a public sector IT and logistics consulting company; prior to

19 joining Stanley Associates, he worked at UUNET from 1997 until 2003;

20      e.     Bill Manning, formerly of Texas Instruments; contributing scientist on

21 CenterGate's UltraDNS, who serves on research staff at University of Southern

22 California's Information Sciences Institute; formerly Lead Engineer at Rice University;

23 currently works on enhancing DNS code to track the growth of IP networks;

24      f.     Bill Woodcock, founder of Zocalo, a multinational ISP, which he ran

25 from 1989 to 2002; and

26

27

28

---

[10] ARIN Bylaws, Sec. VI.12(a).

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

1    g.    Paul Vixie, Founder and President of Internet Systems Consortium,

2  Inc. (ISC); he has served as President/CEO of PAIX, MIBH, which are large,

3  international Internet networking and peering companies.

4    44.    While having no authority to direct or bind ARIN or its policies, ARIN also

5  maintains an Advisory Committee, with whom the ARIN Board consults – at its

6  discretion. Like the Board, the Advisory Committee is also comprised of individuals

7  directly or indirectly involved in the ISP industry and the market for IP Addresses:

8    a.    Dan Alexander, currently Principal Engineer and formerly Lead

9  Architect for Comcast Cable; formerly of Excite@Home.

10    b.    Paul Andersen, founder of egateNETWORKS Inc., a Toronto-based

11  ISP; Vice-Chair of Canadian Internet Registration Authority (CIRA) Board of Directors.

12    c.    Cathy Aronson, recently a member of the technical staff at Packet

13  Design; formerly of @Home (she was responsible for routing and IP addressing);

14  formerly of Merit, Inc. (she worked on the NSFNET Backbone).

15    d.    Marla Azinger, Electric Lightwave, Frontier Communications and

16  Citizens IP Addressing.

17    e.    Leo Bicknell, Senior Network Architect for Harrah's Entertainment,

18  formerly of AboveNet, as an ISP backbone architect.

19    f.    Chairman Ron da Silva, Senior Director of Network Engineering and

20  Technology for Time Warner Cable; formerly with AOL.

21    g.    Bill Darte, Senior Technical Programs Specialist with the Center for

22  the Application of Information Technology (CAIT) at Washington University in St. Louis;

23  Affiliate Professor teaching telecommunications and security subjects in the Master of

24  Information Management degree program at Washington University in St. Louis.

25    h.    Mark Kosters, Vice President of Research at VeriSign, former

26  Senior Engineer at Data Defense Network (DDN) NIC; former Chief Engineer and

27  Principal Investigator under the NSF- sponsored Internet NIC (InterNIC); he has

28

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

1    represented both network information centers in various technical forums such as the

2    IETF, RIPE, APNIC, and NANOG.

3         i.    Vice Chairman Alec Peterson, currently Director of Product

4    Development for OmniTI, Inc.; co-founder of UltraDNS; co-founder and Chief

5    Technology Officer of Catbird Networks;  Staff scientist at Centergate Research Group,

6    LLC; former Manger of IP Backbone Planning for RCN, a national Internet company that

7    acquired Erols in January 1998; former Network Administrator and Architect for Panix.

8         j.    Matt Pounsett, Systems/Network administrator at CIRA since 2003;

9    member of Toronto Internet Exchange (TorIX); former Systems Administrator for Netcom

10   Canada/AT&T Canada; former Technical Analyst for Sprint Canada.

11        k.    Lea Roberts, employed by Stanford University for the past 40 years;

12   she has been part of the Networking Systems group for more than 20 years, where she

13   is the network architect for the campus IPv4 backbone network as well as in charge of

14   assigning IP address blocks for use by campus organizations, she is currently a member

15   of the Technical Advisory Council for CENIC, supporting CalREN2, which provides

16   Internet2 connectivity in California.

17        l.    Alex Rubenstein, owner/operator of Net Access Corporation (aka

18   nac.net), a large regional backbone Internet Service Provider.

19        m.    Robert Seastrom, former Director of Network Architecture at

20   Inter.Net Global Ltd.; co-founder and former President of the Cambridge Bandwidth

21   Consortium, a cooperative ISP in Cambridge, Massachusetts; formerly of Akamai

22   Technologies, AboveNet Communications, and Digex.

23        n.    Stacy Taylor, "IP Goddess" at Time Warner Telecom; former Senior

24   Technical Writer for Operations Systems Support; previously controlled all aspects of IP

25   addressing for the network at ICG Communications.

26        o.    Suzanne Woolf, Program Manager for the Internet Software

27   Consortium, a nonprofit organization dedicated to reference implementations of critical

28   network standards and other projects in the public interest of the global Internet.

COMPLAINT

1    45.    The above ISP industry professionals, directly or indirectly involved in the

2    operation of large ISP businesses, or in the operations of ICANN, Verisign, and the other

3    organizations from which ARIN derives its power and resources, are the sole,

4    unquestioned managers and decision makers behind ARIN, with sole discretion in

5    controlling the entry of any and all competing interests in to the ISP market.

6                    **IV. ARIN's ANTICOMPETITIVE AND WRONGFUL ACTS**

7    46.    Plaintiff KREMEN obtained a $65 million judgment, entered in the US

8    District Court for the Northern District of California, against COHEN and against a variety

9    of companies and alter egos of COHEN.  This judgment, entered on April 3, 2001, also

10    imposed a constructive trust on all of assets of COHEN, his companies and alter egos.

11    47.    At the time of the judgment, COHEN, or his companies and alter egos,

12    owned blocks of Internet Protocol addresses ("NETBLOCK PROPERTY") that were, and

13    currently are, in use and of substantial monetary value.  As a result, KREMEN obtained

14    a court order, dated September 17, 2001 (the "NETBLOCK ORDER") ordering the

15    custodian of the NETBLOCK PROPERTY, Defendant ARIN, to transfer the NETBLOCK

16    PROPERTY to KREMEN, thereby vesting in KREMEN all ownership and other rights in

17    the NETBLOCK PROPERTY.  KREMEN owned the NETBLOCK PROPERTY both in

18    constructive trust and as a judgment creditor.

19    48.    KREMEN made multiple demands to ARIN to transfer the property free

20    and clear to KREMEN.  However, ARIN refused and continues to refuse to transfer the

21    NETBLOCK PROPERTY to KREMEN, unless KREMEN entered into a mandatory side

22    agreement with ARIN wherein KREMEN would effectively relinquish all of his property

23    rights in the NETBLOCKS.

24    49.    In November 2001 Plaintiff KREMEN presented Defendant ARIN with this

25    Court's September 2001 NETBLOCK ORDER, which expressly directed ARIN to

26    transfer registration of the specifically identified NETBLOCK PROPERTY to KREMEN.

27    The Order was as explicit as to provide the exact registration details to be used.[11]

28    _____

[11] NETBLOCK ORDER, p. 2.

