# EXHIBIT K

Dockets.Justia.com

1 │ MANATT, PHELPS & PHILLIPS, LLP
  │ STEPHEN M. RYAN (D.C. Bar No. 359099) (sryan@manatt.com)
2 │ One Metro Center
  │ 700 12th Street, N.W., Suite 1100
3 │ Washington, D.C. 20005
  │ Telephone: (202) 585-6500
4 │ Facsimile: (202) 585-6600

**ORIGINAL FILED**

OCT - 2 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

5 │ MANATT, PHELPS & PHILLIPS, LLP
  │ CHAD S. HUMMEL (CA Bar No. 139055) (chummel@manatt.com)
6 │ JACK S. YEH (CA Bar No. 174286)(jyeh@manatt.com)
  │ 11355 West Olympic Boulevard
7 │ Los Angeles, California 90064
  │ Telephone: (310) 312-4000
8 │ Facsimile: (310) 312-4224

9 │ MANATT, PHELPS & PHILLIPS, LLP
  │ CHRISTOPHER L. WANGER (CA Bar No. 164751) (cwanger@manatt.com)
10│ 1001 Page Mill Road, Building 2
  │ Palo Alto, CA 94304-1006
11│ Telephone: (650) 812-1300
  │ Facsimile: (650) 213-0260

12│
13│ *Attorneys for*
  │ AMERICAN REGISTRY FOR
  │ INTERNET NUMBERS, LTD.
14│

15│ UNITED STATES DISTRICT COURT

16│ NORTHERN DISTRICT OF CALIFORNIA

17│ SAN JOSE DIVISION

18│

19│ GARY KREMEN, an individual,            )   No. USDC Case No. C98 20718JW
                                          )
20│         Plaintiff,                     )   **SUPPLEMENTAL**
                                          )   **DECLARATION OF RAYMOND A. PLZAK**
21│    vs.                                 )   **IN SUPPORT OF MOTION TO CLARIFY/**
                                          )   **MODIFY**
22│ STEPHEN MICHAEL COHEN, et. al.,        )
                                          )   Action Filed: April 12, 2006
23│         Defendant.                     )
                                          )   Trial Date: NONE SET
24│                                        )
                                          )   Hearing Date: October 23, 2006
25│                                        )   Time:            9:00 a.m.
                                          )   Location:
26│ ─────────────────────────────         )   Judge:           The Honorable James Ware

27│

28│

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
WASHINGTON, DC

**ARIN adv. Gary Kremen**
(22149-060)

| C. Wanger | J. Yeh (LA) |
| S. Ryan (DC) | D. Wishon +3 |
| C. Hummel (LA) | Client (SMR - DC) |

1.     I am the President and Chief Executive Officer of the American Registry for Internet Numbers (ARIN). On June 27, 2006 I filed a previous Declaration in this matter. I have reviewed the recent pleadings and affidavits submitted by Mr. Kremen.

2.     Mr. Kremen's attorney, Mr. Idell, in his Affidavit at paragraph 11, states in part: "Kremen would not agree to any greater obligations than those to which Cohen was subject, and it was always clear to ARIN that Kremen was not going to agree to any greater obligations than those to which Cohen was subject." (*Emphasis added.*) I believe this statement by Mr. Idell is totally inconsistent with every position Mr. Kremen and his attorney have taken in every prior communication with ARIN and this Court before filing this pleading. Mr. Kremen's consistent position is that he expected ARIN to provide all of the rights of utilizing the IP resources in the Netblock -- but he has never been willing to accept any of the obligations that went with the Netblock. Specifically, Mr. Kremen indicated he would never agree to fill out the application to obtain resources, nor take the corollary step of signing the Registration Service Agreement (RSA) required of every entity or person to whom IP resources are issued. I cannot recall a single communication, either oral or in writing, where Mr. Kremen or his attorney have previously indicated Mr. Kremen would accept any obligation to that accompanies the benefits of the Netblock. Absent signing an RSA, and unlike every other person or entity who has ever received resources from ARIN, Mr. Kremen's position has always been clearly stated: Mr. Kremen would make no agreement to pay the routine cost of the services in the future; he would not agree to being subject to a contractual right of ARIN to terminate the services if he deliberately misused them or commits a crime using them; and in summary Mr. Kremen simply wanted ARIN to transfer to him the resources and go away.

3.     In response, I again reiterate ARIN's consistent position, which I also described in my prior Declaration. ARIN will immediately transfer beneficial control of the Netblock

1    resources as described in paragraph 42 of my prior Declaration to Mr. Kremen upon his signature

2    of an RSA.  It is ARIN's business practice and custom that no IP resource is distributed by ARIN

3    unless an RSA is in place governing that resource.  If, among other things, the applicant fails to

4    pay the annual fee associated with the IP resources provided, or, for example, misuses the

5    resources to commit a crime, that IP resource will be revoked by ARIN to be recycled and

6    redistributed in a manner consistent with ARIN's established policies and procedures.  As such,

7    

8    all IP resources issued by ARIN need to be specifically associated with an RSA.

9           4.        To make this procedure even easier and to relieve Mr. Kremen of the duty to do

10   anything but sign, ARIN is willing to provide a substitute ASN for the one now controlled by the

11   agreements in LACNIC's territory.  Further, I have attached to this Declaration Exhibit 1, an RSA

12   Mr. Kremen can sign today, that is identical to the RSAs upon which govern the resources that

13   were given.  The RSAs governing those resources in the Court's Order of 2001 are attached as

14   

15   Exhibit 2. Specifically, pages Bates stamped K5614-15 pertains to Blocks 1 and 4 as described in

16   paragraphs 14 and 42(a) of my prior Declaration. K 5654-56 pertain to two sets of IP numbers

17   which I labeled as Block 3 in paragraphs 12 and 42(c) of my prior Declaration. K5621-22 pertains

18   to ASN 11083, which I labeled Block 5 in paragraph 42(d) of my prior Declaration. There is no

19   RSA for Block 2.  After they signed these RSA's the IP resources were provided to them. Mr.

20   Kremen complains that these RSA's don't specifically contain language indicating the resources

21   in question are inextricably linked to these RSA's.  ARIN's files contain numerous documents

22   

23   which prove this link and I am attesting that these RSA's are the ones that pertain to these

24   resources.

25          5.        The newly proposed RSA, Version 2, satisfies Mr. Kremen's claim he is willing to

26   accept the "same obligations" as those who currently have the right to the resources absent the

27   Court's Order.  I further offer that ARIN is equally willing to provide Mr. Kremen the alternative

28

opportunity to sign the RSA in effect when the Court issued the *ex parte* Order on October 29, 2001 (RSA 3) (see Exhibit 3), or RSA 9 (see Exhibit 4), which is the RSA currently in effect for resources issued today. Each RSA simply represents a snapshot in time as to what ARIN's agreement contained. The RSA becomes more sophisticated over time as operational problems or changes in statute, case law or ARIN policy occurs. From a financial aspect, there would be no difference in Mr. Kremen's financial obligations if he signs RSA 2, 3 or 9. The annual fee for the services once he assumes control would be the same. Those future annual fees are minimal, but symbolic of Mr. Kremen undertaking to accept the obligations as well as the rights to the resources.

6.      If Mr. Kremen's attorney's Affidavit statement that Mr. Kremen is <u>willing</u> to assume the <u>same</u> <u>obligations</u> were made in good faith, there is absolutely no basis for him to continue this aspect of the dispute. Mr. Kremen should immediately sign RSA Version 2, 3 or 9, as he chooses, and this would immediately resolve nine-tenths of this matter, satisfactorily according to one under oath statement by Mr. Kremen's lawyer. ARIN respectfully accepts Mr. Kremen's offer to now do what he has absolutely refused to do over the past few years.

7.      Despite Counsel Idell's claim Mr. Kremen would accept the same obligations as those who originally obtained the Netblock resources, Mr. Kremen's pleadings continue to demonstrate he is actually unwilling to do so. For example, Mr. Kremen's Opposition to the Motion Clarification, or, in the Alternative, for Modification of the Order, states at page 18, lines 11-13, "Regardless of what ARIN's standard procedures and terms and conditions are for new accounts or transfers of old accounts, neither apply here." At line 27 on the same page, Mr. Kremen's pleading further states: "As noted above, there is no legal requirement that Kremen fill out an ARIN application (subject to ARIN's approval) in order to receive the Netblocks and ASN's." Therefore, I respectfully suggest this Court will have to make clear by amending its

1    prior Order that Mr. Kremen **must** sign the RSA of his choice so he can have both the rights and

2    the same obligations related to the Netblocks.

3                                    **LACNIC Issues**

4        8.    Mr. Kremen and his attorney have indignantly claimed ARIN acted improperly

5    when it transferred administrative control of one portion of the Netblock, an ASN, to the Latin

6    American and Caribbean Internet Addresses Registry ("LACNIC"). Their indignation is

7    compounded by a significant error of fact. On page 3 of Mr. Kremen's most recent filing, entitled

8

9    Plaintiff's Consolidated Supplemental Opposition to ARIN's Motion for Clarification or to

10   Modify, it states: "Even more audacious than this was ARIN's February 17, 2004 transfer of

11   control of some of the NETBLOCK PROPERTY subject to the September 2001 Order to an

12   offshore entity, over which the Court does not have jurisdiction." This is totally incorrect on a

13   series of levels. In July, 2002 when administrative control of the single ASN located in Mexico

14   was transferred to LACNIC along with every other IP resource in Mexico, I was not aware of any

15

16   reason to withhold this ASN from such a transfer. I previously addressed the issues related to

17   ASN11083, which I described as Block 5 of the Netblock, in ¶ 42(d) at page 15.

18       9.    Let me describe why ARIN's actions in this regard were totally appropriate. First,

19   in 2002, not 2004, ARIN transferred administrative control over all resources and services

20   provided to persons or entities in Mexico, Central America and South America to the new

21   organization LACNIC, which performs the same services as ARIN. This particular ASN is in

22

23   Mexico. (In 2005, ARIN made a similar transfer of all African-based resources previously

24   controlled by ARIN to the African Network Information Centre) ("AfriNIC"). The ARIN policy

25   process directed that such transfers to the two new registries should occur. These transfers were

26   strongly supported by the U.S. government, particularly the U.S. Department of Commerce,

27   because it created continental-based registries operated and controlled by persons living on those

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
WASHINGTON, DC

5    SUPPLEMENTAL DECLARATION OF RAYMOND A. PLZAK

1  continents. It was unwise and counter-productive for the United States government or ARIN to

2  continue a policy of controlling African, Mexican and South American operations from Chantilly,

3  Virginia.

4      10.    As I indicated in paragraphs 2 and 3 of my earlier Declaration, Mr. Kremen did not

5  serve ARIN with a copy of the Court's 2001 Order until December, 2003. Had Mr. Kremen

6  actually engaged with ARIN on these issues in a meaningful way instead of waiting until

7  December, 2003, it would have been possible to not transfer the single ASN that is now under

8  LACNIC's administrative control from being transferred. However, according to policy

9  decisions, all resources issued to Mexican entities were transferred in July, 2002.

