# EXHIBIT L

Dockets.Justia.com

MANATT, PHELPS & PHILLIPS, LLP
STEPHEN M. RYAN (DC Bar No. 359099) (sryan@manatt.com)
700 12th Street, N.W., Suite 1100
Washington, DC 20005-4075
Telephone:  (202) 585-6500
Facsimile:  (202) 585-6600

MANATT, PHELPS & PHILLIPS, LLP
CHAD S. HUMMEL (CA Bar No. 139055) (chummel@manatt.com)
JACK S. YEH (CA Bar No. 174286) (jyeh@manatt.com)
11355 W. Olympic Boulevard
Los Angeles, CA 90064
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER L. WANGER (CA Bar No. 164751) (cwanger@manatt.com)
JOHN P. KERN (CA Bar No. 206001) (jkern@manatt.com)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone:  (650) 812-1300
Facsimile:  (650) 213-0260

*Attorneys for Non-Party*
AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GRAY KREMEN,<br><br>    Plaintiff,<br><br>vs.<br><br>STEPHEN MICHAEL COHEN, et. al,<br><br>    Defendant. | USDC Case No. **C 98-20718 JW**<br>[Related to Case No. C 06-2554 JW]<br><br>(Assigned to the Honorable James Ware)<br><br>**REPLY OF NON-PARTY AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD. TO PLAINTIFF'S OPPOSITION AND SUPPLEMENTAL OPPOSITION TO MOTION FOR CLARIFICATION, OR, IN THE ALTERNATIVE, FOR MODIFICATION OF ORDER DATED SEPTEMBER 17, 2001, ENTITLED "ORDER RE: REGISTRATION OF IP NUMBERS (NETBLOCKS) IN THE NAME OF JUDGMENT CREDITOR"**<br><br>Hearing Date: October 23, 2006<br>Time: 9:00 a.m.<br>Location: Courtroom 8, 4th Floor |

ARIN adv. Gary Kremen
(22149-060)
C. Wanger    J. Yeh (LA)    LA Cal.
S. Ryan (DC)    D. Wishon +3
C. Hummel (LA)    Client (SMR - DC)

ORIGINAL FILED OCT - 2 2006 RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA SAN JOSE

41043489.2

REPLY OF NON-PARTY ARIN TO PLTFS.
OPP. TO MTN. FOR CLARIFICATION

# TABLE OF CONTENTS
|  | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | LEGAL ANALYSIS | 2 |
| | A. The September 2001 Order Should Be Modified to Require Kremen to Enter Into A Registration Service Agreement with ARIN Because of His Newfound Desire to "Step Into Cohen's Shoes" | 2 |
| |     1. In Order to Step Into Cohen's Shoes, Kremen Should Be Required to Sign a RSA of His Choice | 3 |
| |     2. ARIN's Actions with LACNIC, UUNET, and Revoked Resources Were Appropriate Given Kremen's Refusal to Abide by Any Obligations for the IP Resources | 4 |
| | B. ARIN Is Entitled to Due Process as a Stakeholder | 6 |
| |     1. Kremen Is Seeking to Bind ARIN to the Judgment | 6 |
| |     2. ARIN Has a Protectable Interest in the IP Resources That Entitles It To Due Process | 9 |
| III. | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

Page

### Cases

*Anderson Nat'l Bank v. Luckett*,
  321 U.S. 233 (1944) ..................................................................................................... 8

*Armstrong v. Manzo*,
  380 U.S. 545 (1965) ..................................................................................................... 7

*Ashbacker Radio Corp. v. F.C.C.*,
  326 U.S. 327 (1945) ................................................................................................. 8, 9

*Baldwin v. Hale*,
  1 Wall, 223 (1864) ....................................................................................................... 8

*F.C.C. v. Sanders Bros. Radio Station*,
  309 U.S. 470 (1940) ..................................................................................................... 8

*Fuentes v. Shevin*,
  407 U.S. 67 (1972) ....................................................................................................... 9

*Goldberg v. Kelly*,
  397 U.S. 254 (1970) ..................................................................................................... 9

*Goss v. Lopez*,
  419, U.S. 565 (1972) .................................................................................................... 9

*Grannis v. Ordean*,
  234 U.S. 385 (1914) ..................................................................................................... 8