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

16

**COMPLAINT**

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

50.    Rather than complying with the unequivocal terms of the NETBLOCK ORDER, ARIN's response from the outset was that they "would work something out" with KREMEN regarding the NETBLOCK ORDER.  Seemingly unfazed by the Court's directives, ARIN, by and through its President Mr. Plzak and through its counsel, began a negotiation of the terms and conditions of its compliance with the Order.  In fact, all correspondence from ARIN regarding the NETBLOCK ORDER was designated as confidential settlement communications "PURSUANT TO § 408," indicating ARIN's intention to negotiate its own settled terms, rather than comply with those of the Court's order.

51.    ARIN's resistance to comply with the NETBLOCK ORDER continued through back-and-forth discussions between ARIN, its counsel, and Plaintiff KREMEN into 2005, culminating in ARIN's ultimate refusal to transfer the NETBLOCK PROPERTY as ordered.

### A.    Refusal to Transfer Registration of Specified NETBLOCK PROPERTY to Plaintiff KREMEN

52.    At no point in the course of Plaintiff's dealings with ARIN did ARIN or its representatives indicate any desire, intention, or perceived obligation to comply with the terms of the NETBLOCK ORDER, nor have they ever done so.  As no less than a full, immediate, and uncompromised compliance with the NETBLOCK ORDER could have satisfied Plaintiff's entitlement, ARIN has at all times been in violation of it, and of Plaintiff's legal rights.

53.    While this alone would have been sufficient to constitute ARIN's wrongful disposition of Plaintiff's rights and property, other wrongs were committed.

### B.    Act of Conditioning Plaintiff's (and Others') Registration Upon Submission of Detailed Disclosure of Trade Secrets, and Confidential Commercial and Private Information.

54.    In addition to refusing to comply with the specific scope of the NETBLOCK ORDER,  ARIN also sought to condition the consideration of any registration of the

17

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.Kronenbergerlaw.com

1  NETBLOCK PROPERTY upon KREMEN's submission of a detailed information or his

2  existing and future business operations. Mr. Plzak asserted a "policy" requiring Plaintiff's

3  disclosure to the ARIN administration of such sensitive and trade secret information as:

4     -   Plaintiff's and COHEN's existing customer lists;

5     -   A detailed inventory of all assets utilized by COHEN or to be utilized by

6         Plaintiff in connection with the NETBLOCK PROPERTY;

7     -   General and specific listings of the assets Plaintiff acquired from COHEN;

8     -   Network engineering plans including subnets, host counts, and hosts per

9         subnet, with projected use rates for one and two years;

10    -   Deployment schedules for the networks utilizing the Netblock addresses;

11    -   Network topology diagrams; and

12    -   Identification of specific software requirements.

13      55.     ARIN's management would then "evaluate" this critical information "in its

14 sole and exclusive discretion applying its published policies," to determine whether the

15 transfer order was "justified." ARIN's "policy" cited by Mr. Plzak reserved to ARIN the

16 right to reduce or eliminate the size and scope of KREMEN's NETBLOCK PROPERTY

17 pursuant to its evaluation.

18      56.     As applied to Plaintiff KREMEN, any such requirement or determination

19 would be contrary to the directive and purpose of the NETBLOCK ORDER as issued,

20 and diminish Plaintiff's award thereunder. The terms of the NETBLOCK ORDER were

21 clear and irrefutable, and even specified what information of Plaintiff was to be used in

22 the updated registry entries.[12]

23      57.     Furthermore, Plaintiff was unable to submit details regarding COHEN's

24 assets and operations, as such assets and operations were largely unidentified and the

25 subject of extensive investigatory efforts, due to COHEN's fraudulent transfers and other

26 attempts to avoid collection on the judgment. In that Plaintiff could not supply ARIN the

27 information requested, if Plaintiff would have submitted details of use of the NETBLOCK

28  

[12] NETBLOCK ORDER, p.2.

COMPLAINT

1    PROPERTY, such submission, by ARIN's unfair terms, would serve as immediate

2    grounds for ARIN's instant denial and diminishment of the NETBLOCK PROPERTY

3    transfer.

4        58.    As another form of anticompetitive and wrongful behavior, ARIN's policy of

5    requiring the disclosure of Plaintiff's and other applicants' confidential and valuable trade

6    secret information to persons and entities with interests in direct competition, would

7    irreparably injure Plaintiff's interests and unjustly enriching those of ARIN's Board

8    Members.

9        59.    Lastly, this "policy" allows ARIN unlawfully to obtain detailed information

10   regarding ALL competitors to the economic interests controlling ARIN, in that all ISPs

11   must make such disclosures in order to obtain an IP allocation and compete in the

12   industry.

13       60.    On information and belief, it is the general "policy" of ARIN that all

14   applicants for registration and allocation of IP addresses and ASN numbers similarly

15   submit to and comply with ARIN's "justification" policy. ARIN provides no guidelines or

16   standards for such reviews, which are apparently within the complete discretion of

17   ARIN's President and Board, which are in turn subject to the controlling interest of the

18   common economic anticompetitive interests of those individuals and of ARIN's

19   constituent members who select them, as alleged above.

20       61.    For these reasons, Plaintiff refused to comply with ARIN's conditions.

21   **C.    Act of Conditioning KREMEN's (and Others') Registration of**

22   **Addresses Upon Acceptance of "Grab Back" Provisions that Render ARIN's**

23   **Performance Illusory.**

24       62.    Mr. Plzak further conditioned any transfer of NETBLOCK PROPERTY

25   under the NETBLOCK ORDER upon Plaintiff's agreement to be bound by a contractual

26   provision that would allow ARIN to rescind and cancel KREMEN's ownership of any or

27   all of the NETBLOCK PROPERTY, and his interests therein, at any time and for any

28

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

reason within ARIN's sole and absolute discretion. ARIN's policy in this regard, as apparently reflected in the present version of its Service Agreement, states:

> 8. REVIEW OF APPLICANT'S NUMBERING RESOURCES. ARIN may review, at any time, Applicant's use of the previously allocated numbering resources or other Services to determine if Applicant is complying with this Agreement, the Policies, and using the Services for their intended purposes. Without limiting the foregoing, if Applicant is an Internet Service Provider, Applicant agrees that it will use the numbering resources solely for uses consistent with its application, including, for example, its internal infrastructure or to provide Internet access to its customer base. If ARIN determines that the numbering resources or any other Services are not being used in compliance with this Agreement, the Policies, or for purposes for which they are intended, ARIN may: (i) revoke the numbering resources, (ii) cease providing the Services to Applicant, or (iii) terminate this Agreement.

63.    Not only would it be within ARIN's sole and unchecked authority to cancel Plaintiff's ownership should his business operations not proceed in accordance with ARIN's anticompetitive "intentions," but, as stated above, ARIN's bylaws entitle the Board to create and amend its "policies" at any time for any reason and with no actual notice to Plaintiff (or any other transferee). The mandatory acceptance of such a contract of adhesion that renders ARIN's performance illusory and allows ARIN to maintain an anticompetitive *status quo*, is unlawful and abusive conduct.

64.    At the time this condition and requirement was presented to Plaintiff KREMEN, ARIN indicated, through its President Ray Plzak, that any transfer pursuant to the NETBLOCK ORDER could and would likely be subject to such a subsequent rescission and cancellation.