10

11      11.    Despite the fact that Mr. Kremen's own inaction led to the transfer, ARIN is able

12  and willing to issue a new ASN to replace this one or, alternatively, ARIN will provide any

13  assistance it can offer the Court in contacting LACNIC, which is headquartered in Montevideo,

14  Uruguay, and urging LACNIC to cooperate with any Order or request this Court may

15  subsequently issue. I have not contacted LACNIC about this particular issue.

16

17      12.    Based on my limited knowledge of how LACNIC's procedures work, and they are

18  necessarily similar to ARIN since they began to from a common process, Mr. Kremen will be

19  required to sign LACNIC's equivalent of the ARIN RSA to obtain this particular ASN. Since

20  Mr. Kremen has and continues to refuse to sign ARIN's RSA, signing a LACNIC equivalent also

21  requires him to accept the obligations, as well as rights, if he wishes to obtain either a new ASN

22  from ARIN, or the original ASN. Therefore, ARIN's offer would permit him a substitute RSA

23  without having to deal with two registries.

24

25      13.    Based on this record, it would be totally inequitable to find ARIN's transfers to

26  LACNIC as anything but reasonable. Mr. Kremen's recent efforts to enforce the Court's Order

27  simply had not begun when the LACNIC transfer occurred.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
WASHINGTON, DC

6  SUPPLEMENTAL DECLARATION OF RAYMOND A. PLZAK

**The UUNET Resources**

14.    In my first Declaration, I carefully described why some resources in the Netblock were never within ARIN's control because they were issued before ARIN began its corporate existence. This relates specifically to the UUNET resources I described in paragraph 13 on page 5 of my prior Declaration, and referred to again in summary in paragraph 42(b) on page 15. In response, Mr. Kremen's papers claim ARIN should "take the steps necessary to gain control of, or return to ARIN's control, any Netblocks it claims are beyond its control..." See Plaintiff's Opposition at 8. Mr. Kremen can never admit the obvious--that if he wants this particular Netblock he should have proceeded against UUNET. Nor does Mr. Kremen describe how ARIN should accomplish the task he seeks to have the Court assign ARIN.

15.    ARIN has recently discovered that Mr. Kremen, like UUNET, already has use of a series of IP resources with identical capabilities to those he seeks in the 2001 Order, and that were issued to him prior to ARIN's beginning its operations. Mr. Kremen therefore is urging the Court to require ARIN to take some unspecified action against UUNET that he would totally resist if ARIN were to address it to Mr. Kremen's legacy address space. Mr. Kremen's possession of IP resources issued before ARIN began also demonstrates the hollowness of Mr. Kremen's claims of damage because he does not have the IP resources from the 2001 Order. The bottom line is that ARIN has no avenue to take action against UUNET under ARIN's policies to somehow compel UUNET to transfer these specific resources to Mr. Kremen. Mr. Kremen would object vociferously if ARIN attempted any action related to the two Class C legacy address blocks he possesses. The contact information available to ARIN indicates the Class C blocks controlled by Mr. Kremen are at these locations:

Skyline Ridge Partners
346 Costello Court
Los Altos, California  94024
Telephone:  415-284-5300 (Office)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
WASHINGTON, DC

7    SUPPLEMENTAL DECLARATION OF RAYMOND A. PLZAK

email: gkremen@netcom.com
Address Block: 192.160.241.0/24
Registration Date: 1992-06-15
Updated: 2003-07-08, Kremen made himself administrative and technical Point of Contact.

Online Classifieds, Inc.
242 Cole Street
San Francisco, CA 94117
Telephone: 415-284-5300 (Office)
email: gkremen@netcom.com
Address Block: 199.190.217.0/24
Registration Date: 1994-04-28
Updated: 1994-04-28)

## REVOKED RESOURCES

In my prior Declaration, at page 5, paragraph 12, I described how ARIN revoked resources from one of the Netblocks from Mr. Cohen or his associates. At page 15, paragraph 42(c), I further described ARIN's willingness to transfer this portion of the Netblock, which ARIN is holding, to Mr. Kremen when he executes an RSA. Despite this, Mr. Kremen now claims "ARIN usurped control and converted a subset of the Netblock...." Mr. Kremen did not receive control of this resource for one reason--because he failed to sign an RSA. When he signs it, ARIN can issue it to him. ARIN is holding the resource for this purpose. Mr. Kremen continually turns good deeds done to benefit him into claims against ARIN. The alternative for ARIN would have been to permit Mr. Cohen and his associates to continue controlling the resources instead of revoking it.

## CONCLUSION

16.    Mr. Kremen has cited other documents in this pleading that he claims illustrate some aspect of the case. I have reviewed these documents and researched them and could accurately describe them for the Court one by one, but none of them do anything but confirm facts already made clear, or attempt to create issues which are not important to addressing the 2001 Order. During ARIN's dealings with Mr. Kremen, he has continuously chosen imperious

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
WASHINGTON, DC

1  behavior and confrontation instead of cooperation.  Mr. Kremen complains that he didn't

2  understand the facts until recently, but he has only himself to blame, because people do not trust

3  and cannot cooperate with someone who is always turning events on their head.  In essence, Mr.

4  Kremen has sought to create a class of rights to IP resources for himself that no one else enjoys.  I

5  respectfully urge the Court to evaluate who has acted reasonably or unreasonably in this matter,

6  who has acted equitably, and who has sought non-equitable treatment.  ARIN is an innocent

7  bystander to Kremen's dispute with Cohen.  ARIN has actually taken Mr. Kremen's side by

8  refusing the right to transfer those resources by those who currently have valid RSA's with

9  ARIN. For its troubles, ARIN has been subject to a multi pronged legal attack by Mr. Kremen

10

11  because it has not acceded to his demands by violating ARIN's policies.  Therefore, I submit

12  specific guidance amending the 2001 Order is necessary to prevent Mr. Kremen's incessant

13  demand for special treatment, different from everyone else in the Internet community.

14        I declare under penalty of perjury under the laws of the United States that the foregoing is

15

16  true and correct.

17        Executed on October 2, 2006, at Amsterdam, The Netherlands.

18

19

20                                        RAYMOND A. PLZAK

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
WASHINGTON, DC

9   SUPPLEMENTAL DECLARATION OF RAYMOND A. PLZAK

## PROOF OF SERVICE

I, Donna L. Wishon, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 1001 Page Mill Road, Building 2, Palo Alto, CA 94304-1006. On October 2, 2006, I served the within documents:

**SUPPLEMENTAL DECLARATION OF RAYMOND A. PLZAK IN SUPPORT OF MOTION TO CLARIFY/MODIFY**

☒  by transmitting via e-mail the document(s) listed above to the e-mail addresses set forth below on this date before 5:00 p.m. (counsel for S. Cohen was not served electronically)

☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Palo Alto, California addressed as set forth below.

☐  by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

**Karl Kronenberger**
**Terri Hanley**
Kronenberger Hanley, LLP
220 Montgomery Street, Ste. 1920
San Francisco, CA 94104
Phone: (415) 955-1155
Fax: (415) 955-1159
Email: karl@kronenbergerlaw.com
      terri@kronenbergerlaw.com

**Ory Sandel**
**Patricia De Fonte**
**Richard Idell**
Idell & Seitel LLP
465 California Street, Ste. 300
San Francisco, CA 94104
Phone: (415) 986-2400
Fax: (415) 392-9259
Email: ory.sandel@ibslaw.com
      patricia.defonte@ibslaw.com
      richard.idell@ibslaw.com

**Timothy P. Dillon**
**Nadya Y. Spivack**
Dillon & Gerardi
4660 La Jolla Village Dr., Suite 775
San Diego, Ca 92122
Phone: (858) 587-1800
Email:
NSpivack@DillonGerardi.com

**John A. Goalwin**
350 So. Figueroa Street, Suite 499
Los Angeles, Ca 90071
Phone: (213) 202-7820
(attorney for S. Cohen)

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I

PROOF OF SERVICE

1    am aware that on motion of the party served, service is presumed invalid if postal cancellation
     date or postage meter date is more than one day after date of deposit for mailing in affidavit.

2

3         I declare that I am employed in the office of a member of the bar of this court at
     whose direction the service was made.

4         Executed on October 2, 2006.

5                                                         *Donna L. Wishon*
                                                          Donna L. Wishon

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2                                                         **PROOF OF SERVICE**

# EXHIBIT 1

**RSA Ver2**
**03/13/98**

## AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.
### REGISTRATION SERVICES AGREEMENT

This AGREEMENT is between the AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD. ("ARIN"), a Virginia non-profit organization, and its successors and assigns, and the **Applicant Company** ("**Company**"), and its successors and assigns.

     **1. INTRODUCTION. ARIN** is a regional Internet Registry serving North America, South America, the Caribbean, and parts of Africa and is responsible for the registration, administration, and conservation of Internet Protocol ("IP") address space in these geographic areas. **Company** wishes to apply to **ARIN** for registration services including an allocation of Internet Protocol ("IP") address space and/or assignment of autonomous system numbers. This Agreement shall be accepted at the offices of **ARIN**.

     **2. TERM.** Upon acceptance by **ARIN** this Agreement shall be effective for one year starting on the date the IP address space and/or the autonomous system numbers are initially electronically allocated and/or assigned by **ARIN** to **Company**. This Agreement shall be renewable on the anniversary date of the initial allocation and/or assignment and each year thereafter, subject to the then applicable terms and conditions established by **ARIN**, unless sooner terminated in accordance with the termination provisions of this Agreement.

        **3. FEES AND PAYMENTS. Company** agrees to pay a registration fee to **ARIN** as consideration for receiving an allocation of IP address space and/or an assignment of autonomous system numbers. **Company** agrees to pay the registration fee prior to receiving the requested allocation of IP address space and/or the assignment of autonomous system numbers. **Company** agrees to pay a renewal registration fee prior to the annual anniversary date on which this Agreement is to be renewed. **Company** agrees that if, for any reason, **Company** does not pay the renewal registration fee for IP address space and/or pay the renewal registration fee for autonomous system numbers this Agreement will not be renewed and the IP address space previously allocated and/or the autonomous system numbers previously assigned will be revoked by **ARIN**.