*Headwaters Inc. v. U.S. Forest Serv.*,
  399 F.3d 1047 (9th Cir. 2005) ..................................................................................... 7

*In the Matter of Commission Policy Regarding the Advancement of Minority Ownership in Broadcasting*,
  52 Rad. Reg. 2d (P & F) 1301, 92 F.C.C. 2d 849, 1982 WL 190435, at *1 (1988) ...... 8

*Martin v. Wilks*,
  490 U.S. 755 (1989) ..................................................................................................... 7

*Mullane v. Central Hanover Trust Co.*,
  339 U.S. 306 (1950) .................................................................................................. 7, 8

*Scripps-Howard Radio, Inc. v. F.C.C.*,
  316 U.S. 4 (1941) ......................................................................................................... 8

*Sniadach v. Family Fin. Corp.*,
  395 U.S. 337 (1969) ..................................................................................................... 9

### Statutes

47 U.S.C.A. § 151 ............................................................................................................. 8

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

ii

# REPLY RE MOTION FOR CLARIFICATION\MODIFICATION

## I.
## INTRODUCTION

Plaintiff Gary Kremen ("Plaintiff" or "Kremen") has wasted the past five years and the resources of the parties and this Court by refusing to enter into an agreement with non-party American Registry for Internet Numbers, Ltd. ("ARIN") concerning IP Resources that had been in the control of Stephen Cohen. Now, after ARIN has been forced to seek this Court's intervention in clarifying or modifying a September 17, 2001 Order which Kremen obtained from this Court on an *ex parte* basis, Kremen professes to want to "step into the shoes" of Cohen as a Judgment creditor. Had Kremen expressed this desire (instead of steadfastly rejecting it) back in 2001, the IP Resources would have been allocated to him long ago.

This Court should grant ARIN's Motion to Clarify or Modify its September 2001 Order for the following reasons. First, Kremen now declares that he is willing to assume whatever obligations Cohen had agreed to with ARIN concerning the IP Resources at issue in this litigation. This newfound position is a material and significant change that would have resolved this dispute years ago. As set forth more fully in this Reply and the Supplemental Declaration of Raymond Plzak, ARIN again offers to Kremen the option of entering into any Registration Service Agreement of his choice that would reflect the same terms and conditions that were provided to Cohen (or, alternatively, that were available when the September 2001 Order was issued, or that are available to new resources today). There simply is no reason at this point, given Kremen's stated position in his briefs, why such an arrangement would or should be unacceptable to Kremen. Accordingly, the September 2001 Order should be clarified or modified to require Kremen to execute an agreement of his choice.

Second, even if Kremen refuses to voluntarily execute an agreement, this Court should nevertheless modify or clarify its previous September 2001 Order to require Kremen to do so because ARIN was entitled to due process as a stakeholder to have such a condition placed into the Order before it was issued on an *ex parte* basis. It is imperative that this Court intervene immediately to modify and clarify the September 2001 Order in this respect and end this

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043489.2

1

REPLY OF NON-PARTY ARIN TO PLTFS.
OPP. TO MTN. FOR CLARIFICATION

unnecessary and meritless litigation.

## II.
## LEGAL ANALYSIS

As a result of Kremen's continued and unrelenting refusal to agree to abide by any obligations in connection with the IP Resources at issue in the September 2001 Order, ARIN has been forced to seek this Court's intervention in clarifying or modifying the Order. For the reasons set forth in the moving papers and in this Reply, ARIN requests the Court to require Kremen to immediately enter into an agreement with ARIN of the kind and nature presented in these papers.

### A. The September 2001 Order Should Be Modified to Require Kremen To Enter Into A Registration Service Agreement with ARIN Because of His Newfound Desire to "Step Into Cohen's Shoes".

The lynchpin of Kremen's Opposition brief and Supplemental Opposition brief is Kremen's newly articulated desire to "step into the shoes" of Cohen as a Judgment creditor. This position, however, has never been communicated to ARIN at any point in time over the past five years that ARIN has been attempting to accommodate Kremen's attempt to obtain the IP resources. (*See*, Supplemental Declaration of Raymond Plzak ["Supp. Plzak Decl."] concurrently filed herewith, ¶ 2.) In fact, the only reason ARIN has been unable to allocate the specific IP Resources at issue in this litigation to Kremen is Kremen's unwavering refusal to abide by or accept <u>any</u> <u>obligation</u> that accompanies the benefits of the IP Resources. (Supp. Plzak Decl., ¶ 2.) Quite simply, until now, Kremen simply wanted ARIN to transfer to him the resources and go away. (Supp. Plzak Decl., ¶ 2.)