65.    As with ARIN's condition of requiring a "justification" submission, submitting to ARIN's contract of adhesion would be contrary to the directives and purpose of the NETBLOCK ORDER as issued, and would deplete Plaintiff's award thereunder.

66.    On information and belief, it is the general "policy" of ARIN that all applicants for registration and allocation of IP addresses similarly agree to such a "grab back" provision. ARIN provides no guidelines or standards for promulgating such a procedure, which is apparently within the complete discretion of ARIN's Board and

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

1    President, which are in turn subject to the controlling interest of the common economic

2    anticompetitive interests of those individuals and of ARIN's constituent members who

3    select them, as alleged above.  This "policy" allows ARIN the unlawful anticompetitive

4    power to control directly the commercial operations and progression of ALL businesses

5    and persons in competition with the interests of the members of its Board, in that all

6    ISPs must submit to such terms to obtain an IP allocation and compete in the

7    marketplace.

8          67.    For these reasons, Plaintiff refused to comply with ARIN's "grab back"

9    condition.

10         **D. Act of Conditioning KREMEN's (and Others') Registration of Addresses**

11         **upon Submission, <u>for Public Disclosure</u>, of Private and Confidential**

12         **Information.**

13         68.    ARIN also conditioned any transfer of the NETBLOCK PROPERTY to

14   KREMEN upon KREMEN's providing, and ARIN's public disclosure of, KREMEN's

15   confidential and private information associated with the proposed use of the

16   registrations.  Such submission and disclosure would make public, at a minimum, such

17   personal details as Plaintiff's home addresses.

18         69.    Submission and subsequent public disclosure of such information

19   demanded by ARIN as a condition of transfer are in excess of the simple requirements

20   contained in the NETBLOCK ORDER, and publication of such information would cause

21   injury to Plaintiff's private and commercial rights and interests.

22         70.    On information and belief, it is the general "policy" of ARIN that all

23   applicants for registration and allocation of IP addresses similarly agree to such an

24   information collection and publication procedure.  ARIN provides no guidelines or

25   standards for promulgating such a procedure, which is apparently within the complete

26   discretion of ARIN's Board and managing officers, which are in turn subject to the

27   controlling interest of the common economic anticompetitive interests of those

28   individuals and of ARIN's constituent members who select them as alleged above.

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.Kronenbergerlaw.com

71.    On these grounds, Plaintiff KREMEN refused to comply with such terms.

**E. ARIN's Policies Favor Large "Backbone" Internet Providers and Other Large Organizations Over Smaller Competitors**

72.    The aforementioned anticompetitive policies and wrongful actions all favor and benefit large Internet "backbone" providers and other large established organizations.  Large blocks of IP addresses have significant value due to higher routability and due to the increases business opportunities associated with large netblocks, as detailed *supra* at ¶ 26, and ARIN's policies favoring large providers makes it difficult for smaller providers to reap the benefits of large netblocks.

**V. INJURY TO PLAINTIFF**

73.    ARIN's refusal beginning in November  2001 to transfer the NETBLOCK PROPERTY from COHEN to Plaintiff KREMEN pursuant to the NETBLOCK ORDER has, since that time, deprived Plaintiff KREMEN of the possession, control, use and benefit of that property, to which Plaintiff was and is legally entitled.  By simultaneous effect of ARIN's acts, COHEN, now incarcerated for contempt regarding his fraudulent and criminal acts directed at KREMEN, and COHEN's various alter egos, have remained in possession and control of the NETBLOCK PROPERTY, and have continually benefited from that wrongful possession and use.  Additionally, the benefits of ownership after the NETBLOCK ORDER that COHEN continued to receive were applied by COHEN to the further purposeful detriment of Plaintiff KREMEN.

74.    The injuries flowing from ARIN's acts can be categorized and described as follows:

**A. Wrongfully Depriving Plaintiff of Benefit of Use and Control of NETBLOCK PROPERTY.**

**i. Forgone existing revenue**

75.    At the time of and since ARIN's initial refusal to transfer the NETBLOCK PROPERTY as ordered, the NETBLOCK PROPERTY has been associated with downstream ISP customers and contractual resellers which generate a considerable

22

COMPLAINT

1   amount of income for COHEN and COHEN's alter egos.  Plaintiff KREMEN has been

2   denied the receipt and benefit of such revenue, and shall continue to be so until the

3   transfer of the NETBLOCK PROPERTY as ordered.

4       **ii.  Forgone potential revenue**

5       76.    Furthermore, Plaintiff has been denied the opportunity to make any

6   additional or alternative commercial use of the NETBLOCK PROPERTY.[13]  As

7   described *supra*, Plaintiff KREMEN is in the Internet advertising and traffic brokering

8   business.  For more than five years, ARIN's acts have deprived and continue to deprive

9   Plaintiff KREMEN of the opportunity to apply the NETBLOCK PROPERTY towards that

10  commercial purpose, and of the revenues derived therefrom.  Such potential

11  opportunities and revenues are in no way speculative, as they are the foreseeable

12  results of the natural extension and expansion of Plaintiff's current success business.

13  **B. Wrongful and Knowing Enrichment of COHEN and His Interests Directly**

14  **Adverse to KREMEN, by maintaining COHEN's Registration of the NETBLOCK**

15  **PROPERTY, to Direct and Known Detriment of KREMEN.**

16      77    Since being noticed of and refusing to comply with the NETBLOCK

17  ORDER, ARIN has knowingly enabled COHEN to retain ownership and possession of

18  the NETBLOCK PROPERTY, despite ARIN's actual notice of COHEN's illegal conduct,

19  wrongful use and possession of the NETBLOCK PROPERTY, and the other outstanding

20  judgments and orders against COHEN in Plaintiff's favor.

21      78.    As a result, ARIN has knowingly allowed and enabled COHEN and his

22  alter egos to continue to derive benefit from the NETBLOCK PROPERTY for over five

23  years, knowing such property to be used by COHEN to resist and evade Plaintiff

24  KREMEN's attempts to enforce this Court's judgments and bring COHEN to justice.  The

25  income and other benefits derived from COHEN's retrained control have been

26  continually used to fund COHEN's flight, living as a fugitive, retention of domestic and

27  ───────────────

[13] This would include applications involving addresses in the NETBLOCK PROPERTY
28  not presently in use, as well as the reallocation of currently assigned addresses to other
    purposes.

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

1   foreign counsel and investigators to avoid service of process and warrants, and as

2   leverage against the NETBLOCK PROPERTY's downstream resellers and users to force

3   and encourage them to resist Plaintiff KREMEN's attempts to obtain and transfer control

4   of those interests pursuant to the judgments entered in his favor.

5       79.    Not only has this knowing enablement and funding of COHEN's wrongful

6   evasion of justice extended and exacerbated the denial of Plaintiff's various rights

7   awarded, but it has forced Plaintiff KREMEN to incur substantial legal and other costs

8   and fees in his effort to counter this wrongful advantage to COHEN that he otherwise

9   would not have been forced to incur.