In the event that said **Company** has obtained the use of IP numbers and/or ASNs through acquisition of the assets of another organization and has obtained approval from **ARIN** for that transfer, the following fee arrangement shall prevail. If the ASNs and or IP addresses acquired were originally issued by ARIN, an appropriate transfer fee shall be assessed based upon then current policy. In addition, upon the anniversary date of the original allocation, the acquiring **Company** hereby agrees to pay to **ARIN** the appropriate annual renewal fee for that allocation.

If the IP addresses or ASNs acquired through the transfer process were not originally issued by **ARIN**, the **Company** agrees to pay the transfer fee currently in effect, but is exempt from the annual renewal fee until such time as the company requests an additional allocation from **ARIN**.

        **4. REGISTRATION SERVICES.** Registration services provided by **ARIN** to **Company** include, but are not limited to: allocation of IP address space, issuance of autonomous system numbers, inverse addressing on network blocks, maintenance of network records, and administration of IP address space. **ARIN** will evaluate **Company's** request for IP address space and/or autonomous system numbers based on **ARIN's** Internet Protocol Address Space Allocation and Assignment Guidelines, which are incorporated herein by reference and made a part of this Agreement. **Company** agrees that all requests for an allocation of IP address space and/or an assignment of autonomous system numbers, whether made under this Agreement

or any renewals of this Agreement must be in compliance with **ARIN's** Internet Protocol Address Space Allocation and Assignment Guidelines. If **Company** is an Internet Service Provider, **Company** agrees that IP addresses are to be used solely for their internal infrastructure or to further assign to its customer base for whom the Internet Service Provider is supplying internet access.

**5. INTERNET PROTOCOL ADDRESS SPACE ALLOCATION AND ASSIGNMENT GUIDELINES.** **Company** agrees, as a condition to submitting this Agreement, and if this Agreement is accepted by **ARIN**, to be bound by the terms of **ARIN's** Internet Protocol Address Space Allocation and Assignment Guidelines which are incorporated herein by reference and made a part of this Agreement and any renewals hereof. **Company** agrees that **ARIN** may, at any time, modify or amend its Internet Protocol Address Space Allocation and Assignment Guidelines and that such modifications or amendments shall be binding upon the **Company**.

**6. REVIEW OF COMPANY'S IP ADDRESS SPACE.** **Company** agrees that **ARIN** reserves the right to review, at any time, the utilization of previously allocated IP address space and/or assigned autonomous system numbers made to **Company** under this Agreement or under any renewals of this Agreement. **Company** agrees that if IP address space and/or autonomous system numbers are not being used for the purpose allocated and/or assigned, **ARIN** reserves the right to revoke the IP address space and/or autonomous system numbers not being used for the purpose allocated and/or assigned.

**7. COOPERATION.** **Company** agrees to provide **ARIN** with all information, assistance and cooperation which **ARIN** requests for its review of **Company's** utilization of allocated IP address space and/or assigned autonomous system numbers. **Company** agrees that failure to provide **ARIN** with all information, assistance and cooperation may result in the revocation of the current allocation of IP address space allocated and/or autonomous system numbers assigned or may adversely impact **Company's** future allocation of IP address space and/or assignment of autonomous system numbers.

**8. TERMINATION.** This Agreement or any renewal Agreement may be terminated:

- by **ARIN** if **Company** fails to pay the renewal annual registration fee when due or is in default of any other provision of this Agreement or of any renewal Agreement.

- by **Company** upon written notification to **ARIN** prior to any annual renewal date that **Company** does not wish to renew this Agreement.

**Company** agrees that in the event this Agreement or any renewed Agreement is, for any reason, terminated the IP address space allocated and/or the autonomous system numbers assigned by **ARIN** shall be revoked by **ARIN**.

**9. SEVERABILITY.** The terms and provisions of this Agreement are severable. If any term or provision is declared invalid, it shall not affect the remaining terms or provisions which shall continue to be binding.

**10. ENTIRE AGREEMENT.** **Company** agrees that this Agreement is the complete and exclusive Agreement between **ARIN** and **Company** regarding the subject matter hereof and that this Agreement supersedes all prior agreements or understandings between the parties whether established by custom, practice or precedent.

**11. GOVERNING LAW.** **Company** agrees that this Agreement shall be governed in all respects by and construed in accordance with the laws of the Commonwealth of Virginia, United States of America. By submitting this Agreement to for approval, **Company** consents to the exclusive jurisdiction and venue of the United States District Court for the Eastern District of Virginia, Alexandria Division. If there is no jurisdiction in the United States District Court for the Eastern District of Virginia, Alexandria Division, then jurisdiction shall be in the Circuit Court of Fairfax County, Fairfax, Virginia.

3

**AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.**          **COMPANY NAME**

by: _____                by: _____
ARIN Authorized Contracting Agent                      Authorized Contracting Agent

_Robert P. Stratton_____                   _Gary Kremen_____
Print Name                                     Print Name

September 29, 2006                             _____
Date                                           Date

# EXHIBIT 2

RSA Ver3
12/17/1999

## AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.
## REGISTRATION SERVICES AGREEMENT

This AGREEMENT is between the AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD. ("ARIN"), a Virginia non-profit organization, and its successors and assigns, and the **Applicant Company ("Company")**, and its successors and assigns.

**1. INTRODUCTION.** ARIN is a regional Internet Registry serving North America, South America, the Caribbean, and sub-Saharan Africa and is responsible for the registration, administration, and conservation of Internet Protocol ("IP") address space in these geographic areas. **Company** wishes to apply to ARIN for registration services including an allocation of Internet Protocol ("IP") address space and/or assignment of autonomous system numbers. This Agreement shall be accepted at the offices of ARIN.

**2. TERM.** Upon acceptance by ARIN this Agreement shall be effective for one year starting on the date the IP address space and/or the autonomous system numbers are initially electronically allocated and/or assigned by ARIN to Company. This Agreement shall be renewable on the anniversary date of the initial allocation and/or assignment and each year thereafter, subject to the then applicable terms and conditions established by ARIN, unless sooner terminated in accordance with the termination provisions of this Agreement.

**3. FEES AND PAYMENTS. Company** agrees to pay a registration fee to ARIN as consideration for receiving an allocation of IP address space and/or an assignment of autonomous system numbers. **Company** agrees to pay the registration fee prior to receiving the requested allocation of IP address space and/or the assignment of autonomous system numbers. **Company** agrees to pay a renewal registration fee prior to the annual anniversary date on which this Agreement is to be renewed. **Company** agrees that if, for any reason, **Company** does not pay the renewal registration fee for IP address space and/or pay the renewal registration fee for autonomous system numbers this Agreement will not be renewed and the IP address space previously allocated and/or the autonomous system numbers previously assigned will be revoked by ARIN.

**4. REGISTRATION SERVICES.** Registration services provided by ARIN to Company include, but are not limited to: allocation of IP address space, issuance of autonomous system numbers, inverse addressing on network blocks, maintenance of network records, and administration of IP address space. ARIN will evaluate **Company's** request for IP address space and/or autonomous system numbers based on ARIN's Internet Protocol address space allocation and assignment guidelines, which are incorporated herein by reference and made a part of this Agreement. **Company** agrees that all requests for an allocation of IP address space and/or an assignment of autonomous system numbers, whether made under this Agreement or any renewals of this Agreement must be in compliance with ARIN's Internet Protocol address space allocation and assignment guidelines as published on ARIN's web site. If **Company** is an Internet Service Provider, **Company** agrees that IP addresses are to be used solely for their internal infrastructure or to further assign to its customer base for whom the Internet Service Provider is supplying internet access.

**5. INTERNET PROTOCOL ADDRESS SPACE ALLOCATION AND ASSIGNMENT GUIDELINES. Company** agrees, as a condition to submitting this Agreement, and if this Agreement is accepted by ARIN, to be bound by the terms of ARIN's Internet Protocol address space allocation and assignment guidelines which are incorporated herein by reference and made a part of this Agreement and any renewals hereof. **Company** agrees that ARIN may, at any time, modify or amend its Internet Protocol address space allocation and assignment guidelines and that such modifications or amendments shall be binding upon the **Company**.

**6. REVIEW OF COMPANY'S IP ADDRESS SPACE. Company** agrees that ARIN reserves the right to review, at any time, the utilization of previously allocated IP address space and/or assigned autonomous system numbers made to **Company** under this Agreement or under any renewals of this Agreement. **Company** agrees that if IP address space and/or autonomous system numbers are not being

K5614

2

used for the purpose allocated and/or assigned, **ARIN** reserves the right to revoke the IP address space and/or autonomous system numbers not being used for the purpose allocated and/or assigned.

7.   **COOPERATION.**  **Company** agrees to provide **ARIN** with all information, assistance and cooperation which **ARIN** requests for its review of **Company's** utilization of allocated IP address space and/or assigned autonomous system numbers.  **Company** agrees that failure to provide **ARIN** with all information, assistance and cooperation may result in the revocation of the current IP address space allocated and/or autonomous system numbers assigned or may adversely impact **Company's** future allocation of IP address space and/or assignment of autonomous system numbers.

8.  **TERMINATION.**  This Agreement or any renewal Agreement may be terminated:

by **ARIN** if **Company** fails to pay the renewal annual registration fee when due or is in default of any other provision of this Agreement or of any renewal Agreement.

by **Company** upon written notification to **ARIN** prior to any annual renewal date that **Company** does not wish to renew this Agreement.

**Company** agrees that in the event this Agreement or any renewed Agreement is, for any reason, terminated, the IP address space allocated and/or the autonomous system numbers assigned by **ARIN** shall be revoked by **ARIN**.

9.   **SEVERABILITY.** The terms and provisions of this Agreement are severable. If any term or provision is declared invalid, it shall not affect the remaining terms or provisions which shall continue to be binding.

10.  **ENTIRE AGREEMENT.**  **Company** agrees that this Agreement is the complete and exclusive Agreement between **ARIN** and **Company** regarding the subject matter hereof and that this Agreement supersedes all prior agreements or understandings between the parties whether established by custom, practice or precedent.

11.  **GOVERNING LAW.** **Company** agrees that this Agreement shall be governed in all respects by and construed in accordance with the laws of the Commonwealth of Virginia, United States of America. By submitting this Agreement to ARIN for approval, **Company** consents to the exclusive jurisdiction and venue of the United States District Court for the Eastern District of Virginia, Alexandria Division.  If there is no jurisdiction in the United States District Court for the Eastern District of Virginia, Alexandria Division, then jurisdiction shall be in the Circuit Court of Fairfax County, Fairfax, Virginia.

AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.          COMPANY NAME

_Pacnet S.A. de C.V._

by: _____          by: _____
ARIN Authorized Contracting Agent                      Authorized Contracting Agent

**Robert P. Stratton**                                 _Marco Moran_

Print Name                                              Print Name

MAY 1 4 2001                                            _April 11, 2001_

_____                         _____
Date                                                    Date

K5615



About Arin    Registration Services    Whois    Minutes & Presentations
Routing Registry    Membership    Internet Governance    Library

*IPv4 Services*

*IPv6 Services*

*ASN Registrations*

*IP/ASN Transfers*

*Fee Schedule and*
*Billing Account Forms*

*General Registration*
*Information*

*IP Statistics*

The IP
Registration
Services Help
Desk is open from
8 a.m. to 7 p.m.,
Eastern Time to
assist you and may
be reached by
E-mail:
*hostmaster@arin.net*
Phone:
(703) 227-0660
Fax:
(703) 227-0676

# American Registry for Internet Numbers, Ltd.
# Registration Services Agreement

This AGREEMENT is between the AMERICAN REGISTRY FOR
INTERNET NUMBERS, LTD. ("ARIN"), a Virginia non-profit
organization, and its successors and assigns, and the **Applicant Company**
("**Company**"), and its successors and assigns.

In order for this Agreement to be duly executed, it must be signed and
submitted intact and complete in its current published form, and must not be
modified or altered in any way. Any changes or modifications made within its
text will render this Agreement null and void.

**1. INTRODUCTION. ARIN** is a regional Internet Registry serving North
America, South America, the Caribbean, and sub-Saharan Africa and is
responsible for the registration, administration, and conservation of Internet
Protocol ("IP") address space in these geographic areas. **Company** wishes to
apply to ARIN for registration services including an allocation of Internet
Protocol ("IP") address space and/or assignment of autonomous system
numbers. This Agreement shall be accepted at the offices of ARIN.

**2. TERM.** Upon acceptance by ARIN this Agreement shall be effective for
one year starting on the date the IP address space and/or the autonomous
system numbers are initially electronically allocated and/or assigned by
ARIN to Company. This Agreement shall be renewable on the anniversary
date of the initial allocation and/or assignment and each year thereafter,
subject to the then applicable terms and conditions established by ARIN,
unless sooner terminated in accordance with the termination provisions of
this Agreement.

**3. FEES AND PAYMENTS. Company** agrees to pay a registration fee to
ARIN as consideration for receiving an allocation of IP address space and/or
an assignment of autonomous system numbers. **Company** agrees to pay the
registration fee prior to receiving the requested allocation of IP address space
and/or the assignment of autonomous system numbers. **Company** agrees to
pay a renewal registration fee prior to the annual anniversary date on which

K5654

this Agreement is to be renewed. **Company** agrees that if, for any reason, **Company** does not pay the renewal registration fee for IP address space and/or pay the renewal registration fee for autonomous system numbers this Agreement will not be renewed and the IP address space previously allocated and/or the autonomous system numbers previously assigned will be revoked by ARIN.

**4. REGISTRATION SERVICES.** Registration services provided by ARIN to **Company** include, but are not limited to: allocation of IP address space, issuance of autonomous system numbers, inverse addressing on network blocks, maintenance of network records, and administration of IP address space. ARIN will evaluate **Company's** request for IP address space and/or autonomous system numbers based on ARIN's Internet Protocol address space allocation and assignment guidelines, which are incorporated herein by reference and made a part of this Agreement. **Company** agrees that all requests for an allocation of IP address space and/or an assignment of autonomous system numbers, whether made under this Agreement or any renewals of this Agreement must be in compliance with ARIN's Internet Protocol address space allocation and assignment guidelines as published on ARIN's website. If **Company** is an Internet Service Provider, **Company** agrees that IP addresses are to be used solely for their internal infrastructure or to further assign to its customer base for whom the Internet Service Provider is supplying Internet access.

**5. INTERNET PROTOCOL ADDRESS SPACE ALLOCATION AND ASSIGNMENT GUIDELINES.** Company agrees, as a condition to submitting this Agreement, and if this Agreement is accepted by ARIN, to be bound by the terms of ARIN's Internet Protocol address space allocation and assignment guidelines which are incorporated herein by reference and made a part of this Agreement and any renewals hereof. **Company** agrees that ARIN may, at any time, modify or amend its Internet Protocol address space allocation and assignment guidelines and that such modifications or amendments shall be binding upon the **Company**.

**6. REVIEW OF COMPANY'S IP ADDRESS SPACE. Company** agrees that ARIN reserves the right to review, at any time, the utilization of previously allocated IP address space and/or assigned autonomous system numbers made to **Company** under this Agreement or under any renewals of this Agreement. **Company** agrees that if IP address space and/or autonomous system numbers are not being used for the purpose allocated and/or assigned, ARIN reserves the right to revoke the IP address space and/or autonomous system numbers not being used for the purpose allocated and/or assigned.

**7. COOPERATION. Company** agrees to provide ARIN with all information, assistance and cooperation which ARIN requests for its review of **Company's** utilization of allocated IP address space and/or assigned autonomous system numbers. **Company** agrees that failure to provide ARIN with all information, assistance and cooperation may result in the revocation of the current IP address space allocated and/or autonomous system numbers

K5655

assigned or may adversely impact Company's future allocation of IP address space and/or assignment of autonomous system numbers.

**8. TERMINATION.** This Agreement or any renewal Agreement may be terminated:

- by **ARIN** if **Company** fails to pay the renewal annual registration fee when due or is in default of any other provision of this Agreement or of any renewal Agreement.

- by Company upon written notification to **ARIN** prior to any annual renewal date that **Company** does not wish to renew this Agreement.

**Company** agrees that in the event this Agreement or any renewed Agreement is, for any reason, terminated, the IP address space allocated and/or the autonomous system numbers assigned by **ARIN** shall be revoked by **ARIN.**

**9. SEVERABILITY.** The terms and provisions of this Agreement are severable. If any term or provision is declared invalid, it shall not affect the remaining terms or provisions which shall continue to be binding.

**10. ENTIRE AGREEMENT. Company** agrees that this Agreement is the complete and exclusive Agreement between **ARIN** and **Company** regarding the subject matter hereof and that this Agreement supersedes all prior agreements or understandings between the parties whether established by custom, practice or precedent.

**11. GOVERNING LAW. Company** agrees that this Agreement shall be governed in all respects by and construed in accordance with the laws of the Commonwealth of Virginia, United States of America. By submitting this Agreement to ARIN for approval, **Company** consents to the exclusive jurisdiction and venue of the United States District Court for the Eastern District of Virginia, Alexandria Division. If there is no jurisdiction in the United States District Court for the Eastern District of Virginia, Alexandria Division, then jurisdiction shall be in the Circuit Court of Fairfax County, Fairfax, Virginia.

**American Registry for Internet Numbers, LTD.**

Company Name: SAND MAN INTERNACIONAL LIMITED S.A. DE C.V.

by: _[signature]_

by: _[signature]_

(ARIN Authorized Contracting Agent)

(Authorized Contracting Agent)

Print Name: Robert P. Stratton

Print Name: STEPHEN H. COHEN

Date: JAN 0 7 2000

Date: 12-28-99

RSA Version 3
12/17/99

K5656

RSA Ver2
03/13/98

## AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.
## REGISTRATION SERVICES AGREEMENT

This AGREEMENT is between the AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD. ("ARIN"), a Virginia non-profit organization, and its successors and assigns, and the Applicant Company ("Company"), and its successors and assigns.

**1. INTRODUCTION.** ARIN is a regional Internet Registry serving North America, South America, the Caribbean, and parts of Africa and is responsible for the registration, administration, and conservation of Internet Protocol ("IP") address space in these geographic areas. Company wishes to apply to ARIN for registration services including an allocation of Internet Protocol ("IP") address space and/or assignment of autonomous system numbers. This Agreement shall be accepted at the offices of ARIN.

**2. TERM.** Upon acceptance by ARIN this Agreement shall be effective for one year starting on the date the IP address space and/or the autonomous system numbers are initially electronically allocated and/or assigned by ARIN to Company. This Agreement shall be renewable on the anniversary date of the initial allocation and/or assignment and each year thereafter, subject to the then applicable terms and conditions established by ARIN, unless sooner terminated in accordance with the termination provisions of this Agreement.

**3. FEES AND PAYMENTS.** Company agrees to pay a registration fee to ARIN as consideration for receiving an allocation of IP address space and/or an assignment of autonomous system numbers. Company agrees to pay the registration fee prior to receiving the requested allocation of IP address space and/or the assignment of autonomous system numbers. Company agrees to pay a renewal registration fee prior to the annual anniversary date on which this Agreement is to be renewed. Company agrees that if, for any reason, Company does not pay the renewal registration fee for IP address space and/or pay the renewal registration fee for autonomous system numbers this Agreement will not be renewed and the IP address space previously allocated and/or the autonomous system numbers previously assigned will be revoked by ARIN.

**4. REGISTRATION SERVICES.** Registration services provided by ARIN to Company include, but are not limited to: allocation of IP address space, issuance of autonomous system numbers, inverse addressing on network blocks, maintenance of network records, and administration of IP address space. ARIN will evaluate Company's request for IP address space and/or autonomous system numbers based on ARIN's Internet Protocol Address Space Allocation and Assignment Guidelines, which are incorporated herein by reference and made a part of this Agreement. Company agrees that all requests for an allocation of IP address space and/or an assignment of autonomous system numbers, whether made under this Agreement or any renewals of this Agreement must be in compliance with ARIN's Internet Protocol Address Space Allocation and Assignment Guidelines. If Company is an Internet Service Provider, Company agrees that IP addresses are to be used solely for their internal infrastructure or to further assign to its customer base for whom the Internet Service Provider is supplying internet access.

**5. INTERNET PROTOCOL ADDRESS SPACE ALLOCATION AND ASSIGNMENT GUIDELINES.** Company agrees, as a condition to submitting this Agreement, and if this Agreement is accepted by ARIN, to be bound by the terms of ARIN's Internet Protocol Address Space Allocation and Assignment Guidelines which are incorporated herein by reference and made a part of this Agreement and any renewals hereof. Company agrees that ARIN may, at any time, modify or amend its Internet Protocol Address Space Allocation and Assignment Guidelines and that such modifications or amendments shall be binding upon the Company.

**6. REVIEW OF COMPANY'S IP ADDRESS SPACE.** Company agrees that ARIN reserves the right to review, at any time, the utilization of previously allocated IP address space and/or assigned autonomous system numbers made to Company under this Agreement or under any renewals of this

K5621

*Ad-a0n 3 06.177*

2

Agreement. Company agrees that if IP address space and/or autonomous system numbers are not being used for the purpose allocated and/or assigned, ARIN reserves the right to revoke the IP address space and/or autonomous system numbers not being used for the purpose allocated and/or assigned.

      **7. COOPERATION.** Company agrees to provide ARIN with all information, assistance and cooperation which ARIN requests for its review of Company's utilization of allocated IP address space and/or assigned autonomous system numbers. Company agrees that failure to provide ARIN with all information, assistance and cooperation may result in the revocation of the current allocation of IP address space allocated and/or autonomous system numbers assigned or may adversely impact Company's future allocation of IP address space and/or assignment of autonomous system numbers.