That, of course, was an impossible request. ARIN is the sole and exclusive administrator of IP Resources in the United States, Canada and other countries in its service area. The regional pool of IP Resources that ARIN oversees are placed in the *public trust* of ARIN so that their efficient management and administration can be ensured. These finite numeric resources which, unlike alphanumeric domain names (that are recognizable, have a separate and independent meaning, and are utilized as sources of identification of goodwill and product or service recognition), have no inherent value to the registrant, end user or consumer beyond their

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043489.2

2

REPLY OF NON-PARTY ARIN TO PLTFS.
OPP. TO MTN. FOR CLARIFICATION

functional utility within the Internet community.[1] To ensure that these finite resources are available and neither wasted nor abused, IP Resources are non-transferable and non-assignable.

As a result, whenever a registrant's rights to IP Resources allocated by ARIN are abandoned or expire, the *IP Resources are taken back into ARIN's registry* before they can be reallocated to another registrant. This is true for all registrants including those who are individuals, corporations, and even governments. For these reasons, ARIN has repeatedly offered to allocate to Kremen the IP Resources at issue in this litigation so long as Kremen agreed to execute an appropriate Registration Services Agreement ("RSA"). Until now, Kremen has refused to accept any obligation whatsoever (including any obligations that Cohen might have had) with respect to the IP Resources.

1. *In Order to Step Into Cohen's Shoes, Kremen Should Be Required to Sign a RSA of His Choice*

Kremen's lately professed admission in his Opposition that he can be asked to "step into the shoes" of Cohen and only obtain whatever benefits and obligations Cohen enjoyed or owed is a material change in position that heretofore was unannounced and repeatedly rejected by those in Kremen's camp. Indeed, it is still uncertain what Kremen is willing to "assume" in terms of the obligations that were Cohen's. Kremen's pleadings continue to demonstrate he is actually unwilling to do so. For example, Kremen's Opposition argues that "[r]egardless of what ARIN's standard procedures and terms and conditions are for new accounts or transfers of old accounts, neither apply here." (Opp., p. 18, lines 11-13.) Kremen also further argues that "[a]s noted above, there is no legal requirement that Kremen fill out an ARIN application (subject to ARIN's approval) in order to receive the Netblocks and ASN's." (Opp., p. 18, line 27.)

---

[1] While Kremen maintains in his Opposition brief that ARIN's motion depends upon a predicate legal determination that IP Resources are "property," that simply is untrue. This Court need not determine whether IP Resources are "property" or "services" for purposes of this motion. This Court need only understand the comprehensive, logistical and quasi-regulatory nature of the role that ARIN plays with respect to finite IP Resources and how ARIN's control and management over such IP Resources is of paramount importance to the governance of the Internet. To the extent that the Court believes that it needs to determine whether IP Resources are "property" or "services," ARIN requests an opportunity to separately brief this issue (as it is not fully or comprehensively addressed by either party) and the issues in such a determination far exceed the scope of the issues presented in this Motion.

ARIN reiterates its previous offers to allow Kremen to enter into an appropriate RSA on the same kinds of terms and conditions that Cohen had in his agreements with ARIN. Specifically, the Supplemental Plzak Declaration concurrently filed herewith sets forth ARIN's consistent position and offer to immediately transfer beneficial control of the Netblock resources to Kremen upon his signature of an RSA on terms and conditions that are the same as the ones that Cohen had agreed to in his agreements with ARIN. (Supp. Plzak Decl., ¶ 3-4.)[2] To make this even easier and to relieve Kremen of the duty to do anything but sign, ARIN is willing to provide a substitute ASN for the one now controlled by the agreements in LACNIC's territory.

ARIN is equally willing to provide Kremen the alternative opportunity to sign the RSA in effect when the Court issued the *ex parte* Order on October 29, 2001 (RSA 3) (see Exhibit 3), or RSA 9, which is the RSA currently in effect for resources issued today. (See, Supp. Plzak Decl., ¶¶ 3-4, Exs. 3-4.) Each RSA simply represents a snapshot in time as to what ARIN's agreement contained.