10  **C. Substantially Interfering with Plaintiff's Constructive Trust on Assets**

11      **Utilizing NETBLOCK PROPERTY.**

12      80.    The order directing transfer of the NETBLOCK PROPERTY to Plaintiff

13  KREMEN was issued pursuant to the April 2001 judgment for KREMEN imposing a

14  constructive trust on the assets of COHEN, his alter egos, affiliates and successors.[14]

15  This included, amongst other interests, ISP operations located in Mexico.  Prior to the

16  2001 judgment against him, COHEN had established these alter ego operations

17  specifically to exploit the value of the NETBLOCK PROPERTY, deriving revenues by

18  using them for the contractual resale of Internet services and Internet access to

19  businesses and end users.

20      81.    While these operations were subject to the constructive trust established

21  by Plaintiff KREMEN's April 2001 judgment, by nature of their operation, the only direct

22  control and effect that could be had over these operations was by controlling the

23  registrations of the NETBLOCK PROPERTY upon which those operations were based.

24  As long as KREMEN does not hold the registrations, and as long as they remain

25  registered to COHEN and his alter egos, KREMEN was and remains unable to take

26  control of or in any way affect those operations and their utilization of the NETBLOCK

27  PROPERTY to which Plaintiff is legally entitled.  KREMEN is not only prevented from

28  [14] NETBLOCK ORDER, p. 2.

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

1    terminating and reallocating those NETBLOCK PROPERTY assignments, but has been

2    and is forced to negotiate and capitulate to those alter egos of COHEN which have been

3    to this day able to continue their operations.

4         82.    Apart from being forced to do business with COHEN's fraudulent cohorts,

5    Plaintiff's adverse impositions include his inability to terminate service agreements,

6    contractual terms of resale far below a fair market value, and having to forgo nearly all of

7    the rights and privileges normally enjoyed by the actual possession of, rather than an

8    unrecognized claim to, the NETBLOCK PROPERTY. In this way, ARIN's refusal to

9    change and knowingly maintaining COHEN's registrations to the NETBLOCK

10   PROPERTY cause Plaintiff KREMEN to incur damages in the form of lost revenue

11   opportunity, onerous and unfair contractual obligations, and the forced deference to

12   COHEN's agents and interests.

13   **D. Devaluation of the NETBLOCK PROPERTY and its Market**

14        83.    As has been stated, since the time of ARIN's initial refusal to transfer

15   control of KREMEN's NETBLOCK PROPERTY in 2001, COHEN and his various alter

16   egos and successors in interest have retained their control and use of the NETBLOCK

17   PROPERTY. This use has included, amongst others, COHEN's leasing of the

18   addresses of NETBLOCK PROPERTY to downstream ISPs and end users, and their

19   use in connection with online marketing and advertising of COHEN's unlawful online

20   interests. As a direct result, the NETBLOCK PROPERTY has during that time been

21   devalued by the disreputable association with COHEN's illicit activity. Additionally, the

22   addresses of the NETBLOCK PROPERTY during that time were flagged as a source of

23   "SPAM" or unsolicited or unlawful advertising and traffic by such industry organizations

24   such as Spamhaus, damaging the value of the NETBLOCK PROPERTY for any

25   subsequent use in online marketing and advertising.

26

27

28

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

## VI. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**Agreement in Restraint of Trade Under Section 1 of the Sherman Act (15 U.S.C. §1)**

84.    Plaintiff repeats and incorporates by reference the allegations set forth above as if fully set forth herein.

85.    For the purposes of this claim, the relevant product market is the market for IP addresses.  The relevant geographic scope of this market is the list of countries detailed in paragraph 9, *supra*.

86.    ARIN, its individual officers and directors, and its constituent members have agreed together and with ARIN's supporting organizations to restrain trade and competition in each of the relevant markets in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, with the intent to harm and restrict competition.

87.    This agreement and its anticompetitive effects have harmed, and unless enjoined, will continue to harm the efficient allocation of Internet addresses as a resource, and diminish the quality of and raise the price of such resources above competitive levels, in restraint of trade in interstate commerce.

88.    The specific wrongful acts of ARIN have not been expressly or impliedly authorized or directed by the Department of Commerce or any other agency of the United States Government, nor have these specific acts been the subject of active supervision by any agency of the United States Government.

89.    The agreements alleged have no legitimate efficiency benefits to counterbalance the demonstrated anticompetitive effects.

90.    The agreements of ARIN and its membership in restraint of trade in the relevant markets has had, and unless enjoined will continue to have, the effect of harming the competitive process in interstate commerce.

91.    By reason of these agreements and their anticompetitive effects, ARIN has caused, and unless enjoined will continue to cause, injury to the business and property

COMPLAINT

1  of Plaintiff KREMEN and to the businesses of a multitude of small competitors to ARIN's

2  membership.

3      92.    Plaintiff is without adequate remedy at law.

4  **SECOND CLAIM FOR RELIEF**

5  **Conspiracy to Restrain Trade Under Section 1 of the Sherman Act (15 U.S.C. § 1)**

6      93.    Plaintiff repeats and incorporates by reference the allegations set forth

7  above as if fully set forth herein.

8      94.    For the purposes of this claim, the relevant product market is the market

9  for Internet Protocol addresses. The relevant geographic scope of this market is the list

10  countries detailed in paragraph 9, *supra*.

11      95.    ARIN, its individual officers and directors, and its constituent members

12  have conspired together and with ARIN's supporting organizations to restrain trade and

13  competition in each of these relevant markets in violation of Section 1 of the Sherman

14  Act, 15 U.S.C. § 1, with the intent to harm and restrict competition.

15      96.    This conspiracy and its anticompetitive effects have harmed and unless

16  enjoined will continue to harm the efficient allocation of IP addresses as a resource, and

17  diminish the quality of and raise the price of such resources above competitive levels.

18      97.    The specific wrongful acts of ARIN have not been expressly or impliedly

19  authorized or directed by the Department of Commerce or any other agency of the

20  United States Government, nor have these specific acts been the subject of active

21  supervision by any agency of the United States Government.

22      98.    The conspiracy of ARIN and its membership to restrain trade in the

23  relevant markets has had, and unless enjoined will continue to have, the effect of

24  harming the competitive process in interstate commerce.

25      99.    By reason of this conspiracy and its anticompetitive effects, ARIN has

26  caused, and unless enjoined will continue to cause, injury to the business and property

27  of Plaintiff KREMEN and to the businesses of a multitude of small competitors to ARIN's

28  membership.

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

**COMPLAINT**

1  100. Plaintiff is without adequate remedy at law.

2         **THIRD CLAIM FOR RELIEF**

3  **Monopoly in Violation of Section 2 of the Sherman Act, 15 U.S.C. §2**

4  101. Plaintiff incorporates by reference all of the allegations of this Complaint as

5 though fully set forth herein.

6  102. For the purposes of this claim, the relevant product market is the market

7 for IP addresses. The relevant geographic scope of this market is the list countries

8 detailed in paragraph 9, *supra*.