      **8. TERMINATION.** This Agreement or any renewal Agreement may be terminated:

      •      by ARIN if Company fails to pay the renewal annual registration fee when due or is in default of any other provision of this Agreement or of any renewal Agreement.

      •      by Company upon written notification to ARIN prior to any annual renewal date that Company does not wish to renew this Agreement.

Company agrees that in the event this Agreement or any renewed Agreement is, for any reason, terminated the IP address space allocated and/or the autonomous system numbers assigned by ARIN shall be revoked by ARIN.

      **9. SEVERABILITY.** The terms and provisions of this Agreement are severable. If any term or provision is declared invalid, it shall not affect the remaining terms or provisions which shall continue to be binding.

      **10. ENTIRE AGREEMENT.** Company agrees that this Agreement is the complete and exclusive Agreement between ARIN and Company regarding the subject matter hereof and that this Agreement supersedes all prior agreements or understandings between the parties whether established by custom, practice or precedent.

      **11. GOVERNING LAW.** Company agrees that this Agreement shall be governed in all respects by and construed in accordance with the laws of the Commonwealth of Virginia, United States of America. By submitting this Agreement to for approval, Company consents to the exclusive jurisdiction and venue of the United States District Court for the Eastern District of Virginia, Alexandria Division. If there is no jurisdiction in the United States District Court for the Eastern District of Virginia, Alexandria Division, then jurisdiction shall be in the Circuit Court of Fairfax County, Fairfax, Virginia.

**AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.**      **COMPANY NAME**

                                                _Sand Man Internacional,_
                                                           _SA DE C.V._

by: _[signature]_                       by: _[signature]_
ARIN Authorized Contracting Agent          Authorized Contracting Agent

_Robert Stratton_                         _Stephen M. Cohen_
Print Name                                    Print Name

_4-8-98_                                  _3-30-98_
Date                                          Date

K5622

# EXHIBIT 3

RSA Ver3
12/17/99

### AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.
### REGISTRATION SERVICES AGREEMENT

This AGREEMENT is between the AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD. ("ARIN"), a Virginia non-profit organization, and its successors and assigns, and the **Applicant Company** ("**Company**"), and its successors and assigns.

    **1. INTRODUCTION. ARIN** is a regional Internet Registry serving North America, South America, the Caribbean, and sub-Saharan Africa and is responsible for the registration, administration, and conservation of Internet Protocol ("IP") address space in these geographic areas. **Company** wishes to apply to **ARIN** for registration services including an allocation of Internet Protocol ("IP") address space and/or assignment of autonomous system numbers. This Agreement shall be accepted at the offices of **ARIN.**

    **2. TERM.** Upon acceptance by **ARIN** this Agreement shall be effective for one year starting on the date the IP address space and/or the autonomous system numbers are initially electronically allocated and/or assigned by **ARIN** to **Company**. This Agreement shall be renewable on the anniversary date of the initial allocation and/or assignment and each year thereafter, subject to the then applicable terms and conditions established by **ARIN**, unless sooner terminated in accordance with the termination provisions of this Agreement.

    **3. FEES AND PAYMENTS. Company** agrees to pay a registration fee to **ARIN** as consideration for receiving an allocation of IP address space and/or an assignment of autonomous system numbers. **Company** agrees to pay the registration fee prior to receiving the requested allocation of IP address space and/or the assignment of autonomous system numbers. **Company** agrees to pay a renewal registration fee prior to the annual anniversary date on which this Agreement is to be renewed. **Company** agrees that if, for any reason, **Company** does not pay the renewal registration fee for IP address space and/or pay the renewal registration fee for autonomous system numbers this Agreement will not be renewed and the IP address space previously allocated and/or the autonomous system numbers previously assigned will be revoked by **ARIN.**

    **4. REGISTRATION SERVICES.** Registration services provided by **ARIN** to **Company** include, but are not limited to: allocation of IP address space, issuance of autonomous system numbers, inverse addressing on network blocks, maintenance of network records, and administration of IP address space. **ARIN** will evaluate **Company's** request for IP address space and/or autonomous system numbers based on **ARIN's** Internet Protocol address space allocation and assignment guidelines, which are incorporated herein by reference and made a part of this Agreement. **Company** agrees that all requests for an allocation of IP address space and/or an assignment of autonomous system numbers, whether made under this Agreement or any renewals of this Agreement must be in compliance with **ARIN's** Internet Protocol address space allocation and assignment guidelines as published on ARIN's web site. If **Company** is an Internet Service Provider, **Company** agrees that IP addresses are to be used solely for their internal infrastructure or to further assign to its customer base for whom the Internet Service Provider is supplying internet access.

    **5. INTERNET PROTOCOL ADDRESS SPACE ALLOCATION AND ASSIGNMENT GUIDELINES. Company** agrees, as a condition to submitting this Agreement, and if this Agreement is accepted by **ARIN**, to be bound by the terms of **ARIN's** Internet Protocol address space allocation and assignment guidelines which are incorporated herein by reference and made a part of this Agreement and any renewals hereof. **Company** agrees that **ARIN** may, at any time, modify or amend its Internet Protocol address space allocation and assignment guidelines and that such modifications or amendments shall be binding upon the **Company.**

    **6. REVIEW OF COMPANY'S IP ADDRESS SPACE.** **Company** agrees that ARIN reserves the right to review, at any time, the utilization of previously allocated IP address space and/or assigned autonomous system numbers made to **Company** under this Agreement or under any renewals of this Agreement. **Company** agrees that if IP address space and/or autonomous system numbers are not being

2

used for the purpose allocated and/or assigned, ARIN reserves the right to revoke the IP address space and/or autonomous system numbers not being used for the purpose allocated and/or assigned.

7. **COOPERATION.** Company agrees to provide ARIN with all information, assistance and cooperation which ARIN requests for its review of Company's utilization of allocated IP address space and/or assigned autonomous system numbers. Company agrees that failure to provide ARIN with all information, assistance and cooperation may result in the revocation of the current IP address space allocated and/or autonomous system numbers assigned or may adversely impact Company's future allocation of IP address space and/or assignment of autonomous system numbers.

8. **TERMINATION.** This Agreement or any renewal Agreement may be terminated:

by ARIN if Company fails to pay the renewal annual registration fee when due or is in default of any other provision of this Agreement or of any renewal Agreement.

by Company upon written notification to ARIN prior to any annual renewal date that Company does not wish to renew this Agreement.

Company agrees that in the event this Agreement or any renewed Agreement is, for any reason, terminated, the IP address space allocated and/or the autonomous system numbers assigned by ARIN shall be revoked by ARIN.

9. **SEVERABILITY.** The terms and provisions of this Agreement are severable. If any term or provision is declared invalid, it shall not affect the remaining terms or provisions which shall continue to be binding.

10. **ENTIRE AGREEMENT.** Company agrees that this Agreement is the complete and exclusive Agreement between ARIN and Company regarding the subject matter hereof and that this Agreement supersedes all prior agreements or understandings between the parties whether established by custom, practice or precedent.

11. **GOVERNING LAW.** Company agrees that this Agreement shall be governed in all respects by and construed in accordance with the laws of the Commonwealth of Virginia, United States of America. By submitting this Agreement to ARIN for approval, Company consents to the exclusive jurisdiction and venue of the United States District Court for the Eastern District of Virginia, Alexandria Division. If there is no jurisdiction in the United States District Court for the Eastern District of Virginia, Alexandria Division, then jurisdiction shall be in the Circuit Court of Fairfax County, Fairfax, Virginia.

**AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.**          **COMPANY NAME**

_____

by: _____          by: _____
    ARIN Authorized Contracting Agent                          Authorized Contracting Agent

_Robert P. Stratton _____          _Gary Kremen _____
Print Name                                        Print Name

_October 2, 2006____          _____
Date                                             Date

# EXHIBIT 4

RSA: Version 9 (04/07/2006)

**AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.**
**SERVICE AGREEMENT**

This SERVICE AGREEMENT ("Agreement") is made by and between the AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD. ("ARIN"), a Virginia nonprofit corporation, and _____, ("Applicant").

ARIN will not accept any alterations to this Agreement. Applicant must return the signature page of this Agreement to ARIN to indicate its acceptance, without modification, of all the terms and conditions of the Agreement.

BECAUSE OF THE NECESSARY ROLE THAT ARIN PERFORMS FOR THE INTERNET COMMUNITY, ARIN RESERVES THE RIGHT TO MODIFY THIS AGREEMENT AT ANY TIME, WITH OR WITHOUT NOTICE TO APPLICANT. CHANGES WILL BE EFFECTIVE AFTER BEING POSTED ON ARIN'S WEBSITE FOR 30 DAYS, AND WILL BE APPLIED TO ALL APPLICANTS OR PERSONS RECEIVING SERVICES. CONTINUED RECEIPT OR USE OF THE SERVICES CONSTITUTES APPLICANT'S ACCEPTANCE OF THE CHANGES. ACCORDINGLY, APPLICANT SHOULD MONITOR ARIN'S WEBSITE TO REVIEW ANY CHANGES AFFECTING THIS AGREEMENT.

1.  INTRODUCTION

    ARIN is a Regional Internet Registry serving Canada, the United States, and several islands in the Caribbean Sea and North Atlantic Ocean and is responsible for the registration, administration, and stewardship of Internet number resources in these geographic areas. Applicant must submit this Agreement and any requested accompanying information to ARIN to apply to receive and use certain services ("Services") from ARIN, which may include, without limitation, an allocation/assignment of IP address space, assignment of Autonomous System numbers ("ASNs"), inverse addressing on network blocks, maintenance of network records, and administration of IP address space. Allocation/assignment of IP address space and assignment of ASNs shall hereinafter be defined as "number resources."

2.  APPLICATION

    In order to submit an application to receive or use any Services, Applicant must complete the application process on ARIN's website, located at "*http://www.arin.net*" (the "Website"). In so doing, Applicant must: (i) provide ARIN with accurate, up-to-date and complete application information, including, without limitation, the Services that it wishes to receive, (ii) promptly notify ARIN if any of its information changes during the term of this Agreement, and (iii) promptly, accurately, and completely respond to any inquiry made to Applicant by ARIN or its designee during the term of this Agreement. Applicant agrees that in applying to receive or use the Services and in using the Services, it must comply with ARIN's Number Resource Policy Manual, Certificate Practice Statement, and Guidelines ("Policies"), as published on the Website. If Applicant fails to do or comply with any of the foregoing during the term of this Agreement, ARIN may terminate this Agreement and refuse to provide the Services to Applicant.