Therefore, this Court should make clear by amending its prior Order that Kremen <u>must</u> sign the RSA of his choice so he can have both the rights and the same obligations related to the Netblocks.

  2.  ***ARIN's Actions with LACNIC, UUNET, and Revoked Resources Were Appropriate Given Kremen's Refusal to Abide by Any Obligations for the IP Resources***

While Kremen complains vociferously about how ARIN acted with respect to certain IP Resources that were transferred to LACNIC, that were in the control of UUNET before ARIN's corporate existence, and how ARIN purportedly usurped resources that ARIN revoked from Cohen, Kremen need only look in the mirror to figure out who is at fault for the illusory ills of which he complains. As described above, the singular reason that ARIN did not and could not transfer IP Resources to Kremen was his steadfast refusal to agree to abide by any obligations

---

[2] Contrary to Kremen's contention in his Supplemental Opposition, the IP Resources at issue in this litigation can be matched with Cohen's contracts through careful examination of the documents that ARIN voluntarily provided to Kremen in connection with this Motion. (Supp. Plzak Decl., ¶ 3.) Kremen's complaints over matching are simply the result of his failure to carefully and diligently review the documents that were produced.

with respect to the use of such resources. Accordingly, ARIN in its capacity as the sole and exclusive administrator of these finite numeric resources, acted in a manner that was consistent with its role as the regional internet registry for these resources.

As set forth in the accompanying Supplemental Plzak Declaration, in 2002 (not 2004 as Kremen asserts) ARIN transferred administrative control over all resources and services provided to persons or entities in Mexico, Central America and South America to the new organization LACNIC, which performs the same services as ARIN. The particular ASN that was transferred to LACNIC was registered in Mexico at the time of the transfer. (In 2005, ARIN made a similar transfer of all African-based resources previously controlled by ARIN to the African Network Information Centre) ("AfriNIC"). The ARIN policy process directed that such transfers to the two new registries should occur. These transfers were strongly supported by the U.S. government, particularly the U.S. Department of Commerce, because it created continental-based registries operated and controlled by persons living on those continents. It was unwise and counter-productive for the United States government or ARIN to continue a policy of controlling African, Mexican and South American operations from Chantilly, Virginia. (Supp. Plzak Decl., ¶ 7.) ARIN had no meaningful discussions with Kremen about these issues until 2004 when Mr. Kremen served the Order on ARIN and engaged in negotiations that failed. Nevertheless, ARIN is still willing to provide Kremen with a replacement ASN once Kremen executes the RSA of his choice as presented in the Supplemental Plzak Declaration. (Supp. Plzak Decl., ¶ 9.)

With respect to the UUNET resrouces, again, these are resources that are not within ARIN's control and were allocated before ARIN's existence. (Supp. Plzak Decl., ¶ 12.) Accordingly, there is no action that ARIN can take with respect to these resources. Indeed, Kremen, like UUNET, already owns a series of legacy IP resources with identical capabilities to those he seeks in the 2001 Order, and that were issued to him prior to ARIN's beginning its operations. Kremen therefore is urging the Court to require ARIN to take some unspecified action against UUNET that he would totally resist if ARIN were to address it to Kremen's legacy address space. Kremen's possession of IP resources issued before ARIN began also demonstrates the hollowness of Mr. Kremen's claims of damage from being allegedly "deprived" of the IP

1 resources from the 2001 Order. (Supp. Plzak Decl., ¶ 13.)

2 Finally, Kremen claims "ARIN usurped control and converted a subset of the Netblock...."
3 that ARIN had revoked from Cohen. (The alternative for ARIN would have been to permit
4 Cohen and his associates to continue controlling the resources instead of revoking it.) Again, as
5 in every other instance, Kremen did not receive control of this resource for one reason--because
6 he refused to agree to any terms or conditions with respect to these resources. Now that he has
7 expressed his newfound desire to step into Cohen's shoes, there is no reason why Kremen should
8 object to signing an RSA on the same kinds of terms and conditions that Cohen had in his
9 agreements. Indeed, ARIN has offered and continues to offer this option to Kremen and this
10 Court should require Kremen to do so in connection with modifying or clarifying the September
11 2001 Order. When Kremen signs the RSA of his choice, ARIN can issue these resources to him.
12 ARIN is holding the resource for this purpose. (Supp. Plzak Decl., ¶ 13.)