9  103. By way of its agreements with its supporting organizations, with and

10 amongst its own members, directors and officers, and by its own policies and operations

11 in statement and in practice, ARIN has willfully, unlawfully and permanently obtained an

12 exclusive monopoly in the market of IP addresses though the acts set forth above, in the

13 market indicated, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

14  104. By way of its agreements with ICANN, ICANN's constituent members, and

15 amongst its own members, and by its own policies and operations, ARIN is permitted to

16 exploit its monopoly power to control and restrict the allocation, assignment, use, and

17 retention of IP addresses, including of those in direct competition with the shared

18 economic interests of the controlling contingent of the ARIN Board of Directors and its

19 constituent members.

20  105. ARIN intends by its actions to:

21    a. control the allocation and use of IP addresses;

22    b. eliminate, reduce, limit and foreclose actual and potential

23     competition with the shared economic interests of the controlling

24     majority of ARIN's Board and of its constituent members;

25    c. exclude and foreclose other persons in competition with ARIN's

26     Board and constituent members from participating in or entering

27     said market;

28    d. injure and eliminate competition in said market; and

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

28

COMPLAINT

e. leverage its monopoly power into control over Internet service provisioning.

106. By way of these acts, ARIN exploits its monopoly power to control the market for IP addresses, and the entry and maintenance of businesses in that market, with the intent to and effect of harming trade in interstate commerce.

107. By way of such acts and their anticompetitive effects, ARIN has caused, and unless enjoined will continue to cause, injury to the business and property of Plaintiff KREMEN and to the businesses of a multitude of small competitors to ARIN's membership.

108. Plaintiff is entitled to a preliminary and permanent injunction restraining ARIN from continuing to violate Section 2 of the Sherman Act, 15 U.S.C. §2 as alleged above.

109. Plaintiff is without adequate remedy at law.

### FOURTH CLAIM FOR RELIEF

### Attempted Monopoly in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2

110. Plaintiff incorporates by reference all of the allegations of this Complaint as though fully set forth herein.

111. Defendant ARIN has attempted the acts alleged in paragraphs 100 through 108 above in the Third Claim for Relief, with the intent to bring about the effects described therein.

112. By way of such acts and their anticompetitive effects, ARIN has caused, and unless enjoined will continue to cause, injury to the business and property of Plaintiff KREMEN and to the businesses of a multitude of small competitors to ARIN's membership.

113. Plaintiff is entitled to a preliminary and permanent injunction restraining ARIN from continuing to violate Section 2 of the Sherman Act, 15 U.S C. § 2 as alleged above.

114 Plaintiff is without adequate remedy at law.

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

1 | # FIFTH CLAIM FOR RELIEF

2 | ## Conspiracy and Acts in Restraint of Trade Under the Cartwright Act,

3 | ### Cal. Bus. & Prof. Code §§ 16700 et seq.

4 |     115.   Plaintiff repeats and incorporates by reference the allegations set forth

5 | above as if fully set forth herein.

6 |     116.   For the purposes of this claim, the relevant product market is the market

7 | for IP addresses.  The relevant geographic scope of this market is the list countries

8 | detailed in paragraph 9, *supra*.

9 |     117.   ARIN, its individual officers and directors, and its constituent members

10 | have acted and conspired together and with ARIN's supporting organizations to restrain

11 | trade and competition in each of the relevant markets in violation of the Cartwright Act,

12 | California Business & Professions Code §§ 16700 et. seq.

13 |     118.   The conspiracy of ARIN and its membership to restrain trade in the

14 | relevant markets has had, and unless enjoined will continue to have, the effect of

15 | harming the competitive process in California.

16 |     119.   If not enjoined, ARIN's restraint on trade will continue, with the result that

17 | the members of ARIN holding large NETBLOCKS will continue to maintain advantages

18 | in the marketplace, at the expense of a multitude of small competitors in California.

19 |     120.   Defendants' conspiracy to restrain trade in the relevant markets has had,

20 | and unless enjoined will continue to have, the effect of harming the competitive process

21 | in California.

22 |     121.   The conspiracy of ARIN has caused, and unless enjoined will continue to

23 | cause, injury to the business and property of Plaintiff KREMEN and to the businesses of

24 | a multitude of small competitors of ARIN's membership in California.

25 | ## SIXTH CLAIM FOR RELIEF

26 | ### Conversion

27 |     122.   Plaintiff repeats and incorporates by reference the allegations set forth

28 | above as if fully set forth herein.

COMPLAINT

123. Defendant ARIN's acts as alleged above constitute conversion, in that::

124. Plaintiff is, and at all times relevant herein was, the owner of or entitled to immediately possess the NETBLOCK PROPERTY;

125. Culminating in its final refusal in 2005 to comply with the Court's April 2001 NETBLOCK ORDER, Defendant ARIN has deprived or denied Plaintiff of his right to possession and use of the NETBLOCK PROPERTY, through, but not limited to, refusing to transfer such property to Plaintiff in accordance with the order of federal Court, by consenting to such transfer only upon Plaintiff's acceptance of restrictive, invasive, and other conditions that would negate Plaintiff's property interests in such NETBLOCK PROPERTY, and by depriving Plaintiff of the benefits and incomes that flow from the possession and use of such NETBLOCKS and their related rights and resources.

126. Defendant knew of Plaintiff's ownership interest in the NETBLOCK PROPERTY at the time they received notice of the NETBLOCK ORDER in 2001, and by allowing COHEN to maintain control of the NETBLOCK PROPERTY after the NETBLOCK ORDER, ARIN allowed COHEN to profit unlawfully from the NETBLOCK PROPERTY and to apply the benefits of ownership of the NETBLOCK PROPERTY to the purposeful detriment of KREMEN, and led to the unjust enrichment of Defendant to the detriment of the Plaintiff.

127. As a direct and proximate result of Defendant's acts, Plaintiff has suffered, and will continue to suffer, damages and irreparable harm.

128. Plaintiff is entitled to a constructive trust or equitable lien on the converted property, and to a tracing thereof.

129. Plaintiff is entitled to the specific recovery of the converted property, or the value thereof.

130. Defendant has engaged in conduct of an intentional, oppressive, fraudulent, and malicious nature, thereby entitling Plaintiffs to an award of punitive damages.

131. Plaintiff has no adequate remedy at law.

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

## SEVENTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

132.   Plaintiff repeats and incorporates by reference the allegations set forth above as if fully set forth herein.

133.   Defendant's actions as described above are a breach of its fiduciary duties to Plaintiff, in that:

134.   Defendant ARIN owed a fiduciary duty of care and loyalty and fair dealing to Plaintiff and others similarly situated, by way of ARIN's contract with ICANN which charged Defendant ARIN with the obligation of the rightful and fair allocation of resources entrusted to it pursuant to that contract, for the benefit of Plaintiff and others;

135.   Defendant ARIN breached this fiduciary duty when it refused to transfer the NETBLOCK PROPERTY to Plaintiff, as required by a federal court order, in contradiction to ARIN's charged duty, pursuant to the benefit of the shared economic interests of those competitors of Plaintiff in control of the ARIN Board and within ARIN's membership.