3.  EVALUATION AND ACCEPTANCE

    Following Applicant's completion of the online application process, ARIN will evaluate Applicant's request for the Services.  Evaluation may require additional documentation to support the application such as, but not limited to, business plans, management documentation, state registration, Dun & Bradstreet and/or taxpayer information, and/or registration under the province or country in which the entity is registered for verification purposes.  If ARIN, in its sole and exclusive discretion, applying its published Policies and internal verification process, determines that it will provide the Services to Applicant, ARIN shall provide written notice to Applicant of its willingness to do so, and ARIN will promptly commence providing the Services to Applicant in accordance with the terms and conditions of this Agreement. If ARIN, in its sole and exclusive discretion, applying its published Policies and internal verification process, determines that it will not provide the Services, it will provide written notice to Applicant of its decision. .

1

RSA: Version 9 (04/07/2006)

4.   CONDITIONS OF SERVICE

(a) Provision. Subject to ARIN's agreement to provide the Services in accordance with Section 3 and Applicant's ongoing compliance with its obligations under this Agreement, including, without limitation, the payment of the Fees (as defined below), ARIN shall provide the Services to Applicant in accordance with this Agreement and the Policies.

(b) Change Request. If Applicant desires to change the Services that it receives from ARIN, it must provide ARIN with written notice (a "Change Request"). ARIN will evaluate Applicant's Change Request. If ARIN, in its sole and exclusive discretion, determines that it will provide the Services to Applicant as set forth in the Change Request, ARIN will commence providing the Services as modified to Applicant in accordance with the terms and conditions of this Agreement. If ARIN, in its sole and exclusive discretion, determines that it will not provide the Services as requested by Applicant to be modified, it will provide written notice to Applicant that it will not provide Services in accordance with the Change Request.

(c) Cooperation. During the term of this Agreement, Applicant shall provide ARIN complete, up-to-date and accurate information, assistance, and cooperation that ARIN requests in ARIN's provision of the Services to Applicant, including, without limitation, during its review of Applicant's utilization of allocated number resources. If Applicant does not provide ARIN with any information, assistance, or cooperation that ARIN requests, ARIN may: (i) revoke and reclaim Applicant's number resources, (ii) take such failure into account in determining Applicant's future allocation/assignment of number resources, and/or (iii) terminate this Agreement. (d) Prohibited Conduct. In using the Services, Applicant shall not: (i) disrupt or interfere with the security or use of the Services; (ii) violate any applicable laws, statutes or regulations; or (iii) assist any third party in engaging in any activity prohibited by this Agreement. In the event a private party or governmental authority obtains a judgment from an appropriate judicial tribunal against Applicant, Applicant shall send a copy of this judgment to ARIN's General Counsel at the address provided in Section 15(i). A definitive finding of a violation of law or regulation when established by a decision of a national, state, or other government authority regarding (i) through (iii) herein should similarly be sent to ARIN's General Counsel for ARIN's review and action. ARIN will cooperate with all government inquiries utilizing legally appropriate methods for obtaining information from ARIN regarding allegations of prohibited conduct.

(e) Content Control. Applicant acknowledges that content transmitted over the Internet occurs in real time. Accordingly, ARIN does not have the ability to control content accessible through or facilitated by those who receive number resources, directly or indirectly, from ARIN.

5.   USE OF THE ARIN DATABASE

(a)   Authorization. To obtain a digital certificate, Applicant must meet the requirements and follow the procedures as outlined in ARIN's Certificate Practice Statement ("CPS"), which is available at http://www.arin.net/CA/. The Administrative Point of Contact ("POC") will be the principal point of contact between Applicant and the ARIN database, and have the sole right to designate other qualifying POCs of Applicant with authority to modify the ARIN database ("Authority"). The Administrative POC will also facilitate Applicant's compliance with the terms and conditions of this Section 5. Applicant will provide ARIN with any documentation and information regarding the Administrative POC that ARIN requests. Applicant must notify ARIN immediately if: (i) an employee with Authority has or will terminate its relationship with Applicant; (ii) an employee with Authority will have that Authority revoked; (iii) Applicant has reason to believe that an employee with Authority has granted or will grant a third party unauthorized access to the ARIN database; (iv) Applicant has any reason to believe that an employee with Authority should not be trusted; or (v) if Applicant wants to designate another Administrative POC. Notices to ARIN under this Section must be given by e-mail to noc@arin.net, and will be effective when acknowledged as received by ARIN.

(b)   Applicant is responsible for the timely and accurate maintenance of directory services data (WHOIS) as well as any organization to which it further sub-delegates number resources.

2

RSA: Version 9 (04/07/2006)

    (c)  Liability for Unauthorized Access. Applicant is solely and exclusively responsible for all acts and omissions undertaken by any of its POCs, whether or not authorized in law or in fact. Applicant is solely and exclusively responsible for the security of its access to and use of number resources in the ARIN database, and any loss or damage that Applicant suffers based on any unauthorized access thereto.

6.   FEES AND PAYMENTS

    (a)  Fee Schedule. As a condition precedent to ARIN's duty to provide the Services, Applicant shall pay ARIN for providing the Services in accordance with ARIN's Fee Schedule, which is available at *http://www.arin.net/billing/fee_schedule.html*.  From time to time, during the term of this Agreement and as it may renewed, ARIN will have the right to change the amount of the fees or institute new fees relating to the Services.

    (b)  No Refunds. All fees paid by Applicant to ARIN are nonrefundable.

    (c)  Registration Fees. Applicant shall pay ARIN the applicable "registration fee," as set forth in the Fee Schedule as well as any outstanding fees for other resources received from ARIN, prior to ARIN providing Applicant with its requested allocation/assignment of number resources. Applicant shall also pay ARIN the applicable "annual renewal fee," if any, as set forth in the Fee Schedule, at least five (5) days prior to each  12 month anniversary of ARIN's first issuance of the Services to Applicant (e.g., ARIN's initial allocation/assignment of number resources to Applicant). If, for any reason, Applicant does not pay any applicable renewal registration fee or other fees that may be owed ARIN hereunder, ARIN shall have the right to: (i) revoke the number resources previously allocated and/or previously assigned or (ii) terminate this Agreement.

7.   POLICIES

    Pursuant to ARIN's Internet Resource Policy Evaluation Process ("IRPEP"), ARIN maintains the Policies and may amend the Policies, implement new policies (which once implemented, will be considered Policies), or make certain Policies obsolete. Applicant acknowledges and agrees it has read, understands, and agrees to be bound by and comply with the Policies, as amended.  ARIN may, at any time in its sole and absolute discretion, amend the Policies or create new Policies and such amendments or new Policies shall be binding upon Applicant immediately after they are posted on the Website.

8.   REVIEW OF APPLICANT'S NUMBER RESOURCES

    ARIN may review, at any time, Applicant's use of previously allocated or assigned number resources or other Services  received from ARIN to determine if Applicant is complying with this Agreement and the Policies, and is using the Services for their intended purposes. Without limiting the foregoing, if Applicant is a holder of a direct allocation or assignment from ARIN, Applicant agrees that it will use the number resources solely for uses consistent with its application and this Agreement, including, for example, its internal infrastructure or to provide Internet access to its customer base,. If ARIN determines that the number resources or any other Services are not being used in compliance with this Agreement, the Policies, or the purposes for which they are intended, ARIN may: (i) revoke the number resources, (ii) cease providing the Services to Applicant, and/or (iii) terminate this Agreement.

9.   NO PROPERTY RIGHTS

    Applicant acknowledges and agrees that the number resources are not property (real, personal, or intellectual) and that Applicant shall not acquire any property rights in or to any number resources by virtue of this Agreement or otherwise. Applicant further agrees that it will not attempt, directly or indirectly, to obtain or assert any trademark, service mark, copyright, or any other form of property rights in any number resources in the United States or any other country.

3

RSA: Version 9 (04/07/2006)

10.  REPRESENTATIONS AND WARRANTIES

(a)  By Each Party. Each party represents and warrants to the other party that: (i) it has the full power and authority to enter into and perform its obligations under this Agreement, (ii) the assent to and performance by it of its obligations under this Agreement do not constitute a breach of or conflict with any other agreement or arrangement by which it is bound, or any applicable laws, regulations, or rules, and (iii) this Agreement constitutes a legal, valid, binding, and an executory obligation of the parties executing or assenting to this Agreement, enforceable in accordance with its terms and conditions.

(b)  By Applicant. Applicant hereby represents and warrants to ARIN that during the term of this Agreement: (i) it will not infringe the patent, copyright, trademark, trade secret, right of publicity, or other right of any third party in its use of the Services, and (ii) Applicant will comply with all applicable laws, rules, and regulations in its use of the Services, including this Agreement and the Policies.

11.  BANKRUPTCY

If Applicant: (i) files any petition under any chapter of the Bankruptcy Code or other insolvency or bankruptcy law; or (ii) has a petition filed against it under any insolvency or bankruptcy law; or (iii) makes a general assignment for the benefit of creditors, has a receiver appointed for it, or a trustee takes possession of all or substantially all of Applicant's assets; or (iv) ceases or intends to cease its normal business operations, Applicant will notify ARIN immediately. Upon such notice, or if ARIN otherwise learns of the occurrence of any of the foregoing events, ARIN may intervene in any such bankruptcy or insolvency proceeding or take other appropriate, lawful action to preserve its rights under this Agreement and the Policies, and its ability to provide the Services to its other users, including, without limitation, by: (i) revoking the number resources assigned to Applicant, and/or (ii) terminating this Agreement. Applicant agrees to consent to ARIN's intervening in any such bankruptcy court proceeding so that ARIN can protect its rights under this Agreement with respect to the Policies, number resources and any other rights ARIN has under this Agreement. Applicant acknowledges and agrees that this Agreement is executory.

12.  INDEMNIFICATION

Applicant shall indemnify, defend, and hold ARIN and its employees, representatives, agents, attorneys, affiliates, trustees, directors, officers, and managers, and members (the "Indemnified Parties") harmless from any damage, loss, cost, or expense (including without limitation, attorneys' fees and costs) incurred by an Indemnified Party or in connection with any  claim, demand, or action ("Claim") brought or asserted against any of the Indemnified Parties alleging facts or circumstances that would constitute a breach of any provision of this Agreement by Applicant, or its employees or contractors, or arising from, relating to, or connected with: (i) unauthorized access to or use of the ARIN database by Applicant or any of its current or former employees, representatives, agents, attorneys, affiliates, directors, officers, POCs, or managers; (ii) unauthorized access to or use of Applicant's information or number resources in the ARIN database; or (iii) Applicant's use of the Services. If Applicant is obligated to provide indemnification pursuant to this provision, ARIN may, in its sole and absolute discretion, control the disposition of any Claim at Applicant's sole cost and expense. If ARIN permits Applicant to control the disposition of any Claim, Applicant shall not settle, compromise, or in any other manner dispose of any Claim without the prior written consent of ARIN. The Applicant agrees to notify ARIN promptly of the assertion against it or any other person of any claim or the commencement of any action or proceeding relating to any transaction contemplated by this Agreement, whether or not ARIN is named in the claim or action.