13 For these reasons, ARIN respectfully submits that it is imperative that this Court clarify or
14 modify its September 2001 Order to require Kremen to sign one (of his choice) of the many RSAs
15 offered by ARIN and put this litigation to an end.

16 **B.     ARIN Is Entitled to Due Process as a Stakeholder**

17 In his Opposition, Kremen contends that forcing ARIN to register the Netblocks and
18 ASNs to Kremen does not violate ARIN's due process rights because, according to Kremen, he
19 "seeks only to enforce the constructive trust . . . and <u>not</u> to hold ARIN liable for the Judgment."
20 Opposition, 10:1-2 (emphasis in original). This simply is not true.

21     1.     *Kremen Is Seeking to Bind ARIN to the Judgment*

22 Although ARIN was not a party to the *Kremen v. Cohen Action*, made no appearances in
23 the case, filed no papers before the Court, was not otherwise notified that it would be bound by
24 any decree or order in the case, had no notice or opportunity to participate in any of the hearings,
25 or to object to the Court's final Order, Kremen sought to compel ARIN to register to Kremen the
26 Netblocks and ASNs in an effort to subject ARIN to the constructive trust created as an integral
27 part of the Judgment. (*Cf.*, Judgment entered in *Kremen v. Cohen Action* [imposing a
28 "constructive trust" on "all monies and properties of the Defendants"]) *with* Kremen's September

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

41043489.2                                        6                    REPLY OF NON-PARTY ARIN TO PLTFS.
                                                                        OPP. TO MTN. FOR CLARIFICATION

2001 *Ex Parte* Application For Order Requiring Registration Of IP Numbers (Netblocks) [application to force ARIN to register "IP Numbers (netblocks) in the name of Gary Kremen" as part of the "judgment for Sixty-Five Million Dollars ($65,000,000.00) and a judgment imposing a constructive trust on assets of the judgment debtors."]) (emphasis added).[3]

Through the constructive trust—an essential component to the Judgment—Kremen attempts to effect collection of the Judgment by holding ARIN liable for registering IP resources to Kremen. To the extent Kremen attempts to subject ARIN to the constructive trust as part of the Judgment, the cases cited by ARIN in its moving papers are directly applicable. Moreover, even assuming Kremen's contention that the constructive trust is somehow unrelated to the Judgment, the cases cited by ARIN are still applicable as they do not merely apply to judgments, but decrees and orders of the court. *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1050 (9th Cir. 2005) (We have in this nation a 'deep-rooted historic tradition that everyone should have his own day in court, and the court presumes, consequently, that a **judgment or decree** among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings") (emphasis added); *Martin v. Wilks*, 490 U.S. 755, 761-62 (1989) (same); *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965) ("An elementary and fundamental requirement of due process in **any proceeding which is to be accorded finality** is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [(citations omitted)].") (emphasis added).

"There can be no doubt that at a minimum [procedural due process] require[s] that

---

[3] Kremen states in its Supplemental Opposition that ARIN "has oddly and contradictorily claimed that it has no property interest in the NETBLOCK PROPERTY (Motion for Clarification, p.2; Motion to Dismiss, p. 21 line 4)" (Supplemental Opposition:21-25). However, nowhere in ARIN's Motion for Clarification on page 2 does ARIN state that it has no property interest in the NETBLOCK PROPERTY. As for ARIN's Motion to Dismiss, ARIN respectfully submits that the sentence should have read "Here, assuming *arguendo* that the IP Resources at issue in this lawsuit could be considered **Kremen's** "property" (which ARIN disputes), Plaintiff's contention as to his "ownership" over the purported property derives solely and exclusively from the September 2001 Order he obtained *ex parte* from Judge Ware in the related *Kremen v. Cohen* case." (Motion to Dismiss, 21:4) (reference to Kremen added in bold). Such a reading is logical and entirely consistent with the arguments ARIN presents in its moving papers in both of ARIN's pending motions before the Court.

deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 313 (1950). "The fundamental requisite of due process of law is the opportunity to be heard," *Grannis v. Ordean*, 234 U.S. 385, 394 (1914), a right that "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest." *Mullane*, 339 U.S at 314; *see also Baldwin v. Hale*, 1 Wall, 223, 233 (1864) ("Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."); *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 246 (1944) ("The fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked. If that is preserved, the demands of due process are fulfilled.").