136.   Defendant ARIN further breached its fiduciary duty in its conversion of Plaintiff's property entrusted to it as alleged in paragraphs 121 through 131 above.

137.   As a proximate result of the foregoing acts of Defendant, Plaintiff has suffered and will continue to suffer damages, and Defendant is liable to Plaintiff in an amount to be proven at trial.

138.   Defendant has engaged in conduct of an intentional, oppressive, fraudulent, and malicious nature, thereby entitling Plaintiff to an award of punitive damages. This includes but is not limited to ARIN's ignoring of a standing court order.

139.   Plaintiff has no adequate remedy at law.

140.   ARIN's breaches of its fiduciary duty included the misappropriation of property that belongs to Plaintiff. Accordingly, the Court should impose a constructive trust to return said property and all of the proceeds thereof to Plaintiff and order ARIN to make an accounting for all such things and amounts.

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

# EIGHTH CLAIM FOR RELIEF

## Unfair Competition Under Cal. Bus. & Prof. Code §§ 17200 et seq.

141.  Plaintiff repeats and incorporates by reference the allegations set forth above as if fully set forth herein.

142.  By the acts described above, Defendant has engaged in unlawful and enjoinable unfair business practices, with the direct and proximate result of causing past and continuing injury to Plaintiff.

143.  Defendant's acts of unfair competition are in violation of California Business and Professions Code §§ 17200, 17203 et seq., in that, as a non-exhaustive list of examples, Defendant's acts as described above constitute:

a.    An agreement in restraint of trade under Section 1 of the Sherman Act, as alleged in the First Claim for Relief at paragraphs 83 through 91;

b.    Conspiracy to restrain trade under Section 1 of the Sherman Act, as alleged in the Second Claim for Relief at paragraphs 92 through 99;

c.    Monopoly in violation of Section 2 of the Sherman Act, as alleged in the Third Claim for Relief at paragraphs 100 through 108;

d.    Attempted monopoly in violation of Section 2 of the Sherman Act, as alleged in the Fourth Claim for Relief at paragraphs 109 through 113;

e.    Conspiracy and acts in restraint of trade under the Cartwright Act, as alleged in the Fifth Claim for Relief at paragraphs 114 through 120;

f.    Wrongful conversion of the NETBLOCK PROPERTY as alleged in the Sixth Claim for Relief at paragraphs 121 through 131;

g.    Breach of fiduciary duty as alleged in the Seventh Claim for Relief at paragraphs 132 through 140;

144.  Defendant has engaged in conduct of an oppressive, fraudulent, vexatious, and malicious nature, thereby entitling Plaintiff to an award of punitive damages.

145.  As a direct result of the foregoing acts and practices, Plaintiff has suffered, and will continue to suffer, damages and irreparable harm.

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

1    146.    Pursuant to California Business and Professions Code § 17203, Plaintiff is

2  accordingly entitled to equitable relief in the form of restitution of all benefits acquired by

3  Defendant from Plaintiff as a result of Defendant's unlawful, unfair business practices.

4    147.    Unless restrained and enjoined, Defendant will continue the above-

5  described acts, all to Plaintiff's irreparable injury.  It would be difficult to ascertain the

6  amount of compensation which could afford Plaintiff adequate relief for such continuing

7  acts, and a multiplicity of judicial proceedings would be required. Plaintiff therefore has

8  no adequate remedy at law.

9  ///

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.Kronenbergerlaw.com

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment in its favor on each and every claim set forth above, and further prays an award to Plaintiff of:

1.      For a declaration that the ARIN Service Agreement is unlawful and in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2; the Cartwright Act, California Business & Professions Code sections 16720 et seq.; and the California Unfair Competition Act, California Business & Professions Code sections 17200 et seq;

2.      That the Court adjudge and decree that ARIN has monopolized the interstate trade and commerce in the relevant markets in violation of Section 2 of the Sherman Act, 15 U.S.C. §2;

3.      That the Court adjudge and decree that ARIN has attempted to monopolize the interstate trade and commerce in the relevant markets in violation of Section 2 of the Sherman Act, 15 U.S.C. §2;

4.      That the Court adjudge and decree that ARIN has combined and conspired to restrain the interstate trade and commerce in the relevant markets in violation of Section 1 of the Sherman Act, 15 U.S.C. §1;

5.      That the Court adjudge and decree that ARIN has combined and conspired to restrain trade, and to have formed a trust, in violation of the Cartwright Act, California Business & Professions Code §§ 16720 et seq.;

6.      That the Court adjudge and decree that ARIN has engaged in unfair, unlawful, and fraudulent conduct in violation of the California Unfair Competition Act, California Business & Professions Code §§ 17200 et seq.;

7.      That ARIN be ordered to enable and facilitate the entry and operation of competing participants in the market of IP Address and related resource allocation and maintenance in its registry;

8.      That Defendant and all persons, firms, and corporations acting on their behalf and under their direction or control be permanently enjoined from engaging in, carrying out, renewing or attempting to engage, carry out, or renew, any contracts,

COMPLAINT

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.Kronenbergerlaw.com

1   agreements, practices, or understandings in violation of the Sherman Act, the Lanham

2   Act, the Cartwright Act, or the Unfair Competition Act, including:

3      a.  That ARIN be prohibited from collecting and disclosing such details regarding

4          allocation applicants as it currently requires;

5      b.  That ARIN be prohibited from collecting and publishing the personal and

6          confidential business contact information it currently collects from allocation

7          applicants;

8      c.  That ARIN be prohibited from any act or agreement that would limit the

9          alienability, transfer, or full possession and disposition of any IP Address or IP

10         Address space allocation;

11     9.    An order that each and every current and prospective board member and

12   committee member and officer of ARIN be required to submit and make publicly

13   available detailed reports disclosing all past and existing financial and professional

14   interests and affiliations;

15     10.   That KREMEN and other third parties who shall have been or might be

16   injured in their business or property as a result of any violation by ARIN of any of the

17   claims asserted herein under Federal or State antitrust or unfair competition laws be

18   specifically authorized to enforce the provisions of any order thereon in this Court;

19     11.   That ARIN be ordered and required to comply with the precise terms of this

20   Court's April 7, 2001 NETBLOCK ORDER, transferring the NETBLOCK PROPERTY to

21   Plaintiff KREMEN exactly as directed therein, and that such transfer of registrations to

22   KREMEN not be subject to or conditioned upon KREMEN's submission of any report,

23   disclosure, plan statement, business projections, or upon KREMEN's agreement to be

24   bound by any terms of ARIN that would allow ARIN to diminish or terminate such

25   registrations or allocations in any way;

26     12.   Compensatory damages in an amount according to proof, but not less than

27   $15 million;

28

COMPLAINT

1    13.    Punitive and exemplary damages in an amount to be determined, but in no

2    case less than treble Plaintiff's damages or $45 million, whichever is greater;

3    14    That Plaintiff have such other relief as the Court may consider necessary

4    or appropriate to restore competitive conditions in the markets affected by defendants'

5    unlawful conduct; and

6    15.    That plaintiff recover the costs of this action;

7    16.    That Plaintiff be awarded reasonable attorneys fees;

8    17    That Plaintiff be awarded prejudgment interest; and

9    18    Such other further relief to which Plaintiff may be entitled as a matter of law

10    or equity, or which the Court determines to be just and proper.