13.  DISCLAIMERS, EXCLUSIONS, AND LIMITATIONS

(a)  DISCLAIMER OF WARRANTIES. ARIN PROVIDES THE SERVICES ON AN "AS-IS" BASIS. ARIN DOES NOT REPRESENT OR WARRANT THAT THE SERVICES OR THEIR USE: (i) WILL BE UNINTERRUPTED, (ii) WILL BE FREE OF DEFECTS, INACCURACIES, OR ERRORS, (iii) WILL  MEET  APPLICANT'S  REQUIREMENTS,  OR  (iv) WILL  OPERATE  IN  THE

4

RSA: Version 9 (04/07/2006)

CONFIGURATION OR WITH OTHER HARDWARE OR SOFTWARE APPLICANT USES. ARIN MAKES NO WARRANTIES OTHER THAN THOSE MADE EXPRESSLY IN THIS AGREEMENT, AND HEREBY DISCLAIMS ANY AND ALL IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION, WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, AND/OR NON-INFRINGEMENT.

(b) EXCLUSION OF DAMAGES. ARIN WILL NOT BE LIABLE TO APPLICANT OR ANY THIRD PARTY FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR SPECIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES RELATING TO LOST PROFITS, LOST DATA, OR LOSS OF GOODWILL) ARISING OUT OF, RELATING TO, OR CONNECTED WITH THE SERVICES, BASED ON ANY CAUSE OF ACTION, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(c) LIMITATION OF LIABILITY. EXCEPT IN THE EVENT OF A MATERIAL BREACH OF ARIN'S REPRESENTATIONS AND WARRANTIES UNDER THIS AGREEMENT , IN NO EVENT WILL ARIN'S LIABILITY TO APPLICANT OR ANY THIRD PARTY EXCEED THE GREATER OF (i) THE AMOUNT PAID BY APPLICANT TO ARIN DURING THE SIX MONTHS IMMEDIATELY PRECEDING THE EVENT THAT GIVES RISE TO SUCH LIABILITY OR (ii) $100.

14. TERM AND TERMINATION.

(a) Term. The term of this Agreement shall commence on the date Applicant first receives the Services (the "Effective Date") and shall continue for one year thereafter. This Agreement shall renew automatically on the anniversary date of the Effective Date for unlimited one-year terms, unless earlier terminated in accordance with the termination provisions of this Agreement or if either party gives written notice to the other party of its desire not to renew this Agreement at least thirty (30) days prior to the expiration of the then-current term.

(b) Termination for Cause by ARIN. ARIN shall have the right to terminate this Agreement for cause in accordance with Section 15(j) : (i) immediately upon written notice for the reasons as set forth in Sections 2, 3, 4(c), 4(d), 6(c), 8, 11, or if Applicant breaches any provision of Section 5; or (ii) upon written notice if Applicant breaches any other provision of this Agreement and such breach remains uncured in ARIN's reasonable determination for ten (10) days following ARIN's written notice to Applicant. .

(c) Termination for Cause by Applicant. Applicant shall have the right to terminate this Agreement for cause upon written notice if ARIN materially breaches this Agreement and such breach remains uncured for thirty (30) days after ARIN's receipt of written notice of the breach from Applicant.

(d) Termination by Applicant of Return of Number Resources. Applicant shall have the right to terminate this Agreement if it returns, without limitation, all number resources assigned and/or allocated to it by ARIN. If Applicant wishes to terminate this Agreement in accordance with this Section 14(d), the Applicant must submit thirty (30) days prior written notice to ARIN of its intent to return, in total, its ARIN assigned or allocated number resources, and must return the resources within thirty (30) days of ARIN's receipt of written notice of the Applicant's intent. This Agreement remains binding until the Applicant has returned all number resources to ARIN.

(e) Effect of Termination. If this Agreement expires or is terminated: (i) ARIN will immediately revoke the number resources and otherwise cease providing the Services and will have no liability for doing so, (ii) Applicant must immediately pay ARIN any outstanding fees that Applicant owes, but Applicant will not incur any additional fees, and (iii) Applicant will lose all membership rights and benefits in ARIN, if any.

(f) Survival. The following Sections will survive termination or expiration of this Agreement: 4(e), 5(b), 5(c), 6(a), 6(b), 9 through 13, 14(d), 14(e), and 15.

15. GENERAL PROVISIONS.

(a) Assignment and Transfer. Applicant is not permitted to assign this Agreement or any of its rights or obligations under it, including, without limitation, the exclusive right to use the number

5

RSA: Version 9 (04/07/2006)

resources allocated or assigned to it, without ARIN's written permission. If Applicant attempts to assign this Agreement or any rights or obligations under it, including, without limitation, by involuntary assignment to Applicant's creditors, such assignment will be of no force or effect and ARIN shall have the right to immediately: (i) revoke any of the number resources allocated or assigned to Applicant, and/or (ii) terminate this Agreement. The event of any transaction (whether a merger, acquisition or sale) in which Applicant's controlling managerial and/or voting interest changes during the term of this Agreement shall be considered a assignment requiring ARIN's written consent to continued use of the number resources, or ARIN may invoke its remedies as set forth in this section.    ARIN shall have the right to freely assign this Agreement upon written notice to Applicant.    (b) Pursuant to Policies, Applicant consents to assume responsibility for ensuring information involving assignments and allocations from within its allocated or assigned number resources received from ARIN is correct and provided to ARIN in a timely manner.

(c)  Relationship of Parties. The relationship between the parties is and will be that of independent contractors. No joint venture, partnership, employment, agency, or similar arrangement is created between the parties. Neither party has the right or power to act for or on behalf of the other or to bind the other in any respect other than as expressly provided for in this Agreement.

(d)  Entire Agreement. This Agreement (and the Policies and the Fee Schedule, which are hereby incorporated by reference) constitutes the entire understanding between the parties and replaces and supersedes any and all prior and contemporaneous agreements and understandings, whether oral or written, express or implied, between the parties with respect to the subject matter of this Agreement.

(e)  Waiver. No waiver of any provision or consent to any action under this Agreement will constitute a waiver of any other provisions or consent to any other action, nor will such waiver or consent constitute a continuing waiver or consent or commit any party to provide past or future a waiver or consent.

(f)  Severability. If any provision of this Agreement is determined to be illegal, invalid, or otherwise unenforceable by a court or tribunal of competent jurisdiction, then to the extent necessary to make such provision and/or this Agreement legal, valid, or otherwise enforceable, such provision will be limited, construed, or severed and deleted from this Agreement, and the remaining portion of such provision and the remaining other provisions hereof will survive, remain in full force and effect, and continue to be binding, and will be interpreted to give effect to the intention of the parties insofar as possible.

(g)  Successors and Assigns. This Agreement will be binding upon and inure to the benefit of the parties and with respect to ARIN, its successors and permitted assigns, and with respect to Applicant, its permitted successors and assigns.

(h)  No Third-Party Rights. This Agreement is made solely for the benefit of the parties and does not, and will not, be construed to grant any rights or remedies to any other person or entity other than as expressly provided for in this Agreement.

(i)  Construction. This Agreement will be construed as if it was jointly drafted by both parties and may not be construed against either one.

(j)  Written Notice. All "written notice" required or permitted to be given under this Agreement will be delivered to the other party by any of the following methods: (i) hand delivery, (ii) certified U.S. mail, return receipt requested, postage prepaid, (iii) overnight courier, or (iv) electronic mail. If Applicant gives notice to ARIN, it must use the following address: ARIN, Attention: Financial Services Department, 3635 Concorde Parkway, Suite 200, Chantilly, VA 20151, or the following e-mail address: billing@arin.net. If ARIN provides notice to Applicant, ARIN must use the contact information provided by Applicant to ARIN during the application process or other contact information provided by Applicant in accordance with the terms of this Section. All notices will be deemed received and effective as follows: (i) if by hand-delivery, on the date of delivery, (ii) if by delivery via U.S. mail, on the date of receipt appearing on a return receipt card, (iii) if by overnight courier, on the date receipt is confirmed by such courier service, or (iv) if by electronic mail, 24 hours after the message was sent, if no "system error" or other notice of non-delivery is generated.

RSA: Version 9 (04/07/2006)

(k) Force Majeure. ARIN shall not be deemed in default hereunder, nor shall ARIN be responsible for any cessation, interruption, or delay in the performance of its obligations under this Agreement where such failure of performance is the result of any force majeure event, including, but not limited to, earthquake, flood, fire, storm, natural disaster, act of God, civil disturbances, war, terrorism, armed conflict, riots, failure of contractors or subcontractors to perform, labor strike, lockout, boycott, or acts of governmental authorities. In the event a force majeure event extends for a period in excess of thirty (30) days in the aggregate and prevents ARIN from performing its obligations under this Agreement, ARIN may, in its discretion, terminate this Agreement immediately upon written notice to Applicant.

(l)    Governing Law, Jurisdiction, and Venue. This Agreement and the parties' performance under it shall be governed in all respects by, and construed in accordance with, the laws of the Commonwealth of Virginia and the United States of America. In the event of any dispute(s) regarding any term or condition or provision or performance or conduct arising out of or relating to this Agreement, the parties each agree to first seek resolution through cooperative settlement negotiations involving themselves or their representatives as they each deem appropriate; and, second, in the event cooperative settlement negotiations are not successful after thirty (30) days, the parties agree to submit any unresolved dispute(s) to binding and final arbitration for resolution. Such arbitration shall be held in Fairfax County, Virginia, in accordance with the rules of the American Arbitration Association ("AAA") then in effect.  A single arbiter shall be selected by the parties by striking in turn from a list of arbiters supplied by the AAA.  Each party shall bear their own attorneys' fees, and the initiating party shall bear the costs of the arbitration's expenses. Virginia law shall be controlling.  Any judgment upon the award rendered pursuant to the arbitration proceeding may be entered in any court having competent jurisdiction.  .  Such arbitration provision will apply  unless the Applicant is part of a national, state, or local government authority whose laws or regulations require that their law and jurisdiction  must [also?] apply to such an agreement. In such an instance, upon written demonstration of such national, state, or local law or regulation, arbitration shall be conducted in the city or county in which Applicant's principal place of business is domiciled, in accordance with the provisions set forth above, except that Applicant's law shall be controlling.  .