At the very minimum, therefore, ARIN, facing the consequences of being forced to conduct itself in a manner inconsistent with its own policies and procedures in managing, allocating and registering the Netblock and ASNs to Kremen (as well as the future implications of doing so with other registrants), ARIN must be given notice and afforded a reasonable opportunity to be heard.

Kremen fails to cite a single case to support his position that non-party ARIN has absolutely no procedural due process rights with respect to the imposition of a constructive trust as part of executing the Judgment. Instead, Kremen likens, without explanation, ARIN's role as a internet registry to the county recorder or other register of property, and makes bald assertions that such a role would not implicate due process concerns. For reasons described above, ARIN's role is more extensive and exceeds the ministerial reporting functions of a county record or register of property. ARIN is, in fact, a non-governmental policy making body who has been delegated the express responsibility to manage an important set of IP Resources in the public trust and Kremen's putative rights are much different than that of a real property owner.[4]

---

[4] For example, a radio station licensee does not obtain any vested interest in any radio frequency. *Ashbacker Radio Corp. v. F.C.C.*, 326 U.S. 327, 331 (1945) ("We fully recognize that the [Federal Communications] Commission, as it said, is not precluded 'at a later date from taking any action which it may find will serve the public interest.' No licensee obtains any vested

Kremen's conduct in covertly imposing the constructive trust over ARIN through *ex parte* application was improper as there was no urgency of private or public need requiring prompt action without the delay necessitated by notice and a hearing. Essentially, ARIN received no warning that Kremen would inappropriately seek to surreptitiously dispense with the notice requirements, and in doing so, would leave ARIN bereft of the fundamentals of procedural due process: (1) a hearing (2) before an impartial decision-maker, after (3) fair notice of the charges and allegations, (4) with an opportunity to present one's own case. *Goss v. Lopez*, 419, U.S. 565, 578-79 (1972); *Fuentes v. Shevin*, 407 U.S. 67, 80-82 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970); *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 343 (1969) (Harlan J., concurring). The Order was issued without the input ARIN has been able to provide in these briefs.

2.  ***ARIN Has a Protectable Interest in the IP Resources That Entitles It To Due Process***

Kremen argues in his Supplemental Opposition that ARIN must be bound by the September 17, 2001 Order based on the following unsupported assertions: (1) ARIN must be a "stakeholder" to receive due process; (2) ARIN is not a stakeholder because it is alleged to have no property interest in the NEBLOCKS; (3) ARIN has no interest in the NETBLOCKS or ASNs at issue because ARIN did not produce documents to Kremen indicating that Kremen is bound by ARIN's procedures and policies, and as such, Kremen owns the NETBLOCKS outright and ARIN has no authority to control the NETBLOCKS; and (4) ARIN has no interest in at least

---

interest in any frequency."); *F.C.C. v. Sanders Bros. Radio Station*, 309 U.S. 470, 475 (1940) ("The Policy of the [Communications] Act [of 1934, as amended, 47 U.S.C.A. § 151 *et seq.*] is clear that no person is to have anything in the nature of a property right as a result of the granting of a license"); *Scripps-Howard Radio, Inc. v. F.C.C.*, 316 u.s. 4, 14 (1941) (rejecting the contention that the Act confers private rights on licensees); *In the Matter of Commission Policy Regarding the Advancement of Minority Ownership in Broadcasting*, 52 Rad. Reg. 2d (P & F) 1301, 92 F.C.C. 2d 849,1982 WL 190435, at *1, *7 (1988) ("There is a longstanding principle, followed by the Commission and affirmed by the United States Supreme Court, that a broadcast license is a valuable, though limited, privilege to utilize the airwaves, rather than a property right. As such, the license has not been subject to a reversionary interest, a mortgage, a lien, a pledge or any other form of security."). Like ARIN, "[t]he Commission for specified reasons may revoke . . . suspend . . . [or] modify a . . . license if in its judgment 'such action will promote the public interest, convenience, and necessity, or the provisions of [its statutory guidelines][,]" *Ashbacker Radio Corp.*, 326 U.S. at 331-32.

some of the NETBLOCK PROPERTY because such NETBLOCKS were allocated to Cohen before ARIN existed as an entity, and as to those NETBLOCKS, ARIN's terms and conditions are inapplicable. Supplemental Opposition, 4:9-7:5. However, Kremen's arguments are illusory because (1) ARIN is a stakeholder; (2) Kremen has no property interest in the NETBLOCKS and ASNs, and (3) Kremen has no right to the legacy space at issue.