11

12    DATED: April 12, 2006.

13                                    KRONENBERGER HANLEY, LLP

14

15                            By:

16                                    Terri R. Hanley
                                     Karl S. Kronenberger
17                                    Attorneys for Plaintiff Gary Kremen

18                            DEMAND FOR JURY TRIAL

19    Plaintiff KREMEN hereby demands a trial of this action by jury.

20

21    DATED: April 12, 2006

22                                    KRONENBERGER HANLEY, LLP

23

24                            By:

25                                    Terri R. Hanley
                                     Karl S. Kronenberger
26                                    Attorneys for Plaintiff Gary Kremen

27

28

KRONENBERGER HANLEY, LLP
220 Montgomery Street, Suite 1920
San Francisco, CA 94104
www.KronenbergerLaw.com

37                                                    COMPLAINT

**EXHIBIT A**

1  JAMES M. WAGSTAFFE, ESQ. #95535
   PAMELA URUETA, ESQ., #184579
2  KERR & WAGSTAFFE LLP
   100 Spear Street, Suite 1800
3  San Francisco, CA 94105
   Telephone: (415) 371-8500
4  Facsimile: (415) 371-0500

5  RICHARD J. IDELL, ESQ., #069033
   JENNIFER A. MARONE, ESQ., #208858
6  IDELL, BERMAN & SEITEL
   530 Bush Street, Suite 601
7  San Francisco, CA 94108
   Telephone: (415) 986-2400
8  Facsimile: (415) 392-9259

9  Attorneys for Plaintiff
   GARY KREMEN
10

11                 UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14

15 GARY KREMEN                    ) Case No.:  C 98 20718 JW PVT
                                  )
16         Plaintiff,             ) ORDER RE: REGISTRATION OF IP
                                  ) NUMBERS (NETBLOCKS) IN THE NAME
17    vs.                         ) OF JUDGMENT CREDITOR
                                  )
18 STEPHEN MICHAEL COHEN, et al.; ) Date: September 17, 2001
                                  )
19         Defendants.            ) Time: 3:00 p.m.
                                  )
20                                ) Place: Courtroom 8
                                  )        Honorable Judge James Ware
21 _____

22

23

24      Pursuant to the Application of Plaintiff, Gary Kremen, and as

25 based on the record before this Court, and good cause shown,

---
ORDER RE: REGISTRATION OF IP NUMBERS (NETBLOCKS) IN THE NAME OF JUDGMENT CREDITOR
1

1    IT IS HEREBY ORDERED that the IP Numbers identified as Exhibit

2   "A" to the Declaration of Gary Kremen on file herein be registered i

3   the name of Plaintiff Gary Kremen.  In furtherance of this Order,

4   AMERICAN REGISTRY OF INTERNET NUMBERS ("ARIN") is ORDERED to registe

5   IP Numbers on the list to Gary Kremen forthwith.  Specifically ARIN

6   is ordered to change the registration record of each of these IP

7   Numbers (netblocks) as follows:  all fields (registrant,

8   administration contact, etc.) shall be in the name of Gary Kremen,

9   listing his address as 2542 Third Street, San Francisco, CA 94107,

10  telephone number as (415) 217-5121; facsimile number as (415) 285-

11  7111; and E-mail as Gary@sex.com.

12  Dated: *September 12, 2001*        _James Ware_

13

14                                    Honorable Judge James Ware

15

16

17

18

19

20

21

22

23

24

25

ORDER RE: REGISTRATION OF IP NUMBERS (NETBLOCKS) IN THE NAME OF JUDGMENT CREDITOR -
2

1  JAMES M. WAGSTAFFE, ESQ. #95535
   PAMELA URUETA, ESQ., #184579
2  KERR & WAGSTAFFE LLP
   100 Spear Street, Suite 1800
3  San Francisco, CA 94105
   Telephone: (415) 371-8500
4  Facsimile: (415) 371-0500

5  RICHARD J. IDELL, ESQ., #069033
   JENNIFER A. MARONE, ESQ., #208858
6  IDELL, BERMAN & SEITEL
   530 Bush Street, Suite 601
7  San Francisco, CA 94108
   Telephone: (415) 986-2400
8  Facsimile: (415) 392-9259

9  Attorneys for Plaintiff
   GARY KREMEN

10          UNITED STATES DISTRICT COURT

11          NORTHERN DISTRICT OF CALIFORNIA

12               SAN JOSE DIVISION

13

14
   GARY KREMEN                    ) Case No.:  C 98 20718 JW PVT
15                                )
           Plaintiff,             ) EX PARTE APPLICATION FOR ORDER
16                                ) REQUIRING REGISTRATION OF IP
      vs.                         ) NUMBERS (NETBLOCKS) IN THE NAME
17                                ) OF JUDGMENT CREDITOR
   STEPHEN MICHAEL COHEN, et al., )
18                                ) Date: September 17, 2001
           Defendants.           )
19                                ) Time: 3:00 p.m.
                                  )
20                                ) Place: Courtroom 8
                                  )        Honorable Judge James Ware
21

22
        COMES NOW, Gary Kremen, and files this ex parte application for
23
   Order requiring registration of IP Numbers (netblocks) in the name of
24
   Gary Kremen which are now registered in the name of the judgment
25

   EX PARTE APPLICATION FOR ORDER REQUIRING REGISTRATION OF IP NUMBERS (NETBLOCKS) IN
                    THE NAME OF JUDGMENT CREDITOR - 1

ORIGINAL
FILED
SEP 1 8 2001
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ORIGINAL

1  debtors, Stephen Michael Cohen and his companies, their alter egos or

2  affiliates.

3      Attached to the Declaration of Gary Kremen as Exhibit "A" is a

4  list of IP Numbers (netblocks) under which Stephen Michael Cohen, his

5  companies, their alter egos or affiliates are doing business or have

6  been doing business.

7      As the Court is well aware, Gary Kremen obtained a judgment for

8  Sixty-Five Million Dollars ($65,000,000.00) and a judgment imposing a

9  constructive trust on assets of the judgment debtors.

10     By this ex parte motion, Gary Kremen seeks an order requiring

11 registration of these IP Numbers (netblocks) in the name of Mr.

12 Kremen. The registrant for these IP Numbers (netblocks) is the

13 American Registry of Internet Numbers ("ARIN").

14     This ex parte motion is based upon this Notice of Motion, the

15 Declaration of James M. Wagstaffe, the Declaration of Gary Kremen and

16 the exhibit thereto and such other and further matters as may come

17 before the Court on the hearing of this matter.

18

19 Dated: 9/17/01                      KERR & WAGSTAFFE LLP

20

21

22                          By: _____

23                              James Wagstaffe, Esq.
                                Attorneys for Plaintiff
                                GARY KREMEN

24

25

1  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION
   FOR ORDER REQUIRING REGISTRATION OF IP NUMBERS (NETBLOCKS) IN THE
2  NAME OF JUDGMENT CREDITOR

3      The Court may make such orders as are necessary and appropriate

4  in order to aid in the execution of its judgments.