7

RSA: Version 9 (04/07/2006)


American Registry for Internet Numbers, LTD.          **Agreed:**

By:                                                   _____

(Applicant)                                           Legal Name of Company:

_____                       _____

ARIN Authorized Contracting Agent:                    D/B/A Name (if any)

                                                       _____

__Robert P. Stratton_____                    Signature of Authorized Officer:
Print Name:

                                                       _Gary Kremen_____
__October 2, 2006_____                     Name of Authorized Officer and Title:
Date:

                                                       _____
                                                       Date:

                                                       _____
                                                       ORG ID:

                                                       _____
                                                       Ticket Number:


                                                       _____
                                                       E-mail of Authorize Officer


                                                       _____

                                                       _____

Phone Number of Authorized Officer:

                                                       **Mailing Address of Authorize Officer:**

                                                       _____
                                                       Street and Suite:

                                                       _____
                                                       City and State:

                                                       Postal  Code: _____

                                                       Country: _____

8

## Vete, Laumanu

| | |
|---|---|
| **From:** | ECF-CAND@cand.uscourts.gov |
| **Sent:** | Monday, October 02, 2006 5:37 PM |
| **To:** | efiling@cand.uscourts.gov |
| **Subject:** | Activity in Case 5:98-cv-20718-JW Kremen, et al v. Cohen, et al "Declaration in Support" |

ARIN adv. Gary Kremen
(22149-060)

C. Wanger    J. Yeh (LA)    ~~LA Cal.~~
S. Ryan (DC)    D. Wishon
C. Hummel (LA)    Client (SMR - DC)

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. District Court

### California Northern District

Notice of Electronic Filing

The following transaction was received from entered on 10/2/2006 at 5:36 PM and filed on 10/2/2006

| | |
|---|---|
| **Case Name:** | Kremen, et al v. Cohen, et al |
| **Case Number:** | 5:98-cv-20718 |
| **Filer:** | American Registry For Internet Numbers Ltd. |

**WARNING: CASE CLOSED on 03/23/2004**
**Document Number: 1217**

**Docket Text:**
SUPPLEMANTAL Declaration of Raymond A. Plzak in Support of [1161] MOTION Clarification or Modification of Order or, in the Alternative, for Modification of Order Dated September 17, 2001, entitled "Order re: Registration of IP Numbers (Netblocks) in the Name of filed byAmerican Registry For Internet Numbers Ltd.. (Related document(s)[1161]) (cv, COURT STAFF) (Filed on 10/2/2006)

The following document(s) are associated with this transaction:

**5:98-cv-20718 Notice will be electronically mailed to:**

Patricia De Fonte    Patricia.DeFonte@idellseitel.com, liz.torres@idellseitel.com; richard.idell@idellseitel.com

David Henry Dolkas    ddolkas@mwe.com

Terri R Hanley    terri@kronenbergerlaw.com, ecf@kronenbergerlaw.com

Chad S. Hummel    chummel@manatt.com,

Richard J. Idell    richard.idell@idellseitel.com, patricia.defonte@idellseitel.com; suzanne.slavens@idellseitel.com; stephanie.huynh@idellseitel.com; ory.sandel@idellseitel.com

Glen H. Isaacs    invalidaddress@invalidaddress.com

10/2/2006

Karl Stephen Kronenberger    karl@kronenbergerlaw.com,

James M. Wagstaffe !    wagstaffe@kerrwagstaffe.com, milla@kerrwagstaffe.com

Christopher L. Wanger    cwanger@manatt.com, tmartin@manatt.com; dwishon@manatt.com; lvete@manatt.com; KHunt@manatt.com; SSareth@manatt.com; AScardina@manatt.com

George G. Weickhardt    gweickhardt@ropers.com, emangonon@ropers.com; mmcpherson@ropers.com

Jack S. Yeh    jyeh@manatt.com, tauzenne@manatt.com

**5:98-cv-20718 Notice will be delivered by other means to:**

Stephen Michael Cohen
Booking #050637
885 No. San Pedro
San Jose, Ca 95110

Joel Dichter
Campeau & Thomas
55 So Market St Ste 1040
San Jose, CA 95113

Timothy P. Dillon
Dillon & Gerardi
4660 La Jolla Village Dr., Suite 775
San Diego, CA 92122

David H. Dolkas
DLA Piper Rudnick Gray Cary US LLP
2000 University Circle
East Palo Alto, CA 94303-2248

John A. Goalwin
350 So. Figueroa Street, Suite 499
Los Angeles, Ca 90071

Kevin C. Golden
Hanson and Molloy
1250 Eye Street, N.W.
Suite 701
Washington, DC 20005

Kathryn E. Karcher
Gray Cary Ware & Freidenrich
401 B Street
Suite 1700
San Diego, CA 92101-4297
H. Scott Leviant
Stanbury Fishelman Wisner & Adsit

10/2/2006

Los Angeles Office
9200 Sunset Blvd., Penthouse 30
West Hollywood, Ca 90069-3601

S. Tye Menser
DLA Piper Rudnick Gray Cary US LLP
2000 University Circle
East Palo Alto, CA 94303-2248

Stephen M. Ryan
Manatt Phelps & Phillips LLP
One Metro Center
700 12th Street, N.W., Suite 1100
Washington, DC 20005

Ory Sandel
Idell & Seitel LLP
465 California Street
Suite 300
San Francisco, CA 94104

Philip L. Sbarbaro
21355 Ridgetop Circle
Dulles, VA 20166

Nadya Y. Spivack
Dillon & Gerardi
4660 La Jolla Village Dr., Suite 775
San Diego, Ca 92122

George Stanbury !
Stanbury Fishelman Wi! sner & A dsit
Los Angeles Office
9200 Sunset Blvd., Penthouse 30
West Hollywood, Ca 90069-3601

Alec B. Wisner
Stanbury Fishelman Wisner & Adsit
Los Angeles Office
9200 Sunset Blvd., Penthouse 30
West Hollywood, Ca 90069-3601

10/2/2006

**Vete, Laumanu**

ARIN adv. Gary Kremen
(22149-060)
C. Wanger          J. Yeh (LA)          LA Cal.
S. Ryan (DC)       D. Wishon
C. Hummel (LA)     Client (SMR - DC)

| | |
|---|---|
| **From:** | ECF-CAND@cand.uscourts.gov |
| **Sent:** | Monday, October 02, 2006 5:25 PM |
| **To:** | efiling@cand.uscourts.gov |
| **Subject:** | Activity in Case 5:98-cv-20718-JW Kremen, et al v. Cohen, et al "Reply to Opposition" |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. District Court

### California Northern District

Notice of Electronic Filing

The following transaction was received from entered on 10/2/2006 at 5:25 PM and filed on 10/2/2006

| | |
|---|---|
| **Case Name:** | Kremen, et al v. Cohen, et al |
| **Case Number:** | 5:98-cv-20718 |
| **Filer:** | American Registry For Internet Numbers Ltd. |

**WARNING: CASE CLOSED on 03/23/2004**

**Document Number:** 1216

**Docket Text:**
Reply AND SUPPLEMENTAL Opposition re [1161] MOTION Clarification or Modification of Order or, in the Alternative, for Modification of Order Dated September 17, 2001, entitled "Order re: Registration of IP Numbers (Netblocks) in the Name of Judgment Creditor filed byAmerican Registry For Internet Numbers Ltd.. (cv, COURT STAFF) (Filed on 10/2/2006)

The following document(s) are associated with this transaction:

**5:98-cv-20718 Notice will be electronically mailed to:**

Patricia De Fonte     Patricia.DeFonte@idellseitel.com, liz.torres@idellseitel.com; richard.idell@idellseitel.com

David Henry Dolkas     ddolkas@mwe.com

Terri R Hanley     terri@kronenbergerlaw.com, ecf@kronenbergerlaw.com

Chad S. Hummel     chummel@manatt.com,

Richard J. Idell     richard.idell@idellseitel.com, patricia.defonte@idellseitel.com; suzanne.slavens@idellseitel.com; stephanie.huynh@idellseitel.com; ory.sandel@idellseitel.com

Glen H. Isaacs     invalidaddress@invalidaddress.com

10/2/2006

Karl Stephen Kronenberger    karl@kronenbergerlaw.com,

James M. Wagstaffe !    wagstaffe@kerrwagstaffe.com, milla@kerrwagstaffe.com

Christopher L. Wanger    cwanger@manatt.com, tmartin@manatt.com; dwishon@manatt.com;
lvete@manatt.com; KHunt@manatt.com; SSareth@manatt.com; AScardina@manatt.com

George G. Weickhardt    gweickhardt@ropers.com, emangonon@ropers.com;
mmcpherson@ropers.com

Jack S. Yeh    jyeh@manatt.com, tauzenne@manatt.com

**5:98-cv-20718 Notice will be delivered by other means to:**

Stephen Michael Cohen
Booking #050637
885 No. San Pedro
San Jose, Ca 95110

Joel Dichter
Campeau & Thomas
55 So Market St Ste 1040
San Jose, CA 95113

Timothy P. Dillon
Dillon & Gerardi
4660 La Jolla Village Dr., Suite 775
San Diego, CA 92122

David H. Dolkas
DLA Piper Rudnick Gray Cary US LLP
2000 University Circle
East Palo Alto, CA 94303-2248

John A. Goalwin
350 So. Figueroa Street, Suite 499
Los Angeles, Ca 90071

Kevin C. Golden
Hanson and Molloy
1250 Eye Street, N.W.
Suite 701
Washington, DC 20005

Kathryn E. Karcher
Gray Cary Ware & Freidenrich
401 B Street
Suite 1700
San Diego, CA 92101-4297
H. Scott Leviant
Stanbury Fishelman Wisner & Adsit

10/2/2006

Los Angeles Office
9200 Sunset Blvd., Penthouse 30
West Hollywood, Ca 90069-3601

S. Tye Menser
DLA Piper Rudnick Gray Cary US LLP
2000 University Circle
East Palo Alto, CA 94303-2248

Stephen M. Ryan
Manatt Phelps & Phillips LLP
One Metro Center
700 12th Street, N.W., Suite 1100
Washington, DC 20005

Ory Sandel
Idell & Seitel LLP
465 California Street
Suite 300
San Francisco, CA 94104

Philip L. Sbarbaro
21355 Ridgetop Circle
Dulles, VA 20166

Nadya Y. Spivack
Dillon & Gerardi
4660 La Jolla Village Dr., Suite 775
San Diego, Ca 92122

George Stanbury !
Stanbury Fishelman Wi! sner & A dsit
Los Angeles Office
9200 Sunset Blvd., Penthouse 30
West Hollywood, Ca 90069-3601

Alec B. Wisner
Stanbury Fishelman Wisner & Adsit
Los Angeles Office
9200 Sunset Blvd., Penthouse 30
West Hollywood, Ca 90069-3601

10/2/2006