As a preliminary matter, Kremen misunderstands the legal definition of stakeholder.[5] Plaintiff contends that "ARIN is Not a 'Stakeholder' Requiring Their [sic] Opportunity to Be Heard." Opposition, 21:22 (emphasis added). Even assuming *arguendo* that ARIN does not "own" the NETBLOCKS, such an assumption is irrelevant in light of the definition of "stakeholder." According to Black's Law Dictionary (8th ed. 2004), a "stakeholder" is:

"1. A disinterested third party who holds money or property, the right to which is disputed between two or more other parties. *See* INTERPLEADER.

2. A person who has an interest or concern in a business or enterprise, though not necessarily as an owner. 3. One who holds the money or valuables bet by others in a wager."

To the extent Plaintiff adopts the second definition of stakeholder—the only definition that could arguably apply here—to argue that ARIN cannot be a stakeholder because it has no properly interest in the NETBLOCKS, Kremen is obviously mistaken. Indeed, the legal definition of stakeholder does not require ARIN to be the owner of any alleged property; there need only be "an interest or concern in a business or enterprise." Black's Law Dictionary (8th ed. 2004).

Because ARIN has an indisputable interest in the proper administration and conservation

---

[5] The case law cited by ARIN in its opening brief requires the party affected by the Court's Order to have an appreciable interest in the litigation, and does not, contrary to Plaintiff's suggestion, require that interest be connected to forfeiting or turning over one's own property.

1   of IP resources such as the NETBLOCK PROPERTY, and against the unfettered transfer thereof,
2   ARIN is a stakeholder by definition. In fact, each and every RSA that Cohen had with ARIN
3   expressly states in the initial paragraph that ARIN "is responsible for the registration,
4   administration and *conservation* of Internet Protocol ("IP") address space . . . ."

5   ARIN is therefore charged with carefully distributing, regulating, conserving and
6   patrolling the finite IP resources it registers—encompassing the NETBLOCK PROPERTY—and
7   as such, ARIN's interests in the proper registration and transfer of the NETBLOCK PROPERTY
8   is evident and unmistakable. ARIN has a significant interest in the NETBLOCK PROPERTY,
9   whether that interest is categorized as one of life, liberty or property, and ARIN cannot be
10  estopped from maintaining that such interests clearly exist. Kremen's attempt to construe ARIN
11  as "simply a 'registry' [that] . . . provides 'registration' services[,]" is therefore disingenuous.[6]
12  By the terms of ARIN's RSAs, policies and procedures, ARIN plays a vital role in administering
13  and conserving IP resources.

14  Even a cursory examination of ARIN's RSAs provide for the terms and conditions for the
15  allocation of IP address space and/or the assignment of ASNs and maintains their effectiveness
16  for only a one year term. (*See, e.g.*, Supp. Plzak Decl., Exs. 2-4.) On the one year anniversary,
17  the RSA may be renewed only upon the fulfillment of certain conditions as outlined in the RSA.
18  Also, the RSA may be terminated at any time if the applicant fails to abide and satisfy the terms
19  of the RSA. Where, as here, the applicant for the NETBLOCKS has not satisfied its obligations
20  under the RSA, ARIN has a undeniable interest in reclaiming the IP address space and ASNs for
21  redistribution in anticipation of the needs of a future applicant or current member.

22  In addition, the documents produced to Kremen demonstrate ARIN's discernibly
23  strong interest in the IP resources it allocates, administers and protects, inclusive of the
24  NETBLOCKS and ASNs at issue, and contrary to Kremen's suggestion, whether or not the RSAs
25  at issue expressly specified the NETBLOCKS and ASNs is immaterial.

---

[6] Kremen argues without any legal or factual support that "Like domain names, NETBLOCK PROPERTIES are bought and sold . . . . In fact, some companies are even acquired for their blocks of IP addresses." Supplemental Opposition, 2:26-28. There is absolutely no support for this factual statement in any of Kremen's papers.