5      Fed. Rule of Civ. Proc. Rule 69(a), 28 U.S.C.A.; Cal. Rule of

   Court Rule 303(a)(2).
6

7  DECLARATION OF JAMES M. WAGSTAFFE IN SUPPORT OF EX PARTE APPLICATION
   FOR ORDER REQUIRING REGISTRATION OF IP NUMBERS (NETBLOCKS) IN THE
8  NAME OF JUDGMENT CREDITOR

9      I, James M. Wagstaffe, do state as follows:

10     1.   I am an attorney at law, licensed to practice before all

11 the courts of the state of California.   I am a partner of the firm

12 Kerr & Wagstaffe.   That firm represents Gary Kremen in the above

   action.   All of the matters stated herein are of my own personal
13
   knowledge and if sworn in as a witness I could testify competently to
14
   the matters stated herein.
15
       2.   I am familiar with all the records and files in this
16
   action.
17
       3.   Attached as Exhibit "A" to the Declaration of Gary Kremen
18
   is a copy of certain IP Numbers (netblocks) that are currently
19
   registered to Stephen Michael Cohen, his companies, their alter egos
   or affiliates. These Internet IP Numbers (netblocks) are registered
20
   with American Registry of Internet Numbers ("ARIN").
21
       4.   Pursuant to the Court's judgment of April 3, 2001,
22
   Plaintiff, Gary Kremen, is entitled to the imposition of constructive
23
   trust on all assets of Stephen Michael Cohen and his companies.
24
       5.   It is respectfully submitted that the Court enter an order
25

1  requiring ARIN to register these IP Numbers (netblocks) listed on th

2  said Exhibit "A" to Gary Kremen.  As shown by the Declaration of Gar

3  Kremen, investigation and search has shown that these IP Numbers ar

4  currently in use by Cohen, his companies, their alter egos o

   affiliates.

5

6      I declare under penalty of perjury under the laws of the State

   of California that the foregoing is true and correct and that this

7

   declaration is executed on this ___17th___ day of _Septit___, 2001 at Sa

8

   Francisco, California.

9

10 Dated: __9/17/01__                    _James Wagstaffe_
                                         James M. Wagstaffe

11

12      DECLARATION OF GARY KREMEN IN SUPPORT OF EX PARTE APPLICATION FOR
        ORDER REQUIRING REGISTRATION OF IP NUMBERS (NETBLOCKS) IN THE NAME OF
13                          JUDGMENT CREDITOR

14      I, GARY KREMEN, do state as follows under penalty of perjury:

15      1.   I am the Plaintiff in the above action.  All of the matters

16 set forth in this declaration are of my own personal knowledge and if

17 sworn as a witness I can testify competently as to the matters stated

18 herein.

19      2.   IP Numbers are the actual numeric addresses linked to

20 domain names.  IP stands for internet protocol.  American Registry of

21 Internet Numbers ("ARIN") is a non-profit organization that allocates

22 IP Numbers to users.  Netnames are an English language phrase that

23 corresponds to a range of IP Numbers.  This is done because it is

24 easier to use an English pneumonic than a range of numbers.

25

   ---

   EX PARTE APPLICATION FOR ORDER REQUIRING REGISTRATION OF IP NUMBERS (NETBLOCKS) IN
                    THE NAME OF JUDGMENT CREDITOR - 4

1  Netblocks are the actual blocks of numbers.  Autonomous System

2  Numbers are numbers used by computer routers to optimize the flow of

3  IP traffic.  ARIN assigns such numbers as relates to computer

4  networks under common control.  Sand Man, a Cohen company, is one of

5  the supporters of ARIN who make voluntary donations to ARIN.

6      2.   I have reviewed Internet listings of net blocks and

7  autonomous system addresses currently in use by Steven Michael Cohen

8  and/or his companies, their alter egos or affiliates ("Cohen

9  Parties") and I have determined that the netblocks and autonomous

10  system names and numbers listed on Exhibit "A" attached hereto are

11  currently in use by Cohen Parties.  I made this determination by

12  analyzing prior Internet addresses, as to which this Court made a

13  prior order, to determine which IP Numbers (netblocks) and autonomous

14  system addresses were utilized for those addresses. I compared the

15  addresses for the registration of the netblocks and automomous system

16  numbers and determined in all cases that all were registered to

17  Cohen's address of P.O Box 433168, San Diego, California 92143 and

18  registered by Cohen himself, his companies, Cohen alter egos or

19  affiliates.

20      I declare under penalty of perjury that the foregoing is true

21  and correct and that this declaration was executed on the 17th day of

22  September, 2001, at San Francisco, California.

23  Dated:  9/17/2001

24                                      Gary Kremen

25

Exhibit "A"

Net Blocks:

Netname: PACNET-MX1
Netblock: 209.205.192.0 – 209.205.239.255
Maintainer: PCNT

    Pacnet, S.A. de C.V. (NETBLK-PACNET-MX1)
    P.O. Box 433168
    San Diego, CA 92143
    US

Coordinator:

    Pacnet, S.A. de C.V. (SCP1-ARIN) ip@pacnet.com.mx
    52 66 33 90 71

    Including but not limited to: NS1.PACNET.COM.MX 209.205.195.50 and
    NS2.PACNET.COM.MX 209.205.195.70

Netname: UU-208-214-46
Netblock: 208.214.46 0 – 208.214.47.255
Maintainer: SAND

    Sand Man International
    San Diego, CA 92101
    US

Coordinator:



    Cohen, Stephen Michael (SMC43-ARIN) steve@SEX.COM
    0115266 343480 (FAX) 0115266 343480

Netname: PACNET-MX
Netblock: 64.19.192.0- 64.19.239.255
Maintainer: SAND

    Sand Man International Limited S A. de C.V. (NET-PACNET-MX)
    P.O. Box 433168
    San Diego, CA 92143
    USA

Coordinator:

    de C.V., PACNET S A. (MM1338-ARIN) ip@pacnet com.mx

52 66 34 34 80 (FAX) 52 66 34 64 86

Autonomous System Numbers:

Autonomous System Name: PACNET-MX
Autonomous System Number: 20228

      Pacnet S.A. de C.V. (ASN-PACNET-MX)
      P.O. Box 433168
      San Diego, CA 92143
      US

Coordinator:

      de C.V. PACNET S.A. (MM 1838-ARIN) IP@pacnet.com.mx
      52 66 34 34 80 (FAX) 52 66 34 64 86

Autonomous System Name: SEXCOM
Autonomous System Number: 11083

      Ocean Fund International Ltd.
      Paseo De Los Heroes, #10105
      Piso 7th, Del Rio Tijuana
      Del Rio Tijuana
      Tijuana, Baja California CP 22320
      MX

Coordinator:



      Cohen, Stephen Michael (SMC4-ARIN)
      steve@omnitec.com
      0115266343480 (FAX) 0115266 346486