It is ARIN's business practice and custom that no IP resource is distributed unless an RSA is in place governing that resource. (Supp. Plzak Decl., ¶ 3.) As a safeguard procedure, upon the applicant's failure to pay the annual fee, the IP resource formally applied for and received by the applicant reverts back to ARIN to be recycled and redistributed pursuant to ARIN's established policies and procedures. As such, all property subject to the September 2001 Order need not be specifically identified through a RSA. ARIN's policies and procedures control, and under such guidelines, the NETBLOCKS and ASNs Kremen places at issue properly reverted back to ARIN. Kremen has no rights to the NETBLOCK PROPERTY.[7]

In light of the discussion above, the contentions raised in Kremen's Oppositions are unavailing. ARIN's unique and vested interest in the IP resources it administers, which includes the NETBLOCK PROPERTY at issue, trigger procedural due process guarantees of notice and an opportunity to be heard. As such, ARIN was unconstitutionally deprived of its due process rights when the Court issued its September 17, 2001 Order and therefore should not be bound to the Order as a matter of law. Although ARIN cannot reasonably be forced to comply with the September 17, 2001 Order, ARIN is willing to voluntarily submit itself to the Court's jurisdiction, but strongly requests provisions of the September 17, 2001 Order are modified as identified in the [Proposed] Order lodged herewith so as not to prejudice ARIN and innocent third parties.

---

[7] Kremen makes the passing argument that "ARIN is no different from those in care, custody or control of other Cohen property, regarding which this Court issued dozens of turnover orders." Supplemental Opposition, 5 n.3. Kremen's attempt to minimize ARIN's importance and to suggest that ARIN has no other duty but to hold onto the NETBLOCKS for the benefit of Kremen is shown to be misguided and to mischaracterize the facts. Moreover, Kremen fails to identify to the Court that turnover orders issued by this Court provided the party subject to the order with an opportunity to oppose the granting of the order, which that party failed to do. It is undisputed that ARIN received no notice or opportunity to be heard.

### III.
### CONCLUSION

For the foregoing reasons, ARIN respectfully requests that the September 17, 2001 Order be clarified or modified in the manner set forth in the Proposed Amended Order submitted with ARIN's moving papers.

Dated: October 2, 2006

Respectfully submitted,

By: _____
Christopher L. Wanger
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

*Counsel for Non-Party*
AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.

## PROOF OF SERVICE

I, Donna L. Wishon, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 1001 Page Mill Road, Building 2, Palo Alto, CA 94304-1006. On October 2, 2006, I served the within documents:

**REPLY OF NON-PARTY AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD. TO PLAINTIFF'S OPPOSITION AND SUPPLEMENTAL OPPOSITION TO MOTION FOR CLARIFICATION, OR, IN THE ALTERNATIVE, FOR MODIFICATION OF ORDER DATED SEPTEMBER 17, 2001, ENTITLED "ORDER RE: REGISTRATION OF IP NUMBERS (NETBLOCKS) IN THE NAME OF JUDGMENT CREDITOR"**

[x] by transmitting via e-mail the document(s) listed above to the e-mail addresses set forth below on this date before 5:00 p.m. (counsel for S. Cohen was not served electronically)

[x] by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Palo Alto, California addressed as set forth below.

[ ] by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

[ ] by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

**Karl Kronenberger**
**Terri Hanley**
Kronenberger Hanley, LLP
220 Montgomery Street, Ste. 1920
San Francisco, CA 94104
Phone: (415) 955-1155
Fax: (415) 955-1159
Email: karl@kronenbergerlaw.com
terri@kronenbergerlaw.com

**Ory Sandel**
**Patricia De Fonte**
**Richard Idell**
Idell & Seitel LLP
465 California Street, Ste. 300
San Francisco, CA 94104
Phone: (415) 986-2400
Fax: (415) 392-9259
Email: ory.sandel@ibslaw.com
patricia.defonte@ibslaw.com
richard.idell@ibslaw.com

**Timothy P. Dillon**
**Nadya Y. Spivack**
Dillon & Gerardi
4660 La Jolla Village Dr., Suite 775
San Diego, Ca 92122
Phone: (858) 587-1800
Email:
NSpivack@DillonGerardi.com

**John A. Goalwin**
350 So. Figueroa Street, Suite 499
Los Angeles, Ca 90071
Phone: (213) 202-7820
(attorney for S. Cohen)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

PROOF OF SERVICE

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 2, 2006.

*Donna L. Wishon*
Donna L. Wishon

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2

PROOF OF SERVICE